IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IGT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-282 (KAJ) |
| | ) | |
| BALLY GAMING INTERNATIONAL, | ) | |
| INC., BALLY TECHNOLOGIES, INC., | ) | |
| and BALLY GAMING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN
<u>SUPPORT OF THEIR MOTION TO TRANSFER</u>**

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Defendants*

OF COUNSEL:

Charles K. Verhoeven
Amy H. Candido
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street
San Francisco, CA 94111
(415) 875-6600

Edward J. DeFranco
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, NY 10010
(212) 849-7000

June 1, 2006

i.

.

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

SUMMARY OF ARGUMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT .......................................................................................................4

I.   THIS ACTION CAN BE PROPERLY BROUGHT IN THE
     DISTRICT OF NEVADA..............................................................................5

II.  THERE IS A RELATED ACTION ONGOING IN THE
     DISTRICT OF NEVADA..............................................................................5

     A.   The Nevada Action Involves The Same Parties. .........................................6

     B.   The Nevada Action Involves Overlapping Technology. .............................6

     C.   The Nevada Action Involves The Same Patent Family. .............................7

     D.   The Nevada Action Involves The Same Witnesses. ...................................8

     E.   IGT's Own Papers Emphasize The Similarity Between The
          Nevada Action And This Action ...........................................................9

     F.   Judicial Economy And The Interests Of Justice Will Be
          Served By Transferring This Case To Nevada. .......................................10

III. NEVADA IS THE MORE CONVENIENT FORUM BECAUSE
     ALL THE PARTIES AND MOST OF THE WITNESSES AND
     EVIDENCE ARE IN NEVADA. ....................................................................11

     A.   Most Of The Witnesses, Including Third Party Witnesses,
          Are In Nevada. ...............................................................................11

     B.   All Of The Parties Have Their Principal Place Of Business
          In Nevada. .....................................................................................13

     C.   The District Of Nevada Has A Local Interest In The
          Resolution Of This Controversy. ........................................................15

     D.   Bally's Burden Is Lessened Because Delaware Is Not
          IGT's Home Turf. ............................................................................16

CONCLUSION.....................................................................................................17

## TABLE OF AUTHORITIES

Page(s)

### Cases

*3Com Corp. v. D-LINK Sys., Inc.*, C.A. No. 03-014 (GMS),
    2003 WL 1966438 (D. Del. Apr. 25, 2003).....................................................13, 15, 16

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998)..................................................................11, 12, 16

*Allergan Inc. v. Alcon Labs. Inc.*, C.A. No. 02-1682 (GMS),
    2003 WL 473380 (D. Del. Feb. 25, 2003) ................................................................13

*AlliedSignal, Inc. v. Cooper Auto, Inc.*,
    1997 U.S. Dist. LEXIS 22902 (D. Del. July 30, 1997) .............................................13

*Altera Corp. v. Xilinx*,
    C.A. No. 95-242 (JJF), (D. Del. Mar. 29, 1996)......................................................11

*Arrow Commc'n Labs, Inc. v. Mezzalingua Assocs.*,
    C.A. No. 05-357 (SLR), 2005 WL 2786691 (D. Del. Oct. 26, 2005) ..................13, 16

*Bayer Bioscience v. Monsanto*, C.A. No. 03 023 (GMS),
    2003 WL 1565864 (D. Del. Mar. 25, 2003) .............................................................10

*Brunswick Corp. v. Precor, Inc.*,
    C.A. No. 00-691 (GMS), 2000 WL 1876477 (D. Del. Dec. 12, 2000) ..................5, 10

*Clopay Corp. v. Newell Companies, Inc.*,
    527 F. Supp. 733 (D. Del. 1981)...............................................................................17

*Continental Cas. Co. v. American Home Assur. Co.*,
    61 F. Supp. 2d 128 (D. Del. 1999)............................................................................17

*Conopco, Inc. v. Pfizer, Inc.*,
    C.A. No. 01-308 (JJF), (D. Del. 2001) ...............................................................5, 8, 10

*Corixa Corp. v. IDEC Pharms. Corp.*,
    C.A. No. 01-615 (GMS), 2002 WL 265094 (D. Del. Feb. 25, 2002)..........................4

*Derry Finance NV v. The Christiana Cos., Inc.*,
    555 F. Supp. 1043 (D. Del. 1983).................................................................................5

*IGT v. Alliance Gaming Corp., et al.*,
    CV-S-04-1676-RCJ-RJJ ...............................................................................................3

*IKOS Sys., Inc. v. Cadence Design Sys., Inc.*,
    C.A. No. 02-1335 (GMS), 2002 WL 31414136
    (D. Del. Oct. 21, 2002) ...................................................................................13, 14, 15

*Invitrogen Corp. v. Strategene Holding Corp.*,
    C.A. No. 00-620 (JJF), (D. Del. April 12, 2001).......................................................11

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995).........................................................................4

*Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*,
    102 F. Supp. 2d 518 (D. N.J. 2000).........................................................5

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
    77 F. Supp. 2d 505 (D. Del. 1999).......................................10, 11, 12, 13, 14

*Network Appliance v. Bluearc Corp.*,
    C.A. No. 03-714 (KAJ), (D. Del. Nov. 19, 2003).....................................12

*Nilssen v. Everbrite, Inc.*,
    C.A. No. 00-189 (JJF), 2001 WL 34368396 (D. Del. Feb. 16, 2001) ..............5, 11, 12

*Nilssen v. Osram Sylvania, Inc.*,
    C.A. No. 00-695 (JJF), 2001 WL 34368395 (D. Del. May 1, 2001) .....................8, 16

*Pennwalt Corp. v. Purex Indus., Inc.*,
    659 F. Supp. 287 (D. Del. 1986)..............................................................16

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)...............................................................................4

## **Statutes**

28 U.S.C. § 1391(c) ...................................................................................5

28 U.S.C. § 1404(a) ..................................................................................4

Fed. R. Civ. P. 30(b)(6)..............................................................................3

.

## NATURE AND STAGE OF THE PROCEEDINGS

On May 8, 2006, plaintiff IGT filed its Amended Complaint alleging infringement of nine patents by Bally Gaming International, Inc., Bally Technologies, Inc., and Bally Gaming, Inc. (collectively, "Bally").   By stipulation and Order dated May 22, 2006, the Court granted Bally an extension to June 21, 2006 to answer or otherwise respond to IGT's complaint.  (D.I. 22).  As of the date of this motion, Bally has not answered or otherwise responded.

## SUMMARY OF ARGUMENT

This action should be transferred to the District of Nevada, where IGT has already filed a related patent case involving similar technology and the same parties (the "Nevada Action").   In that case, IGT alleges that Bally's iView product infringes two patents relating to player tracking and bonusing – the same technologies at issue in this case.  Indeed, five of the patents asserted in this action belong to the same family as eight patents cited as prior art to the patents at issue in the Nevada Action.

Moreover, IGT itself stressed the relatedness of the two actions in its Motion For Expedited Discovery, where it argued to this Court that the discovery materials in the Nevada Action "are relevant in this case, because the Nevada case involves a product, the Bally iView, that is a 'front-end' touch screen display that can be used with the 'back-end' bonusing technology at issue here."  (Motion For Expedited Discovery at 2, D.I. 8).

Instead of requiring two different courts to master the technology of the patents at issue, it is much more efficient for this action to be transferred to Nevada where the same court can resolve both actions.

In addition, the vast majority of the documents and witnesses in this action are located in Nevada. The location of third party witnesses is paramount, and here, since this case involves gaming technology and Nevada is the gaming capital of the country, the majority of third party witnesses will be located in Nevada. The two actions also have numerous witnesses in common and a common inventor, Richard Rowe. In addition, all of the parties are headquartered in Nevada and three of the four parties are Nevada corporations.[1] Acres Gaming, the assignee of eight of the nine patents in suit, is a Nevada corporation and was headquartered in Nevada prior to its acquisition by IGT in 2003.

In contrast, there are no relevant witnesses or documents located in Delaware. The only meaningful connection to Delaware is that Bally Gaming International – a holding company with no operations or employees – is a Delaware corporation (the other two Bally entities are Nevada corporations). Moreover, IGT's choice of forum carries less weight given that IGT has forum-shopped this action far from its "home turf" in Nevada, where all of the parties have their headquarters and where IGT has already brought the related Nevada Action against Bally.

For all of these reasons, this action should be transferred to the District of Nevada.

STATEMENT OF FACTS

IGT is a Nevada corporation with its principal place of business in Reno, Nevada. (Amended Complaint, D.I. 6, at ¶ 5). IGT acquired eight of the nine patents in suit by its acquisition of Acres Gaming, a Nevada corporation headquartered in Nevada. (IGT Form 10-K For Period Ending 9/30/2005, attached to Declaration of Amy H. Candido ("Candido Decl.") as

---

[1]     Bally Gaming International, a holding company with no operations or employees, is a Delaware corporation.

Exhibit 3; IGT Press Release Oct 27, 2003, attached to Candido Decl. as Exhibit 4; Acres Gaming Form 10-K For Period Ending 6/30/2003, attached to Candido Decl. as Exhibit 5).

Bally Gaming, Inc. and Bally Technologies, Inc. are both Nevada corporations with their principal place of business in Las Vegas, Nevada. (Amended Complaint, D.I. 6, at ¶¶ 7, 8). Bally Gaming International, Inc. is a Delaware corporation, also with its principal place of business in Las Vegas, Nevada. (*Id.* at ¶ 6). Bally Gaming, Inc. designs, manufactures, operates, and distributes gaming machines and computerized monitoring systems for gaming machines. (Declaration of Mark Lipparelli ("Lipparelli Decl.") at ¶ 2). Bally Technologies, Inc. and Bally Gaming International, Inc. are both holding companies. (*Id.* at ¶ 4). Bally Technologies, Inc. owns 100% of the stock of Bally Gaming, Inc. and Bally Gaming International, Inc.[2] (*Id.*).

On December 7, 2004, IGT filed a complaint in the District of Nevada against the same defendants here,[3] alleging infringement of six patents. *IGT v. Alliance Gaming Corp., et al.,* CV-S-04-1676-RCJ-RJJ; Candido Decl. at ¶ 2. The Nevada Action is currently pending before Judge Robert C. Jones. (*Id.*). The parties have exchanged extensive written discovery and over 400,000 pages of documents have been produced. (Candido Decl. at ¶ 4). IGT has conducted two depositions of Bally employees pursuant to Fed. R. Civ. P. 30(b)(6). (*Id.*). In addition, a Markman hearing has been scheduled for September 26-28, 2006. (*Id.*). Two of the

---

[2]    Bally Technologies, Inc. owns 100% of Alliance Holding Company, which owns 100% of Bally Gaming International, Inc., which owns 100% of Bally Gaming, Inc. (Lipparelli Decl. at ¶ 4).

[3]    The named defendants in the Nevada Action are Alliance Gaming Corporation, Bally Gaming International, Inc. and Bally Gaming, Inc. On March 13, 2006, Alliance Gaming Corporation changed its name to Bally Technologies, Inc. (Candido Decl. at ¶ 2; Lipparelli Decl. at ¶ 5).

patents at issue in the Nevada Action address player tracking, as well as bonusing and other services provided to a player via a player tracking interface. (*Id.* at ¶ 3). The other four patents address slot machines. (*Id.*).

ARGUMENT

A district court may transfer any civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). This action should be transferred to the District of Nevada because the "convenience of parties and witnesses, [and] the interests of justice" heavily weigh in favor of transfer. 28 U.S.C. §1404(a); *see also Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (holding that the purpose of section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.") (citations omitted).

The Third Circuit has directed courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although there is no definitive list of factors, courts have considered private factors that include the convenience of the parties due to their relative physical and financial condition, the convenience of the expected witnesses, and the location of books and records.[4] *Id.* Relevant public interest factors include practical considerations regarding the ease, speed, or

---

[4]    The other three private *Jumara* factors are: the plaintiff's selection of the forum, the defendant's forum preference and whether the claim arose somewhere else. *Jumara,* 55 F.3d at 879. This Court has found these factors to be subsumed within others, and therefore, does not afford them any weight to avoid the risk of double-counting them and thus distorting the transfer analysis. *See Corixa Corp. v. IDEC Pharms. Corp.*, C.A. No. 01 615 (GMS), 2002 WL 265094, at *3, n. 4 (D. Del. Feb. 25, 2002).

expense of trial; the relative congestion of the dockets of the fora; and the interest in deciding local controversies in the home forum.  *Id.*

I.      THIS ACTION CAN BE PROPERLY BROUGHT IN THE DISTRICT OF NEVADA.

As a threshold matter, there is personal jurisdiction over the defendants in the District of Nevada, where all of the defendants have their principal places of business.  *Derry Finance NV v. The Christiana Cos., Inc.*, 555 F. Supp. 1043, 1045 (D. Del. 1983).  Two of the three defendants are also incorporated in Nevada.  Venue also is proper in Nevada because a corporate defendant is deemed to reside in any district where it is subject to personal jurisdiction.  *See* 28 U.S.C. § 1391(c).  Indeed, IGT brought suit against the Defendants in the District of Nevada once before, and none of the parties to the Nevada Action have challenged personal jurisdiction or venue.

II.      THERE IS A RELATED ACTION ONGOING IN THE DISTRICT OF NEVADA.

"Where related lawsuits exist, it is in the interest of justice to permit suits involving the same parties and issues to proceed before one court."  *Brunswick Corp. v. Precor, Inc.*, C.A. No. 00-691 (GMS), 2000 WL 1876477, *3 (D. Del. Dec. 12, 2000) (*citing Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2nd 518 (D. N.J. 2000)); *Conopco, Inc. v. Pfizer, Inc.*, C.A. No. 01-308 (JJF), slip op. at 4 (D. Del. 2001); *Nilssen v. Everbrite, Inc.*, C.A. No. 00-189 (JJF), 2001 WL 34368396, *6 (D. Del. Feb. 16, 2001) ("If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer.").

A.     The Nevada Action Involves The Same Parties.

IGT brought both the Nevada Action as well as this action.  The defendants in the Nevada Action are Bally Gaming, Inc., Bally Gaming International Inc., and Bally Technologies, Inc. – which was formerly known as Alliance Gaming Corporation.  (Lipparelli Decl. at ¶ 5).

B.     The Nevada Action Involves Overlapping Technology.

All of the patents in both the Nevada Action and this action involve gaming technology.  Moreover, there is direct overlap between the specific areas of gaming technology covered by the patents in both actions.  Two of the patents at issue in the Nevada Action, U.S. Patent Nos. 6,712,698 ("the '698 patent", attached to Candido Decl. as Exhibit 1) and 6,722,985 ("the '985 patent", attached to Candido Decl. as Exhibit 2), as well as all of the patents in this action, specifically address "player tracking."

The '698 patent discloses a player tracking unit with a touch screen display used to present various player tracking services and "game services" to the player.  (Abstract).  For example, the player tracking unit may include "gaming logic for … b) generating a bonus game interface … used to present a bonus game, … d) generating a loyalty program account interface … where the loyalty program account interface is used to view loyalty program account information, … h) generating a prize redemption interface … n) generating an account interface … used to transfer funds to a banking account."  ('698 patent at col. 3, ln. 62 - col. 4, ln. 55).  The '698 patent also describes using the player tracking interface to "redeem prizes or comps including using player tracking points to redeem the prize or comp" and to "participate in casino promotions."  (*Id.* at col. 8, lns. 17-21).

The '985 patent states that "the present invention relates to methods of providing player tracking game services to casinos and game players."  ('985 patent at col. 1, lns. 17-19).

The abstract for the '985 patent states that player tracking unit "may contain many different types of player tracking peripheral devices such as … bonus buttons." (Abstract).  In addition, "the player tracking devices may be utilized to provide gaming services … to configure a gaming machine … as part of a bonusing system."  ('985 patent at col. 13, lns. 57-63).

The patents in suit in this action similarly relate to player tracking and bonusing. For example, the abstract for one of the patents at issue here, U.S. Patent RE38,812, describes an "electronic module [that] includes a player tracking module," and states that "[t]he gaming device reconfigures its payout schedules responsive to the reconfiguration commands to provide a variety of promotional bonuses …."  (Abstract).  The abstract for another, U.S. Patent No. 6,620,046, describes "gaming machines associated with a player tracking host and a bonus system host."  (Abstract).  The abstract for a third, U.S. Patent No. 6,565,434, describes an invention "for controlling a bonusing promotion system using a bonus server interconnected to a plurality of gaming devices."  (Abstract).  The other patents asserted in this action similarly address technology for player tracking.

Thus, judicial economy favors transferring this case to the District of Nevada.  It is inefficient for two courts to develop a thorough understanding of this technology and how it applies to Bally's products.

C.     The Nevada Action Involves The Same Patent Family.

In the Nevada Action, Bally asserts that one of the IGT patents in suit in this action – U.S. Patent No. 6,319,125 B1 ("the '125 patent") – invalidates the two IGT player tracking and bonusing related patents at issue in that case.  (Candido Decl. at ¶ 5).  Moreover, five of the patents asserted in this action are in the same family as two additional patents asserted as invalidating prior art in the Nevada Action – U.S. Patent Nos. 5,655,961 and 5,702,304.

(Candido Decl. at ¶ 6).  These patents all share the same inventor, John Acres, and share the same or substantially similar specifications.  (*Id.*).  In addition, Rick Rowe, the inventor of one of the patents in suit here – U.S. Patent No. 6,620,046 B2 – is also an inventor on one of the asserted player tracking patents in the Nevada Action (the '985 patent).  (Candido Decl. at ¶ 7).

Accordingly, Judge Jones will be called upon to review and evaluate the disclosures of the patents asserted here, as well as other related art in the field of gaming technology.  In addition, to rule on Bally's invalidity arguments, Judge Jones will need to determine the scope of patents asserted as invalidating prior art in the Nevada Action – in particular the scope of the '125 patent – while in this action the Court will need to construe the claims of patents in the same family.  This duplication of effort is both inefficient and raises the risk of inconsistent claim constructions.  *See, e.g., Conopco,* slip op. at 4 (granting transfer because "it is inefficient and a waste of judicial resources to require multiple courts to construe and render *Markman* rulings on related patents"); *Nilssen v. Osram Sylvania, Inc.*, C.A. No. 00 695 (JJF), 2001 WL 34368395, at *4 n.10 (D. Del. May 1, 2001) (noting risk of inconsistent judgments weighs in favor of transfer).

D.     The Nevada Action Involves The Same Witnesses.

This action and the Nevada Action share numerous potential witnesses, since both actions involve the same parties, the same technology, and the same patent family.  Witnesses common to both actions likely include:

- Richard Rowe, an inventor of patents in both actions and the head of IGT's systems business at issue in both actions;
- John Acres, an expert witness in the Nevada Action and an inventor of eight patents at issue in the Delaware action;
- Mark Lipparelli, Bally EVP Operations;
- Robert Luciano, Bally EVP, Chief Technology Officer;

- Mike LeStrange, former Bally employee currently living in Nevada, involved in design and development of the accused products and relevant prior art in both actions;
- Maureen Mullarkey, IGT CFO; and
- Ron Rivera, IGT Head of Sales.

Moreover, it is believed that most, if not all, of these witnesses reside in Nevada.

> E.    IGT's Own Papers Emphasize The Similarity Between The Nevada Action And This Action.

As discussed above, IGT's brief in support of its Motion For Expedited Discovery emphasizes significant overlap between this action and the Nevada Action. (Motion For Expedited Discovery, D.I. 8, at 2, 7-9). IGT argued that discovery materials in the Nevada Action "are relevant in this case, because the Nevada case involves a product, the Bally iView, that is a 'front-end' touch screen display that can be used with the 'back-end' bonusing technology at issue here." (*Id.* at 2). IGT also argued that "the accused Bally Power Bonusing technology operates and is sold in conjunction with the iVIEW™ device." (*Id.* at 8). IGT thus requested an order that documents produced in the Nevada Action be "deemed produced for use in this action." (*Id.* at 2).

IGT's own discovery requests recently served in this action further demonstrate the extent of the subject matter overlap between this action and the Nevada Action. By way of example, IGT's Request For Production No. 13 in this action calls for "[a]ll documents relating to the development of bonusing-related gaming system themes or game themes." (Plaintiff IGT's First Set Of Requests For Production Of Documents And Things To Defendants (Nos. 1-40), attached to Candido Decl. as Exhibit 7). As IGT does not define "gaming system themes or game themes," Request No. 13 could encompass all slot machines with a "bonusing-related" game theme – which, according to IGT, includes all of the slot machines at issue in the Nevada Action. IGT's Request For Production No. 27 further calls for "[a]ll documents relating to,

referring, relating or pertaining to market research for, or evaluations of, the market for bonusing programs, systems, software, games or technology." (*Id.*). This request similarly could encompass all of the slot machines at issue in the Nevada Action, which IGT contends are "bonus" games. Thus, IGT's own document requests further demonstrate the overlap between the two actions.

F. **Judicial Economy And The Interests Of Justice Will Be Served By Transferring This Case To Nevada.**

The same parties, same technology, same witnesses, and same patent family that IGT will present to this Court will also be before Judge Jones in the Nevada Action. Both courts will therefore be called upon to review and evaluate the disclosures of the patents in suit, as well as other art in the same field of technology. Both courts will also construe the patents at issue in the two actions, which contain several common claim terms. Judicial economy would be served by transferring this case to the District of Nevada. *Brunswick Corp.*, 2000 WL 1876477, at *3 (granting transfer where related litigation involved parent patent and same exercise equipment technology). The Nevada District Court will be ruling on patents and prior art closely related to those at issue here. *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 513 (D. Del. 1999) ("[T]here is some overlap in the parties, technologies and accused products in this case and the [other] action. As such, there may be some efficiency gained by litigating both actions in the same District."); *Conopco,* slip op. at 5 (granting transfer because transferee judge's "previous rulings on the parent patents, enable her to confront any new issues that might arise under the derivative '660 patent without any duplication of effort").

Finally, there is the simple fact that the Nevada Action has been ongoing for about two years now. *Bayer Bioscience v. Monsanto*, C.A. No. 03 023 (GMS), 2003 WL 1565864, at *2 (D. Del. Mar. 25, 2003) (transferring patent litigation due to "the on-going

relationship that the Eastern District of Missouri ha[d] with the same parties, and the same, or related, patent or patents"); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 206 (D. Del. 1998) (transferring patent litigation due to on-going action concerning same patent in another forum).  This two-year head start will allow the District of Nevada to develop considerable expertise in the complex subject matter at issue here well ahead of this Court, and weighs heavily in favor of transfer.  *Invitrogen Corp. v. Strategene Holding Corp.*, C.A. No. 00-620 (JJF), slip op. at 4 (D. Del. April 12, 2001) (granting transfer to the District of Maryland because that court had "acquired considerable expertise in the complex subject matter" by presiding over the plaintiff's three prior lawsuits involving "closely related patents"); *Altera Corp. v. Xilinx*, C.A. No. 95-242 (JJF), slip op. at 3-4 (D. Del. Mar. 29, 1996) (granting transfer where transferee forum was "familiar with the complex technologies, product structures, and prior art involved as well as at least one of the patents").

III.    NEVADA IS THE MORE CONVENIENT FORUM BECAUSE ALL THE PARTIES AND MOST OF THE WITNESSES AND EVIDENCE ARE IN NEVADA.

A.    Most Of The Witnesses, Including Third Party Witnesses, Are In Nevada.

"[T]he convenience of the witnesses is the most important factor in venue transfer analysis."  *Nilssen v. Everbrite*, 2001 WL 34368396, at *6 (*citing Mentor Graphics*, 77 F. Supp. 2d at 510).  There are no prospective witnesses in Delaware.  The witnesses are, for the most part, located in Nevada or on the West Coast.  Specifically, most of the Bally employees involved in the development and sale of the accused gaming technology are in Nevada or California.  All of IGT's witnesses are also likely to be in Nevada.

Perhaps most importantly, none of the third party witnesses who will likely be called to testify at trial are within the subpoena power of this Court.  The company that

developed the inventions of the patents in suit – Acres Gaming – had its headquarters in Las Vegas, Nevada. *Network Appliance v. Bluearc Corp.,* C.A. No. 03-714 (KAJ), Tr. at 17 (D. Del. Nov. 19, 2003) (transferring in part because defunct company that developed the technology at issue was based in the transferee forum). To the extent former employees are available, it is likely that they are near Acres Gaming's two former offices in Nevada and Oregon. *Affymetrix,* 28 F. Supp. 2d at 203 (the convenience of third-party fact witnesses who possess first-hand knowledge relevant to a lawsuit "weighs quite heavily in the 'balance of inconvenience' analysis"). Moreover, the patents in suit on their face list the inventors as residing in Nevada and Oregon. Thus, they could not be compelled to attend trial in Delaware.[5] *See Nilssen v. Everbrite,* slip op. at *6 (*citing Mentor Graphics*, 77 F. Supp. 2d at 511) ("A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power.").

Also, both parties are likely to have former employees in Nevada, such as Michael LeStrange (a former Bally employee currently living in Nevada), who are knowledgeable about the prior art. (Lipparelli Decl. at ¶ 6). There also is likely to be evidence of prior art gaming systems in Nevada, which may need to be gathered directly from third parties. For example, the first implementation of Acres Bonusing was at the Casino Royale in Las Vegas. (Acres Gaming Form 10-K For Period Ending 6/30/1996, attached to Candido Decl. as Exhibit 6). As this Court has noted when conducting venue transfer analysis, videotape depositions are not an adequate substitute for live trial testimony because "video depositions …

---

[5]     While one of the inventors, John Acres, is currently serving as an expert for defendants in the Nevada action, that does not guarantee Mr. Acres' availability or willingness to also attend trial in Delaware. Furthermore, Defendants do not know whether the other inventors would be willing to come to Delaware.

are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto, Inc.*, 1997 U.S. Dist. LEXIS 22902, at *11 n.4 (D. Del. July 30, 1997). This Court, however, would be unable to compel the attendance of most third party witnesses. Moreover, it would be inconvenient for these third party witnesses to travel to Delaware even if they did so willingly. *3Com Corp. v. D-LINK Sys., Inc.*, C.A. No. 03-014 GMS, 2003 WL 1966438, at *5 (D. Del. Apr. 25, 2003) ("Even if these [third party] witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so ….").

In contrast, most of the third party witnesses are within the subpoena power of the District of Nevada. The parties' former employees, at least one of the named inventors of the patents in suit, as well as many third party prior art witnesses, are likely to be within the subpoena power of the District of Nevada. While transfer to Nevada will not change anything with respect to compelling certain of the witnesses located in Oregon, it would make it easier and less expensive to secure the attendance of any such witnesses. More evidence would therefore be available to the Nevada court than to this Court.

In sum, both the convenience and availability of witnesses at trial weighs heavily in favor of transferring this action to the District of Nevada.

      B.     All Of The Parties Have Their Principal Place Of Business In Nevada.

All of the parties to this dispute are located in Nevada. It would be far more convenient for all parties to litigate this dispute in the district where their headquarters are located and where they already have patent litigation pending.[6] *IKOS Sys., Inc. v. Cadence Design Sys., Inc.*, C.A. No. 02-1335 (GMS), 2002 WL 31414136, at *1 (D. Del. Oct. 21, 2002)

---

[6]    Moreover, lead counsel for all of the parties are on the West Coast, in California.

(transferring to California where each of the parties was "a Delaware corporation with headquarters located within several miles of one another in what was commonly known as the Silicon Valley of northern California"); *Mentor Graphics*, 77 F. Supp. 2d at 507 (transferring to California where defendant's principal offices were in California, even though two parties were Delaware corporations).   This is particularly true where the parties are "large, national and international organizations with apparently substantial assets" that "maintain geographically diverse operating locations." *IKOS,* 2002 WL 31414136, at *1.

Although one of the defendants – Bally Gaming International, Inc. – is a Delaware corporation, that defendant conducts no business and thus its state of incorporation should not be taken into account in the balance of convenience analysis. *See id.* (transferring because "while the defendants and the plaintiff are Delaware corporations and should reasonably expect to litigate in the forum, there seems to be little connection between Delaware and this action or the parties").   Moreover, this Court has held that the presence of a Delaware entity alone will not suffice to avoid transfer where other factors strongly favor transfer. *Id.*; *Arrow Commc'n Labs, Inc. v. Mezzalingua Assocs.*, C.A. No. 05-357 (SLR), 2005 WL 2786691, at *4 (D. Del. Oct. 26, 2005) (transferring because "the District of Delaware has no connection to the subject matter of plaintiff's lawsuit, except that defendant is incorporated there"); *Allergan Inc. v. Alcon Labs. Inc.*, C.A. No. 02-1682 (GMS), 2003 WL 473380, at *2 (D. Del. Feb. 25, 2003) (granting transfer because, although plaintiffs and several defendants were Delaware entities, "each party either maintain[ed] its principal place of business in California, or ha[d] facilities there, whereas no party maintain[ed] operations in Delaware").

All of the parties, including IGT, can litigate this action in the District of Nevada much more easily than they can in Delaware.   The burden and expense of travel alone makes it

far more convenient to litigate this dispute in Las Vegas.  There is no countervailing reason that can justify imposing the burden on both parties of traveling across the country to resolve this dispute.  *See 3Com Corp.*, 2003 WL 1966438, at *5 (finding transfer "would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents").

The inconvenience of having defendants litigate this dispute in Delaware far outweighs any conceivable argument IGT can make for litigating here.

C.     The District Of Nevada Has A Local Interest In The Resolution Of This Controversy.

Transfer to the District of Nevada is also appropriate because Nevada has a strong local interest in the resolution of this controversy.  *IKOS*, 2002 WL 31414136, at *1 (granting transfer to the Northern District of California because, although "patent disputes are not often properly characterized as local in nature," the relevant industry was located in the Silicon Valley).  A large part of the Nevada economy is founded on the gaming industry and Nevada is widely regarded as the gaming capital of the country.  Bally sells its products to casinos in Nevada.  (Lipparelli Decl. at ¶ 3; Motion For Expedited Discovery, D.I. 8, at Ex. 1 (press releases)).  IGT also sells its products to casinos in Nevada.  (IGT Form 10-K For Period Ending 9/30/2005, attached to Candido Decl. as Exhibit 3).

In contrast, Delaware does not have a substantial gaming industry.  As a result, Bally does not derive any significant portion of its revenue from sales or other activities in Delaware – Bally's revenue from all activities in Delaware in fiscal year 2005 was less than 1% of Bally's total revenues, and its sales of Power Bonusing in Delaware are limited to the racetrack at Dover Downs.  (Lipparelli Decl. at ¶ 2).  Bally handles all Delaware sales and leases through its offices in New Jersey and Pennsylvania.  (*Id.*).  Its total operations in Delaware

consist of 11 service technicians, one supervisor, and 468 square feet of storage space. (*Id.*).

These minimal contacts do not weigh against transfer to Nevada. *Nilssen v. Osram*, 2001 WL

34368395, at *2 (transferring to Massachusetts despite fact that "Defendants have one

salesperson who works out of a home office in Delaware, and some of Defendants' accused

products are sold in Delaware"); *3Com Corp.*, 2003 WL 1966438, at *1 (transferring to

California despite sales of some allegedly infringing products in Delaware).

> ### D.    Bally's Burden Is Lessened Because Delaware Is Not IGT's Home Turf.

Bally's burden of showing the balance of convenience favors transfer to Nevada

is lessened here because IGT has not brought suit on its "home turf." *Pennwalt Corp. v. Purex

Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986) ("A defendant's burden with respect to

plaintiff's choice of forum is easier to meet where the plaintiff has not brought suit on its 'home

turf.'"); *Arrow Commc'n Labs*, 2005 WL 2786691, at *2 ("transfer of an action is usually

regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its 'home turf'"). IGT's

"home turf" – "the forum closest to the plaintiff's residence or principal place of business which

can exercise personal jurisdiction over the defendants at the time the lawsuit is filed" – is

Nevada. *Affymetrix,* 28 F. Supp. 2d at 198 n.6. IGT is a Nevada corporation with its principal

place of business in Nevada. Nevada can exercise jurisdiction over all defendants in this action

because three of the four defendants are Nevada corporations and all four defendants have their

principal place of business in Nevada.

Where a plaintiff brings suit other than in its home turf, transfer is regarded as less

inconvenient to the plaintiff and the defendant's burden is lessened. *Id*. The plaintiff thus must

offer "substantive reasons indicating that the convenience to it of litigating in this forum . . .

approaches the inconvenience which trial in this forum will impose on defendants and their

witnesses." *Continental Cas. Co. v. American Home Assur. Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999) (*quoting Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733, 737 (D. Del. 1981)).  Here, there is no plausible convenience to IGT from litigating in Delaware.  This matter has no meaningful connection to Delaware beyond the fact that Bally Gaming – a holding company with no employees or operations – is incorporated in Delaware.  There is no relevant evidence and no witnesses in Delaware.  Moreover, the burden to Bally of litigating in Delaware, as described above, is substantial.

It is important to note that Bally is not seeking to "shift" convenience from IGT to benefit itself.  All parties to this action – including IGT – would benefit from the convenience of litigating in Nevada.   IGT has its headquarters in Nevada and has filed numerous patent infringement suits in Nevada.  Indeed, IGT's primary patent counsel, O'Melveny & Myers LLP, is located in California, which actually makes Nevada more convenient for IGT.  Neither IGT nor the parties' dispute has any connection to Delaware, which is thousands of miles from all of the parties and most of the evidence and witnesses.  This forum is equally inconvenient to all parties and IGT has no plausible reason why Delaware is the more convenient forum – even for itself.

<u>CONCLUSION</u>

For the reasons stated herein, this action should be transferred to the District of Nevada.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

Jack B. Blumenfeld (# 1014)
Karen Jacobs Louden (# 2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorneys for Defendants*

OF COUNSEL:

Charles K. Verhoeven
Amy H. Candido
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street
San Francisco, CA  94111
(415) 875-6600

Edward J. DeFranco
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, NY  10010
(212) 849-7000

June 1, 2006

EXHIBIT A

3/29/96

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ALTERA CORPORATION,                 :
                                    :
          Plaintiff and             :
          Counterdefendant,         :
                                    :
     v.                             :    Civil Action No.  95-242-JJF
                                    :
XILINX, INC.,                       :
                                    :
          Defendant and            :
          Counterclaimant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Bruce M. Stargatt, Josy W. Ingersoll, James P. Hughes, Jr., of
YOUNG, CONAWAY, STARGATT & TAYLOR, Wilmington, Delaware. Herbert
F. Schwartz, Robert J. Goldman, Douglas J. Gilbert, of FISH &
NEAVE, New York, New York. Attorneys for Plaintiff.

Douglas E. Whitney, Lisa B. Baeurle, of MORRIS, NICHOLS, ARSHT &
TUNNELL, Wilmington, Delaware. Alan H. MacPherson, Joseph A.
Greco, Kenneth E. Leeds, Scott R. Brown, Peter H. Kang, of
SKJERVEN, MORRILL, MACPHERSON, FRANKLIN & FRIEL, San Jose,
California. Attorneys for Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OPINION**

March 29, 1996

Wilmington, Delaware

FARNAN, District Judge

## I.   INTRODUCTION

Presently before the court is the Motion to Transfer
(D.I. 9) of Defendant Xilinx, Inc. ("Xilinx") pursuant to 29
U.S.C. § 1404(a).  Xilinx asks the Court to transfer the present
case to the United States District Court for the Northern
District of California.  (D.I. 10).[1]  Judge Eugene Lynch of that
district already has before him two lawsuits between the parties,
one filed by Xilinx and the other filed by Altera Corporation
("Altera").  Xilinx claims that the convenience of the parties
and interests of justice direct that the present lawsuit should
also be before the same judge.  (D.I. 10 at 4-6).  Altera
disputes the transfer, claiming that these same factors mandate
that the lawsuit remain in this district.

The Court agrees with Xilinx that the convenience of
the parties and interests of justice are better served by the
transfer of the case to the Northern District of California, and
will grant Xilinx's Motion to Transfer to that district.

## II.   BACKGROUND

Altera is a California corporation with its principal
place of business in San Jose, California, and was founded in
1983.  Xilinx is a Delaware Corporation with its principal place
of business in San Jose, California, and was founded in 1984.

---

1.  Originally, Xilinx wanted the cases transferred to Judge
Aguilar in the San Jose Division of the Northern District of
California, but they have since been transferred to Judge Eugene
Lynch in San Francisco.

1

Both companies manufacture integrated circuits known as "programmable logic devices," which a customer can configure through software programs to perform a variety of logic functions. Many of the devices can be configured to change the logic functions originally programmed into the chip. Until 1992, Altera made Erasable Programmable Logic Devices ("EPLDs") based on Erasable Programmable Read Only Memory ("EPROM"), while Xilinx made Field Programmable Gate Arrays ("FPGAs") based on Static Random Access Memory ("SRAM").

In the fall of 1992, Altera developed the "FLEX 8000" family, a line of products using FPGA based on SRAM, the device and memory systems heretofore used by Xilinx. Xilinx notified Altera that the new line infringed its patents. In turn, Altera notified Xilinx that Xilinx products infringed Altera's patents, although Altera had never accused Xilinx of patent infringement when these products had issued and been patented.

Xilinx sued Altera for patent infringement in the district court in San Jose, California, and later that day, Altera sued Xilinx in the same court against Xilinx. The district court joined the cases for discovery purposes, but decided that the trials would proceed separately, and the Xilinx's lawsuit would be tried first.

On April 20, 1995, Altera brought suit in this Court, claiming that Xilinx's "next generation" products infringed its patents. On May 30, 1995, Xilinx counterclaimed, claiming that Altera products infringed Xilinx's patents.

2

## III.  DISCUSSION

Section 1404(a) vests district courts with broad discretion in deciding whether to transfer a case to another district.  It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought."  28 U.S.C. § 1404(a).  While a plaintiff's choice of a proper forum is a paramount consideration in determining a transfer request, where the convenience of the parties or the interests of justice is strongly in favor of the defendant, the plaintiff's choice will not prevail.  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971) (citations omitted).

After weighing the assertions and arguments of both parties, the Court concludes that the interests of justice and convenience of the parties outweigh the plaintiff's choice of forum.  As a threshold matter, there is no dispute that the action could have been brought in the Northern District of California, since two other lawsuits involving the same parties have been brought there.

The balance of the convenience of the parties tilts toward California, because the headquarters of both parties are located in Northern California, as is their principle places of business.  Moreover, most of the documents and witnesses relevant to the litigation are located in California.

3

Moreover, judicial economy is better served by transferring this case to the Northern District of California. The district court in California is familiar with the complex technologies, product structures and prior art involved as well as at least one of the patents.[2] While the Court is mindful of Altera's concern that its case may not be heard in Northern California until 1997 because of the civil per-judge caseload, the Court believes that the Northern District of California is fully capable of efficiently handling this patent case.

## IV.    CONCLUSION

For the reasons discussed, the Court will grant Xilinx' Motion to Transfer to the Northern District of California.

An appropriate Order will follow.

---

2.    Altera contends that only one patent overlaps, and that is the patent at issue in Xilinx's counterclaim.  (See D.I.27 at 29 & n.21.)

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ALTERA CORPORATION,                    :
                                       :
          Plaintiff and                :
          Counterdefendant,            :
                                       :
     v.                                :    Civil Action No. 95-242-JJF
                                       :
XILINX, INC.,                          :
                                       :
          Defendant and               :
          Counterclaimant.             :

### O R D E R

     At Wilmington this 2  ᵈⁿ day of March, 1996, for the
reasons set forth in the Memorandum Opinion issued this date,

     IT IS HEREBY ORDERED that Xilinx' Motion to Transfer to
the Northern District of California (D.I. 9) is GRANTED.


                                   UNITED STATES DISTRICT JUDGE

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CONOPCO, INC. d/b/a UNIPATH          :
DIAGNOSTICS COMPANY,                 :
                                     :
       Plaintiff,                    :
                                     :
       v.                            :     Civil Action No. 01-308-JJF
                                     :
PFIZER INC., and PRINCETON           :
BIOMEDITECH CORPORATION,             :
                                     :
       Defendants.                   :

### MEMORANDUM ORDER

Presently before me is a Joint Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a) filed by Pfizer Inc. ("Pfizer") and Princeton Biomeditech Corporation ("PBM") (collectively "Defendants"). (D.I.20). For the reasons discussed, I will grant Defendants' Motion and transfer the instant action to the United States District Court for the District of New Jersey. (D.I.20).

### I.   BACKGROUND

Prior to this litigation, Unipath Diagnostics Corporation ("Unipath") filed suit against PBM and Warner-Lambert Company (now Pfizer), separately, in the United States District Court for the District of New Jersey alleging infringement of U.S. Patent Nos. 5,622,871, 5,602,040, and 5,656,503 (collectively "the parent patents"). (D.I.21 at 6). Both cases were assigned to the Honorable Katharine S. Hayden. (D.I.21 at 6). In each case, Judge Hayden granted summary judgment of noninfringement. (D.I.22 Exhibits A and B). Presently, the decisions are on appeal before

the United States Court of Appeals for the Federal Circuit.
(D.I.22 Exhibits J and L).

On May 9, 2001, Unipath filed the instant action against Defendants alleging infringement of U.S. Patent No. 6,228,660 ("the '660 patent"). (D.I.1). Defendants subsequently filed a Joint Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a). (D.I.20).

## II. DISCUSSION

Transfer of a civil action is governed by 28 U.S.C. § 1404(a) which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal citations omitted). Because it is undisputed that Unipath could have brought the instant action in the District of New Jersey, I will next consider the relevant factors to determine if a transfer is warranted.[1]

The United States Court of Appeals for the Third Circuit has instructed that when reviewing a motion to transfer under 28 U.S.C.

---

[1]Defendants illustrate why the instant action could have been brought in the United States District Court for the District of New Jersey (D.I.21 at 9-10) and Unipath does not contest the assertion in their reply (D.I.39).

2

§ 1404(a) district courts must consider, among other things, private[2] and public[3] interests.  See Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995).  When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors.  Id. at 883.  The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.  See Continental Cas. Co. v. American Home Assurance Co., 61 F.Supp. 2d 128, 131 (D.Del. 1999).

---

[2]The private interests are:

(1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995).

[3]The public interests are:

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id.

After an examination of the relevant private and public interests, I conclude that the factors are in equipoise.[4]  However, it is obvious that the interests of justice mandate that this case be transferred to the District of New Jersey because where related lawsuits exist, "it is in the interest of justice to permit suits involving the same parties and issues to proceed before one court." Brunswick Corp. v. Precor Inc., 2000 WL 1876477 *3 (D.Del. December 12, 2000) citing Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F.Supp.2d 518 (D.N.J. 2000).  Furthermore, I have previously held that it is inefficient and a waste of judicial resources to require multiple courts to construe and render Markman rulings on related patents.  See Nilssen v. Osram Sylvania, Inc., No.00-695-JJF, Memorandum Opinion (D.Del. May 1, 2001).

The actions pending in the District of New Jersey[5] involve the same Plaintiff, Defendants, accused products, and the parent patents of the '660 patent.[6]  (D.I.21 at 2).  Judge Hayden, who

---

[4]Because the public and private interests are in equipoise, a lengthy discussion is not useful in elucidating my decision to transfer this action.

[5]I am not persuaded by Unipath's argument that there is no action pending in the District of New Jersey.  (D.I.39 at 16).  While it is true that the district court may not adjudicate the aspects of the case on appeal before the Federal Circuit, the case is not closed and it will be remanded if Unipath is successful on appeal.  See L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1531 (Fed. Cir. 1995).

[6]The parties agree that the '660 patent is a derivative of the patents-in-suit in the District of New Jersey, and that the accused products are largely the same.  (D.I.39 at 8, 24; D.I.21).

4

would be assigned the instant action under New Jersey Local Rule of Civil Procedure 40.1, is uniquely familiar with the technology, the parent patents, and the accused products. Judge Hayden's previous rulings on the parent patents, enable her to confront any new issues that might arise under the derivative '660 patent without any duplication of effort.

Therefore, I conclude that a transfer to the District of New Jersey will prevent the potential for inconsistent rulings and is the best use of limited judicial resources. Further, I am persuaded that to allow this action to remain in Delaware would validate Plaintiff's apparent forum shopping to avoid unfavorable rulings in the District of New Jersey.

NOW THEREFORE, IT IS HEREBY ORDERED this $15$ day of November that:

(1) Defendants' Joint Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a)(D.I.20) is GRANTED.

(2) This action is transferred to The United States District Court for the District of New Jersey.

UNITED STATES DISTRICT JUDGE

5

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED

INVITROGEN CORPORATION        :
                              :        APR 12  1 48 PM '01
      Plaintiff,              :
                              :        CLERK... ...URT ...
                              :        DISTRICT OF DELAWARE
      v.                      :    Civil Action No. 00-620-JJF
                              :
STRATAGENE HOLDING            :
CORPORATION, et al.,          :
                              :
      Defendants.             :

## MEMORANDUM ORDER

Presently before the Court is Defendants' Motion to Transfer
Pursuant to 28 U.S.C. § 1404(a) (D.I. 10).  For the reasons
stated below, the Court will grant Defendants' motion.

## BACKGROUND

Plaintiff Invitrogen Corporation ("Invitrogen") is a
corporation organized and existing under the laws of the State of
Delaware, with its principal place of business in Rockville,
Maryland.  (D.I. 1, ¶ 1).  Defendant Stratagene Holding
Corporation is a corporation organized and existing under the
laws of the State of Delaware, with its principal place of
business located in La Jolla, California.  (D.I. 1, ¶ 2).
Defendant Stratagene is a corporation organized and existing
under the laws of the State of California, with its principal
place of business located in La Jolla, California.  (D.I. 1, ¶
3).  Defendant BioCrest Manufacturing, L.P. is a partnership
organized and existing under the laws of the State of Delaware,
with its principal place of business located in Cedar Creek,

Texas.  (D.I. 1, ¶ 4).

On June 29, 2000, Plaintiff filed suit against Defendants in the District of Delaware alleging patent infringement. Defendants move pursuant to 28 U.S.C. § 1404(a) to transfer the case to the District of Maryland (Southern Division).

## DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a). Because it is undisputed that Plaintiff could have brought the instant action in the District of Maryland, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors.  These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. Memminger v. InfoCure Corp., C.A. No. 00-707-JJF, slip op. at 4 (D. Del. Nov. 14, 2000)(citing Jumara v. State Farm Ins. Co., 55 F.3d 873,

879 (3d Cir. 1995)).[1] These factors also include several public interests:

> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id. (citing Jumara, 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. Jumara, 55 F.3d at 883. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See Continental Cas. Co. v. American Home Assurance Co., 61 F.Supp. 2d 128, 131 (D. Del. 1999). Below, the Court will analyze the factors relevant to the instant motion.

A. **Private Factors**

The Court concludes that a balancing of the relevant private factors weighs in favor of transfer in this case. Here, the Court finds the convenience of the parties and the convenience of

---

[1] Jumara also listed the following private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other Jumara factors. Memminger, slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not consider them separately. Id.

the witnesses to be the most pertinent of the private factors.

Although Invitrogen is organized as a corporation under Delaware law, Invitrogen maintains its principal place of business in the District of Maryland.  Additionally, neither of the parties, their witnesses or any of the potentially relevant documents and records are located in Delaware.

Invitrogen contends that its choice of forum is paramount. At the outset, the Court notes that the Plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed.  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara, 55 F.3d at 879-80.  In this case, however, Plaintiff's preference for Delaware is not given as much deference because most, if not all, of the events at issue occurred outside of Delaware.  "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred."  Continental, 61 F.Supp. 2d at 131.  Thus, because the parties, witnesses and relevant documents and records are located outside of Delaware, the Court concludes that a balancing of the private factors weighs in favor of transfer to the District of Maryland (Southern Division).

B.  **Public Factors**

The Court concludes that a balancing of the relevant public factors also weighs in favor of transfer in this case.  Here, the Court finds the practical considerations to be the most pertinent

of the public factors.

The Court concludes that transferring this case to the District of Maryland will promote judicial economy and make litigation less expensive and less burdensome for the parties and witnesses.  In fact, Invitrogen has filed three prior lawsuits that are pending in the District of Maryland regarding closely-related patents and is currently involved in an action in that District regarding the same patent at issue in this case. Consequently, that Court has acquired considerable expertise in the complex subject matter of this action and will need to resolve the same or similar issues in these cases.

Further, the Court concludes that there is considerably more local interest in resolving this matter in Maryland, where Invitrogen operates its business.  Conversely, the Court finds that Delaware does not have a strong interest in resolving this suit as none of the events giving rise to this action occurred here and none of the parties have their principal places of business in Delaware.

Thus, upon a balancing of the private and public factors, the Court concludes that this case should be transferred to the District of Maryland (Southern Division).

NOW THEREFORE, for the reasons discussed, IT IS HEREBY ORDERED this ⏐⏐ day of April 2001 that:

1.    Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (D.I. 10) is **GRANTED**.

2.    This matter shall be transferred to the District of Maryland (Southern Division).

UNITED STATES DISTRICT JUDGE

EXHIBIT D

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                     - - -

4   NETWORK APPLIANCE,              :   CIVIL ACTION
                                    :
5               Plaintiff           :
                                    :
6               v.                  :
                                    :
7                                   :
    BLUEARC CORPORATION,            :
8                                   :
                Defendant           :   NO. 03-714 (KAJ)
9                     - - -

10
                              Wilmington, Delaware
11                            Wednesday, November 19, 2003
                              4:45 o'clock, p.m.
12
                                    - - -
13

14  BEFORE:  HONORABLE KENT A. JORDAN, U.S.D.C.J.

                                    - - -
15

16  APPEARANCES:

17              POTTER, ANDERSON & CORROON LLP
                BY:  PHILIP A. ROVNER, ESQ.

18                       -and-

19              HOWREY SIMON LLP
                BY:  SCOTT WALES, ESQ.
20                   (San Francisco, California)

21                   Counsel for Plaintiff

22

23

24                                  Valerie J. Gunning
                                    Official Court Reporter
25

```
 1    APPEARANCES (Continued):

 2            MORRIS, NICHOLS, ARSHT & TUNNELL
              BY:  RODER D. SMITH, ESQ.
 3
                      -and-
 4
              KEKER & VAN NEST LLP
 5            BY:  BRIAN L. FERRALL, ESQ.
                  (San Francisco, California)
 6
                  Counsel for Defendant
 7
                      - - -
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                P R O C E E D I N G S

2    ).

3                (Proceedings commenced in the courtroom beginning

4    at 4:45 p.m.)

5

6                THE COURT:  All right.  Let's talk about Section

7    1404.  Come on forward, gentlemen.

8                THE COURT:  Okay.  Mr. Smith, do you want to

9    introduce who you have with you?

10               MR. SMITH:  Yes.  Rodger Smith of Morris Nichols,

11   on behalf of the defendant, Blue Arc Corporation.

12               With me today is Brian Ferrall of the Keker

13   & Van Nest firm in San Francisco, who has been admitted

14   pro hac vice and will be presenting the argument today.

15               THE COURT:  All right.  Good afternoon.

16               MR. FERRALL:  Good afternoon, your Honor.

17               THE COURT:  For the plaintiffs?

18               MR. ROVNER:  Good afternoon, your Honor.  Philip

19   Rovner from Potter, Anderson & Corroon for the plaintiff,

20   Network Appliance, and with me is Scott Wales from the firm

21   of Howrey Simon in San Francisco.

22               And I will be arguing on behalf of the plaintiff

23   opposing the motion to transfer.

24               THE COURT:  All right.  All right.  Mr. Smith or

25   Mr. Ferrall, whoever is going to be addressing this on behalf

4

1 of the defendant, it's your motion.  Come on forward.

2    MR. FERRALL:  Thank you, your Honor, for giving

3 us the opportunity to present this today.

4    My -- I just want to reiterate a couple of points

5 and elaborate on something in the papers.

6    This is not your typical transfer motion where

7 there are facts on one side and facts on the other side and

8 the parties are talking about which balances out one way or

9 the other.  This is one where every fact, to the extent that

10 they are relevant, weighs in favor of a transfer to

11 California but for the bare facts that establishes personal

12 jurisdiction:  Namely, that my client is incorporated in the

13 State of Delaware.

14    And so we view this motion as one in which

15 denying a transfer in this case is essentially, I believe,

16 taking the position that so long as there's personal

17 jurisdiction, there is no convenience factor that's going to

18 justify a transfer.  And that's not what the law is.

19    The statute, Section 1404, calls for a practical

20 and pragmatic assessment of the facts to determine for the

21 convenience of parties and the witnesses and in the interests

22 of justice is a transfer appropriate.  And in light of that,

23 I think this case presents essentially a question of is

24 Delaware or California the more appropriate forum, given that

25 the parties are within miles of each other, in Silicon

1   Valley, headquartered there.

2           The patents were developed in Silicon Valley,

3   under -- pursuant to a -- a company that is located in

4   Silicon Valley, now in bankruptcy in the Northern District of

5   California.  The inventors are all in the Northern District

6   of California.

7           The defendant, Bluearc, does not sell any

8   products in Delaware, does not have an office in Delaware,

9   does not do business in Delaware.  Again, only its state of

10  incorporation is here.  And the plaintiff, Network Appliance,

11  has no offices, headquarters or facilities here, and has a

12  very modest amount of its sales here.

13          I won't go through all of those facts in our

14  motion, but I do want to touch upon two points that I think

15  are very critical and would make a trial in this case in

16  Delaware manifestly unfair to Bluearc.  That is, the first

17  point is the third-party witness issue, which we talk about

18  in the papers a little bit.

19          As we've said, the inventions were not developed

20  by Network Appliance.  They were developed by a company

21  called All Specs.  That company is no longer in existence,

22  but all of the inventors are in Northern California.  There

23  are eight inventors in total on these patents, two of whom I

24  understand are currently Network Appliance employees, and one

25  is deceased.  That leaves five unbiased, if you will,

1    uninterested third-party inventors.

2        And what we fear will be the case is, obviously,

3    these third-party inventors are not subject to the subpoena

4    power here, and we've emphasized the importance of that.  I

5    think the case law emphasizes the importance of that.

6        But here we have a case where not only is the

7    trial threatened with sort of a uneven balance of evidence,

8    but it's really to the detriment of Bluearc because the

9    inventors who we can be sure are going to be here are their

10   employees.  So they sort of have control over they want to

11   present their inventors.  We have no control over any of

12   them.  And so we're left with, at best, deposition testimony

13   of these other third-party inventors.

14       Now, it's not just the inventors, though, that

15   could disrupt the fair presentation of the case at trial.

16   All Specs, the former employees of All Specs, are likely --

17   the evidence regarding issues such as on-sale bar, commercial

18   success or failure of the products embodies these patents, is

19   likely to come from All Specs.  It has to come from All Specs

20   and it's likely to be found in the Northern District of

21   California, where those employees probably still are.

22       Now, I can't tell you right now the names of

23   those employees.  The case has just started and we just

24   started discovery.  I don't know who at All Specs is around.

25   We can be sure they're much more likely to be in the Northern

1   District of California than Delaware.

2           And one other thing that I want to point out with

3   respect to third-party evidence.  The patents, I won't get

4   into the details of them, but they relate to file sharing

5   and, in other words, ways in which computers read and write

6   data to storage and control the reading and writing of data

7   to storage.

8           And if you -- if you look at the very beginning

9   of every patent, it refers to these patents are essentially

10  follow-ons to development of something called NFS, Network

11  File System, developed by Sun Micro Systems, which also is

12  located in the Northern District of California.

13          So what we have is patents that are follow-ons to

14  Sun Micro System, who was the pioneer in this area in the

15  1980's.  And, again, I can't give you names and documents,

16  but it's highly likely that prior art and background of this

17  technology is going to be located in the Northern District of

18  California and not here.

19          So that's factor number one that I think really

20  is decisive given the way all of the other facts play out in

21  point two, the Northern District.

22          The other factor I want to talk about is the

23  relative financial strength of the parties, which we discuss

24  in the briefs, but really troubles my client.

25          Unlike Network Appliance, frankly, your Honor, my

8

1    client is not one for whom the expenses of patent litigation

2    come easy.   It is a company which is not profitable yet, has

3    not been profitable.   Its assets are a very small fraction of

4    Network Appliance's, and those assets, to the extent they

5    exist, have to tie it over to profitability.

6              THE COURT:   Okay.   I don't want to cut you off

7    unnecessarily, but I think you made that argument effectively

8    in your papers.

9              MR. FERRALL:   Fair enough, your Honor.   With

10   that, I'm happy to respond to questions.   I believe we have

11   put the facts in the papers and I just wanted to reiterate

12   those two points.

13             THE COURT:   Okay.   Thanks.

14             I will ask Mr. Rovner to come forward.

15             Now, let's get to the heart of it.   I've heard

16   the assertions made by Mr. Ferrall, Mr. Rovner, and you've

17   certainly had a chance to read their papers.

18             Other than the fact that they're incorporated

19   here, which is not a minor point, and that you folks picked

20   this location, which also is not a minor point, other than

21   those two things, tell me what weighs in favor of keeping

22   this case here.   And you can trust I've read your papers, but

23   pick your best stuff and put it in front of me.

24             MR. ROVNER:   Well, my best stuff, our best stuff

25   is really what the standards are here.

1          I read -- we all read the papers and everyone

2     knows what the contacts are in Delaware and what the contacts

3     are in California.  But what the defendant doesn't realize or

4     does not recognize or does not want to come forward with

5     today is what the test is, what is the burden.  And I've

6     looked at the cases.

7          They cite the IKOS decision.  I was in that case,

8     as they point out.  I know what happens there I could cite

9     many cases with similar facts and go the other way and say

10    transfer is inappropriate.

11         I was trying to think, what would be the best

12    way to present the argument to the Court, and the best thing

13    that I found was a very, what I thought was a very good sort

14    of a breakdown of the law that Judge -- Chief Judge Robinson

15    gave in the Cypress Semiconductor case.  We both cite that

16    case.

17         It's either a benefit or a curse that we have a

18    lot of law in Delaware on motions to transfer and they all

19    come down to basically the fact at issue in this case,

20    because we can both cite cases.

21         But let me just read what Judge Robinson wrote in

22    Cypress Semiconductor, where she did find that transfer was

23    inappropriate.  She wrote, "The burden of establishing the

24    need to transfer rests with the movant, movant, to establish

25    that the balance of convenience to the parties and witnesses

1    strongly favors the defendants.  Unless the balance is

2    strongly in favor of a transfer, the plaintiff's choice of

3    forum should prevail."

4              I think we all agree that that is the standard

5    and it has to strongly tip to California because plaintiff

6    brought the case in Delaware.

7              We are a Delaware -- Network Appliance is a

8    Delaware corporation.  Bluearc is a Delaware corporation, as

9    they acknowledge.  But what they seem to equate is personal

10   jurisdiction with the transfer standards.  I can get personal

11   jurisdiction over many companies in Delaware without using

12   their standard as a Delaware corporation if they had minimum

13   contacts.

14             Here, this defendant purposely availed itself of

15   the Delaware laws ands the Court has consistently recognized

16   that that is a key factor, and Judge McKelvie in the ADE case

17   said that was not just a minor thing.  That was something

18   that strongly tipped in the defendant's -- in the party's

19   favor who brought the case in Delaware.

20             And I find it somewhat objectionable that they

21   would try to disregard that.  It's not our burden to show

22   that we should keep this case in Delaware.  We have a right

23   to be here and they should have expected to be here.  The

24   burden is on them to show that it's not to be -- it should be

25   disrupted.

1          And here's what --

2          THE COURT:  Wait, wait, Mr. Rovner.  You can

3   fully expect that I will hold them to the burden.  What I'm

4   trying to find out is, and I will repeat:  Other than the

5   state of incorporation, which is not a minor point, and your

6   choice of this forum, which is not a minor point, I'm asking

7   you, very specifically, are there any other factors that you

8   believe weigh in favor of keeping this litigation in Delaware

9   as opposed to sending it to California?

10         MR. ROVNER:  Well, I wanted to talk about what

11  the burdens were and what our obligation was, but, obviously,

12  in the public factors, we believe that this Court is the best

13  Court to resolve this type of patent infringement matter.

14         This Court is well recognized across the U.S. as

15  being a Court that patent plaintiffs look to.  It's not, as

16  Judge McKelvie said in the ADE case, we had a few choices

17  here.  We could have sued in California.  We could have sued

18  in Delaware to guarantee that we got jurisdiction and we

19  picked Delaware.

20         Are there better contacts in Delaware?  I can't

21  say that.  There are the inventors.  We really looked to

22  issues of nonparty witnesses.  We don't really acknowledge

23  where the parties are, what is more convenient.

24         They talked about financial issues.  I don't

25  think that's relevant, and I will tell you why in a moment.

1    But, sure, there are inventors in California and there are

2    none in Delaware, but how significant is that?

3              As Mr. Ferrall pointed out, there are eight

4    inventors.  One is deceased.  Three, I believe, worked with

5    Network Appliance.  We're down to four.  One, Mr. Pitts, has

6    signed a declaration saying that he sees no reason why he

7    would not come to Delaware.

8              So we're left with three inventors who Bluearc

9    says are in California at this time.  I don't see why that

10   necessarily means that they won't come to Delaware.

11             Judge McKelvie, in the ADE case, said let's not

12   just look at the negative.  Why should we assume that they

13   won't come voluntarily to Delaware?  He said let's expect

14   that they will until proven otherwise.

15             Today we've got three inventors who purportedly

16   live in California.  Who's to say that when we go to trial in

17   18 months or so, that they're going to be still in

18   California?

19             We can take the deposition, but, Mr. Ferrall

20   said, and this is a quote from the -- from his argument a few

21   minutes ago, "At best, we are left with deposition

22   testimony."

23             Well, who says at best?  That's Mr. Ferrall

24   saying at best.  Why does he assume that the three inventors

25   won't come to Delaware?  And what I am concerned about is

1    that he's just assuming -- he has never contacted them.

2            Nobody has said they won't come, so I don't

3    believe that the inventor issue tips in favor of California.

4            Now, we're talking --

5            THE COURT:  Do you disagree that these people are

6    all located in the Northern District of California?

7            MR. ROVNER:  They are today.  The three of the

8    seven that are alive, as I said, three are with Network

9    Appliance.  One, Mr. Pitts, has said that he would come to

10   Delaware.  There's no reason why he wouldn't.

11           So there are three that we don't know about,

12   and it's not our burden to tell you that they will or

13   won't.  It's their burden and they have not even approached

14   it.

15           THE COURT:  Okay.  You don't have to remind me of

16   the burdens.  I know where the burdens lie.

17           MR. ROVNER:  Okay.  I thought five or six

18   times --

19           THE COURT:  Just state the facts.

20           MR. ROVNER:  And the other issue is, and they

21   point out, we're talking about witnesses and we're talking

22   about their financial condition, and they don't want to come

23   to Delaware.  Your Honor said you're familiar with that

24   because it was well put in their papers.

25           And let me just raise something that I don't

1    think -- I missed the first time I read their papers.  They

2    are talking about themselves as a regional California

3    company.

4             Well, in their papers they say they have 82

5    employees in California.  They have 85 in the U.K..

6    And of the employees that are in the U.K., they are the

7    inventors and those that are responsible for the infringing

8    product.

9             So there's no reason why it would be any easier

10   to proceed in California when the -- at least one of the

11   infringing products and the only one that we have identified,

12   the silicon server architecture, is in the U.K.  And they

13   even admit that of the, I think there are eight inventors on

14   that, seven of them are in the U.K., and that's a patent

15   application that we are aware of.

16            So the product at issue is based in the U.K.

17            So they are talking about themselves as a

18   regional California company.  As I said, more employees in

19   U.K. than in California.

20            And the other thing is, I'm not taking Mr.

21   Ferrall to task, but he does say that the financial condition

22   is one that your Honor should consider.  But in the

23   declaration that they provided to you, this is from their

24   Chief Technology Officer, Executive Vice President, founder,

25   Mr. Barrall.  When he's coming forward to this Court and

1   saying that Bluearc is in such a financial situation, it

2   would be a hardship to litigate in Delaware, one, I don't

3   understand why litigating in Delaware would present more

4   financial hardships really than in California.  Maybe during

5   the trial, hotel accommodations, things like that.  But the

6   Courts have basically said that's not necessarily a factor

7   that would dictate transfer.

8            But what he says is, and this is in Paragraph 3

9   of his reply declaration:  Because Bluearc is not a public

10  company, its financial performance is confidential.  Certain

11  information is public, however.

12           Well, he's coming to this Court trying to

13  convince your Honor that the financial situation is such that

14  he shouldn't be in Delaware, but he's telling you he won't

15  give you everything because it's confidential.  He could have

16  filed it under seal.  He could have done everything to let

17  you have the information.  Instead, they've given you the

18  information that they want to give you.  And I really don't

19  think that's a separate burden, but they have not come close

20  to attempting to reach it by hiding under confidentiality

21  issues.

22           THE COURT:  All right.

23           MR. ROVNER:  The issue is should they expect to

24  come to Delaware and should they expect to stay.  I think the

25  answer is yes.

1          THE COURT:  Thanks, Mr. Rovner.

2          All right.  You know what?  There is a lot of

3 case law on this in this district and I'm not going to add to

4 it, and I will give you a ruling right now and the reasons

5 for it.

6          And I'm granting the motion to transfer, and I

7 don't do it lightly.  There's a reason why there is a lot of

8 case law in this district that says if you incorporate here,

9 you can expect to be sued here.  And it does not behooves you

10 to come here and be incorporated and then say, Oh, we're

11 surprised.  Who would have thought we would have ever gotten

12 sued here?

13          I take that corporate status seriously and I take

14 seriously the plaintiff's choice of forum.  However, there

15 are factors in this case that I think mean that the defendant

16 has succeeded in showing it is the public and private

17 interest that's the responsibility of this Court to weigh and

18 it's not a sham, it's not a pretend thing that we do this

19 weighing.

20          State of incorporation is an important factor,

21 but it's not dispositive.  If it were dispositive, we

22 wouldn't go through the business of asking about these other

23 matters and trying to put them onto the scales and figure out

24 what's going on.

25          There has been no dispute that these companies

1    are based, both, in the Northern District of California.

2    There has been no dispute that the inventor testimony, which

3    appears to be of particular importance in this, as it is in

4    many, many cases, is going to involve witnesses who are, to

5    the extent they're unaffiliated with either party, are all

6    located in the same place:  The Northern District of

7    California.

8              It appears, at least a persuasive argument is

9    made to the Court that the bulk of third-party discovery will

10   take place at or near, to the extent it's in the United

11   States, the Northern District of California.

12             There is some question in my mind and I mention

13   it not because it's dispositive, but because it's a factor in

14   my decision, that the company from which this information,

15   technology, was acquired, is a company which is apparently,

16   to the extent it's still functioning, based in the Northern

17   District of California, where a court proceeding is pending

18   in the Bankruptcy Court, and that may or may not have some

19   effect, but to the extent it has any effect, it weighs

20   against keeping the case here.

21             When you put those things together, I think this

22   is the rare case and it is a rare case where a defendant

23   who's a Delaware corporation can come in here and say, Look,

24   pretty much everything points at the Northern District of

25   California.  It's not as if we had one in Massachusetts and

1  one in the Northern District of California, like there was in

2  the ADE versus KLA case.  It's not even as if you had one in

3  the Northern District of California and one in the Southern

4  or Central District of California.

5        If I were to say I'm keeping it here because they

6  have not made their showing in this case, I think it would be

7  tantamount to saying, you know what?  If you are incorporated

8  here, you are never getting transferred out, and I'm not

9  prepared to go that far.

10        So I think they've made their showing.  I will

11  emphasize, I think it's the rare case.  I hope corporations

12  get that message, not because I want them to stay away.  I

13  think Delaware is a wonderful place to have your corporate

14  home.  But under the peculiar circumstances of this case, I

15  think the defendant has succeeded in showing the balance of

16  private interests tips strongly in favor of transferring the

17  case.

18        Now, to the extent I have considered, and I have,

19  the public interest, I would say that the Northern District

20  of California is a superb Court which will be able to, in my

21  estimation, provide a swift and appropriate resolution to

22  your dispute, and so I'm sending you on your way,

23  regretfully.  I'm happy to see litigant here.

24        I appreciate Mr. Rovner's comments about the

25  skill this District brings to this kind of litigatoin.  I

1    hope that's a view that's shared by others.  This is not

2    intended to signal anything about the character or merit of

3    your case or the Court's interest in helping people resolve

4    disputes like this.  It's factually rooted.

5              So that's my ruling.  I will give you a written

6    order on it, but you can consider it effective as of today.

7              All right.  Is there any other matter that the

8    parties want to raise with the Court before we recess?

9              MR. SMITH:  No, your Honor.

10             MR. FERRALL:  No, your Honor.

11             THE COURT:  All right.  Then we're in recess.

12             (Court recessed at 5:09 p.m.)

13                    - - -

14

15

16

17

18

19

20

21

22

23

24

25

.

## CERTIFICATE OF SERVICE

I, Karen Jacobs Louden, hereby certify that on June 1, 2006 I electronically filed the Defendants' Opening Brief in Support of Their Motion to Transfer with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Wade
Richards, Layton & Finger

and that I also caused copies to be served upon the following in the manner indicated:

### BY HAND

William J. Wade
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19801

### BY FEDERAL EXPRESS

David P. Enzminger
O'Melveny & Myers LLP
610 Newport Center Drive
Newport Beach, CA  92660

*/s/ Karen Jacobs Louden*
Karen Jacobs Louden (#2881)
klouden@mnat.com