IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IGT, a Nevada corporation,<br><br>               Plaintiff,<br><br>    v.<br><br>BALLY GAMING INTERNATIONAL, INC.,<br>BALLY TECHNOLOGIES, INC., and<br>BALLY GAMING, INC.,<br><br>               Defendant. | CIVIL ACTION<br><br>No. 06-282 (KAJ) |

## IGT'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

William J. Wade (#704)
wade@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Plaintiff IGT*

OF COUNSEL

David P. Enzminger
Brett J. Williamson
Charles A. Thomasian
O'MELVENY & MYERS L.L.P.
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000

June 22, 2006

TABLE OF CONTENTS

Page

I.      SUMMARY OF ARGUMENT ...................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...........................................................2

III.    STATEMENT OF FACTS ........................................................................................3

IV.     ARGUMENT .......................................................................................................5

        A.    The Private Interests Weigh Against Transfer.......................................................6

              1.    IGT's Initial Choice of Venue Is of Paramount Consideration and
                    Should Not Be Disturbed Because It Is Supported by Legitimate
                    and Rational Reasons................................................................................6

                    a.    IGT Has Meaningful Ties to Delaware............................................7

                    b.    Bally Regularly Conducts Business in Delaware ............................8

              2.    The Claims in this Case Arose in Delaware and Elsewhere........................9

              3.    Convenience of the Parties Does Not Warrant Transfer...........................10

              4.    The Convenience of Witnesses Does Not Warrant Transfer.....................11

              5.    The Location of Documents Does Not Warrant Transfer..........................14

              6.    Litigating in Delaware Will Not Prejudice Defendants............................15

        B.    The Public Interests Weigh Against Transfer.......................................................15

              1.    Transfer Would Not Serve Judicial Economy Since this Action and
                    the Nevada Action Are Different...............................................................16

                    a.    The Present Delaware Action and the Nevada Action
                          Involve Starkly *Different* Infringing Products and
                          Technology .................................................................................17

                    b.    The Patents in the Delaware Action Are Different and
                          Unrelated to the Patents in the Nevada Action ..............................20

                    c.    Bally's Contention that There Is a "Risk of Inconsistent
                          Claim Constructions" Is Nonsense ................................................21

                    d.    The Existence of Different Inventive Entities Between the
                          Delaware and Nevada Actions Weighs Against Transfer..............23

              2.    The Relative Congestion of the Dockets Weighs Against Transfer ..........23

              3.    Patent Cases Are of National Interest—Any Local Interest by the
                    State of Nevada Has No Bearing in a Motion to Transfer.........................24

V.      CONCLUSION...................................................................................................26

i

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Abbott Labs. v. Dey, LP*,
    287 F.3d 1097 (Fed. Cir. 2002).......................................................................... 17, 22

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998).................................................................. passim

*Agere Sys., Inc. v. Broadcom Corp.*,
    No. 03-3138, 2003 WL 21700458, at *1 (E.D. Pa. July 23, 2003)................................... 16, 19

*Argos v. Orthotec LLC*,
    No. 03-0757-SLR, 2004 WL 60691 (D. Del. Jan. 8, 2004)..................................... 15

*Bally Gaming, Inc. v. International Game Technology*,
    No. 1:99-cv-3416 (D.N.J. July 20, 1999) ............................................................. 15

*C.R Bard, Inc. v. Guidant Corp.*,
    997 F. Supp. 556 (D. Del. 1998)........................................................... 5, 11, 23

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
    821 F. Supp. 962 (D. Del. 1993)............................................................ 7, 14

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
    No. 01-199 SLR, 2001 U.S. Dist. LEXIS 20803, at *9 (D. Del Nov. 28, 2001)............ passim

*Diamond Scientific Co. v. Ambico, Inc.*,
    848 F.2d 1220 (Fed. Cir. 1988)............................................................ 13

*IGT v. Alliance Gaming Corp.*,
    *et. al.*, CV-S-04-1676-RCJ-RJJ ............................................................. 4

*In re Benno*,
    768 F.2d 1340 (Fed. Cir. 1985)............................................................ 22

*In re Berg*,
    140 F.3d 1428 (Fed. Cir. 1998)............................................................ 17

*Intel Corp. v. Broadcom Corp.*,
    167 F. Supp. 2d 692 (D. Del. 2001).......................................................... 7

*Joint Stock Soc'y v. Heublein, Inc.*,
    936 F. Supp. 177 (D. Del. 1996)......................................................... passim

*Jones Pharma, Inc. v. KV Pharmaceutical Co.*,
    2004 WL 323109 (D. Del. Feb. 17, 2004) ................................................. 12

# TABLE OF AUTHORITIES
## (continued)

<u>Page(s)</u>

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)................................................................. 6

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
  424 F.3d 1161 (Fed. Cir. 2005)........................................................ 13

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970).............................................................. 7

*Sofamor Danek Holdings, Inc. v. U.S. Surgical Corp.*,
  49 U.S.P.Q.2D (BNA) 2016 (W.D. Tn. 1998).................................. 16

*Square D Co. v. Medar Inc.*,
  36 U.S.P.Q.2D (BNA) 1123 (D. Del. 1994) .................................... 16

*Stratos Lightwave, Inc. v. E20 Communications, Inc.*,
  2002 U.S. Dist. LEXIS 5653, 2002 WL 500920 ......................... 12, 25

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*,
  2005 WL 441077 (D. Del. Feb. 15, 2005) .................................... 12, 24

*Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*,
  882 F. Supp. 359 (D. Del. 1994)................................................. 10, 15

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*,
  775 F. Supp. 759 (D. Del. 1991)................................................... 7

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
  863 F. Supp. 186 (D. Del. 1993)................................................. 10

## STATUTES

28 U.S.C. § 1404(a) .......................................................................... 2

## OTHER AUTHORITIES

Moore, *"Forum Shopping in Patent Cases: Does Geographic Choice Affect
  Innovation,"* 79 N. C. L. Rev. 890 (2001) ........................................ 23

iii

## I.  **SUMMARY OF ARGUMENT**

Defendants Bally Gaming International, Inc., Bally Technologies, Inc. and Bally Gaming, Inc. (collectively, "Bally") contend that this case should be transferred to Nevada for the convenience of the parties. But by its admission, Bally regularly conducts business in the state of Delaware, has sold the accused "Bally Power Bonusing" software suite in Delaware, and has installed this system at Dover Downs Racetrack in Delaware. Bally maintains an office in Delaware, and defendant Bally Gaming International, Inc. is incorporated here. IGT, which also does substantial business in Delaware, filed this case here for the legitimate and rational purpose of obtaining an efficient trial in a court experienced in handling patent cases.

The fact that a separate action involving the same parties is pending in the District of Nevada does not justify transfer. The two cases are significantly different: The two actions have *no* patents in common, they do not involve related patents, and the technology at issue is completely different. This case involves the analysis of player data using back-end systems to determine how and when to present a bonus reward based on various player-related and/or game play-related parameters. The Nevada case, in contrast, involves patents on technology for gaming machines and player tracking units used with gaming machines. Bally attempts to link the patents in this case with the player tracking unit patents in the Nevada case by exaggerating the degree of relatedness between the two sets of patents. Whereas the patents-in-suit in this case relate to the back-end processing of player or game play-related data, the player tracking unit patents in the Nevada case relate to front-end devices that provide an interface for a player to access information and various forms of entertainment. Bally's motion to transfer attempts to confuse these two different sets of technology in hopes of convincing this Court that the parties already have the same or a very similar dispute pending in Nevada. This is not the case.

1

Bally's motion pays lip-service to other traditional considerations for a convenience transfer but none of these weighs in favor of transfer. Bally has not shown that it will suffer any special inconvenience by litigating in Delaware, where it has initiated and litigated many cases. Bally's arguments concerning the convenience of the witnesses amount to nothing given Bally's failure to identify a single third party witness available in Nevada who is not equally available in Delaware. Bally's arguments concerning company witnesses and documents are mitigated by modern technology and its status as a substantial company doing business in the national and international markets. Bally simply has not satisfied its burden of showing that the balance of convenience and the interests of justice strongly weigh in favor of transfer. Thus, its motion to transfer should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On April 28, 2006, IGT filed a patent infringement action against Bally alleging infringement of United States Patent Nos. RE 38,812 ("the '812 patent"), RE 37,885 ("the '885 patent"), 6,832,958 ("the '2,958 patent"), 6,319,125 ("the '125 patent"), 6,244,958 ("the '4,958 patent"), 6,431,983 ("the '983 patent"), 6,607,441 ("the '441 patent"), 6,565,434 ("the '434 patent"), and 6,620,046 ("the '046 patent"). Each of these patents relates to software implemented on back-end servers used to analyze player-related parameters to determine whether and when to present players with bonus rewards. This technology enables a casino to increase player retention through loyalty-building promotions and incentives.

Since IGT filed the complaint substantial activity has occurred. The parties held their Rule 26(f) conference on May 19, 2006 and filed their joint proposed case management plan and scheduling order on May 25, 2006. (D.I. 23.) On May 26, 2006, IGT served its first request for production of document and things. (D.I. 24.) On June 1, 2006, Bally filed this motion to transfer the case to the District of Nevada pursuant to 28 U.S.C. § 1404(a) (D.I. 25.) On June 13,

2

2006, this Court set a scheduling conference for July 6, 2006. (D.I. 31.) Shortly after its filing of the motion to transfer, on June 7, 2006 Bally served IGT with its discovery requests, including Bally's first set of interrogatories and first set of requests for productions of documents and things. (D.I. 30.)

## III.    STATEMENT OF FACTS

Plaintiff IGT is an international company recognized as a leader in the casino gaming industry. (Declaration of Michael Ordille In Support of IGT's Opposition to Bally's Motion to Transfer ("Ordille Decl.") at ¶ 2.) IGT has dedicated tremendous resources in time and money to the research, development and acquisition of leading edge technology for the gaming industry. *Id.* In particular, IGT designs, manufactures, distributes and operates gaming machines and computerized software and hardware control systems for tracking, administering and monitoring gaming machines and players' use of the machines. *Id.* IGT has sold and leased gaming machines and software systems in the state of Delaware, throughout the country, and around the world. (*Id.* at ¶¶ 4-5.)

Defendant Bally Gaming International, Inc. is a Delaware corporation and the parent corporation to defendant Bally Gaming, Inc. and a subsidiary of defendant Bally Technologies, Inc. (Declaration of Mark A. Lipparelli In Support of Bally's Motion to Transfer ("Lipparelli Decl."), D.I. 27, at ¶ 4.) Bally is a significant competitor of IGT in the gaming industry. Like IGT, Bally has a significant business presence within the state of Delaware, the rest of the country, and around the world. Moreover, Bally acknowledges it maintains an office in Delaware for its business operations here. (Lipparelli Decl. ¶ 2.) And Bally uses its other offices and employees to directly contact businesses in the state of Delaware for the purpose of making sales and executing lease agreements with companies in Delaware. (*Id.*) Bally has significant customers for its Bally gaming devices (*e.g.,* slot machines) at gambling facilities within

3

Delaware such as the Dover Downs Racetrack facility and the Delaware Park facility. (*See* Alliance Gaming Corp., Annual Report (Form 10-K), at 6 (Dec. 30, 2005), attached as Ex. 1 to the Declaration of Charles A. Thomasian In Support of IGT's Opposition to Bally's Motion to Transfer ("Thomasian Decl."))[1]   Bally derives a continuing revenue stream from each use of Bally gaming machines located in Delaware. (*Id.*)

This case involves nine U.S. patents owned by IGT.  This patented technology generally covers a back-end network software system for controlling and delivering bonus rewards to selected players.   Specifically, this back-end software system enables a casino to provide incentives to players as part of marketing campaigns designed to increase player retention. Bally's Power Bonusing software suite infringes these nine patents.  Furthermore, in its motion to transfer, Bally admits that it sells the Power Bonusing product within the District of Delaware. (Defendants' Opening Brief In Support of Their Motion to Transfer ("Bally's Opening Brief"), D.I. 26, at 15.)

Bally's motion to transfer relies heavily on the supposed similarity between this case and a case pending in Nevada, filed over eighteen months ago. *IGT v. Alliance Gaming Corp., et. al.,* CV-S-04-1676-RCJ-RJJ (the "Nevada Action").   The Nevada action involves six patents, *none* of which are involved in this case. (Thomasian Decl. at ¶ 13 and Exs. 12 - 17.)  Despite Bally's attempt to blur the lines, the technology, products, and patents at issue in this case are distinct from, and involve different issues than, the technology, products, and patents in the Nevada action.  The patents at issue in this case describe computer software that runs on a back-end system and analyzes player parameters to provide incentive rewards to a casino's patrons. (*E.g.,* '812, '885 and '2,958 patents (describing system for monitoring gaming devices

---

[1] Exhibits cited in this brief refer to exhibits attached to the Thomasian Decl., filed herewith.

4

interconnected over a high-speed network and configuring the devices to provide a variety of promotional bonuses); '125, '4,958, '983, and '434 patents (describing method for promoting play on a network of gaming devices); '441 patent (describing method for transferring credits between gaming devices connected by a network); '046 patent (describing method of awarding bonuses by a system of gaming devices connected by a network.)  One important distinction between the two cases that Bally ignores is that the technology in this case operates on back-end systems transparent to a player, whereas the technology in the Nevada case relates to gaming machines and player tracking units installed on the gaming machines used to interface with and provide information to a player. (*See id.*; Thomasian Decl. at ¶ 14.)

This case involves network software technology used by management personnel at a casino to determine what types of incentive rewards to provide to its customers, whereas the Nevada case primarily involves gaming machines and front-end devices used as player interfaces.

The Nevada Action has been in litigation for over eighteen (18) months with significant progress.  On the other hand, this case was filed less than two months ago.

## IV.    ARGUMENT

Bally's motion to transfer should be denied because Bally cannot satisfy its burden of showing that the balance of convenience and the interests of justice strongly weigh in favor of transfer.  Bally has not claimed or "established that it would face any special inconvenience by litigating in Delaware." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998).  Nor has it shown that "litigating in Delaware would pose a 'unique or unusual burden' on [its] operations." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199 SLR, 2001 U.S. Dist. LEXIS 20803, at *9 (D. Del Nov. 28, 2001).

IGT's selection of this forum is completely rational, appropriate, and reasonable in view

5

of the criteria set out by the Third Circuit to govern motions to transfer. To decide whether transfer is justified, the Third Circuit considers the public and private interest factors outlined in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," the Court identified potential factors it characterized as either private or public interests. *Id.* Bally has failed to demonstrate that any of the public and private factors identified in *Jumara* strongly favor transferring this action away from Delaware. Thus, IGT's initial and rational choice of forum should not be disturbed.

The private interests include but are not limited to: (1) the plaintiff's initial choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial position; (5) the convenience of the witnesses—but only to the extent that they may actually be unavailable for trial in one of the fora; and (6) the location of records and other documents—but only to the extent that these files could not be produced in the alternative forum. *Id.* Among the public interests are: (1) the ability of the Court to enforce the judgment; (2) practical considerations making the trial easy, expeditious or inexpensive; (3) the relative congestion of the two dockets in the respective fora; (4) the local interest in deciding local controversies at home; as well as (5) the public policies of the fora." *Id.* The *Jumara* factors most relevant to the transfer motion pending before this Court are discussed below.

### A.    The Private Interests Weigh Against Transfer.

#### 1.    IGT's Initial Choice of Venue Is of Paramount Consideration and Should Not Be Disturbed Because It Is Supported by Legitimate and Rational Reasons.

There is a strong legal presumption in favor of IGT's initial choice of forum in the State of Delaware. This Court has repeatedly stated that the plaintiff's initial choice of forum is a paramount consideration in any determination of a transfer request, and the court should not

6

disturb the plaintiff's choice lightly. *Joint Stock Soc'y v. Heublein, Inc.*, 936 F. Supp. 177, 185 (D. Del. 1996); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Accordingly, the movant bears the burden of proving that justice requires a substitute forum, and "a transfer is not to be liberally granted." *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001) (citing *Shutte*, 431 F.2d at 25). Even where "the factors are evenly balanced or weigh only slightly in favor of transfer," the plaintiff's initial choice of forum must prevail. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 964 (D. Del. 1993).

This Court has emphasized that "[d]eference is especially due when the plaintiff's choice of forum 'relates to its legitimate, rational concerns.'" *Joint Stock Soc'y*, 936 F. Supp. at 185 (citing *Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991)). Here, there can be no question that IGT's choice of a Delaware forum is supported by legitimate and rational concerns. Both parties do business here, the accused product was sold here and is being used here, and one of the defendants is incorporated here. Each of these factors, among others, supports IGT's choice of forum.

### a.    IGT Has Meaningful Ties to Delaware.

Although IGT is incorporated in Nevada, IGT is a global company with international business operations, including significant business contacts with the state of Delaware. (Ordille Decl. at ¶¶ 2-4.) IGT is one of four gaming vendors recognized and approved by the state of Delaware. (*Id.* at ¶ 4.) As such, IGT distributes, sells and leases various software and hardware systems relating to the casino gaming industry to several racinos[2] in the state of Delaware. (*Id.*) For example, IGT leases gaming machines and sells software and hardware control systems to Delaware Park, Dover Downs and Harrington Raceway's Midway Slots racinos in Delaware. (*Id.*)

---

[2] The term "racino" refers to a gaming facility that includes both casino and racing facilities.

7

####    b.    **Bally Regularly Conducts Business in Delaware.**

Defendant Bally Gaming International, Inc. is a Delaware corporation.  The other two defendants, Bally Technologies, Inc. and Bally Gaming, Inc., are the parent and a subsidiary, respectively, of Bally Gaming International, Inc.  (Lipparelli Decl., D.I. 27, at ¶ 4.)  Bally is a significant competitor of IGT in the gaming industry and much like IGT, is a global company that has significant business contacts internationally and with the state of Delaware.  Bally admits that it maintains an office in Delaware for its business operations in the state, including a crew of service technician employees and a supervisor.  (Lipparelli Decl., D.I. 27, at ¶ 2.)  Bally also has offices in New Jersey and Pennsylvania, from which its employees directly contact businesses in the state of Delaware for the purpose of making sales and executing lease agreements with Delaware companies.  (*Id.*)

Bally is also one of the four gaming vendors approved by the state of Delaware.  As such, Bally derives significant economic and financial benefits from the state of Delaware by distributing, selling and operating gaming devices to racinos in Delaware.  For example, under an agreement with the Delaware Lottery Commission, Bally operates approximately 800 gaming devices at racino facilities in Delaware.  (*See* Ex. 1 (Form 10-K) at 6.)  In fact, Bally slot machines are located at all three Delaware racinos:  Delaware Park Racetrack and Slots, Dover Downs, and Midway Slots and Simulcast.  (*See* Ex. 2, List of Where to Play Bally Slot Machines,    at    http://www.ballytech.com/gameroom/where_to_play_list.asp?GameID=9.) Because gaming devices (such as slot machines) used in Delaware are leased but not sold, Bally derives a continuing revenue stream from each use of Bally gaming machines located in Delaware.  (*See* Ex. 1, (Form 10-K) at 6.)  In addition to its numerous recurring-revenue gaming devices, Bally sold and installed its casino management software at two of Delaware's three racinos.  Bally sold a "full systems solution" including Bally's Casino Marketplace system and

8

SDS slot accounting system to Delaware Park Racetrack and Slots and its ACSC casino management system—equipped with the accused Bally Power Bonusing product—to Dover Downs. (*See* Ex. 3, Bally Press Release, Nov. 6, 2002, *available at* http://phx.corporate-ir.net/phoenix.zhtml?c=81092&p=irol-newsArticle&ID=353504&highlight=delaware); (Lipparelli Decl., D.I. 27, at ¶ 2.))

Bally asserts that IGT's choice of Delaware as the forum for this case should carry less weight because "IGT has forum-shopped this action far from its 'home-turf' in Nevada...." (Bally's Opening Brief, D.I. 26, at 2.) This argument is without merit—courts have held that regardless of whether a plaintiff is leaving or remaining on his "home turf" to file suit in Delaware, the degree of consideration paid to the plaintiff's initial choice stays the same—it is "paramount." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 199 (D. Del. 1998) (citing *Shutte*, 431 F.2d at 25). Bally must show, which it clearly fails to do, that the "balance of convenience" tips *strongly* in favor of transfer. *Id.* at 200.

These facts clearly demonstrate that IGT's initial choice of Delaware as the forum for the resolution of this lawsuit is supported by legitimate and rational concerns.

### 2.    The Claims in this Case Arose in Delaware and Elsewhere.

Bally's admission that it has sold the accused product in Delaware weighs heavily against a transfer of this case to Nevada. (*See* Lipparelli Decl., D.I. 27, at ¶ 2.) Bally admits that it has sold its Power Bonusing suite of products—the accused product before this Court—to Dover Downs, a racino authorized to do and doing business in the state of Delaware. (*Id.*) This, combined with the admitted fact that the infringing activity in Delaware was conducted by a Bally company that is registered to do business in Delaware,[3] is sufficient reason by itself for this Court not to disturb Plaintiff IGT's choice of forum. Since it is convenient for Bally to sell the

---

[3] (Lipparelli Decl., D.I. 27, at ¶ 2).

9

accused product here and obtain financial benefit here from these sales, it is certainly convenient for Bally to litigate here.

### 3.    Convenience of the Parties Does Not Warrant Transfer.

Bally's stated preference to have this case transferred to Nevada because Nevada is a more convenient forum is further undercut by the inevitable use of modern technology and Bally's large corporate status.  Bally argues that transfer to Nevada is justified because the parties' principal places of business and most of the documents and witnesses are located there. (Bally's Opening Brief, D.I. 26, at 2.)  But this Court has recognized that modern technology has dramatically diminished the amount of consideration given to the parties' physical locations. *Cypress Semiconductor*, 2001 U.S. Dist. LEXIS 20803 at *8-9 ("Convenience of the parties is a somewhat archaic notion in the world today.  Advances in technology have significantly lessened the burden of litigating in a distant district.") (citation omitted).

Similarly, Bally's concern for convenience is mitigated by its status as a substantial company doing business in the national and international markets.  According to its most recent Annual Report, Bally (formerly Alliance Gaming, Inc.) earned $484 million in revenue in the fiscal year ending June 2005, has operations in the US and Europe, and markets its products in Asia, the Caribbean, Europe, Latin America, and North America.  (*See* Ex. 1.)  In fact, this Court has repeatedly denied motions to transfer when the defendant was a multi-million dollar, national corporation.    *Joint Stock Soc'y*, 936 F. Supp. at 188-89 ("As this court has observed, technological advances have made it more difficult for defendants to establish that litigating in Delaware is inconvenient for the parties and the witnesses. . . . This is especially true when the defendants are substantial companies doing business in the national market place.");  *Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*, 882 F. Supp. 359, 363 (D. Del. 1994) (*quoting Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186 (D. Del. 1993));  *Cypress*

10

*Semiconductor*, 2001 U.S. Dist. LEXIS 20803 at *9 ("The undisputed record reflects that all the parties are national corporations with millions of dollars in annual revenue. Likewise, both plaintiff and defendant are corporations that operate on a national or worldwide scale. In view of this status, convenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in [the state of both parties' headquarters] regardless of the trial venue.").

Accordingly, this Court has required movants to show that litigating in Delaware would be *especially* inconvenient. *C.R. Bard*, 997 F. Supp. at 562 (denying transfer when movant had not "established that it would face any special inconvenience by litigating in Delaware"); *Cypress Semiconductor*, U.S. Dist. LEXIS 20803 at *9 (stating that the movant "must establish that litigating in Delaware would pose a 'unique or unusual burden' on [its] operations"). However, Bally has failed to identify any unique or unusual burden that it would suffer by litigating in Delaware.

Nor can Bally identify any unique or additional burden from litigation here, because Bally has frequently availed itself of Delaware courts. (*See* Exs. 5-10.) IGT has discovered six cases in which Bally opted to litigate in Delaware (or opted not to seek a transfer). Bally's frequent litigation in Delaware clearly suggests that Bally has *not* found Delaware to be an inconvenient place to litigate in the past.

Thus, modern technology, Bally's large corporate status, the practical realities of modern discovery, and Bally's past litigation in Delaware courts all militate against transfer. Accordingly, Bally's convenience-based arguments fail to show that the balance of interests strongly favor transfer, and, therefore, Bally's motion should be denied.

### 4.    The Convenience of Witnesses Does Not Warrant Transfer.

The majority of the witnesses in this case will be company employees over whom the

11

parties exercise control. (Bally's Opening Brief, D.I. 26, at 8-9 (listing potential witnesses, nearly all of whom are employees of the parties.)) Courts have held that witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, and indeed, obligated to procure the attendance of its own employees for trial. *Affymetrix, Inc.*, 28 F. Supp. 2d at 203. Because the company witnesses are not third parties, their location in Nevada or California becomes less persuasive in the context of the present motion to transfer and therefore, militates against a transfer of this case to Nevada.

With respect to the location of third-party witnesses, Bally makes no suggestion that proceeding in this Court will make any witness unavailable to the parties, nor any proof more difficult. This Court has repeatedly held that "little weight" should be given to the location of third-party witnesses who reside outside of Delaware when there is no evidence that the witnesses would be unwilling to testify at trial here.[4] Bally's motion suggests, for example, that John Acres, a principal inventor of eight of the nine patents at issue before this Court, may be a resident of Nevada. (Bally's Opening Brief, D.I. 26, at 8-9.) Bally lists the names of a number of specific witnesses, including Mr. Acres, that it alleges are "common to both actions" and indicates that "most, if not all, of these witnesses reside in Nevada." (*Id.* at 9.) Bally fails to

---

[4] *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, 2005 WL 441077, at *3 (D. Del. Feb. 15, 2005) ("...Maritz [defendant movant] has provided the Court with no evidence that Mr. Storey, would be unwilling to testify on its behalf. Accordingly, I give *little weight* to Mr. Storey's status as a non-party witness and residence outside Delaware.") (emphasis added); *Jones Pharma, Inc. v. KV Pharmaceutical Co.*, 2004 WL 323109, at *2 (D. Del. Feb. 17, 2004) ("...KV [defendant movant] has provided the Court with no evidence that Mr. Franz, KV's former CEO, would be unwilling to testify on its behalf. Accordingly, the Court gives *little weight* to Mr. Franz's status as a non-party witness and residence in Missouri.") (emphasis added); *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, 2002 WL 500920, at *2 (D. Del. March 26, 2002) ("The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. *No witness reluctant to testify, beyond the subpoena power of the Court, has been identified.* The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, the private interests weigh in favor of maintaining this action in Delaware.") (emphasis added).

12

unequivocally apprise the Court of a fact that is very well known to Bally—that Mr. Acres is an Oregon resident. *See, e.g.* '812 patent (issued October 4, 2005 and listing John Acres of Corvallis, Oregon as an inventor). Mr. Acres is currently serving as an expert for Bally in a Nevada action. (Bally's Opening Brief at 12.) As a result of Mr. Acres' existing relationship with Bally, it is very likely that Mr. Acres would be or could be easily persuaded by Bally to appear in this lawsuit in Delaware. But in any event, Nevada has no more power over this witness than Delaware does, a fact which is conspicuously omitted from Bally's brief.

Bally argues that the participation of Mr. Acres as an expert witness in the pending Nevada action supports transfer because Mr. Acres is a named inventor on eight of the patents-in-suit. In fact, Mr. Acres' participation in the Nevada action supports ***denial*** of transfer, because an assignor is precluded from seeking to invalidate — or assisting a party to invalidate—the patents he assigned. *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1166 (Fed. Cir. 2005) (doctrine of assignor estoppel precluded inventor—who was a consultant to defendant—from "testifying against the validity of [his] own patent"); *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1225 (Fed. Cir. 1988) (assignor estoppel precluded inventor and his company from challenging validity of assigned patents). Any potential involvement by Mr. Acres in this action as a percipient witness is unrelated to his participation as an expert witness in the Nevada action and therefore does not support Bally's argument for transfer. Indeed, the fact that Mr. Acres is ***not*** a potential percipient witness in the Nevada case, but is a likely percipient witness here, further shows that the two cases are not related.

In any event, Mr. Acres' status as Bally's expert in the Nevada case carries little weight on a motion to transfer. Expert witnesses or witnesses who are retained by a party (such as Mr. Acres) to testify "carry little weight in determining where the 'balance of convenience' lies (especially in an action for patent infringement) because they 'are usually selected [on the basis]

13

of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any.'" *Affymetrix, Inc.*, 28 F. Supp. 2d at 203.

John Acres' availability and/or location as a third-party witness is a non-factor and therefore does not in any way support Bally's motion to transfer since he isn't a resident of Delaware *or* Nevada. The only other alleged third-party witness identified by Bally is Mike LeStrange, a former Bally employee, whom Bally does not claim will be uncooperative with Bally or unavailable to this Court. In short, Bally identifies no witnesses who are unavailable to this Court and who are available in Nevada, where Bally seeks to transfer this case.

## 5. The Location of Documents Does Not Warrant Transfer.

The location of documents is not a persuasive reason for granting a motion to transfer. In fact, this Court has found that such arguments tend to be misleading. *Critikon*, 821 F. Supp. at 966-67 ("The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held [defendants'] ... counsel and [plaintiffs'] ... counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where the trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.").

Bally's lead counsel in this case is located in New York, which is not in close geographic proximity to Nevada. Indeed, this underscores IGT's point that large organizations, like Bally and its counsel, are accustomed to handling, and regularly do handle, lawsuits in various forums around the country regardless of where documents are located. Thus, even if Bally had sufficiently established that the majority of relevant documents are "located" in Nevada, modern technology mitigates this factor.

14

6.    **Litigating in Delaware Will Not Prejudice Defendants.**

Bally Gaming International, Inc. is a Delaware corporation.  This Court has found that a defendant's choice to incorporate in Delaware "should not be regarded lightly." *See Tuff Torq*, 882 F. Supp. at 363; *Argos v. Orthotec LLC*, No. 03-0757-SLR, 2004 WL 60691, at *7 (D. Del. Jan. 8, 2004 ("Given [the defendant's] choice for incorporation, . . . it voluntarily exposed itself to the possibility of litigation in Delaware.").  Moreover, Bally's convenience-based arguments are belied by the fact that it previously filed suit against IGT in New Jersey, a forum equally distant forum from Nevada.[5]  Furthermore, as explained above, Bally is a large company that does business in the national and international markets.  As such, Bally is accustomed to bringing and defending lawsuits in many different jurisdictions, including various lawsuits in the state of Delaware.  Therefore, litigating in Delaware will not be prejudicial to Bally.

**B.    The Public Interests Weigh Against Transfer.**

The public interests most relevant to the present motion to transfer are the practical considerations that would make the trial of this case easy, expeditious or inexpensive; a comparison of the relative congestion of the dockets in Delaware and Nevada; and an analysis of the national interest in the resolution of a patent case, versus any local interest by the forum state proposed by Bally.  Because the Nevada and Delaware cases relate to different products and different patents, there is no judicial economy to be served by transfer.  Moreover, the special expertise of this Court in patent cases and its less-congested docket weigh heavily in favor of keeping this case here.

---

[5] *Bally Gaming, Inc. v. International Game Technology*, No. 1:99-cv-3416 (D.N.J. July 20, 1999).

15

### 1.    Transfer Would Not Serve Judicial Economy Since this Action and the Nevada Action Are *Different.*

Bally offers mere conjecture to argue that the cases are so similar (because they both involve technology used in the gaming industry) that common issues would support a transfer. But the facts show otherwise. The Delaware case and the Nevada case involve unrelated patents and different accused products. Delaware courts have frequently rejected the argument that Bally is making here. *See, e.g., Cypress Semiconductor*, 2001 U.S. Dist. LEXIS 20803, at *11-12 ("the [transferee forum] litigation does not warrant transfer" because it involves "different patents"); *Square D Co. v. Medar Inc.*, 36 U.S.P.Q.2D (BNA) 1123, 1125 (D. Del. 1994) ("Based upon [plaintiff's] representations that the action at bar and the Michigan action do not involve the same product lines, the Court concludes that [defendant] has not demonstrated that the balance of convenience of the parties and witnesses, and the interest of justice, weigh strongly in favor of transfer."); *see also Agere Sys., Inc. v. Broadcom Corp.,* No. 03-3138, 2003 WL 21700458, at *1 (E.D. Pa. July 23, 2003) (denying transfer motion where the patents were "directed to different aspects of [a] single technological area"); *Sofamor Danek Holdings, Inc. v. U.S. Surgical Corp.*, 49 U.S.P.Q.2D (BNA) 2016 (W.D. Tenn. 1998) (denying transfer where the case involved implantation methods and the earlier litigation decided the infringement of the implantation device).

Contrary to Bally's assertions, this case is unrelated and completely distinct from the earlier Nevada case. It involves different products, different technology, and different patents. Under these circumstances, no judicial economy would be served by transferring this matter to Nevada, and the Court should deny Bally's motion to transfer. *See Affymetrix*, 28 F. Supp. 2d at 207.

16

### a.   The Present Delaware Action and the Nevada Action Involve Starkly *Different* Infringing Products and Technology.

Bally argues that this case and a pending action in Nevada involve directly overlapping technology and the same patent family. (Bally's Opening Brief, D.I. 26, at 6-8.) Bally's position, at best, is disingenuous. Not a single patent asserted in Nevada is asserted here, and none of the patents here are even related to the patents in the Nevada case.[6] And the alleged infringing technology and products involved here are very different than those in the Nevada case. (*See* Thomasian Decl. at ¶ 14 and Exs. 12 - 17.)

The Delaware Action involves nine IGT patents directed to computer software technology that runs on back-office network servers for the purpose of determining whether and when to provide incentive rewards to players.[7] If a player is selected to receive a reward, a message may be communicated to the player via a display unit installed on a gaming machine. The display unit may use a simple vacuum fluorescent screen, or alternatively may be a touch

---

[6] Courts describe patents as "related" when they are granted on continuation, continuation-in-part, or divisional applications of the same application. *See, e.g. Abbott Labs. v. Dey, LP*, 287 F.3d 1097, 1105 (Fed. Cir. 2002) (stating, in the context of prosecution history estoppel, that although applications were commonly owned and shared a common inventor, they "have no formal relationship" because the second application was not filed as a continuation, continuation-in-part, or divisional application of the first) (citing *In re Berg*, 140 F.3d 1428, 1435 n. 7 (Fed. Cir. 1998) (in the context of considering a double patenting rejection, two applications filed by the same inventor were "not related as by continuation, continuation-in-part, or divisional" and that filing such two separate applications implied "that each application is independent and patentably distinct")).

[7] '812 patent at Col. 8, Lines 49-65 (invention provides for system in which floor controllers connected to gaming devices monitor and control the activity of the gaming devices).; '125 patent at Col. 1, Lines 16-19 (invention provides for a method and apparatus for controlling a bonusing promotion system using a bonus server interconnected to a plurality of gaming devices); '4,958 patent at Col. 6, Lines 5-10 (invention provides for floor controllers responsible for monitoring the activity levels of their corresponding gaming devices connected thereto and issuing commands to their associated gaming devices to reconfigure their payout schedules during certain bonusing events); '441 patent at Col. 2, lines 53-67; Col. 3, lines 1-19 (invention provides for network which facilitates data communication between gaming machines and accounting system); '046 patent at Col. 4, Lines 2-6 (invention provides for a player tracking system which includes a gaming machine player tracking device associated with a player tracking host system via a network including a communication link).

17

screen player tracking unit such as Bally's iView product. Using a touch screen player tracking unit to communicate with a player is possible but not required. In this manner, the technology at issue in this case provides casinos with the ability to determine whether to present a player with a reward based on player parameters as an incentive to continue patronizing the casino's properties.

The network bonusing software of this case includes many different capabilities. For example, it includes the ability to integrate the collection of player tracking data with the delivery of bonuses to selected players on the network. As such, the bonusing software includes the ability to identify and select the players that will receive the bonus rewards based on various player parameters that may include game-play information. To enable the delivery of bonuses to the selected players, the network bonusing software may employ specialized data communication software to effectively and simultaneously "talk" to a multitude of gaming machines and related player tracking units.[8] Because the bonusing software of this case relates to "back-end" network software, all of the foregoing functions are provided using a process that is entirely transparent to individual players at gaming machines. In other words, the players in the casino cannot see the network bonusing software or the network servers on which it runs.

On the other hand, the Nevada Action involves six entirely different IGT patents. (Thomasian Decl. at ¶ 13.) The Nevada patents relate to individual gaming devices (*e.g.,* a slot

---

[8] '812 patent at abstract (invention relates to system for monitoring and configuring gaming devices interconnected over a high speed network); '125 patent at abstract (invention relates to method and apparatus for controlling a bonusing promotion system using a bonus server interconnected to a plurality of gaming devices); '4,958 patent at abstract (invention relates to methods for providing incentive to players of networked slot machines); '441 patent at abstract (invention relates to a method for transferring credits between gaming devices connected by a network to a host computer);'046 patent at abstract (invention relates to method and system for awarding bonuses in a gaming environment).

18

machine) and related player tracking units themselves.[9]  These patents describe "front-end" technology (as opposed to "back-end") because they relate to gaming machines and player tracking units themselves, rather than the back-end system that analyzes whether a particular player will receive an incentive bonus reward. Furthermore, to the extent an individual gaming machine or player tracking unit has any software in it, the software has nothing to do with managing a network of gaming machines.

In other words, this case involves back-end technology and software products used by a casino or racino to control the management of incentive bonus rewards offered to players on a network of gaming devices. In stark contrast, the Nevada case involves front-end technology directly related to the individual gaming devices and player tracking units used by the customers or players of the casino or racino. (Thomasian Decl. at ¶ 14.) *See, e.g.*, '646, '932, '891, and '573 patents (describing slot machines) and '698 and '985 patents (describing player tracking units used with gaming machines such as slot machines).

The most that can be said about the accused products in this case and in Nevada is that the method and systems for bonusing at issue here may be used with the touch screen player tracking units at issue in the Nevada action, but are not required to be used with those units. But simply because the accused products of the two cases may be used together does not make them the same. Indeed, under Bally's theory, patent cases involving automobile engines would be forced to be litigated with patent cases involving automobile brakes simply because they are both automobile parts. *Agere Sys., Inc. v. Broadcom Corp.*, No. 03-3138, 2003 WL 21700458, at *1

---

[9] '646 patent at abstract (invention relates to gaming devices comprising a standard gaming unit); '932 patent at abstract (invention relates to gaming devices comprising a standard gaming unit); '573 patent at abstract (invention relates to computer implemented electronic game); '891 patent at abstract (invention relates to slot machine for playing games); '698 patent at abstract (invention relates to player tracking unit providing a touch screen display interface); '985 patent at abstract (invention relates to player tracking unit).

19

(E.D. Pa. July 23, 2003) (denying transfer motion where the patents were "directed to different aspects of [a] single technological area").

Attempting to show some form of relatedness between the two cases, Bally claims that IGT's Motion for Expedited Discovery in this case "emphasizes significant overlap between this action and the Nevada Action." (Bally's Opening Brief, D.I. 26, at 9-10.) To support its claim, Bally cites to language in the IGT motion that states discovery materials in the Nevada Action "are relevant in this case, because the Nevada case involves a product, the Bally iView, that is a 'front-end' touch screen display that can be used with the 'back-end' bonusing technology at issue here." (Bally's Opening Brief, D.I. 26, at 9) (*citing* IGT's Motion For Expedited Discovery, D.I. 8, at 2). As explained above, simply because the technology  of the Nevada Action (*i.e.,* gaming devices and player tracking units) can be used in conjunction with the technology of the present case (*i.e.,* network bonusing software) does ***not*** mean that the products are the same or that the two cases are related. It is well within the proper scope of IGT's rights under the Federal Rules of Civil Procedure to ask for documents about other products (such as slot machines and iView player tracking units) that may lead to admissible evidence regarding the products (*i.e.,* network bonusing software) at issue in this case. The fact that IGT has exercised its right in this manner does ***not*** make the two cases related so as to justify a transfer of this case to Nevada.

### b.    The Patents in the Delaware Action Are Different and Unrelated to the Patents in the Nevada Action.

Because the technology and products at issue in the Nevada case are different than those asserted in this case, it comes as no surprise that the cases have no patents in common. Not a single patent is involved in both cases, and not a single patent in this case is even "related" to a patent asserted in the Nevada case. This Delaware case involves nine patents: U.S. Patent Nos.

20

'812, '885, '2,958, '125, '4,958, '983, '441, '434 and '046. The Nevada case involves a different set of six patents: U.S. Patent Nos. 6,827,646 ("the '646 patent"), 5,848,932 ("the '932 patent "), 5,788,573 ("the '573 patent"), 5,722,891 ("the '891 patent"), 6,712, 698 ("the '698 patent") and 6,722,985 ("the '985 patent"). As Bally admits, four[10] of the six patents in the Nevada Action "address slot machines" and the remaining two address a player tracking unit on the slot machine. [11] (Declaration of Amy H. Candido In Support of Bally's Motion to Transfer ("Candido Decl."), D.I. 28, at ¶ 31; Bally's Opening Brief, D.I. 26, at 4.) It is undisputed that patents in the Delaware Action do not claim slot machines or player tracking units. The patents in this case are directed to back-end network software that analyzes data to determine whether to present a player with a bonus reward, and are not specific regarding what type of display is used to provide the bonus information to players at gaming machines. Accordingly, there is *no*, or at most negligible, overlap between the six patents in the Nevada Action and the nine patents of this case.

### c.    Bally's Contention that There Is a "Risk of Inconsistent Claim Constructions" Is Nonsense.

Bally argues that "there is a risk of inconsistent claim constructions" because the cases involve "the same patent family." (Bally's Opening Brief, D.I. 26, at 7-8.) This argument is so obviously wrong that it reveals Bally's desperation to show similarity where none exists. First, despite claiming the cases involve the "same patent family," Bally does not identify any patents asserted in the Delaware case that it contends to be in the same family of any patent in the Nevada case. Nor could it identify any such patents, because there are none. Patents in the same

---

[10] The four (4) patents are U.S. Patent Nos. 6,827,646, 5,848,932, 5,788,573 and 5,722,891.
[11] Patent No. '698 is titled "GAME SERVICE INTERFACES FOR PLAYER TRACKING TOUCH SCREEN DISPLAY," and Patent No. '985 is titled "UNIVERSAL PLAYER TRACKING SYSTEM."

21

family are those that are related by being continuations of a "parent" application.  *See, e.g.*

*Abbott Labs.*, 287 F.3d at 1105 (Fed. Cir. 2002) (stating, in the context of prosecution history

estoppel, that although applications were commonly owned and shared a common inventor, they

"have no formal relationship" because the second application was not filed as a continuation,

continuation-in-part, or divisional application of the first).  None of the nine patents in this case

is in the same family as the six patents in the Nevada case.

Thus, to support its "inconsistent claim construction" argument, Bally notes that one

patent in the Delaware action,  IGT's '125 patent, is one of the 94 patents Bally asserts as

invalidating prior art in the Nevada Action.  (*Id.* at 7.)    Bally claims in its Motion to Transfer

that:

> to rule on Bally's invalidity arguments, Judge Jones will need to
> determine the *scope of the patents* asserted as invalidating prior art
> in the Nevada Action -- *in particular the scope of the '125 patent*
> -- while in this action the Court will need to construe the claims of
> patents in the same family.   This duplication of effort is both
> inefficient and raises the risk of *inconsistent claim constructions*.

(Bally's Opening Brief, D.I. 26, at 8 (citations omitted) (emphasis added.))  This is nonsense.

Courts do *not* construe the claims or "scope" of patents asserted as prior art.   It is well-

established that courts need only consider the *disclosure* of a patent that has been asserted as

prior art, and *not* the scope of its claims.  *See In re Benno*, 768 F.2d 1340, 1346 (Fed. Cir. 1985)

("The scope of a patent's claims determines what infringes the patent; it is no measure of what it

discloses.").  Bally's argument in the Nevada Action that the '125 patent invalidates certain

patents at issue there depends on the disclosure of the '125 patent—not the scope of the claims.

The Nevada court need not and will not construe claims of the '125 patent or the other two Acres

patents asserted as prior art.  Indeed, the '125 patent is just one of nearly 100 prior art references

asserted by Bally against the '698 and '985 patents in the Nevada Action.  Surely, Bally cannot

22

be seriously arguing that the Nevada Court will conduct Markman hearings for the patents asserted as prior art. There is no risk of inconsistent claim construction concerning the '125 patent, or any other patent.

### d.    The Existence of Different Inventive Entities Between the Delaware and Nevada Actions Weighs Against Transfer.

Moreover, the inventive entities for the patents in the Nevada Action are different than the inventive entities of the patents involved in the Delaware Action. In fact, only one out of the four inventors in the Delaware Action is a common named inventor in both cases.[12]  This represents yet another public factor which weighs against transfer of this case to Nevada.

### 2.    The Relative Congestion of the Dockets Weighs Against Transfer.

In choosing to file in Delaware, IGT ensured an efficient trial in a court with expertise in intellectual property cases. *See* Moore, "*Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation*," 79 N. C. L. Rev. 890 (2001) (noting that the District Court of Delaware is sixth in number of resolved patent cases, and that, consequently, the judges have substantial exposure to and familiarity with patent litigation). This Court has recognized that it is legitimate and rational for a plaintiff to choose between forums based on the relative congestion of the forums' dockets. *Joint Stock Soc'y*, 936 F. Supp. at 187; *see also C.R. Bard*, 997 F. Supp. at 562. Similarly, this Court has recognized that another legitimate reason for choosing a forum is the court's reputation for expertise in a given area. *Cypress Semiconductor*, 2001 U.S. Dist. LEXIS 20803 at *14 (supporting its denial of transfer by stating that "[Plaintiff] filed in Delaware because the court is noted for its efficient docket and its expertise in complex civil

---

[12] The named inventors in the Nevada action are William R. Adams, Anthony J. Baerlocher, Robert W. Crowder, Jr., Haruo Inoue, Craig A. Paulsen, Jamal Benbrahim, Greg A. Benoy, Cynthia Criss-Puszkiewicz, Steven G. LeMay, and Richard E. Rowe. (Thomasian Decl. at ¶ 13 and Exs. 12 - 17). Of the inventors in the Nevada Action, only Richard E. Rowe is also a named inventor on one of the patents-in-suit in this action.

23

litigation"). Given this District's reputation for expertise in patent litigation, IGT's decision to file here is quite reasonable and should not be disturbed.

A statistical comparison of the civil dockets for the districts of Delaware and Nevada favors upholding IGT's choice of forum in this Court. Courts often look to the relative congestion of the dockets in determining whether to transfer a case pursuant to § 1404(a). In fact, this Court has repeatedly found that a comparison of each forum's median length of time from the filing to trial may weigh against transfer to a more congested forum. *Joint Stock Soc'y*, 936 F. Supp. at 190 (finding a 13 month difference in median time militated against transfer); *Affymetrix*, 28 F. Supp. 2d at 206-08 (finding a 2 month difference weighed against transfer, and stating "the 'lighter' and 'faster' docket here insures that [plaintiff] will receive a relatively speedy trial."). Official Federal Court Management Statistics for 2005 show that the median time from filing to trial was 27 months in Nevada, and 23.5 months in Delaware. (Ex. 4, Federal Court Management Statistics (2005) for Nevada and Delaware.) Such a difference weighs against transfer since it both represents a legitimate reason for choosing Delaware over Nevada, and evidences that a transfer might actually be more costly. *Joint Stock Soc'y*, 936 F. Supp. at 191 ("[G]iven the relative congestion of the dockets, a transfer to the [transferee forum] may actually deplete more of the parties' assets in the long run.").

Therefore, IGT's legitimate, rational concerns of obtaining an efficient trial from a court experienced in handling patent cases should be afforded considerable deference.

### 3.    Patent Cases Are of National Interest—Any Local Interest by the State of Nevada Has No Bearing in a Motion to Transfer.

The Court should reject Bally's claim that Nevada has a local interest in this dispute. It is well-established that patent infringement cases involve national rights that are not local or state matters. *Trilegiant Loyalty Solutions, Inc. v Maritz, Inc.*, No. 04-360 JJF, 2005 U.S. Dist. LEXIS

24

2825 (D. Del. Feb. 15, 2005) at *8 (citing *Stratos Lightwave, Inc. v. E2O Communs. Inc.*, No.

01-309 JJF, 2002 U.S. Dist. LEXIS 5653, at *2 (D. Del. March 26, 2002)).  Therefore, given that

this Court has proper jurisdiction over the Defendants and that infringing activity took place

here, IGT has a legitimate right to select Delaware as its choice for filing suit.  Bally trivializes

its material business activities (described above) in Delaware to urge this Court to ignore the

well-established rule that patent cases are not local matters.  Furthermore, Bally's claim that

Nevada is "the gaming capital of the country"[13] does not bestow upon Nevada courts such local

interest as to require that any and all disputes in the entire country relating to the gaming industry

be brought in Nevada.  Delaware has just as much interest as Nevada in enforcing federal patent

rights with a nation-wide scope.

---

[13] Defendants' Opening Brief, at pg. 15.

25

## V.    **CONCLUSION**

Bally has failed to meet its burden of showing that the balance of convenience and the interests of justice strongly weigh in favor of transfer. IGT's initial choice to file this case in Delaware should be given paramount consideration because IGT based its decision on legitimate and rational concerns. Bally conducts business in Delaware and has sold the accused product in this District. There is no legal relationship between this case and the case in Nevada. The two cases have no patents in common. The technology and accused products of the two cases are different. Both IGT and Bally are large multinational companies who are accustomed to bringing and defending lawsuits in various courts nationwide. Finally, Bally's concerns for convenience are mitigated by modern technology and the practicalities of modern patent litigation. For all these reasons, it is respectfully submitted that Bally's motion to transfer should be denied.

William J. Wade (#704)
wade@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700

*Attorneys for Plaintiff IGT*

*OF COUNSEL*

David P. Enzminger
Brett J. Williamson
Charles A. Thomasian
O'MELVENY & MYERS L.L.P.
400 S. Hope Street
Los Angeles, CA  90071
(213) 430-6000

Dated: June 22, 2006

26

RLF1-3029863-1

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2006, I caused the foregoing document to be served on

the following attorney of record in the manner and at the address indicated:

### BY HAND

Jack B. Blumenthal, Esquire
Karen Jacobs Louden, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19899

Matthew W. King (#4566)