IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IGT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BALLY GAMING INTERNATIONAL, | ) | C.A. No. 06-282 (KAJ) |
| INC., BALLY TECHNOLOGIES, INC., | ) | |
| and BALLY GAMING, INC. | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' REPLY BRIEF IN
### SUPPORT OF THEIR MOTION TO TRANSFER

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
        Jack B. Blumenfeld (#1014)
        Karen Jacobs Louden (#2881)
        Rodger D. Smith II (#3778)
        1201 N. Market Street
        P.O. Box 1347
        Wilmington, DE 19899
        (302) 658-9200
          *Attorneys for Defendants*

OF COUNSEL:

Charles K. Verhoeven
Amy H. Candido
Quinn Emanuel Uquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Edward J. DeFranco
Quinn Emanuel Uquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, NY 10010
(212) 849-7000

June 30, 2006

i.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| INTRODUCTION | | 1 |
| I. | CONTRARY TO IGT'S ASSERTIONS, THE INTERESTS OF JUSTICE WOULD BE SERVED BY TRANSFER . | 1 |
| | A. IGT Ignores The Actual Operation Of Gaming Technology When It Argues That No Judicial Economy Would Be Gained By The Same Court Studying Both Front-End And Back-End Gaming Technology. | 1 |
| | B. IGT Was Quick To Emphasize Technology Common To The Two Actions When Seeking Expedited Discovery. | 3 |
| | C. IGT Ignores The Specialized Expertise Of Both The District Of Nevada And Judge Jones. | 4 |
| II. | IGT'S PRESENTATION OF THE JUMARA FACTORS BOTH OVERSTATES THE FACTS AND MISSTATES THE LAW. | 5 |
| | A. IGT Vastly Overstates The Parties' Business In Delaware. | 5 |
| | B. IGT Also Overstates Bally's Litigation In Delaware. | 6 |
| | C. IGT Also Overstates The Importance Of Sales Of The Accused Product In Delaware. | 7 |
| | D. IGT Ignores The Law Favoring Transfer Of Patent Suits Involving An Important Local Industry. | 7 |
| | E. IGT Misstates The Law Regarding Availability Of Third-Party Witnesses. | 8 |
| | F. The Statistics On Docket Congestion Do Not Support IGT. | 9 |
| | G. IGT Misstates The Significance Of Its Decision To File Suit Far From Its Own Home Turf . | 10 |
| CONCLUSION | | 11 |

# TABLE OF CITATIONS

Page(s)

Cases

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998)　　　　　　　　　　　　　　　　　　　9, 10

*Agere Sys. v. Broadcom Corp.*,
    No. 03-3138, 2003 WL 21700458 (E.D. Pa. July 23, 2003)　　　　　　　　　3

*APV North America v. Sig Simonazzi North America, Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002)　　　　　　　　　　　　　　　　　　　7

*Arrow Communications Laboratories, Inc. v. John Mezzalingua Associates*,
    C.A. No. 05-357 (SLR), 2005 WL 2786691 (D. Del. Oct. 26, 2005)　　　　　7

*Brunswick Corp. v. Precor, Inc.*,
    C.A. No. 00-691 (JJF), 2000 WL 1876477 (D. Del. Dec. 12, 2000)　　　　　3

*Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*,
    C.A. No. 01-199 SLR, 2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 28, 2001)　3

*IKOS Sys., Inc. v. Cadence Design Sys., Inc.*,
    C.A. No. 02-1335 (GMS), 2002 WL 31414136 (D. Del. Oct. 21, 2002)　　　7

*In re DVI, Inc.*,
    2004 WL 1498593 (D. Del. Jun. 23, 2004)　　　　　　　　　　　　　　　8

*Jones Pharma, Inc. v. KV Pharmaceutical Corp.*,
    2004 WL 323109 (D. Del. Feb. 17, 2004)　　　　　　　　　　　　　　　　8

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
    77 F. Supp. 2d 505 (D. Del. 1999)　　　　　　　　　　　　　　　　　　3, 8

*Nilssen v. Everbrite, Inc.*,
    C.A. No. 00-189 (JJF), 2001 WL 34368396 (D. Del. Feb. 16, 2001)　　　　8

*Rio Properties v. Rio International Interlink*,
    284 F.3d 1007 (9th Cir. 2002)　　　　　　　　　　　　　　　　　　　　4

*Stratos Lightwave, Inc. v. E20 Communications, Inc.*,
    2002 WL 500920 (D. Del. March 26, 2002)　　　　　　　　　　　　　　　8

*Trilegiant Loyalty Solutions v. Maritz, Inc.*,
    2005 WL 441077 (D. Del. Feb. 15, 2005)　　　　　　　　　　　　　　　　8

## INTRODUCTION

IGT contends that there would be no judicial economy gained by having the same court consider both front-end and back-end gaming technology at issue in this action and the Nevada action. To the contrary, as shown by the patents themselves, the front-end and back-end technology is closely integrated and designed to interact.

IGT also attempts inflate the Delaware connection by overstating the parties' business and Bally's litigation in Delaware, and also by overstating relative docket congestion in Nevada. Bally provides a complete picture below.

IGT also ignores that the importance of the gaming industry to Nevada as well as the District of Nevada's specialized expertise with the gaming industry weigh in favor of transfer. Finally, IGT contends that its choice of forum is paramount, but its decision to file suit far from its home turf also weighs in favor of transfer.

### I. CONTRARY TO IGT'S ASSERTIONS, THE INTERESTS OF JUSTICE WOULD BE SERVED BY TRANSFER.

#### A. IGT Ignores The Actual Operation Of Gaming Technology When It Argues That No Judicial Economy Would Be Gained By The Same Court Studying Both Front-End And Back-End Gaming Technology.

IGT does not dispute that judicial economy favors transfer where related lawsuits are proceeding in separate fora. IGT's only argument is that there is no efficiency gained by the same court studying both "front-end" and "back-end" gaming technology. (Opp. Br. at 19). This argument ignores the actual operation of gaming technology. Modern gaming machines are integrated into a network controlled by a host computer to provide features such as player tracking and bonusing. For example, a typical bonusing system currently on the market comprises a bonusing system host computer that can set the conditions for a bonus event. The

2.

host transmits this bonus event information to the player tracking devices, each of which is associated with a gaming machine. The player tracking devices collect data from their associated gaming machine and transmit this data to the bonus system host. When a winner is selected by the bonus system host, this information can be transmitted to the winning player via the player tracking device.

This gaming technology depends on effective integration of the various components. The host computer must be able to transmit bonus event information and winner selection to the player tracking devices; the player tracking devices must be able to send data to the host computer. Even IGT does not deny the extent of this integration. (Opp. Br. at 18) ("To enable delivery of bonuses to the selected players, the network bonusing software may employ specialized data communication software to effectively and simultaneously 'talk' to a multitude of gaming machines and related player tracking units."). Since all of the separate components must be integrated, IGT's so-called back-end cannot efficiently be studied and understood in isolation from the front-end.

The patents themselves further illustrate the integration of the front-end and back-end technology. U.S. Patent No. 6,620,046 (the "'046 patent"), for example, is directed to a bonus system where the host transmits bonus event information to the player tracking device, and the player tracking device transmits data to the bonus system host for determination of a winner. ('046 patent Abstract). Six of the patents-in-suit claim in Claim 1 "gaming devices connected by a network to a host computer." (U.S. Patent No. 6,319,125 (the "'125 patent"), col. 54:38; U.S. Patent No. 6,607,441, col. 7:11-12; U.S. Patent No. RE38,812, col. 38:27-28; U.S. Patent No. RE37,885, col. 38:7-8; U.S. Patent No. 6,244,958, col. 41:42-43; U.S. Patent No. 6,631,983, col. 41:60-61). The other three patents-in-suit also claim "gaming machines" or

3.

"gaming devices" connected by a network to a host. ('046 patent, col. 14:54, 63-64; U.S. Patent No. 6,565,434 (the "'434 patent"), col. 54:53-54, U.S. Patent No. 6,832,958, col. 37:58-59). Analysis of these patents will require an understanding of how the claimed gaming machines and gaming devices are integrated with the claimed host computer.

Transfer is favored in the interests of judicial economy where a related case in another forum involves the same or similar technology. *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 513 (D. Del. 1999) (granting transfer where "there is some overlap in the parties, technologies, and accused products in this case and the Aptix action"); *Brunswick Corp. v. Precor, Inc.*, C.A. No. 00-691 (JJF), 2000 WL 1876477, *3 (D. Del. Dec. 12, 2000) (granting transfer where a related action involved a parent patent and "exercise equipment" even though parties disagreed as to whether it was a directly related matter).

IGT relies on cases involving "merely the same general area of technology," *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, C.A. No. 01-199 SLR, 2001 U.S. Dist. LEXIS 20803, at *11 (D. Del. Nov. 28, 2001), or "a single technological area." *Agere Sys. v. Broadcom Corp.*, No. 03-3138, 2003 WL 21700458, at *1 (E.D. Pa. July 23, 2003). In contrast, the front-end and back-end technology at issue in the Nevada Action and here are not only the same gaming technology, but are designed to meaningfully interact with one another and function as an integrated system.

**B.     IGT Was Quick To Emphasize Technology Common To
        The Two Actions When Seeking Expedited Discovery.**

IGT does not deny that it emphasized the overlap between the Nevada Action and this action while seeking expedited discovery in this action. However, now that it is opposing transfer, IGT contends that it was not seeking documents produced in the Nevada Action because they were relevant to this action, but rather because they might lead to the discovery of other

admissible documents. (Opp. Br. at 20). While IGT now seeks to distance itself from its earlier position, this attempt is undermined by its recent discovery requests seeking all documents related to iVIEW – the accused product in the Nevada Action. (IGT's First Set Of Requests For Production Of Documents And Things (Served May 26, 2006) ("DOCUMENT REQUEST NO. 4: All DOCUMENTS RELATING to the operation of Bally's iVIEW device as it relates to or operates in connection with BALLY POWER BONUSING ….")).

      **C.    IGT Ignores The Specialized Expertise Of Both The District Of Nevada And Judge Jones.**

IGT argues that the District of Delaware has "expertise in intellectual property cases" generally. (Opp. Br. at 23). It ignores, however, the fact that both the District of Nevada and Judge Jones have specialized experience with gaming technology. The Nevada judiciary is recognized for its expertise involving the gaming industry. *Rio Properties v. Rio International Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002) ("as the gambling center of the United States and home of [plaintiff] RIO, Nevada asserts a strong interest in adjudicating RIO's claims, and with its expertise resolving disputes involving gambling entities, Nevada can most efficiently resolve the dispute."). Furthermore, in addition to Judge Jones' two-year head start on the Nevada Action, he also has two other patent actions pending that directly address gaming technology: *Japan Cash Machine Co., Ltd. v. Mars Electronic International, Inc.* (No. 2:05-cv-01433) and *Home Gambling Network, Inc., et al. v. Caribbean Online Limited, et al.* (No. 2:05-cv-01089).

5.

## II. IGT'S PRESENTATION OF THE JUMARA FACTORS BOTH OVERSTATES THE FACTS AND MISSTATES THE LAW.

### A. IGT Vastly Overstates The Parties' Business In Delaware.

IGT contends that its choice of forum is supported by the fact that IGT and Bally conduct business in Delaware. (Opp. Br. at 7). IGT ignores the fact that the business IGT and Bally conduct in Delaware is a very small part of their operations. The state allows gaming machines at only three specified racetracks. (*Delaware State Lottery: Video Lottery*, *available at* http://lottery.state.de.us/videolottery.html. As of June 2006, these three racetracks have a total of just 6619 gaming machines of *any* manufacturer. (*Delaware State Lottery: Monthly Data Summary*, *available at* http://lottery.state.de.us/vdodata/modat2006.html.) By contrast, IGT *alone* has an installed market base of approximately 204,000 machines in Nevada, and a total of 829,000 gaming machines in North America. (*IGT Annual Report* (Form 10-K), at 8-9 (Dec. 13, 2005), *available at* http://www.sec.gov/Archives/edgar/data/353944/000095013705014879/a15266e10vk.html).

Bally derives less than 1% of its total revenue from Delaware. (Lipparelli Decl., D.I. 27, at ¶ 2). Although IGT has declined to disclose its revenue from Delaware, all vendor fees from the *entire* gaming machine market in Delaware amounted to just $32 million in fiscal year 2005, while IGT's North American revenues for the same period totaled $1.88 billion. (*Delaware State Lottery: Video Lottery*; *IGT Annual Report* at 34). And while the *entire* Delaware market would comprise just one-sixtieth of IGT's North American revenues, Nevada makes up close to one-third. (*IGT Annual Report* at 61).

IGT also concludes, as grounds for opposing transfer, that Bally "maintains an office in Delaware for its business operations in the state." (Opp. Br. at 8). Bally disclosed in its

opening brief that its total operations in Delaware consist of eleven service technicians, one supervisor, and 468 square feet of storage space. (Br. at 16; Lipparelli Decl., D.I. 27, at ¶ 2). IGT now seeks to transform these service personnel into an "office," while ignoring the fact that Bally handles all Delaware sales and leases through actual offices in other states. (Lipparelli Decl., D.I. 27, at ¶ 2).

### B. IGT Also Overstates Bally's Litigation In Delaware.

IGT makes much of its conclusion that Bally conducts "frequent litigation in Delaware." (Opp. Br. at 11). Here, IGT is referring to six instances in which Bally was a party to litigation in Delaware state and federal courts over an eleven year period.[1] Of the six actions, only one was brought by Bally – for a violation of securities laws (two of the actions were brought by Alliance Gaming Corporation in 1995 prior to its acquisition of Bally Gaming International). (Thomasian Decl., Exhibits 5-10). In addition, three of the actions – including one for an automobile injury – were brought in state court, where Bally had no opportunity to move for transfer. (*Id.*, Exhibits 8-10). In any case, the most IGT has shown is that Bally is *capable* of litigating in Delaware. Apart from docket sheets, IGT has provided no facts regarding the six actions. Therefore it is impossible to determine whether Delaware was a convenient forum for Bally in any of these actions, or whether Delaware was simply the only forum with proper jurisdiction. IGT's observation has no bearing on whether it would be more convenient for this particular action to proceed in Nevada rather than Delaware.

---

[1] In contrast, Bally has been a party to 45 separate actions in Nevada federal court in the past five years alone.

### C. IGT Also Overstates The Importance Of Sales Of The Accused Product In Delaware.

IGT argues that any sales of the accused product in Delaware "weighs heavily against a transfer of this case to Nevada." (Opp. Br. at 9). However, this Court has repeatedly recognized that the "locus" of a patent dispute lies where the design and manufacture of an accused product takes place. *See, e.g., Arrow Communications Laboratories, Inc. v. John Mezzalingua Associates*, C.A. No. 05-357 (SLR), 2005 WL 2786691, at *3 (D. Del. Oct. 26, 2005) ("If defendant has infringed the '838 patent, such infringement was done primarily in Syracuse, where the accused products were developed, manufactured and sold."); *APV North America v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (transferring to the Eastern District of Texas because "the patents at issue relate[d] to machinery that [wa]s manufactured in Texas, not Delaware"). Here, the design and manufacture of the accused product takes place in Nevada, making that state the locus of any alleged infringement. *Arrow Communications*, 2005 WL 2786691, at *3.

### D. IGT Ignores The Law Favoring Transfer Of Patent Suits Involving An Important Local Industry.

IGT does not dispute Nevada's status as the gaming capital of the country, or that a large part of the Nevada economy is founded on the gaming industry. Instead, IGT argues that Nevada's interest in the gaming industry is irrelevant because patent rights have a nation-wide scope. (Opp. Br. at 25). By this reasoning, no state could ever take a local interest in any patent infringement suit. However, IGT completely ignores Bally's authority to the contrary. *IKOS Sys., Inc. v. Cadence Design Sys., Inc.*, C.A. No. 02-1335 (GMS), 2002 WL 31414136, at *1 (D. Del. Oct. 21, 2002) (granting transfer in part because California had a local interest in "the Electronic Design Automotive Industry, [which] is apparently located in the Silicon Valley").

8.

This Court's precedent shows transfer is warranted for patent suits involving an important local industry.

### E. IGT Misstates The Law Regarding Availability Of Third-Party Witnesses.

IGT does not dispute that Michael Lestrange, a third-party witness knowledgeable about the prior art, is outside of the Court's subpoena power. (Lipparelli Decl., D.I. 27, at ¶ 6). However, it contends that this fact does not weigh in favor of transfer, because there is no evidence Mr. Lestrange "would be unwilling to testify at trial here." (Opp. Br. at 12). IGT misstates the law. The law in Delaware is that "[a] party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power." *Nilssen v. Everbrite, Inc.*, C.A. No. 00-189 (JJF), 2001 WL 34368396, *6 (D. Del. Feb. 16, 2001) (*citing Mentor Graphics*, 77 F. Supp. 2d at 513).

IGT's mistaken contention rests on three recent opinions, all by Judge Farnan, drawn from factually unique circumstances not present here. In one of these cases the third-party witness was a party's former CEO. *Jones Pharma, Inc. v. KV Pharmaceutical Corp.*, 2004 WL 323109, at *2 (D. Del. Feb. 17, 2004). In another it was alleged that Delaware was actually more convenient for the third-party witness. *Trilegiant Loyalty Solutions v. Maritz, Inc.*, 2005 WL 441077, at *1 (D. Del. Feb. 15, 2005). In the third case there simply were no identified third-party witnesses outside the court's subpoena power. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, 2002 WL 500920, at *1 (D. Del. March 26, 2002). Indeed, even Judge Farnan has required no showing of unwillingness in the general case. *See, e.g., In re DVI, Inc.*, 2004 WL 1498593, at *2 (D. Del. Jun. 23, 2004) (granting transfer because "the presence of

[several non-party witnesses], all of whom reside outside of the subpoena power of the Court, weighs heavily in favor of transferring this action.").

### F. The Statistics On Docket Congestion Do Not Support IGT.

IGT selectively cites statistics gathered from the Federal Court Management Statistics for 2005 to support its argument that relative congestion of the dockets favors denying transfer. (Opp. Br. at 24). However IGT's cherry-picking fails to present the Court with a complete picture. The chart below shows that the number of pending cases per judgeship is almost the same in both districts, whereas the District of Nevada has on average a more rapid disposition of civil cases:

| *12-month period ending September 30, 2005* | **Delaware** | **Nevada** |
|---|---|---|
| Civil Filings Per Judgeship | 463 | 461 |
| Median Time From Filing To Trial Of Civil Cases | 23.5 months | 27 months |
| Median Time From Filing To Disposition Of Civil Cases | 10.9 months | 8.9 months |

*Source*: Federal Court Management Statistics (2005), Thomasian Decl., Exhibit 5.

Although the District of Delaware has a slightly shorter median time from filing to trial, this slight difference by itself does not greatly favor denying transfer. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 206 (D. Del. 1998) (noting that while two month difference in median time from filing to trial "weighs against transfer, it does so only slightly"). But IGT wholly fails to take into account – or even mention – the fact that the District of Nevada has a

shorter median time from filing to disposition. In percentage terms, this speedier disposition time is greater than the difference in time to trial. On balance, the relative congestion of the dockets is at best a neutral factor.

### G. IGT Misstates The Significance Of Its Decision To File Suit Far From Its Own Home Turf.

IGT does not dispute that Nevada is its home turf. Instead, it argues that its decision to bring suit in the District of Delaware does not affect Bally's burden of proof. (Opp. Br. at 9). However, as the Court explained in *Affymetrix* – the case relied upon but apparently misunderstood by IGT – a plaintiff's decision to file a complaint outside its home turf does not change the burden of proof, but does make it easier for the defendant to meet that burden. *Affymetrix*, 28 F. Supp. 2d at 206 ("under the balancing test inherent in any transfer analysis, the weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer") (emphasis in original).

11.

## CONCLUSION

For the reasons stated herein and in Bally's opening brief, this action should be transferred to the District of Nevada.

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/  Rodger D. Smith II (#3778)*
        _____
        Jack B. Blumenfeld (#1014)
        Karen Jacobs Louden (#2881)
        Rodger D. Smith II (#3778)
        rsmith@mnat.com
        1201 N. Market Street
        P.O. Box 1347
        Wilmington, DE 19899
        (302) 658-9200
         *Attorneys for Defendants*

OF COUNSEL:

Charles K. Verhoeven
Amy H. Candido
Quinn Emanuel Uquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

Edward J. DeFranco
Quinn Emanuel Uquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, NY  10010
(212) 849-7000


June 30, 2006

**CERTIFICATE OF SERVICE**

I, Rodger D. Smith II, hereby certify that on June 30, 2006, I caused to be electronically filed Defendants' Reply Brief in Support of Their Motion to Transfer with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Wade
Richards, Layton & Finger

and that I also caused copies to be served upon the following in the manner indicated:

**BY HAND**

William J. Wade
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19801

**BY FEDERAL EXPRESS**

David P. Enzminger
O'Melveny & Myers LLP
610 Newport Center Drive
Newport Beach, CA  92660

/s/ *Rodger D. Smith II (#3778)*
Rodger D. Smith II (#3778)
rsmith@mnat.com