IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IGT,                                          )
                                              )
                Plaintiff,                    )
                                              )
        v.                                    )        C.A. No. 06-282 (KAJ)
                                              )
BALLY GAMING INTERNATIONAL,                   )
INC., BALLY TECHNOLOGIES, INC.,               )
and BALLY GAMING, INC.,                       )
                                              )
                Defendants.                   )

## BALLY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants Bally Gaming International, Inc., Bally Technologies, Inc., and Bally Gaming, Inc. (collectively "Bally"), by their undersigned attorneys, state for their Answer to Plaintiff's Amended Complaint for Patent Infringement as follows:

## ANSWER

1.      Defendants admit that the Complaint purports to allege claims for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

2.      Defendants admit that the Complaint purports to state a cause of action over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Defendants admit that this Court has personal jurisdiction over defendants.

4.      Defendants contend that this action properly belongs in the District of Nevada, where IGT has already brought a related action against Bally.  Bally filed a motion to transfer venue to the District of Nevada on June 1, 2006.

## PARTIES

5.      Defendants admit the allegations of paragraph 5 of the Complaint.

6.     Defendants admit that defendant Bally Gaming International Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119.

7.     Defendants admit that defendant Bally Technologies, Inc. is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119.

8.     Defendants admit that defendant Bally Gaming, Inc. is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119.  Defendants admit that Bally Gaming, Inc. does business as Bally Technologies.

9.     Defendants deny the allegations of paragraph 9 of the Complaint.

## COUNT I
### (Infringement of U.S. Patent No. RE 38,812)

10.     Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 9 of the Complaint as though fully set forth herein.

11.     Defendants admit that U.S. Patent No. RE 38,812 ("the '812 patent") was reissued on October 4, 2005 and is titled "Method And Apparatus For Operating Networked Gaming Devices."  Defendants admit that what purports to be a copy of the '812 patent is attached to the Complaint as Exhibit 1.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '812 patent.  Defendants deny the remaining allegations of paragraph 11.

12.     Defendants deny the allegations of paragraph 12 of the Complaint.

13.     Defendants deny the allegations of paragraph 13 of the Complaint.

14.     Defendants deny the allegations of paragraph 14 of the Complaint.

## COUNT II
### (Infringement of U.S. Patent No. RE 37,885)

15.     Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 14 of the Complaint as though fully set forth herein.

16.     Defendants admit that U.S. Patent No. RE 37,885 ("the '885 patent") was reissued on October 15, 2002 and is titled "Method And Apparatus For Operating Networked Gaming Devices."  Defendants admit that what purports to be a copy of the '885 patent is attached to the Complaint as Exhibit 2.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '885 patent.  Defendants deny the remaining allegations of paragraph 16.

17.     Defendants deny the allegations of paragraph 17 of the Complaint.

18.     Defendants deny the allegations of paragraph 18 of the Complaint.

19.     Defendants deny the allegations of paragraph 19 of the Complaint.

## COUNT III
### (Infringement of U.S. Patent No. 6,832,958)

20.     Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 19 of the Complaint as though fully set forth herein.

21.     Defendants admit that U.S. Patent No. 6,832,958 ("the '2,958 patent") was issued on December 21, 2004 and is titled "Method And Apparatus For Operating Networked Gaming Devices."  Defendants admit that what purports to be a copy of the '2,958 patent is attached to the Complaint as Exhibit 3.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '2,958 patent.  Defendants deny the remaining allegations of paragraph 21.

22.     Defendants deny the allegations of paragraph 22 of the Complaint.

23.     Defendants deny the allegations of paragraph 23 of the Complaint.

24.     Defendants deny the allegations of paragraph 24 of the Complaint.

## COUNT IV
### (Infringement of U.S. Patent No. 6,319,125)

25.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 24 of the Complaint as though fully set forth herein.

26.    Defendants admit that U.S. Patent No. 6,319,125 ("the '125 patent") was issued on November 20, 2001 and is titled "Method Apparatus For Promoting Play On A Network Of Gaming Devices."  Defendants admit that what purports to be a copy of the '125 patent is attached to the Complaint as Exhibit 4.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '125 patent.  Defendants deny the remaining allegations of paragraph 26.

27.    Defendants deny the allegations of paragraph 27 of the Complaint.

28.    Defendants deny the allegations of paragraph 28 of the Complaint.

29.    Defendants deny the allegations of paragraph 29 of the Complaint.

## COUNT V
### (Infringement of U.S. Patent No. 6,244,958)

30.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 29 of the Complaint as though fully set forth herein.

31.    Defendants admit that U.S. Patent No. 6,244,958 ("the '4,958 patent") was issued on June 12, 2001 and is titled "Method For Providing Incentive To Play Gaming Devices Connected By A Network To A Host Computer."  Defendants admit that what purports to be a copy of the '4,958 patent is attached to the Complaint as Exhibit 5.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '4,958 patent.  Defendants deny the remaining allegations of paragraph 31.

32.    Defendants deny the allegations of paragraph 32 of the Complaint.

33.    Defendants deny the allegations of paragraph 33 of the Complaint.

34.    Defendants deny the allegations of paragraph 34 of the Complaint.

## COUNT VI
### (Infringement of U.S. Patent No. 6,431,983)

35.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 34 of the Complaint as though fully set forth herein.

36.    Defendants admit that U.S. Patent No. 6,431,983 ("the '983 patent") was issued on August 13, 2002 and is titled "Method For Providing Incentive To Play Gaming Devices Connected By A Network To A Host Computer."  Defendants admit that what purports to be a copy of the '983 patent is attached to the Complaint as Exhibit 6.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '983 patent.  Defendants deny the remaining allegations of paragraph 36.

37.    Defendants deny the allegations of paragraph 37 of the Complaint.

38.    Defendants deny the allegations of paragraph 38 of the Complaint.

39.    Defendants deny the allegations of paragraph 39 of the Complaint.

## COUNT VII
### (Infringement of U.S. Patent No. 6,607,441)

40.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 39 of the Complaint as though fully set forth herein.

41.    Defendants admit that U.S. Patent No. 6,607,441 ("the '441 patent") was issued on August 19, 2003 and is titled "Method For Transferring Credit From One Gaming Machine To Another."  Defendants admit that what purports to be a copy of the '441 patent is attached to the Complaint as Exhibit 7.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '441 patent.  Defendants deny the remaining allegations of paragraph 41.

42.     Defendants deny the allegations of paragraph 42 of the Complaint.

43.     Defendants deny the allegations of paragraph 43 of the Complaint.

44.     Defendants deny the allegations of paragraph 44 of the Complaint.

## COUNT VIII
**(Infringement of U.S. Patent No. 6,565,434)**

45.     Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 44 of the Complaint as though fully set forth herein.

46.     Defendants admit that U.S. Patent No. 6,565,434 ("the '434 patent") was issued on May 20, 2003 and is titled "Method And Apparatus For Promoting Play On A Network Of Gaming Devices."  Defendants admit that what purports to be a copy of the '434 patent is attached to the Complaint as Exhibit 8.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '434 patent.   Defendants deny the remaining allegations of paragraph 46.

47.     Defendants deny the allegations of paragraph 47 of the Complaint.

48.     Defendants deny the allegations of paragraph 48 of the Complaint.

49.     Defendants deny the allegations of paragraph 49 of the Complaint.

## COUNT IX
**(Infringement of U.S. Patent No. 6,620,046)**

50.     Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 49 of the Complaint as though fully set forth herein.

51.     Defendants admit that U.S. Patent No. 6,620,046 ("the '046 patent") was issued on September 16, 2003 and is titled "Method And System For Funding And Awarding Bonuses In A Gaming Environment." Defendants admit that what purports to be a copy of the '046 patent is attached to the Complaint as Exhibit 9.  Defendants lack information sufficient to

form a belief as to IGT's ownership of the '046 patent.  Defendants deny the remaining allegations of paragraph 51.

    52.     Defendants deny the allegations of paragraph 52 of the Complaint.

    53.     Defendants deny the allegations of paragraph 53 of the Complaint.

    54.     Defendants deny the allegations of paragraph 54 of the Complaint.

## PRAYER FOR RELIEF

Defendants further deny that IGT is entitled to the relief sought by its prayer for relief on pages 12 and 13 of its Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE
**Noninfringement**

Defendants do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale or imported into the United States any products or methods that infringe any valid claim of the '812, '885, '2,958, '125, '4,958, '983, '441, '434, or '046 patents (collectively, the "patents-in-suit"), either directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and have not induced others to infringe the patents-in-suit.

### SECOND AFFIRMATIVE DEFENSE
**Invalidity**

The claims of the patents-in-suit are invalid for failure to meet the Conditions for Patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

### THIRD AFFIRMATIVE DEFENSE
**Laches**

The patents-in-suit are unenforceable, in whole or in part, against Defendants under the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE
**Estoppel**

The patents-in-suit are unenforceable, in whole or in part, against Defendants under the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE
**Unclean Hands**

Plaintiff's claims are barred under the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE
**Waiver**

Plaintiff has waived any rights it may have had for relief from the Court.

### COUNTERCLAIMS

### Nature of the Action

1.      This is an action for anticompetitive behavior in violation of 15 U.S.C. § 2; violation of the Lanham Act; intentional interference with business advantage; and for declaratory judgments of noninfringement, invalidity and/or unenforceability of IGT's asserted patents.  Bally seeks actual and enhanced damages.

### Parties

2.      Counterclaim-Plaintiff Bally Technologies, Inc. is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119.  Bally Technologies, Inc. is a diversified, worldwide gaming company that through its subsidiaries designs, manufactures, and distributes

gaming machines and computerized monitoring systems for gaming machines; owns and operates a significant installed base of gaming machines; and owns and operates a casino. Bally Technologies, Inc.'s slot machine unit is a worldwide leader in designing, manufacturing and distributing gaming machines. Both Bally Gaming International, Inc. and Bally Gaming, Inc. are wholly owned subsidiaries of Bally Technologies, Inc.

3.      Counterclaim-Plaintiff Bally Gaming International, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119. Bally Gaming International, Inc. is a holding company with no operations or employees.

4.      Counter-Plaintiff Bally Gaming, Inc. is a corporation organized and existing under the laws of Nevada with its principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119. Bally Gaming, Inc. is the operating arm of Bally Gaming International, Inc.

5.      Counter-Plaintiffs Bally Technologies, Inc., Bally Gaming International, Inc., and Bally Gaming, Inc. are collectively referred to herein as "Bally."

6.      Counterclaim-Defendant IGT is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 9295 Prototype Drive, Reno, Nevada 89511.

**<u>Jurisdiction And Venue</u>**

7.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 2 (federal antitrust), 28 U.S.C. §§ 1331 (federal question) and 1338 (patents), 28 U.S.C. §§ 2201 and 2202 (declaratory judgments), and 35 U.S.C. § 1 et seq. (patents). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

8.    IGT has submitted to the personal jurisdiction in this Court.

9.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) because IGT filed this suit in this district.  Bally contends that this action properly belongs in the District of Nevada, where IGT has already brought a related action against Bally ("the Nevada Action," No. CV-S-04-1676-RCJ-RJJ).  Bally filed a motion to transfer venue to the District of Nevada on June 1, 2006.

### General Allegations

10.    The New York Times Magazine has referred to IGT as the "Microsoft of the gaming industry."  That statement is based on IGT's control over approximately 75-80% of the gaming machines market in the United States.

11.    IGT also controls over 40% of the gaming systems market.  The gaming systems market consists of systems including servers, network equipment and game monitoring devices that provide an infrastructure akin to a central nervous system for the casino floor that enables casino operators to simultaneously monitor patrons and manage operations.  Gaming systems may include slot machine cash monitoring, table management, cashless, accounting, security, maintenance, marketing, cage, and promotional and bonusing capabilities.  The relevant geographic market in this action is the United States.

12.    IGT has repeatedly and with predatory intent sought to eliminate Bally as a competitor in the gaming systems market.  IGT is illegally attempting to acquire monopoly power and/or has illegally acquired monopoly power in the gaming systems market.

13.    There are substantial barriers to entry related to the gaming systems market that shield IGT's market power.  These barriers include substantial regulatory and licensing requirements, which have to be independently met in every jurisdiction in the United States

10

where gaming devices are legal.  IGT's market share is also protected by IGT's purported patent portfolio and especially by IGT's excessively aggressive litigation, and threats of litigation, to enforce its patent portfolio, which has the practical effect of expanding the reach of IGT's patent portfolio far beyond its appropriate bounds.  IGT's market share is also protected by technological constraints to developing new gaming systems that are attractive to the gaming public and casinos, compatible with the existing infrastructure, and do not infringe on any relevant patents.  An additional barrier is the prohibitive cost of research and development for gaming systems.

14.    Bally, however, has sufficient management and skill, expertise and capital to overcome these barriers to entry.  In recognition of Bally's ability to compete, IGT has engaged in anticompetitive conduct to raise new, substantial, artificial barriers to exclude Bally from the gaming systems market.

A.    **IGT Has Misused the Patent Process To Create a Monopoly**

15.    IGT has repeatedly and with predatory intent attempted to eliminate Bally as a competitor in the gaming systems market.  IGT has misused the Patent and Trademark Office and the legal system to accomplish its anticompetitive goal of eliminating all competitors in these markets.

16.    IGT has taken affirmative steps to increase its market share in the gaming systems market by asserting control over as much intellectual property within the gaming systems market as possible.  For example, on June 30, 2003, IGT announced its planned acquisition of Acres Gaming, a former competitor in the gaming systems market.  The June 30, 2003 Press Release states:  "Acres specializes in the development of gaming systems technology that enables casino operators to increase patron loyalty.  The resulting combination will position IGT as a leading

provider of gaming systems to the world-wide casino market." The Press Release also noted that "Acres' patented technology enables casino operators to increase patron loyalty by differentiating their properties in an increasingly competitive environment." IGT's acquisition of Acres Gaming was completed on October 27, 2003, significantly increasing IGT's market power in the gaming systems market. Through its acquisition of Acres Gaming, IGT also obtained control over Acres Gaming's patent portfolio.

17.     In addition, on April 10, 2006, IGT entered into an agreement with Walker Digital "to facilitate the development and introduction of certain Walker Digital casino innovations into the IGT product line." In a press release on April 10, 2006, IGT's CEO, T.J. Matthews stated: "These agreements provide us with access to an intellectual property portfolio focused on the creative use of networks within the casino, with a particular emphasis on player preferences. Walker Digital's portfolio is complementary to IGT's own extensive portfolio and we are very excited about the potential this relationship presents." Through this acquisition, IGT seeks to further increase its market share in the gaming systems market. A copy of this press release is attached hereto as Exhibit 1.

18.     Competitors who refuse to pay royalties to IGT -- regardless of the merits of any argument that the competitor might have that the asserted patent is invalid or not infringed -- are promptly sued by IGT.

19.     As to Bally, IGT has filed three lawsuits for purported patent infringement since 2001.

20.     The instant lawsuit is the most recent example of, and most clearly demonstrates, the pattern of conduct by IGT in misusing the privileges afforded by the Patent Office to gain competitive advantage over others in the marketplace.

**B.     IGT's Patent Infringement Suits Are Predatory Acts Intended To Eliminate Bally As A Market Competitor**

21.     The broad allegations in IGT's patent infringement suits demonstrate that IGT is using these lawsuits as part of an overall scheme to gain competitive advantage over its competitors in the marketplace.

22.     IGT's Complaint asserts that Bally infringes nine patents, which comprise a total of 292 different patent claims.

23.     Although IGT has failed to identify specifically which of Bally's products allegedly infringe these nine patents, it has asserted infringement by, at a minimum, "BALLY POWER BONUSING technology." *See, e.g.,* Complaint at ¶ 17.  Bally Power Bonusing is a marketing term that refers to a broad suite of at least seven different Bally products, each of which uses a different technology to fulfill a different goal for Bally's customers.

24.     By not specifying which of at least seven different Bally products are alleged to infringe 292 asserted patent claims, IGT will require Bally to respond to (and the Court to decide) hundreds, if not thousands, of separate instances of patent infringement.  IGT has imposed this onerous burden on Bally with the intent of forcing it to expend its comparatively small resources on patent litigation, in hopes of eliminating Bally from the bonusing systems market.

25.     Despite the fact that IGT acquired Acres Gaming on October 27, 2003, the asserted Acres patents issued as early as June 12, 2001, and Bally has offered most of the products in the accused Bally Power Bonusing suite of products for years before June 12, 2001, IGT only now asserts that Bally infringes the asserted Acres patents.

26.     Notably, this lawsuit did follow quickly on the heels of Bally's successful introduction of its Power Winners product, intended to increase Bally's market share in the

market for gaming systems. On January 4, 2006, Bally announced that Borgata Hotel Casino and Spa had "gone live with Bally Power Winners (TM), one of the signature products from the Bally Power Bonusing (TM) technology suite, and has placed an order to install iVIEW interactive touch-screen displays on more than 4,000 of its slot machines." Bally also announced that Bally Power Winners "was singled out as one of the winners in the Best Consumer Service Technology category of the 2005 Global Gaming Business Gaming & Technology Awards."

27.    On April 11, 2006, Bally announced that it had signed a contract with Boyd Gaming "to provide complete casino management, slot accounting and bonusing solutions across all Boyd Gaming properties nationwide in an agreement that is structured to provide standardized technology for a total of approximately 30,000 slot machines at 19 casino properties in six states."

28.    IGT filed this lawsuit 17 days later, on April 28, 2006. Before filing suit, IGT never once contacted Bally to inform Bally that IGT believed its products to be infringing the Acres patents. IGT's actions while Bally's product is in its infancy have caused grave customer confusion, seriously damaging Bally's ability to compete in this market against IGT.

29.    Moreover, IGT did not accuse only Bally Power Winners of patent infringement, but accused the whole suite of Bally Power Bonusing products – including products that had been on the market and known to IGT for years. Nevertheless, IGT brought a complaint alleging hundreds, if not thousands, of instances of patent infringement with the bad faith intent of preventing Bally from completing any more sales of Bally Power Winners. On information and belief, IGT's goal is to use the taint of litigation to dissuade customers from dealing with Bally, so that by the time this litigation is resolved IGT will have substantially increased its market share and Bally will be foreclosed from competition.

**C.     IGT Seeks To Deceive Bally's Customers And Potential Customers Into
        Believing That Bally Has Willfully Infringed IGT's Valid Patents**

30.     Filing this lawsuit against Bally was not enough.  IGT also intends to make sure
that all of Bally's customers and potential customers believe that the products sold by Bally are
infringing upon IGT's patents.  Shortly after filing the Complaint in this action, IGT issued a
press release that stated that IGT filed suit because "it cannot condone willful infringement by
[Bally] of IGT's valuable intellectual property."  A copy of this press release is attached hereto
as Exhibit 2.

31.     IGT did the same thing after filing suit in the Nevada Action.  Shortly after filing
its complaint in the District of Nevada, IGT issued a press release that stated that IGT filed suit
to "stop defendants from misappropriating IGT's patent innovations in the areas of bonus
gaming machines features and technology allowing players to communicate with games and
systems."  A copy of this press release is attached hereto as Exhibit 3.

32.     These press releases are not specific to the allegations in the respective
complaints, but rather deceive the public into believing that all of Bally gaming machines and
Power Bonusing suite of systems products infringe IGT's patents.

33.     In addition to these press releases, IGT has also communicated directly with
Bally's existing customers.  On June 13, 2006, IGT wrote directly to the general manager of
Lincoln Park, an existing Bally customer, stating that it believed "the installation and use of
Bally's iView device on a VLT for player tracking purposes is an infringement of IGT's
patents."  A copy of this letter is attached hereto as Exhibit 4.  Upon information and belief, IGT
has made other false statements to Bally's customers.

34.     All of IGT's statements to Bally's customers and potential customers were made
in bad faith and have harmed Bally by creating confusion in the market, thereby placing Bally at

a competitive disadvantage.  IGT has intentionally misled Bally's customers about the legality of Bally's products.

**D.    IGT Has Attempted To Restrict Bally's Competition With IGT In The Gaming Systems Market By Interfering With Bally's Ability to Test Its Systems**

35.    IGT has further sought to restrict competition in the gaming systems market by interfering with Bally's ability to properly test its products, which restricts Bally's ability to market and sell its systems.

36.    Bally's systems products (like most, if not all, products in the gaming systems market) need to be able to operate in conjunction with gaming machines manufactured by several different manufacturers.  Accordingly, Bally requires access to those manufacturer's gaming machines to test its systems.

37.    In the past, IGT has freely given Bally access to its gaming machines so that Bally could test its systems on IGT gaming machines and ensure that Bally's systems would be fully compatible with IGT's gaming machines.

38.    Upon information and belief, IGT has recently denied Bally access to its gaming machines.

39.    Without access to IGT's gaming machines – access IGT has freely given in the past – Bally's ability to compete in the gaming systems market is directly harmed.

**COUNT I**
**(Declaratory Judgment of Noninfringement, Invalidity**
**and Unenforceability of the '812 Patent)**

40.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 39 of their Counterclaims, inclusive, as if fully set forth herein.

41.     IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '812 patent.

42.     Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '812 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '812 patent.

43.     Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '812 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

44.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '812 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

45.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '812 patent is unenforceable due to estoppel and laches.

46.     IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '812 patent was invalid, unenforceable and not infringed.

## COUNT II
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '885 Patent)

47.     Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 46 of their Counterclaims, inclusive, as if fully set forth herein.

48.     IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '885 patent.

49.    Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '885 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '885 patent.

50.    Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '885 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

51.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '885 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

52.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '885 patent is unenforceable due to estoppel and laches.

53.    IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '885 patent was invalid, unenforceable and not infringed.

## <u>COUNT III</u>
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '2,958 Patent)

54.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 53 of their Counterclaims, inclusive, as if fully set forth herein.

55.    IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '2,958 patent.

56.    Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '2,958 patent is enforceable.  Accordingly, there exists a substantial and continuing

justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '2,958 patent.

57.    Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '2,958 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

58.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '2,958 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

59.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '2,958 patent is unenforceable due to estoppel and laches.

60.    IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '2,958 patent was invalid, unenforceable and not infringed.

<u>**COUNT IV**</u>
**(Declaratory Judgment of Noninfringement, Invalidity
and Unenforceability of the '125 Patent)**

61.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 60 of their Counterclaims, inclusive, as if fully set forth herein.

62.    IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '125 patent.

63.    Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '125 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '125 patent.

64.    Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '125 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

65.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '125 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

66.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '125 patent is unenforceable due to estoppel and laches.

67.    IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '125 patent was invalid, unenforceable and not infringed.

**COUNT V**
**(Declaratory Judgment of Noninfringement, Invalidity**
**and Unenforceability of the '4,958 Patent)**

68.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 67 of their Counterclaims, inclusive, as if fully set forth herein.

69.    IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '4,958 patent.

70.    Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '4,958 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '4,958 patent.

71.    Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '4,958 patent is not infringed, either directly, indirectly, under the doctrine of

equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

72.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '4,958 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

73.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '4,958 patent is unenforceable due to estoppel and laches.

74.     IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '4,958 patent was invalid, unenforceable and not infringed.

## COUNT VI
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '983 Patent)

75.     Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 74 of their Counterclaims, inclusive, as if fully set forth herein.

76.     IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '983 patent.

77.     Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '983 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '983 patent.

78.     Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '983 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

21

79.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '983 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

80.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '983 patent is unenforceable due to estoppel and laches.

81.     IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '983 patent was invalid, unenforceable and not infringed.

## COUNT VII
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '441 Patent)

82.     Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 81 of their Counterclaims, inclusive, as if fully set forth herein.

83.     IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '441 patent.

84.     Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '441 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '441 patent.

85.     Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '441 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

86.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '441 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

87.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '441 patent is unenforceable due to estoppel and laches.

88.    IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '441 patent was invalid, unenforceable and not infringed.

## COUNT VIII
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '434 Patent)

89.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 88 of their Counterclaims, inclusive, as if fully set forth herein.

90.    IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '434 patent.

91.    Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '434 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '434 patent.

92.    Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '434 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

23

93. Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '434 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

94. Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '434 patent is unenforceable due to estoppel and laches.

95. IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '434 patent was invalid, unenforceable and not infringed.

## COUNT IX
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '046 Patent)

96. Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 95 of their Counterclaims, inclusive, as if fully set forth herein.

97. IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '046 patent.

98. Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further deny that the '046 patent is enforceable. Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '046 patent.

99. Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '046 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

100.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '046 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

101.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '046 patent is unenforceable due to estoppel and laches.

102.    IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '046 patent was invalid, unenforceable and not infringed.

<u>**COUNT X**</u>
**(Attempted Monopolization of the Gaming Systems Market:  15 U.S.C. § 2)**

103.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 102 of their Counterclaims, inclusive, as if fully set forth herein.

104.    In pursuit of its effort to monopolize the gaming systems market, IGT has engaged in the following anti-competitive acts:

a.    IGT has an extensive history of misusing the patent process and enforcement actions, in order to intimidate and drive out competitors, including:

i.    purchasing or being assigned numerous patents in the field of gaming systems, and obtaining exclusive licenses for additional patents for anti-competitive purposes;

ii.    filing patent infringement actions -- including three such lawsuits against Bally since 2001 -- based upon alleged infringement of patents that were fraudulently obtained, that IGT knows are invalid, or that IGT knows are not infringed;

b.    IGT has made overbroad and ill-defined claims of infringement of the patents-in-suit knowing that they are meritless in order to eliminate Bally from the gaming systems market.

c.    IGT has deceived the public that Bally's Power Bonusing suite of products infringe IGT's patents by issuing a vague and misleading press release as well as other false statements to Bally's customers.

d.    IGT has further sought to restrict competition in the gaming systems market by interfering with Bally's ability to properly test its products, which restricts Bally's ability to market and sell its systems.

105.    IGT's pattern of behavior is harmful to competition in the gaming systems market.  As a result of its anti-competitive behavior, IGT holds a dominant market share -- over 40% -- in the gaming systems market.  Bally is the primary competitor to IGT in the gaming systems market.  Absent relief from the Court, IGT's market share in the gaming systems market will increase further, thereby approaching a monopoly and eliminating competition in that market.

106.    IGT has the specific intent to monopolize the gaming systems market.  IGT's conduct, as alleged herein, has been undertaken to achieve, maintain or extend a monopoly in the gaming systems market, and to the extent (if any) that IGT has not already obtained monopoly power, there is a dangerous probability that it will succeed in obtaining it.

107.    IGT is attempting to monopolize the gaming systems market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, through anti-competitive actions designed to eliminate competition.   IGT's anti-competitive conduct occurs in and/or affects interstate commerce and is harmful to competition.

26

108.    As a direct and proximate result of the foregoing, Bally has been injured in its business and property in an amount to be determined at trial.

**COUNT XI**
**(False Representation:  15 U.S.C. § 1125)**

109.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 108 of their Counterclaims, inclusive, as if fully set forth herein.

110.    In violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, IGT has made, in bad faith, material and false and/or misleading representations regarding Defendants/Counter-Plaintiffs' products sold and used in interstate commerce that are likely to deceive the intended audience (i) by releasing a vague and misleading press release designed to confuse Defendants/Counter-Plaintiffs' customers into believing that Bally's Power Bonusing systems products infringe IGT's patents, and (ii) by writing directly to Defendants/Counter-Plaintiffs' existing customers making false and misleading statements claiming that Bally's products infringe IGT's patents.

111.    Upon information and belief, IGT has also made other false and/or misleading statements to Bally's customers that have misled or are likely to mislead Bally's customers about the legality of Bally's products.

112.    IGT's false and/or misleading statements are likely to influence purchasing decisions.  As a direct and proximate result of the foregoing, Defendants/Counter-Plaintiffs have been injured in their business and property in an amount to be determined at trial.

## COUNT XII
### (Intentional Interference with Business Relationships)

113.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 112 of their Counterclaims, inclusive, as if fully set forth herein.

114.    IGT is aware that Bally has an economic interest in selling its systems to customers in the gaming systems market.  Further, IGT is aware that Bally receives an economic benefit from its ability to offer its potential customers a product that is either protected by Bally's own patent portfolio or, in the very least, does not infringe others' patents.  IGT is aware that Bally has existing and prospective contractual relationships with third parties based on its ability to manufacture and sell systems without infringing others' patents.

115.    IGT intended to harm Bally by issuing a press release that deceives the public into believing that all of Bally's Power Bonusing systems products infringe IGT's patents, and accordingly interfering with Bally's existing and prospective contractual relationships with customers -- customers for whose business IGT also competes.

116.    IGT further intended to harm Bally by writing directly to Bally's existing customers and claiming that Bally's products infringe IGT's patents, knowing those allegations to be false and/or misleading, and accordingly interfering with Bally's existing contractual relationships with its customers.

117.    IGT has no justification or privilege to interfere with Bally's valid business relationships and/or expectancies with third parties.

118.    As a direct and proximate result of the IGT's interference with Defendants/Counter-Plaintiff's' valid business relationships and/or expectancies, Bally has been and continues to be damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/Counter-Plaintiffs pray for the entry of judgment in favor of Bally Technologies, Inc., Bally Gaming International, Inc., and Bally Gaming, Inc. and against IGT as follows:

A.     The Court dismiss with prejudice any and all claims of IGT's Complaint and order that Plaintiff IGT take nothing as a result of the Complaint and that all of IGT's prayers for relief be denied;

B.     The Court enter judgment that Defendants/Counter-Plaintiffs have not infringed, contributed to the infringement of, or induced infringement of the '812, '885, '2,958, '125, '4,958, '983, '441, '434, and '046 patents;

C.     The Court enter judgment declaring that the '812, '885, '2,958, '125, '4,958, '983, '441, '434, and '046 patents are invalid and/or unenforceable;

D.     For damages in an amount to be proven at trial;

E.     For pre-judgment interest on all such damages;

F.     For reasonable attorneys' fees and costs of suit incurred herein; and

G.     The Court grant to Bally such other and further relief as may be just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
 *Attorneys for Defendants*

OF COUNSEL:

Charles K. Verhoeven
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street
San Francisco, CA  94111
(415) 875-6600

Edward J. DeFranco
Quinn Emanuel Urquhart Oliver & Hedges, LLP
335 Madison Avenue
New York, NY  10017
(212) 849-7000

June 30, 2006

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on June 30, 2006 I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Wade
Richards, Layton & Finger

and that I also caused copies to be served upon the following in the manner indicated:

### BY HAND

William J. Wade
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19801

### BY FEDERAL EXPRESS

David P. Enzminger
O'Melveny & Myers LLP
610 Newport Center Drive
Newport Beach, CA  92660

/s/  Rodger D. Smith II (#3778)
Rodger D. Smith II (#3778)
rsmith@mnat.com

# EXHIBIT 1



**IGT and Walker Digital Sign Development Agreement**

RENO, Nev. and STAMFORD, Conn., April 10 /PRNewswire-FirstCall/ -- International Game Technology (NYSE: IGT) and Walker Digital, LLC, announced today that they have entered into agreements to facilitate the development and introduction of certain Walker Digital casino innovations into the IGT product line, particularly with respect to IGT's new server-based gaming platform. As part of this relationship, IGT has purchased a minority equity interest in Walker Digital's gaming subsidiary.

"IGT is focused on serving our customers, both casinos and players. We believe this relationship with Walker Digital will add value to this focus," said TJ Matthews, CEO of IGT. "These agreements provide us with access to an intellectual property portfolio focused on the creative use of networks within the casino, with a particular emphasis on player preferences. Walker Digital's portfolio is complementary to IGT's own extensive portfolio and we are very excited about the potential this relationship presents."

"Much as high-speed networks changed the world of credit cards, music, travel and telecommunications, we envision the same kind of dramatic developments for traditional casinos. We believe the networks inside casinos can be used in imaginative and powerful ways and have invented and innovated new systems to realize these possibilities," Walker Digital founder Jay Walker said. "IGT's leadership position, vision of the future, and emerging server-based gaming platform make them the perfect partner for bringing a new generation of innovations to market," added Walker.

About International Game Technology

IGT (www.IGT.com) is a global company specializing in the design, development, manufacturing, distribution and sales of computerized gaming machines and systems products.

About Walker Digital, LLC

Walker Digital, LLC (www.walkerdigital.com) is an independent R&D laboratory that has created one of the world's largest private portfolios of technology-centric intellectual property comprising approximately 800 issued and pending U.S. and international patents. Based in Stamford, Conn., the Walker Digital laboratory was founded in 1994 by Jay Walker, who serves as its chairman. Walker Digital's inventions cover marketing and system-based innovations across a wide range of industries, including retail, vending, travel, gaming, credit card, telecommunications and others. The lab is best known for creating the underlying innovations that led to priceline.com.

Safe Harbor Statements under The Private Securities Litigation Reform Act of 1995: This release may contain forward-looking statements. Such statements are subject to certain risks and uncertainties, and actual circumstances, events or results may differ materially from those projected in such forward-looking statements. Factors that could cause or contribute to differences include, but are not limited to, risks related to delay in the introduction of new products, rights licensed from content providers, the Company's ability to enforce its intellectual property rights, the Company's ability to meet its capital requirements, relationships with casino operators, the overall industry environment, customer acceptance of the Company's new products, further approvals of regulatory authorities, adverse court rulings, production and/or quality control problems, the denial, suspension or revocation of privileged operating licenses by governmental authorities, competitive pressures and general economic conditions as well as the Company's debt service obligations. For a discussion of these and other factors which may cause actual events or results to differ from those projected, please refer to the Company's most recent annual report on Form 10-K and quarterly reports on Form 10-Q, as well as other subsequent filings with the Securities and Exchange Commission. The Company cautions readers not to place undue reliance on any forward-looking statements. The Company does not undertake, and specifically disclaims any obligation, to update or revise such statements to reflect new circumstances or unanticipated events as they occur.

SOURCE IGT

CONTACT: Investor Relations, Pat Cavanaugh of IGT, +1-866-296-4232; or Jose Suarez, President of Walker Digital, +1-203-461-7258
Web site: http://www.igt.com

# EXHIBIT 2

# YAHOO! FINANCE
Search - Finance Home - Yahoo! - Help

PRNewswire

**Welcome [Sign In]**

To track stocks & more, Regis

**Financial News**

Enter symbol(s) [        ] [Basic] [GET] Symbol Lookup

 

**Press Release**                                    Source: IGT



# IGT Files Patent Infringement Lawsuit Against Alliance Gaming

Wednesday December 8, 9:57 pm ET

RENO, Nev., Dec. 8 /PRNewswire-FirstCall/ -- International Game Technology (NYSE: IGT - News) confirmed today that it has filed a patent infringement lawsuit against Alliance Gaming Corporation (NYSE: AGI - News) and its Bally Gaming, Inc. and Bally Gaming International, Inc. subsidiaries in the Federal District Court in Las Vegas. The filing followed the issuance on December 7 of a new United States Patent to IGT. This patent is based on continuation of a patent application originally filed in 1994.

**Related Quotes**
AGI 9-Dec 0 12:31pm (C)Yah
AGI    11.42    +0.01    Ns
IGT    33.80    -0.09    Ns
**View Detailed Quotes**
Delayed 20 mins
Quote data provided by Reuters

**Related News Stories**

· [external] IGT and Alliance in Patent Dispute - TheStreet.com (9:30 am)

· Alliance Gaming Announces Results of Shareholders Meeting - PR Newswire (6:00 am)

· InPlay: Alliance Gaming comments on patent infringement complaint - Baeting.com (Wed Dec 8)

· Alliance Gaming Comments Patent Infringement Complai - PR Newswire (Wed Dec 8)

Mor



ADVERTISEMENT

The lawsuit alleges the defendants are infringing the new patent and five other IGT patents covering gaming machines and systems that feature additional payout indicators such as bonus wheels and bonus reels, and touch screen display devices allowing for player interactivity. Several of the defendants' recently introduced gaming machines and systems are alleged in the lawsuit to be infringing the IGT patents.

"IGT has always vigorously defended its intellectual property," said Dave Johnson, general counsel for IGT. "Consistent with that philosophy, we have filed this case to stop defendants from misappropriating IGT's patented innovations in the areas of bonus gaming machine features and technology allowing players to communicate with games and systems. IGT has no plans at this time to seek a preliminary injunction or other short-term relief that would affect customers. We will wait for the legal process to proceed and address the issue of relief for IGT at the appropriate time."

IGT (www.IGT.com) is a world leader in the design, development and manufacture of microprocessor-based gaming and video lottery products and software systems in all jurisdictions where gaming or video lottery is legal.

Statements in this release which are not historical facts are "forward looking"

· By industry Computer hardware, Computers, Entertainment, Gambling, La Software

**Top Stories**

· Oil Prices Surge on Worries About OPEC - Associated Press (10:45 am)

· Stocks Sag on Jump in Joble Claims - Associated Press (12:17 pr

· Folgers Coffee Price Is Hiked 14 Percent - Associated Press (11: am)

· Push to Cut OPEC Oil Production Building - Associated Press (12:25 pm)

Mor

IGT Files Patent Infringement Lawsuit Against Alliance Gaming    —

statements under the Private Securities Litigation Reform Act of 1995. Although IGT believes that the expectations reflected in any of its forward-looking statements are reasonable, actual results could differ materially from those projected or assumed. IGT's future financial condition and results of operations, as well as any forward-looking statements, are subject to change and to inherent known and unknown risks and uncertainties. IGT does not intend, and undertakes no obligation, to update our forward- looking statements to reflect future events or circumstances.

• Most-emailed articles
• Most-viewed articles

Information on risks and factors that could affect IGT's business and financial results are included in our public filings made with the Securities and Exchange Commission.

Source: IGT

 Email Story     Set News Alert    Print Story

[Search News]

Sponsor Results

Easy and Fast Auto Loan from RoadLoans
Be in control by shopping like a cash buyer. Get great rates for all types of credit. New and used car financing and refinancing, private party purchase available.
www.roadloans.com

Fast Bad Credit Auto Loans
Qualify for a bad credit auto loan in 30 seconds before you apply. 83% approved nationwide. Rapid decisions to your e-mail. Amistoso Español.
www.fundingway.com

Auto Loans - All Credit Accepted
AutoLoans.us has a nationwide network of car dealers that offer programs for high-risk loans and are prepared to get you approved. Regardless of past credit problems, our experts can help.
www.autoloans.us

(What's This?)

Copyright © 2004 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2004 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited without the prior written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.

12/9/2004

EXHIBIT 3

**IGT**  News Release

### IGT files patent infringement lawsuit against Bally Technologies

**(RENO, Nev., May 1, 2006)** -- International Game Technology (NYSE: IGT) announced today that it has filed a lawsuit against Bally Technologies, Inc. (NYSE: BYI) and its affiliates Bally Gaming International, Inc. and Bally Gaming, Inc. in the United States District Court for the District of Delaware. The lawsuit alleges that defendants' "Bally Power Bonusing"™ technology, a suite of products recently installed at casinos on the East Coast and in Nevada, and being actively marketed and offered for sale to other casinos, infringes at least nine United States patents held by IGT. The lawsuit further alleges that the infringement has been carried out with full knowledge of the patents and IGT's rights. IGT's lawsuit requests preliminary and permanent injunctive relief, a court declaration of infringement, and monetary damages.

"Although IGT respects and supports true innovation in the gaming technology field, it cannot condone willful infringement by others of IGT's valuable intellectual property. The patents at issue in this lawsuit cover innovations that Bally has chosen to exploit for its own benefit without seeking a license or any other authorization from IGT," said TJ Matthews, IGT's Chairman of the Board and Chief Executive Officer.

Bally is the object of two other patent infringement lawsuits. In 2004, IGT sued Bally for infringing six patents including patents relating to IGT's highly successful bonus wheel gaming machines. IGT is also party to a lawsuit in which Bally is accused of infringing patents relating to optical systems for monitoring table games. Both these cases are pending in the Federal Courts in Nevada.

Additionally, in September, 2004, Bally was found guilty of infringing patents relating to multi-hand poker games such as IGT's highly successful *Triple Play Poker*® gaming machines. Damages of $7,361,000 plus interest and costs were awarded.

© IGT. All rights reserved.

**IGT** News Release

Page 2 of 2

IGT will continue to aggressively prosecute lawsuits against Bally and others who infringe its intellectual property.

IGT (www.IGT.com) is a global company specializing in the design, development, manufacturing, distribution and sales of computerized gaming machines and systems products.

*Statements in this release which are not historical facts are "forward looking" statements under the Private Securities Litigation Reform Act of 1995. Although IGT believes that the expectations reflected in any of its forward-looking statements are reasonable, actual results could differ materially from those projected or assumed. IGT's future financial condition and results of operations, as well as any forward-looking statements, are subject to change and to inherent known and unknown risks and uncertainties. IGT does not intend, and undertakes no obligation, to update our forward-looking statements to reflect future events or circumstances.*

**Information on risks and factors that could affect IGT's business and financial results are included in our public filings made with the Securities and Exchange Commission.**

**Contact:**

Patrick Cavanaugh
Director, Investor Relations of International Game Technology
866-296-4232

Ed Rogich
Vice President, Marketing
702-896-8690

### ###

© IGT. All rights reserved.

# EXHIBIT 4



**Tim Shortall**
Vice President U.S. Eastern Region Sales

June 13, 2006


Craig Sculos
General Manager
Lincoln Park
1600 Louisquisset Pike
Lincoln, Rhode Island


Dear Mr. Sculos,

John McMullen shared your letter with me dated March 18, 2006, which we received in our office on or about May 24, 2006, regarding player tracking. I apologize that it's taken this long for us to get back to you. Your correspondence informed us of your decision to purchase a player tracking system from Bally Gaming, Inc. ("Bally"). In particular, your letter requests that IGT purchase iView devices from Bally Gaming, Inc. ("Bally") and that IGT install the iView devices on IGT's video lottery terminals ("VLT") in Lincoln Park.

As always, IGT is more than happy to assist Lincoln Park in any manner that IGT can with your ongoing efforts to upgrade your facility in Rhode Island. Although we support your decision to purchase and install a player tracking system on the VLTs at Lincoln Park, we have concerns with your choice to install Bally's iView technology. Attached for your review and discussion is a copy of an IGT News Release dated May 1, 2006. As you can see from the News Release, IGT recently filed a lawsuit against Bally in Delaware alleging that Bally is infringing on at least 9 patents held by IGT. Furthermore, we believe the installation and use of Bally's iView device on a VLT for player tracking purposes is an infringement of IGT's patents. Therefore, as you can appreciate, IGT is unable at this time to comply with your request that IGT enter into a contractual relationship with Bally for the purchase and installation of iView devices on IGT's VLTs.

A copy of your letter as well as this correspondence has been forwarded to our Legal Department. If you have any questions or require additional information on the lawsuit, please feel free to contact Terry McMillin (IGT Counsel) at 775-448-7777.


**International Game Technology**

**Eastern Region Sales**
403 Westcoat Road
Egg Harbor Township, NJ 08234
www.IGT.com

We appreciate our business relationship with Lincoln Park and we are committed to finding a non-infringing alternative for you. For example, we may be able to assist you with the purchase and installation of a non-infringing "standard" player tracking system from Bally. However, as explained above, we are unable to purchase iView devices for you and install them on our VLTs.  If you choose to proceed with the purchase of standard equipment from Bally please contact John McMullen so we can work together on the purchase and installation of the equipment.

Sincerely,

Tim Shortall
Vice President U.S. Eastern Region Sales

cc: Gerald Aubin – Rhode Island Lottery