IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IGT, a Nevada corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>BALLY GAMING INTERNATIONAL, INC., BALLY TECHNOLOGIES, INC., and BALLY GAMING, INC.,<br><br>       Defendants. | C.A. No. 06-282 (KAJ)<br><br>JURY TRIAL DEMANDED |

## IGT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM COUNTS X, XI AND XII

OF COUNSEL

David P. Enzminger
Brett J. Williamson
Charles A. Thomasian
O'MELVENY & MYERS L.L.P.
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000


July 24, 2006

William J. Wade (#704)
wade@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Plaintiff and Counterclaim Defendant IGT*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

I.    SUMMARY OF ARGUMENT ................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS ...............................2

III.  STATEMENT OF FACTS ......................................................................3

IV.   ARGUMENT ...........................................................................................7

    A.    Bally Fails to State a Claim under Section 2 of the Sherman Act. ...............8

        1.    The Court should dismiss Bally's Sherman Act antitrust claim because IGT's acts are protected by the *Noerr-Pennington* doctrine. ...........................................................................................8

        2.    Bally does not plead actionable facts establishing a cognizable antitrust injury. ..............................................................12

    B.    The Court Should Dismiss Bally's Lanham Act Counterclaim. ...................14

        1.    The statements of fact in IGT's press release are literally true and therefore, as a matter of law, were not made with the requisite "bad faith." .........................................................................15

        2.    Subjective statements regarding the basis for bringing a lawsuit and statements of opinion are not actionable under the Lanham Act. ............................................................................18

        3.    IGT's statements in the Lincoln Park letter are *not* actionable under the Lanham Act because they either are literally true or comprise IGT's subjective statements or statements of opinion. ..................................................................................19

        4.    *Noerr-Pennington* precludes Bally's Lanham Act claim. ...............21

        5.    Bally cannot salvage its defective claim by pleading "[u]pon information and belief, IGT has also made other false and/or misleading statements to Bally's customers." ...................................22

    C.    The Court Should Also Dismiss Bally's Intentional Interference Counterclaim. ...........................................................................................24

        1.    Bally's intentional interference counterclaim should be dismissed, because Bally cannot plead the elements of the claim. ...............................................................................................24

        2.    Because IGT's press release and the Lincoln Park letter were not false, Bally's intentional interference counterclaim should be dismissed. ..............................................................................27

        3.    Defendants' intentional interference counterclaim is barred by *Noerr-Pennington* and the Delaware litigation privilege. ................27

V.    CONCLUSION ......................................................................................28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aircapital Cablevision, Inc. v. Starlink Commun. Group, Inc.*,
  634 F. Supp. 316 (D. Kan. 1986) ...............................................................9, 10, 21, 22

*Amer. Council of Certified Podiatric Physicians & Surgeons v. Amer.
  Board of Podiatric Surgery*,
  323 F.3d 366 (6th Cir. 2003) ......................................................................................13

*Amer. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and
  Prof'l Publ'ns, Inc.*,
  108 F.3d 1147 (9th Cir. 1997) ..............................................................................12, 13

*Apple Computer, Inc. v. Exponential Tech.*,
  No. 16315, 1999 Del. Ch. LEXIS 9 (Del. Ch. Jan. 21, 1999) ......................................25

*Art Line, Inc. v. Universal Design Collections, Inc.*,
  966 F. Supp. 737 (N.D. Ill. 1997)................................................................................18

*Atlantic Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ...................................................................................................12

*Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*,
  55 F. Supp. 2d 309 (D. Del. 1999) ..............................................................................25

*Barr Lab., Inc. v. Quantum Parmics. Inc.*,
  827 F. Supp. 111 (E.D.N.Y. 1993).............................................................................23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ...................................................................................................12

*Bushnell Corp. v. ITT Corp.*,
  973 F. Supp. 1276 (D. Kan. 1997) .......................................................................12, 13

*Cascade Investments, Inc. v. Bank of America, N.A., S.A.*,
  CV-N-99-559-ECR (RAM), 2000 U.S. Dist. LEXIS 21474 (D. Nev.
  Sept. 28, 2000)...........................................................................................................25

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993) .......................................................................................18

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
  168 F.3d 119 (3d Cir. 1997) ................................................................................passim

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) .....................................................................................18

*Coastal States Mktg., Inc. v. Hunt*,
  694 F.2d 1358 (5th Cir. 1983) .................................................................................9, 10

## TABLE OF AUTHORITIES
### (continued)

Page

*Cook Inc. v. Boston Scientific Corp.*,
No. 01 C 9479, 2002 U.S. Dist. LEXIS 17331 (ND. Ill. Feb. 28, 2002) .................... 19

*DCI Mktg., Inc. v. Justrite Mfg. Co.*,
213 F. Supp. 2d 971 (E.D. Wis. 2002) ........................................................................ 17

*DeBonaventura v. Nationwide Mut. Ins. Co.*,
428 A.2d 1151 (Del. 1981) .......................................................................................... 26

*Dial A Car, Inc. v. Transportation, Inc.*,
317 U.S. App. D.C. 240, 82 F.3d 484 (D.C. Cir. 1996) .............................................. 19

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ................................................................................................. 8, 10

*Ethypharm S.A. France v. Bentley Pharms., Inc.*,
388 F. Supp. 2d 426 (D. Del. 2005) ................................................................. 24, 25, 26

*Evancho v. Fisher*,
423 F.3d 347 (3d Cir. 2005) .......................................................................................... 7

*Garshman v. Universal Resources Holding, Inc.*,
824 F.2d 223 (3d Cir. 1987) ........................................................................................ 25

*Griffin Corporate Servs., LLC v. Jacobs*,
No. 396-N, 2005 Del. Ch. LEXIS 120 (Del. Ch. Aug. 11, 2005) ................................ 24

*Groden v. Random House*,
61 F.3d 1045 (2d. Cir 1995) ................................................................................... 15, 19

*Implant Innovations, Inc., v. Nobelpharma AB*,
1995 U.S. Dist. LEXIS 13804 (N.D. Ill. 1995) ........................................................... 23

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ........................................................................................ 7

*In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*,
882 F. Supp. 915 (C.D. Cal. 1994) .............................................................................. 23

*Kottle v. Northwest Kidney Centers*,
146 F.3d 1056 (9th Cir. 1998) ....................................................................................... 9

*Matsushita Elecs. Corp. v. Loral Corp.*,
974 F. Supp. 345 (S.D.N.Y. 1997) ........................................................................... 9, 22

*Max Daetwyler Corp. v. Input Graphics, Inc.*,
608 F. Supp. 1549 (E.D. Pa. 1985) .............................................................................. 23

*MedImmune, Inc. v. Genentech, Inc.*,
No. CV 03-2567 MRP, 2003 U.S. Dist. LEXIS 23443 (C.D. Cal. Dec.
22, 2003) ......................................................................................................................... 9

iii

## TABLE OF AUTHORITIES
### (continued)

<strong>Page</strong>

*Melea Ltd. v. Quality Models Ltd.*,
   345 F. Supp. 2d 743 (E.D. Mich. 2004) ....................................................21

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
   165 F.3d 891 (Fed. Cir. 1998) ........................................................16, 17, 27

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ........................................................................................19

*Nat'l Ass'n of Pharm. Mfrgs. v. Ayerst Labs.*,
   850 F.2d 904 (2d Cir. 1988) ......................................................................13

*Nix v. Sawyer*,
   466 A.2d 407 (Del. Super. Ct. 1983)..........................................................28

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998) ..................................................................10

*Prof. Real Estate Investors v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ......................................................................................11

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
   902 F.2d 222 (3d Cir. 1990) ......................................................................19

*SDS USA, Inc. v. Ken Specialties*,
   No. 99-133, 2002 U.S. Dist. LEXIS 16762 (D.N.J. Aug. 28, 2002)......................19, 27

*Short v. News-Journal Co.*,
   205 A.2d 6 (Del. Super. Ct.), *aff'd*, 212 A.2d 718 (Del. 1965) ....................................28

*Springs Window Fashions LP v. Novo Indus., L.P.*,
   323 F.3d 989 (Fed. Cir. 2003) ....................................................................16

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965) ......................................................................................9

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) ....................................................................................10

*Zenith Electronics Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999) ......................................................15, 16, 27

### STATUTES

28 U.S.C. § 1404(a)................................................................................................3

Lanham Act § 43(a)(1)(B) ....................................................................................16

iv

**TABLE OF AUTHORITIES**
(continued)

Page

**OTHER AUTHORITIES**

2A Moore & Lucas, *Moore's Federal Practice* 12.08 (2d ed. 1984) ................................21

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,
§ 27:109 (2002) ..................................................................................................................18

Restatement (Second) of Torts, § 768 (a) ........................................................................26

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................................23

Fed. R. Civ. Proc. 12(b)(6).................................................................................................25

v

## I.    SUMMARY OF ARGUMENT

IGT moves to dismiss three of the 12 counterclaims asserted by Bally.  In these counterclaims, Bally pleads that IGT engaged in the following conduct:  obtained patents, filed patent claims against Bally, issued press releases about the patent claims, and advised at least one mutual customer about the lawsuit.  Counterclaims ¶¶ 15-39. According to Bally, this conduct gives rise to antitrust liability under the Sherman Act (Count X), liability for false statements under the Lanham Act (Count XI), and intentional interference with business relationships (Count XII).  But this alleged conduct, even if true, cannot support Bally's claims.

Bally's Count X for antitrust violations under section 2 of the Sherman Act should be dismissed because:

- IGT's allegedly anti-competitive acts are constitutionally protected under the *Noerr-Pennington* doctrine, and cannot support an antitrust claim; and

- Bally's pleading reveals that Bally lacks antitrust standing because it alleges only injury to itself as a competitor of IGT, and has not, and cannot, plead any cognizable antitrust injury to the market.

Bally's Count XI for violation of the Lanham Act claim should  be dismissed because:

- Bally's own pleading shows that the press releases and the customer letter are limited to truthful reports of the lawsuit and subjective statements of opinion, neither of which can be actionable as a matter of law under the Lanham act;

- Bally has not pleaded the identity of even a single false statement; and

- IGT's truthful statements about the lawsuit are also immune from liability under the *Noerr-Pennington* doctrine.

Bally's Count XII for intentional interference with existing business relations should also be dismissed because.

- Bally has failed to plead the identity of any existing contractual relations or business expectancies with which IGT is alleged to have interfered;
- Bally's own pleading reveals that IGT's letter to Lincoln Park rejected a proposed business deal between IGT and Lincoln Park, which is not actionable as interference, as a matter of law, even if Bally would have received an incidental benefit from the proposed deal between IGT and Lincoln Park;
- the interference claim is preempted by federal patent law, because Bally cannot allege facts from which the court could infer that IGT's statements about the litigation were made in bad faith;
- if Bally's claim is based on IGT's press reports of its litigation claims, the *Noerr-Pennington* doctrine also precludes Bally's claims for interference with prospective business advantage; and
- The Delaware litigation privilege precludes Bally from bringing claims based IGT's statements about pending litigation.

These three counterclaims should be dismissed with prejudice because Bally has failed to plead, and cannot plead, sufficient facts to support them, even assuming the truth of the factual allegations. Bally's own pleading reveals that Bally is not entitled to relief under any set of facts that could be proven. Accordingly, IGT moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss these claims.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On April 28, 2006, IGT filed a patent infringement action against Bally alleging infringement of United States Patent Nos. RE 38,812 ("the '812 patent"), RE 37,885 ("the '885 patent"), 6,832,958 ("the '2,958 patent"), 6,319,125 ("the '125 patent"), 6,244,958 ("the '4,958 patent"), 6,431,983 ("the '983 patent"), 6,607,441 ("the '441 patent"), 6,565,434 ("the '434 patent"), and 6,620,046 ("the '046 patent"). Bally served its answer, affirmative defenses, and counterclaims ("Bally's Counterclaim") on June 30,

2

2006. (D.I. 40.)

The parties held their Rule 26(f) conference on May 19, 2006 and filed their joint proposed case management plan and scheduling order on May 25, 2006. (D.I. 23.) On June 1, 2006, Bally filed its motion to transfer the case to the District of Nevada pursuant to 28 U.S.C. § 1404(a). (D.I. 25.) IGT filed its opposition to Bally's motion to transfer on June 22, 2006. (D.I. 34.) Bally filed its reply brief on June 30, 2006. (D.I. 39.) On July 6, 2006, the Court held a scheduling conference and issued a Scheduling Order on July 11, 2006. (D.I. 45.)

On May 26, 2006, IGT served its first request for production of document and things. (D.I. 24.) On June 7, 2006 Bally served IGT with its discovery requests, including Bally's first set of interrogatories and first set of requests for productions of documents and things. (D.I. 30.)

## III.    STATEMENT OF FACTS

This patent infringement action was filed by IGT against Bally on April 28, 2006. (IGT's Complaint for Patent Infringement ("Complaint"), D.I. 1.) Bally filed its answer, affirmative defenses and counterclaims on June 30, 2006. (D.I. 40.) Bally's Counterclaim did not challenge the adequacy of IGT's complaint. But Bally asserts twelve counterclaims, nine of which seek declaratory judgment of non-infringement, invalidity, and unenforceability of the nine patents in the lawsuit. The nine counterclaims for declaratory judgment are not at issue in this motion.

IGT moves to dismiss Bally's counterclaims that seek to impose liability against IGT for having merely filed patent claims and published reports about the case: an antitrust counterclaim for attempted monopolization of "the gaming systems market" in alleged violation of section 2 of the Sherman Act (Count X), a Lanham Act counterclaim for alleged false representation under section 43(a) (Count XI), and a counterclaim under Delaware state law for alleged intentional interference with business relationships (Count XII). (Bally's Counterclaim, D.I. 40 at 25-28.)

3

Each of the three counterclaims relies on allegations by Bally directly relating to IGT's filing of patent claims, its issuance of a May 1, 2006 press release announcing the lawsuit (the "2006 Press Release"), and its response to an inquiry from a customer, Lincoln Park casino in Rhode Island, informing Lincoln Park of the lawsuit's existence (the "Lincoln Park letter"). (Bally's Counterclaim, Exs. 3-4.) On May 1, 2006 IGT issued the 2006 Press Release announcing the filing of this patent infringement action against Bally. (Bally's Counterclaim, Ex. 3.) This press release reports *allegations* that IGT has made against Bally in this lawsuit. (*Id.*) For example, the 2006 Press Release states:

> [This] *lawsuit alleges* that defendants' "Bally Power Bonusing"™ technology, a suite of products recently installed at casinos on the East Coast and in Nevada, and being actively marketed and offered for sale to other casinos, infringes at least nine United States Patents held by IGT. The *lawsuit further alleges* that the infringement has been carried out with full knowledge of the patents and IGT's rights. *IGT's lawsuit requests* preliminary and permanent injunctive relief, a court declaration of infringement, and monetary damages.

(Bally's Counterclaim, D.I. 40, Ex. 3 (emphasis added).) Each of the three sentences in the above excerpt from the 2006 Press Release begins with the express qualification that the statement made in each sentence is what has been alleged or requested in this lawsuit. The 2006 Press Release also states:

> Bally is the subject of two other patent infringement lawsuits. In 2004, IGT sued Bally for infringing six patents including patents relating to IGT's highly successful bonus wheel gaming machines. IGT is also a party to a *lawsuit in which Bally is accused* of infringing patents relating to optical systems for monitoring table systems. Both of these cases are pending in the Federal Courts in Nevada.

> Additionally, in September, 2004, Bally was found guilty of infringing patents to multi-hand poker games such as IGT's highly successful Triple Play Poker(R) gaming machines. Damages of $7,361,000 plus interest and costs were awarded.

4

(Bally's Counterclaim, D.I. 40, Ex. 3 (emphasis added).) These two paragraphs quoted above report undisputed historical facts about three other lawsuits between IGT and Bally, which Bally itself pleads in its Counterclaim. (Bally's Counterclaim, D.I. 40, ¶19, Ex. 2; *Id.* Similarly, Bally (formerly Alliance Gaming Corp.) was found in September 2004 to have infringed IGT's patents and ordered to pay $7,361,000 in damages. See Request for Judicial Notice, filed concurrently herewith, Exhibit A, (Judgment, *Action Gaming, Inc and IGT v. Alliance Gaming Corp, et. al*, Case No. CV-01-1109-JCM (September 29, 2004). Bally's own counterclaim pleads enough to show that the factual statements in the press releases accurately report the three lawsuits. Importantly, Bally does not and cannot plead otherwise.

Finally, the 2006 Press Release contains further the opinion of IGT's Chairman of the Board and Chief Executive Officer about the lawsuit:

> "Although IGT respects and supports true innovation in the gaming technology field, it cannot condone willful infringement by others of IGT's valuable intellectual property. The patents at issue in this lawsuit cover innovations that Bally has chosen to exploit for its own benefit without seeking a license or any other authorization from IGT," said TJ Matthews, IGT's Chairman of the Board and Chief Executive Officer.

(Bally's Counterclaim, D.I. 40 at Ex. 3.)

On or about May 24, 2006, IGT received a letter from one of its customers — Lincoln Park casino. (Bally's Counterclaim, D.I. 40 at Ex. 4.) In that letter, Lincoln Park casino requested that IGT purchase a particular Bally product (*i.e.*, iView) and install the product on an IGT product (*i.e.*, video lottery terminal ("VLT")) for the customer's use at the casino. (*Id.*) IGT declined the customer's request because the iView product requested by the customer is the subject of pending litigation between IGT and Bally. (*Id.*) Accordingly, on June 13, 2006, IGT responded to the customer by sending the Lincoln Park letter, which provides in pertinent part as follows:

> As always, IGT is more than happy to assist Lincoln Park in any manner that IGT can with your ongoing efforts to upgrade your facility in Rhode Island. Although we support your decision to purchase and install a player tracking system on the VLTs at Lincoln Park, we have concerns with your choice to install Bally's iView technology. Attached for your review and discussion is a copy of an IGT News Release dated May 1, 2006. As you can see from the News Release, **_IGT recently filed a lawsuit against Bally_** in Delaware **_alleging_** that **_Bally is infringing on at least 9 patents_** held by IGT. Furthermore, **_we believe_** the **_installation and use of Bally's iView device on a VLT for player tracking purposes is an infringement of IGT's patents_**. Therefore, as you can appreciate, IGT is unable at this time to comply with your request that IGT enter into a contractual relationship with Bally for the purchase and installation of iView devices on IGT's VLTs.

(Bally's Counterclaim, D.I. 40 at Ex. 4 (emphasis added).) As evident from the excerpt above, the Lincoln Park letter factually reports either IGT's allegations in this lawsuit against Bally or IGT's subjective statements and opinions about this lawsuit and its basis for filing of the lawsuit. (Complaint, D.I. 1.) Furthermore, in the Lincoln Park letter IGT offered its customer the following assistance as an alternative to the customer's request:

> We appreciate our business relationship with Lincoln Park and we are committed to finding a non-infringing alternative for you. For example, **_we may be able to assist you with the purchase and installation of a non-infringing 'standard' player tracking system from Bally_**. However, as explained above, we are unable to purchase iView devices for you and install them on our VLTs. If you choose to proceed with the purchase of standard equipment from Bally please contact John McMullen so we can work together on the purchase and installation of the equipment.

(Bally's Counterclaim, D.I. 40 at Ex. 4 (emphasis added).) IGT's suggested alternative solution for the customer involves the purchase and use of another Bally product that IGT believes is a non-infringing product. (_Id._)

Bally's antitrust counterclaim (Count X) also relies on allegations by Bally

6

relating to two other IGT press releases: (i) an April 10, 2006 press release entitled "IGT and Walker Digital Sign Development Agreement" ("the Walker Digital press release"); (Bally's Counterclaim, D.I. 40 at Ex. 1.) and (ii) a December 8, 2004 press release entitled "IGT Files Patent Infringement Lawsuit Against Alliance Gaming" ("the Alliance press release"). (Bally's Counterclaim, D.I. 40 at Ex. 2.) The Walker Digital press release is a relatively short announcement that IGT and Walker Digital, LLC, a third party, have entered into an agreement that facilitates the development and introduction of certain Walker Digital casino technology into IGT's product line. (Bally's Counterclaim, D.I. 40 at Ex. 1.) The Walker Digital press release also contains a statement by the respective heads of each company stating each executive's opinion about the perceived benefits of the announced joint development agreement. (*Id.*)

The Alliance press release announces the filing of a patent infringement lawsuit against Bally Technologies, Inc. in Nevada (formerly known as Alliance Gaming Corp.). (Bally's Counterclaim, D.I. 40 at Ex. 2.) Much like the 2006 Press Release, the Alliance press release simply reports specific IGT *allegations* against the Bally defendants as those allegations have been made in the complaint filed in that lawsuit. (*Id.*) For example, the Alliance press release uses phrases like "*the lawsuit alleges* the defendants are infringing" and "recently introduced [products] are *alleged in the lawsuit* to be infringing." (*Id.*) Also similar to the 2006 Press Release, the Alliance press release contains a statement of opinion about the lawsuit by an IGT executive. (*Id.*)

## IV.    **ARGUMENT**

Bally's counterclaim counts X, XI and XII should be dismissed with prejudice because Bally has failed to plead sufficient facts in support of these counterclaims. A Rule 12(b)(6) motion should be granted if the claimant would not be entitled to relief under any set of facts that could be proven. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). In deciding the sufficiency of the allegations, a court need not credit "bald assertions" or "legal conclusions." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*,

7

114 F.3d 1410, 1429-30 (3d Cir. 1997)). Assuming the facts pleaded in Bally's counterclaims are true, the Court should dismiss Bally's Sherman Act (Count X), Lanham Act (Count XI), and intentional-interference (Count XII) counterclaims because neither the pleaded facts nor any reasonable inferences from these facts support the claims.

A.    **Bally Fails to State a Claim under Section 2 of the Sherman Act.**

Bally contends that IGT's actions in merely filing patent claims and issuing truthful press releases describing the litigation are anti-competitive acts that violate Section 2 of the Sherman Act. Specifically, Bally alleges IGT: (1) purchased or acquired patents and/or exclusive licenses to patents; (2) filed patent infringement actions based on patents it owns; (3) issued press releases describing pending lawsuits and a letter in which IGT declined a mutual customer's request that IGT help the customer install Bally products on IGT slot machines; and (4) refused to give Bally access to IGT's products so that Bally could test its allegedly infringing products on IGT machines. (Bally's Counterclaim ¶104.) None of these acts, even if true, is an actionable basis for an antitrust claim.

1.    **The Court should dismiss Bally's Sherman Act antitrust claim because IGT's acts are protected by the *Noerr-Pennington* doctrine.**

Even assuming that Bally's factual allegations are true, the alleged conduct is not actionable because it falls squarely within the constitutional protection of the *Noerr-Pennington* doctrine. In particular, IGT's patent infringement lawsuits and conduct incidental to those lawsuits — such as a press release announcing the lawsuit and a letter informing a mutual customer of the lawsuit in response to that customer's inquiry — are protected under *Noerr-Pennington*. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-38 (1961) (stating that imposing Sherman Act liability based on a defendant's publicity campaign to influence the government conflicts

with the constitutional right of petition); *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965) (efforts to influence public officials are shielded from Sherman Act liability regardless of intent or purpose).

IGT's filing and prosecution of this lawsuit is protected by *Noerr-Pennington* immunity. "A party who petitions the government for redress is generally immune from antitrust liability" under the *Noerr-Pennington* doctrine. *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1997). *Noerr-Pennington* immunity extends to persons who petition all types of governmental entities, including courts and administrative agencies. *Id.* at 122; *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1059 (9th Cir. 1998); *MedImmune, Inc. v. Genentech, Inc.*, No. CV 03-2567 MRP, 2003 U.S. Dist. LEXIS 23443, at *25 (C.D. Cal. Dec. 22, 2003) ("[A]ttempts to obtain the issuance of a patent from the PTO are ordinarily covered by *Noerr-Pennington*.").

Moreover, IGT's press release announcing the filing of this lawsuit and its letter informing Lincoln Park of the existence of the litigation are protected as conduct incidental to the litigation. It is well established that publicity reasonably and normally attendant upon effective litigation are protected under *Noerr-Pennington*. *See Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) (finding that petitioning immunity "protect[s] those acts reasonably and normally attendant upon effective litigation," including publicity and threats of litigation); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (acts incidental to protected litigation are likewise entitled to *Noerr-Pennington* immunity); *Aircapital Cablevision, Inc. v. Starlink Commun. Group, Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986) (*Noerr-Pennington* immunity extends to press releases and other publicity regarding protected lawsuit).

In *Coastal States*, the plaintiff alleged that defendant had engaged in anticompetitive behavior by publicizing a threat to sue anyone who purchased crude oil extracted from a concession formerly held by defendant and nationalized by the Libyan government. 694 F.2d at 1367. Plaintiff argued that "because threats of litigation are not

9

directed to a government, they do not fall within the rationale of 'petitioning immunity.'"
*Id.* The court found this argument "without merit," and concluded that petitioning immunity "protect[s] those acts reasonably and normally attendant upon effective litigation," which included publicity and threats of litigation intended to prevent potential purchasers of the crude from taking without notice of its claims. *Id.* Here, IGT issued a press release announcing the filing of its lawsuit, describing the allegations made in the lawsuit, and stating historical facts regarding other litigation involving Bally and IGT. In addition, in response to a request from Lincoln Park that IGT purchase and install Bally devices on IGT devices, IGT informed Lincoln Park that the requested Bally device was accused of infringing IGT's patent in IGT's recently filed lawsuit. The press release and letter are clearly publicity incidental to the protected petitioning activity and are therefore protected by *Noerr-Pennington. See Coastal States*, 694 F.2d at 1367; *AirCapital Cablevision, Inc.*, 634 F. Supp. at 324 (holding that "short-lived publicity and [] indirect threats" were incidental to the lawsuit and thus protected under *Noerr-Pennington*).

To sustain an antitrust claim based on a patentee's bringing of a lawsuit for patent infringement notwithstanding *Noerr-Pennigton* immunity, the alleged infringer must prove "(1) that the asserted patent was obtained through knowing and willful fraud within the meaning of *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) . . . or (2) that the infringement suit was 'a mere sham to cover what is actually nothing more than an attempt to interfere with the business relationships of a competitor.'" *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (citation omitted). Bally does not allege that the asserted patents were obtained through knowing and willful fraud as defined in *Walker Process*. Therefore, to strip IGT of the presumptive application of *Noerr-Pennington* immunity, Bally must allege facts that, if true, would demonstrate IGT's petitioning activity was "a mere sham." *Id.*; *Cheminor Drugs*, 168 F.3d at 122 (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)).

10

To show that a litigation is a sham, the antitrust plaintiff must show that the petitioning activity was "objectively baseless" — *i.e.* that there was no "probable cause" to institute the proceedings. *Cheminor Drugs*, 168 F.3d at 122. The existence of probable cause, which requires no more than that the petitioner have "a reasonable belief that there is a chance that a claim may be held valid upon adjudication," is an absolute defense. *Id.* In *Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57-58 (1993), the Supreme Court set forth a two-prong test for determining whether the "sham" exception applies to petitioning activity:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

508 U.S. at 60.

Thus, unless the Court concludes that no reasonable litigant could realistically expect success on the merits of IGT's claims, Bally's allegations concerning IGT's subjective motivations are insufficient to defeat the protection of *Noerr-Pennington*. *See also Cheminor Drugs*, 168 F.3d at 122 ("Often, a petition to the government causes an anti-competitive effect, but 'evidence of anticompetitive intent or purpose alone cannot transform otherwise legitimate activity into a sham.'") (*quoting Prof'l Real Estate Investors*, 508 U.S. at 57-58). Even if Bally's baseless allegation that IGT's lawsuit is intended to "eliminate Bally from the gaming systems market" were true, Bally's claim still fails.

The supposedly "anti-competitive" conduct alleged by Bally merely describes petitioning activity presumptively immunized from antitrust liability under *Noerr-Pennington*. Because Bally has alleged no facts from which the court may infer that these alleged activities were both "objectively baseless" and constituted a concealed

11

attempt to interfere with Bally's business, this alleged conduct is immaterial to any valid claim or defense and therefore, Bally's antitrust claim under Section 2 of the Sherman lacks any evidentiary support and should be dismissed.

**2.    Bally does not plead actionable facts establishing a cognizable antitrust injury.**

To sustain an antitrust claim, a party asserting antitrust violations must establish existence of "antitrust injury." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). Losses stemming from continued competition are not antitrust injuries, because "antitrust laws were enacted for 'the protection of *competition*, not *competitors*.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Taken as true, the allegations in Bally's counterclaims would establish only that IGT has acquired patents and licenses in the field of gaming systems, sued Bally for patent infringement, issued a "vague and misleading" press release regarding such litigation, made "false statements to Bally's customers," and refused to allow Bally access to certain IGT products for testing. (Bally's Counterclaim, D.I. 40 at 25-27.) These allegations are insufficient to establish antitrust injury. The alleged result of these actions is harm to "Bally's ability to compete in the gaming systems market." (*Id.* at 14-16.) Harm to a competitor's ability to compete in the market, however, is not antitrust injury — harm to competition is required. *See Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1285 (D. Kan. 1997). Moreover, courts presume that harm to competition resulting from one competitor's disparaging comments about a rival is *de minimis*. *Amer. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997) (affirming judgment as a matter of law that harm to competition caused by antitrust defendant's false and disparaging statements about plaintiff was *de minimis*, and did not rise to level of antitrust violation). Thus, antitrust claims based on such statements should be ignored because buyers recognize that disparaging statements by a seller about its rival to be non-objective and highly biased.

12

*Id.*, 108 F.3d at 1151. Thus, even if Bally had pleaded that IGT's statements were false, the claimed statements relate only to Bally, which is insufficient to state an antitrust injury.

In *Bushnell*, the court explained that contacting plaintiff's customers, defaming plaintiff, and using plaintiff's trade secrets did not cause antitrust injury merely because this conduct threatened to harm plaintiff's ability to compete in the market. 973 F. Supp. at 1285. Rather, harm to plaintiff's ability to compete did not affect competition in the market generally, and plaintiff's conclusory allegation that removal of one competitor from the market would injure competition did not establish otherwise. *Id.* ("It is clear from the Supreme Court precedent that making life difficult for one particular competitor in the absence of conduct that otherwise affects the entire market does not give rise to antitrust injury."). Similarly, because the "logical and stated result" of IGT's alleged conduct would be harm only to Bally's ability to compete in the gaming systems market, Bally has not alleged facts sufficient to establish antitrust injury.

Consequently, to sustain a Sherman Act claim based on IGT's purportedly misleading statements regarding Bally, courts require "a preliminary showing of significant and more-than-temporary harmful effects on competition (and not merely upon a competitor or customer) before these practices can rise to the level of exclusionary conduct." *See id.* at 1151; *Amer. Council of Certified Podiatric Physicians & Surgeons v. Amer. Board of Podiatric Surgery*, 323 F.3d 366, 371 (6th Cir. 2003); *Nat'l Ass'n of Pharm. Mfrgs. v. Ayerst Labs.*, 850 F.2d 904, 916 (2d Cir. 1988). To make this showing, Bally must allege facts that, if true, could demonstrate IGT's alleged statements were "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *See Amer. Prof'l Testing*, 108 F.3d at 1152; *Amer. Council of Certified Podiatric Physicians*, 323 F.3d at 37; *Nat'l Ass'n of Pharm. Mfrgs.*, 850 F.2d at 916.

13

Bally's counterclaim contains no allegations from which the court could infer support for these elements. In contrast, Bally's allegations are limited to conduct that Bally contends harms Bally. Bally's counterclaims rely heavily on a laundry list of purportedly "anti-competitive" acts by IGT, including: (1) purchasing or acquiring patents and/or exclusive licenses to patents "for anti-competitive purposes;" (2) filing patent infringement actions purportedly to "intimidate and drive out competitors" and "based upon alleged infringement of patents that were fraudulently obtained, that IGT knows are invalid, or that IGT knows are not infringed;" (3) making "overbroad and ill-defined claims of infringement of the patents-in-suit knowing that they are meritless in order to eliminate Bally from the gaming systems market;" (4) deceiving "the public that Bally's Power Bonusing suite of products infringe IGT's patents by issuing a vague and misleading press release as well as other false statements to Bally's customers;" and (5) seeking "to restrict competition in the gaming systems market by interfering with Bally's ability to properly test its products, which restricts Bally's ability to market and sell its systems." (Bally's Counterclaim, D.I. 40 at 25-26.) None of these allegations relates to prolonged impact on the market, but recite, at best, short term effects on Bally, which is insufficient to state an antitrust claim as a matter of law.

For these reasons, the statements made in IGT's patent infringement lawsuits, press releases and the Lincoln Park letter are immunized from antitrust liability and, even if not immune, do not rise to the level of exclusionary conduct actionable under the Sherman Act. Accordingly, the Court should dismiss Count X of Bally's counterclaims.

## B.      The Court Should Dismiss Bally's Lanham Act Counterclaim.

To prevail on its counterclaim of false representation under the Lanham Act (Count XI), Bally must show that: (1) IGT has made a false or misleading statement of fact concerning its product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the statement was

14

introduced into interstate commerce; and (5) there is some causal link between the challenged statement and harm to the plaintiff. *See Zenith Elec. Corp. v. Exzec. Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999). Statements of opinion, however, are not actionable under the Lanham Act. *See* § 43(a)(1)(B) (prohibiting in defined cases a "false or misleading description of *fact*, or false or misleading representation of *fact*"); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (constitutionally prohibiting liability for a statement of opinion unless the allegedly false statement contains a "provably false factual connotation"); *see also Groden v. Random House*, 61 F.3d 1045 (2d. Cir 1995) ("[S]tatements of opinion are generally not the basis for Lanham Act liability.").

The principal allegations underlying Bally's Lanham Act claim relate to the 2006 Press Release and the Lincoln Park letter. Bally claims that IGT issued a "vague and misleading press release" and that IGT made "false and misleading statements" to a mutual customer in the Lincoln Park letter. (Bally's Counterclaim, D.I. 40 at 27.) Despite Bally's characterization of the press release and the Lincoln Park letter, Bally does not allege that any statement in the press release or letter is a false statement of fact. Nor could it so plead, because the facts set forth in those documents are unquestionably true, as Bally's own counterclaim pleading establishes. The Court should dismiss Count XI of Bally's counterclaims.

> **1.    The statements of fact in IGT's press release are literally true and therefore, as a matter of law, were not made with the requisite "bad faith."**

Bally claims that IGT has made "in bad faith, material and false and/or misleading representations regarding Defendants/Counter-Plaintiffs' products" by releasing the 2006 Press Release, which Bally claims is "a vague and misleading press release designed to confuse [Bally's] customers into believing that Bally's Power Bonusing systems products infringe IGT's patents." (Bally's Counterclaim, D.I. 40 at 27).

Bally's argument that the 2006 Press Release supports a Lanham Act counterclaim

fails for at least two reasons. First, Bally has failed to plead any facts showing bad faith on the part of IGT in issuing the 2006 Press Release. Marketplace representations of patent infringement may form the basis of a claim under § 43(a) of the Lanham Act only if the representations were made in "bad faith." *Zenith,*182 F.3d at 1353-54. In this regard, "a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed. Cir. 1998). Furthermore, the law "recognizes a presumption that the assertion of a duly granted patent is made in good faith." *Springs Window Fashions LP v. Novo Indus., L.P.,* 323 F.3d 989, 999 (Fed. Cir. 2003).

Second, Bally's counterclaim incorporates the press release, which can be considered to show that it contains no false statements. Indeed, Bally does not plead what it contends to be false. The relevant text of the actual press release attached to Bally's counterclaim shows the press release is not false or misleading:

> [IGT] announced today that it has filed a lawsuit against Bally Technologies, Inc. (NYSE: BYI) and its affiliates Bally Gaming International, Inc. and Bally Gaming, Inc. in the United States District Court for the District of Delaware. The ***lawsuit alleges*** that defendants' "Bally Power Bonusing" TM technology, a suite of products recently installed at casinos on the East Coast and in Nevada, and being actively marketed and offered for sale to other casinos, infringes at least nine United States patents held by IGT. The ***lawsuit further alleges*** that the infringement has been carried out full knowledge of the patents and IGT's rights. IGT's ***lawsuit requests*** preliminary and permanent injunctive relief, a court declaration of infringement, and monetary damages.

(Bally's Counterclaim, D.I. 40 at Ex. 3 (emphasis added).) Each of the statements in the press release simply states what the lawsuit has alleged. (IGT Complaint, D.I. 1). Comparing the press release to IGT's complaint in this case reveals objectively that the press release truthfully reports that IGT accused Bally of patent infringement — a fact

16

that Bally itself pleads to be true in its own counterclaim. (Bally Counterclaim, D.I. 40 at 13, ¶20.)

After pleading facts showing the press release to be true on its face, Bally must plead something false about the press release, which Bally is unable to do.

IGT's 2006 Press Release also states:

> Bally is the subject of two other patent infringement lawsuits. In 2004, IGT sued Bally for infringing six patents including patents relating to IGT's highly successful bonus wheel gaming machines. IGT is also a party to a *lawsuit in which Bally is accused* of infringing patents relating to optical systems for monitoring table systems. Both of these cases are pending in the Federal Courts in Nevada.
>
> Additionally, in September, 2004, Bally was found guilty of infringing patents to multi-hand poker games such as IGT's highly successful Triple Play Poker(R) gaming machines. Damages of $7,361,000 plus interest and costs were awarded.

(Bally's Counterclaim, D.I. 40 at Ex. 3 (emphasis added).) With respect to the statements above, once again IGT is reporting undeniable historical facts and stating what the lawsuits allege as filed in federal court. Bally's Lanham Act claim does not plead that any of these statements are false, nor could it so plead, because the statements are objectively true. IGT did sue Bally in Nevada as Bally acknowledges in its answer and counterclaims. (Bally's Counterclaim, D.I. 40 at 15.) And Bally *was* found to have infringed IGT's patents in 2004, and was ordered to pay more than $7 million in damages, interest and cost. See Request for Judicial Notice, filed concurrently herewith, Exhibit A, (Judgment, *Action Gaming, Inc and IGT v. Alliance Gaming Corp, et. al*, Case No. CV-01-1109-JCM (September 29, 2004). Bally does not and cannot plead these statements as false. And as the Federal Circuit has made clear, "[an assertion of] bad faith is not supported when the information is objectively accurate." *See Mikohn*, 165 F.3d at 897; *see also DCI Mktg., Inc. v. Justrite Mfg. Co.*, 213 F. Supp. 2d 971, 972 (E.D.

17

Wis. 2002) ("the communication of accurate information about patent rights, whether by direct notice to potential infringers or by a press release, does not support a finding of bad faith").

> **2.    Subjective statements regarding the basis for bringing a lawsuit and statements of opinion are not actionable under the Lanham Act.**

Bally also alleges that statements by IGT's Chairman of the Board and Chief Executive Officer, TJ Matthews, in the 2006 Press Release are deceptive. The press release provides:

> "Although IGT respects and supports true innovation in the gaming technology field, it cannot condone willful infringement by others of IGT's valuable intellectual property. The patents at issue in this lawsuit cover innovations that Bally has chosen to exploit for its own benefit without seeking a license or any other authorization from IGT," said TJ Matthews, IGT's Chairman of the Board and Chief Executive Officer.

(Bally's Counterclaim, D.I. 40 at Ex. 3 (emphasis added).)  The foregoing statements are not statements of objective fact — instead, they are merely IGT's subjective opinions about its basis for bringing this suit. *See, e.g., Art Line, Inc. v. Universal Design Collections, Inc.*, 966 F. Supp. 737, 744 (N.D. Ill. 1997) ("Universal's [infringement] allegation represents Universal's conclusion and belief, rather than a factual statement."). The Third Circuit has explained that — to be actionable — the statement at issue must be "both specific and measurable by comparative research." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993).  In other words, the statement must be "capable of being proven to be false." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 27:109 (2002).  More specifically, multiple courts have noted that statements from laypersons purporting to interpret the law "are opinion statements, and not statements of fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d

18

725, 731 (9th Cir. 1999) (citing to *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 488-89 (D.C. Cir. 1996), and *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-32 (3d Cir. 1990)). And as noted above, statements of opinion are not generally actionable under the Lanham Act. *See Milkovich*, 497 U.S. at 20 (constitutionally prohibiting liability for a statement of opinion unless the allegedly false statement contains a "provably false factual connotation"); *see also Groden*, 61 F.3d at 1051 ("[S]tatements of opinion are generally not the basis for Lanham Act liability."). Accordingly, the statements above by IGT's CEO are clearly not the type of statements that are actionable under Third Circuit law.

Illustratively, in *Cook Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 U.S. Dist. LEXIS 17331 (ND. Ill. Feb. 28, 2002), the plaintiff alleged that a Boston Scientific press release contained false or misleading representations of fact regarding Cook's products and therefore violated the Lanham Act. *Id* at \*5-6. The Court disagreed and therefore dismissed Cook 's Lanham Act Claim:

> The language of the press release, even taken in the light most favorable to Cook, is not a statement of fact. Rather, it states the basis of Boston's opinion that it was entitled to pursue contractual and legal remedies available under the Angiotech agreement and the intent of that company to seek relief through those avenues. This does not state any facts pertaining to Cook's activities with Guidant. A claim that alleges facts undermining the plaintiff's right to relief cannot survive a 12(b)(6) motion.

*Id.* at \*8-9; *see also SDS USA, Inc. v. Ken Specialties*, No. 99-133, 2002 U.S. Dist. LEXIS 16762, \*89 (D.N.J. Aug. 28, 2002) ("Statements with respect to Ken's infringement of SDS' patents are qualified as SDS' subjective belief or opinion.").

    **3.**    **IGT's statements in the Lincoln Park letter are *not* actionable under the Lanham Act because they either are literally true or comprise IGT's subjective statements or statements of opinion.**

For the same reasons as above, IGT's subjective statements and statements of

opinion in the Lincoln Park letter are not actionable under the Lanham Act. Bally claims

IGT's statements in the Lincoln Park letter make "false and misleading statements

claiming that Bally's products infringe IGT's patents." (Bally's Counterclaim, D.I. 40 at

27.) The Lincoln Park letter (*Id.* at Ex. 4) contains IGT's response to a request by an IGT

customer to have IGT purchase and install a Bally device (iView) on an IGT device (a

video lottery terminal). IGT advised the customer as follows:

> [Y]our letter requests that IGT purchase iView devices from
> [Bally] and that IGT install the iView devices on IGT's video
> lottery terminals ("VLT") in Lincoln Park.
>
> As always, IGT is more than happy to assist Lincoln Park in
> any manner that IGT can with your ongoing efforts to
> upgrade your facility in Rhode Island. Although we support
> your decision to purchase and install a player tracking system
> on the VLTs at Lincoln Park, we have concerns with your
> choice to install Bally's iView technology. Attached for your
> review and discussion is a copy of an IGT News Release
> dated May 1, 2006. As you can see from the News Release,
> ***IGT recently filed a lawsuit against Bally*** in Delaware
> ***alleging*** that ***Bally is infringing on at least 9 patents*** held by
> IGT. Furthermore, ***we believe*** the ***installation and use of
> Bally's iView device on a VLT for player tracking purposes
> is an infringement of IGT's patents***. Therefore, as you can
> appreciate, IGT is unable at this time to comply with your
> request that IGT enter into a contractual relationship with
> Bally for the purchase and installation of iView devices on
> IGT's VLTs.
> . . .
> We appreciate our business relationship with Lincoln Park
> and we are committed to finding a non-infringing alternative
> for you. For example, ***we may be able to assist you with the
> purchase and installation of a non-infringing "standard"
> player tracking system from Bally***. However, as explained
> above, we are unable to purchase iView devices for you and
> install them on our VLTs. If you choose to proceed with the
> purchase of standard equipment from Bally please contact
> John McMullen so we can work together on the purchase and
> installation of the equipment.

20

(Bally's Counterclaim, D.I. 40 at Ex. 4 (emphasis added).) As with the press releases, Bally does not actually plead that any fact set forth in the letter is false.

On its face, the letter truthfully informs the customer that there is a pending lawsuit between IGT and Bally that is directly relevant to the customer's request. The letter states truthfully that the lawsuit *alleges* that Bally is infringing certain patents. The letter then communicates IGT's opinion by stating that IGT *believes* that the installation and use of the a very specific Bally product (*i.e.*, the iView) in combination with an IGT device would infringe IGT's patents. Contrary to Bally's assertion, the letter does *not* say all of Bally's products infringe. In fact, the letter says the opposite — in the letter IGT offers assistance to the customer for the purchase of a different Bally product (*i.e.*, the Bally "standard" player tracking system that IGT believes is non-infringing) and to install the same on IGT's VLT. The court need not accept as true, Bally's factual contentions that are revealed to be untrue by Bally's own exhibits to the Counterclaim. *See* 2A Moore & Lucas, *Moore's Federal Practice* 12.08, at 2266-69 (2d ed. 1984) (under 12(b)(6) "unwarranted deductions of fact are not admitted").

Since IGT's statements in its press release and the Lincoln Park letter comprise either accurate statements of fact or non-actionable statements of subjective opinion, IGT's publication of the 2006 Press Release and the Lincoln Park letter cannot, as a matter of law, comprise any Lanham Act violation.

### 4.    *Noerr-Pennington* precludes Bally's Lanham Act claim.

The *Noerr-Pennington* doctrine immunizes IGT from incurring liability based on acts incident to the filing of a lawsuit, including the issuance of IGT's press release regarding the litigation. Significantly, courts have extended *Noerr-Pennington* immunity beyond just the Sherman Act to also preclude liability on numerous other claims for relief, including claims brought under the Lanham Act. *See, e.g., Melea Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743 (E.D. Mich. 2004) (*Noerr-Pennington* barred Lanham Act and state unfair competition claims); *see also Aircapital*, 634 F. Supp. at 326 (*Noerr-*

21

*Pennington* immunity extends to press releases publicizing the lawsuit); *Matsushita*, 974

F. Supp. at 359 (acts incidental to protected litigation are likewise entitled to *Noerr-*

*Pennington* immunity). Therefore, the issuance of the 2006 Press Release is conduct

incident to protected First Amendment petitioning activity and is therefore encompassed

within the broad sweep of *Noerr Pennington* antitrust immunity. *See Aircapital*, 634 F.

Supp. at 326; *see also Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir.

1999) ("[W]e have been presented with no persuasive reason why these state tort claims,

based on the same petitioning activity as the federal claims, would not be barred by the

*Noerr-Pennington* doctrine."). And as discussed above, this press release includes only

accurate statements of fact or non-actionable statements of opinion and therefore, as a

matter of law, does not fall within the narrow "sham" exception to *Noerr-Pennington*.

Similarly, because IGT's factual statements and statements of opinion in the Lincoln Park

letter were incidental to the filing of the lawsuit, the *Noerr-Pennington* doctrine also

immunizes IGT's statements in that letter.

     Thus, defendants' Lanham Act claim fails for the additional and independent

reason that the conduct (the 2006 Press Release and the Lincoln Park letter) on which it is

allegedly based is immunized under *Noerr-Pennington*.

     **5.**    **Bally cannot salvage its defective claim by pleading "[u]pon**
             **information and belief, IGT has also made other false and/or**
             **misleading statements to Bally's customers."**

     Apparently recognizing that none of the identified statements are actionable under

the Lanham Act, Bally further alleges that "on information and belief, IGT has made

***other*** false and/or misleading statements to Bally's customers that have misled or are

likely to mislead Bally's customers about the legality of Bally's products." (Bally's

Counterclaim, D.I. 40 at 27) (emphasis added).) Bally fails to identify, however, the

supposedly "other false and/or misleading statements" made by IGT, the circumstances

behind the alleged statements, or how these alleged statements "misled or are likely to

mislead Bally's customers." (*Id.*)

Since there are no actionable statements pleaded anywhere in Bally's counterclaim, Bally's sparse allegation that it thinks there might be some "other" misleading statements does not even satisfy Rule 8's liberal pleading standard, much less the applicable Rule 9 standard. *See Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D. Pa. 1985) (finding that plaintiff failed to set forth a Lanham Act claim and stating "the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in plaintiffs' Lanham Act claim. In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense."); *see also Implant Innovations, Inc., v. Nobelpharma AB*, No. 93 C 7489, 1995 U.S. Dist. LEXIS 13804, at *15 (N.D. Ill. Sept. 12, 1995) ("The Court does not find any significant distinction between a 'false statement' and a 'fraud.' In order to comply with Rule 9(b), a plaintiff must allege the 'who, what, when, and where' of the alleged fraud.").[1] Bally's conclusory allegation that IGT "has also made other false and/or misleading statements" satisfies neither Rule 8 nor Rule 9 and therefore fails to support the deficient Lanham Act counterclaim.

Therefore, neither Bally's allegations regarding statements by IGT in the 2006 Press Release or the Lincoln Park letter, nor Bally's allegation regarding "other false and/or misleading statements" supports defendants' Lanham Act claim. Because Bally fails to allege any facts that, if true, would entitle it to relief, Count XI of the counterclaims should be dismissed.

---

[1] *See also Barr Lab., Inc. v. Quantum Parmics. Inc.*, 827 F. Supp. 111, 118 (E.D.N.Y. 1993) ("[E]ven if Rule 9(b) is not applicable [to false advertising claim], Barr is required to state generally the content of the alleged misrepresentations."); *In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 927 (C.D. Cal. 1994) ("[I]n litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense.").

23

**C.    The Court Should Also Dismiss Bally's Intentional Interference Counterclaim.**

Bally's intentional interference claim does not specify whether Bally is claiming interference with existing contracts or prospective business relations, but rather makes a vague assertion of interference with business relationships. (Counterclaim, D.I. 40 at 28.) But whether this claim relates to existing contracts or prospective contracts, it must be dismissed. Bally fails to allege facts sufficient to support a claim for intentional interference with either (1) existing or (2) prospective contractual relations. Furthermore, Bally's inclusion of the Lincoln Park letter as an attachment to the counterclaim conclusively establishes the elements of an affirmative defense requiring dismissal of the claim.

**1.    Bally's intentional interference counterclaim should be dismissed, because Bally cannot plead the elements of the claim.**

Bally fails to allege facts sufficient to satisfy the required elements of a claim for intentional interference with existing contractual relations. A claim of intentional interference with existing contractual relations requires Bally to establish the following elements: "(1) a contract (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *See Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 434-35 (D. Del. 2005). But Bally has not alleged that any third party has breached a purported contract between it and Bally. (*See* Bally's Counterclaim D.I. 40, at 28.) Bally's pleading, therefore, is insufficient since courts require an allegation of an actual breach of a valid and enforceable contract. *See Griffin Corporate Servs., LLC v. Jacobs*, No. 396-N, 2005 Del. Ch. LEXIS 120, at *14 (Del. Ch. Aug. 11, 2005) ("Though a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' an allegation of a breach is necessary to show entitlement to relief for tortious interference with an existing contract." (footnote omitted)); *see also*

24

*Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 55 F. Supp. 2d 309, 317 (D. Del. 1999) ("[I]n order to state a claim for tortious interference with a contract, the plaintiff must allege that the defendant induced a third party to breach its contract with the plaintiff.") Thus, since Bally has not alleged an actual breach of any contract, Bally's counterclaim for intentional interference with existing contractual relations should be dismissed.

Bally also fails to allege facts sufficient to support a claim for intentional interference with prospective contractual relations. A claim for intentional interference with prospective contractual relations requires a showing of: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with the opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of defendant's privilege to compete or protect his business interests in a fair and lawful manner . . . ." *See Ethypharm*, 388 F. Supp. at 434-35. But Bally has not alleged any prospective business opportunity with which IGT has unjustly interfered. (*See* Bally's Counterclaim, D.I. 40 at 28.) Bally's pleading, therefore, should be found to be insufficient as multiple courts have required the alleged prospective contractual relationships to be identified. *See Garshman v. Universal Resources Holding, Inc.*, 824 F.2d 223, 233 (3d Cir. 1987) (affirming the lower court's granting of a motion to dismiss when the prospective contractual relationship was not identified); *see also Cascade Investments, Inc. v. Bank of America, N.A., S.A.*, CV-N-99-559-ECR (RAM), 2000 U.S. Dist. LEXIS 21474, at *3 (D. Nev. Sept. 28, 2000) (dismissing an interference claim based on similarly vague alleged relationships). Bally's counterclaim contains no allegation of any prospective business relationship with which IGT interfered. (Counterclaim, D.I. 40 at 28.)

If Bally is seeking to claim (although not expressly pleaded) that IGT's letter to Lincoln Park interfered with some prospective business advantage to Bally, the face of the counterclaim establishes a complete defense to such a claim.[2] In evaluating a claim

---

[2] When a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate. *See Apple Computer, Inc. v. Exponential Tech.*, No. 16315, 1999 Del. Ch.

for prospective contractual relations, courts must consider each element of the claim "in light of defendant's privilege to compete or protect his business interests in a fair and lawful manner." *See Ethypharm*, 388 F. Supp. at 434-35. Indeed, one who intentionally causes a third person not to enter into a contractual relation with another who is his competitor does not interfere with the other's relation if the relation concerns a matter involved in competition between the actor and the other. Restatement (Second) of Torts, § 768 (a). According to Bally's own pleading, IGT's letter to Lincoln Park falls squarely within this privilege.

The face of the Lincoln Park letter reveals that IGT declined Lincoln Park's request that IGT provide services to Lincoln Park. (Counterclaim, Ex. 4.) In other words, IGT is declining Lincoln Park's request for a prospective business arrangement *with IGT, not Bally*. Thus, even if IGT's decision not to provide the requested services to Lincoln Park caused Bally to lose sales, it is not actionable interference. Bally does not and cannot plead that IGT had any affirmative duty to agree to provide services to Lincoln Park for the purposes of helping its main competitor, Bally. As a matter of law, interference claims cannot be made against a competitor who acts in accordance with his own business concerns and to advance his own business purpose. Bally's claim should be dismissed since Bally has alleged no actions by IGT that were not lawful means of protecting its own business interests. *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981).

Thus, Bally's intentional-interference claim should be dismissed because Bally fails to allege facts sufficient to support a claim for intentional interference with existing or prospective contractual relations, and because the counterclaim pleads all of the elements to show that IGT's actions with respect to Lincoln Park were legally privileged actions of a competitor acting in its own proper business interests.

---

LEXIS 9, at 36* (Del. Ch. Jan. 21, 1999).

2.    **Because IGT's press release and the Lincoln Park letter were not false, Bally's intentional interference counterclaim should be dismissed.**

If a claim of interference is based on a patentee's marketplace assertion of its patent rights, the Federal Circuit requires a showing that the alleged interference was done in bad faith. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) ("In *Hunter Douglas*, we concluded that state tort claims, including tortious interference claims, based on publicizing a patent in the marketplace are not preempted by the patent laws if the claimant can show that the patentholder acted in bad faith in its publication of the patent. Thus, under the *Hunter Douglas* analysis, to avoid patent law preemption of such state law tort claims, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim.") (citations omitted).

As demonstrated in Sections IV.B.1-3, above, IGT's 2006 Press Release and the Lincoln Park letter do not meet the "threshold showing of incorrectness or falsity" required by controlling Federal Circuit authority to demonstrate the requisite "bad faith." *See Mikohn*, 165 F.3d at 897. The statements made in IGT's press release and in the Lincoln Park letter are either accurate statements of fact or non-actionable statements of opinion/subjective statements. *See SDS USA*, 2002 U.S. Dist. LEXIS 16762, at *89. Therefore, IGT's 2006 Press Release and the Lincoln Park letter were ***not***, as a matter of law, made in bad faith. *See Mikohn*, 165 F.3d at 897. Absent the required showing of bad faith, Bally's intentional-interference counterclaim should be dismissed. *Zenith*, 182 F.3d at 1355.

3.    **Defendants' intentional interference counterclaim is barred by *Noerr-Pennington* and the Delaware litigation privilege.**

For the same reasons discussed in Section IV.B.4, above, *Noerr-Pennington* precludes an intentional-interference claim based on IGT's protected First Amendment petitioning activity. *See Cheminor*, 168 F.3d at 128 (explicitly ruling that the *Noerr/Pennington* doctrine extends to bar immunity on common law tort claims of

27

malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition).

Similarly, Delaware's litigation privilege protects IGT from incurring liability for statements made in connection with pending litigation. *See Nix v. Sawyer*, 466 A.2d 407 (Del. Super. Ct. 1983) (privilege protects communications outside of court as well as those made during actual judicial proceedings); *see also Short v. News-Journal Co.*, 205 A.2d 6 (Del. Super. Ct.) (noting that "accurate accounts of legislative or judicial proceedings open to the public" have been entitled to a qualified privilege), *aff'd,* 212 A.2d 718 (Del. 1965). Thus, Bally cannot prove the absence of "privilege" or "justification" by IGT. The Court should dismiss Bally's intentional interference counterclaim for this additional and independent reason.

## V.    **CONCLUSION**

Bally has failed to plead, and cannot plead, any set of facts that could be proven in order to entitle Bally relief under counterclaim counts X, XI and XII. Bally's alleged anti-competitive acts by IGT are constitutionally protected acts and cannot, even if true, form the basis of an antitrust claim, a Lanham Act claim or a claim for intentional interference under Delaware law. IGT is entitled to acquire patents to protect its investment in competitive technology. Furthermore, IGT has a right to enforce its patents through patent infringement lawsuits and to issue truthful press releases and letters regarding those actions. And IGT has done just that. Bally has not and cannot show any bad faith in IGT's actions. For all of the reasons discussed above, the Court should respectfully dismiss Bally's Sherman Act (Count X), Lanham Act (Count XI), and intentional-interference (Count XII) counterclaims.

_William J. Wade  (#704)_
wade@rlf.com
*OF COUNSEL:*                         Anne Shea Gaza (#4093)
David P. Enzminger                    gaza@rlf.com
Brett J. Williamson                   Matthew W. King (#4566)
Charles A. Thomasian                  king@rlf.com
O'MELVENY & MYERS LLP                 Richards, Layton & Finger
610 Newport Center Drive, 17th Floor  One Rodney Square
Newport Beach, California  92660-6429 P.O. Box 551
(949) 760-9600                        Wilmington, DE  19899
                                      302-651-7700
Dated:  July 24, 2006                   *Attorneys for Plaintiff IGT*

29

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2006, I caused to be served by hand delivery and electronic mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Jack B. Blumenfeld, Esquire
> Karen Jacobs Louden, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> Wilmington, DE 19899

I hereby certify that on July 24, 2006, I caused to be sent by electronic mail the foregoing document to the following non-registered participants:

Charles K. Verhoeven
Quinn Emanuel Urquhart
  Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

Edward J. DeFranco
Quinn Emanuel Urquhart
  Oliver & Hedges, LLP
51 Madison Avenue
New York, NY 10010-1601

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2006, I caused to be served by hand delivery and electronic mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

>Jack B. Blumenfeld, Esquire
>Karen Jacobs Louden, Esquire
>Morris, Nichols, Arsht & Tunnell
>1201 N. Market Street
>Wilmington, DE  19899

I hereby certify that on July 24, 2006, I caused to be sent by electronic mail the foregoing document to the following non-registered participants:

Charles K. Verhoeven
Quinn Emanuel Urquhart
  Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

Edward J. DeFranco
Quinn Emanuel Urquhart
  Oliver & Hedges, LLP
51 Madison Avenue
New York, NY 10010-1601

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IGT, a Nevada corporation, | |
| Plaintiff, | |
| v. | C.A. No. 06-282 (KAJ) |
| BALLY GAMING INTERNATIONAL, INC., BALLY TECHNOLOGIES, INC., and BALLY GAMING, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## IGT's REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM COUNTS X, XI AND XII

OF COUNSEL

David P. Enzminger
Brett J. Williamson
Charles A. Thomasian
O'MELVENY & MYERS L.L.P.
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000

William J. Wade (#704)
wade@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
  *Attorneys for Plaintiff and Counterclaim
  Defendant IGT*

July 24, 2006

RLF1-3040537-1

Pursuant to Federal Rules of Evidence 201, plaintiff IGT, by and through its attorneys, hereby requests the Court to take judicial notice of the following:

1.    Judgment, dated September 29, 2004, Case No. CV-01-1109-JCM-PAL (D. Nev.). A true and correct copy of this document is attached as Exhibit A.

2.    Judgment, dated July 11, 2006, Case No. 01-CV-1109 (Fed. Cir.). A true and correct copy of this document is attached as Exhibit B.

The above documents are matters of public record and are proper subject of a request for judicial notice. *LUM v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir.) *cert. denied*, 543 U.S. 918 (2004) ("a prior judicial opinion constitutes a public record of which a court may take judicial notice …on a motion to dismiss").

*OF COUNSEL:*

David P. Enzminger
Brett J. Williamson
Charles A. Thomasian
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California  92660-6429
(949) 760-9600

Dated: July 24, 2006

William J. Wade  (#704)
wade@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
302-651-7700
    *Attorneys for Plaintiff IGT*

RLF1-3040537-1

# EXHIBIT A

Richard J. Pocker (Nev. State Bar No. 3568)
DICKERSON, DICKERSON, CONSUL, AND POCKER
777 North Rainbow Boulevard, Suite 350
Las Vegas, NV 89107
(702) 388-8600 (phone)
(702) 388-0210 (fax)

Robert G. Krupka, P.C.
Barry F. Irwin
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)



## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ACTION GAMING, INC. and IGT | ) |
| | ) |
| *Plaintiffs,* | ) Case No(s).: CV-01-1109-JCM-PAL |
| | ) |
| v. | ) |
| | ) [PROPOSED] JUDGMENT |
| ALLIANCE GAMING CORP., | ) |
| BALLY GAMING, INC. and | ) |
| UNITED COIN MACHINE CO. | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

1.     The jury having returned a verdict against United Coin Machine Co. ("United") and in favor of Action Gaming, Inc. and IGT (collectively "Action") and finding that United has infringed claim 3 of U.S. Patent No. 5,823,873 ("the '873 patent") and claims 1 and 3 of U.S. Patent No. 6,007,066 ("the '066 patent"), which this Court has previously found are not invalid or unenforceable;

2.     The jury having returned a verdict that the method of play of the accused Multi-Play Poker game with autohold infringes claim 3 of the '873 patent and claims 1 and 3 of the'066 patent;

3.     The jury having returned a verdict that Alliance Gaming Corp. ("Alliance") is liable for the infringing conduct of United; and

484

4.     The jury having determined that Action has been damaged in the amount of $7,361,000.00,

IT IS ORDERED that JUDGMENT is entered against Alliance and United, jointly and severally, and in favor of Action in the amount of $ 7,361,000 for infringement of claims 1 and 3 of the '066 Patent and claim 3 of the '873 Patent.

Dated: September 29, 2004

Hon. James C. Mahan
United States District Judge

2

# EXHIBIT B

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not
citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1287, -1315

**CLERK'S OFFICE COPY**

ACTION GAMING, INC. and IGT,

Plaintiffs-Cross Appellants,

v.

ALLIANCE GAMING CORP.
and UNITED COIN MACHINE CO.,

Defendants-Appellants,

and

BALLY GAMING, INC.,

Defendant.

# Judgment

ON APPEAL from the       U.S. DISTRICT COURT
DISTRICT OF NEVADA

In CASE NO(S).      01-CV-1109

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**FILED**
**U.S. COURT OF APPEALS FOR**
**THE FEDERAL CIRCUIT**

JUL 1 1 2006

**JAN HORBALY**
**CLERK**

Per Curiam: (MAYER, LOURIE, and PROST, Circuit Judges):

AFFIRMED. See Fed. Cir. R. 36.

ENTERED BY ORDER OF THE COURT

DATED    JUL 1 1 2006

Jan Horbaly, Clerk