IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IGT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-282 (KAJ) |
| | ) | |
| BALLY GAMING INTERNATIONAL, | ) | |
| INC., BALLY TECHNOLOGIES, INC., | ) | |
| and BALLY GAMING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**BALLY'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
TO DISMISS BALLY'S COUNTERCLAIM COUNTS X, XI AND XII**

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
Attorneys for Defendants

OF COUNSEL:

Charles K. Verhoeven
Amy H. Candido
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street
San Francisco, CA  94111
(415) 875-6600

Edward J. DeFranco
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, NY  10010
(212) 849-7000

August 18, 2006

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

SUMMARY OF ARGUMENT ..............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

    A.    IGT's Pattern Of Anti-Competitive Conduct..............................................2

    B.    IGT's Motion To Dismiss And To Strike In The Nevada Action. ..............6

ARGUMENT ...........................................................................................................................7

I.    STANDARD OF REVIEW. ......................................................................................7

II.    IGT IS REPEATING THE SAME ARGUMENTS RAISED AND
REJECTED IN THE NEVADA ACTION. .............................................................8

III.    BALLY HAS STATED A CLAIM UNDER THE SHERMAN ACT. ...................9

    A.    IGT Is Not Entitled To Noerr-Pennington Immunity Because Bally
Has Properly Alleged Sham Litigation. ........................................................9

    B.    Noerr-Pennington Immunity Does Not Apply To The Rest Of
Bally's Sherman Act Claim. ........................................................................12

        1.    Bally Has Stated A Claim Under The Essential Facilities
Doctrine.................................................................................................12

        2.    Bally Has Stated A Claim For Monopoly Leveraging...................13

    C.    Bally Has Alleged Antitrust Injury ............................................................13

IV.    BALLY HAS STATED A CLAIM UNDER THE LANHAM ACT. ...................16

    A.    Bally Alleges That IGT Acted in Bad Faith. ..............................................17

    B.    IGT's Statements In Its Press Release Are Factual Statements, The
Veracity of Which Cannot Be Determined On A Motion To
Dismiss...........................................................................................................18

    C.    IGT's Statements In Its Press Release Are Misleading. ...........................21

    D.    IGT's Press Release Receives No Noerr-Pennington Immunity. ..............22

E.      IGT's Statements In Its Letter To Lincoln Park Are Factual
        Statements. ...............................................................................................23

F.      Bally's Remaining Lanham Act Counterclaims Are Adequately
        Pled. ........................................................................................................24

V.      BALLY HAS STATED A CLAIM FOR TORTIOUS INTERFERENCE
        WITH PROSPECTIVE BUSINESS RELATIONSHIPS. ....................................25

CONCLUSION ...............................................................................................................29

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abbott Labs. v. Teva Pharms., Inc.*,
    432 F. Supp. 2d 408 (D. Del. 2006)....................................................11, 14

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) ...................................................................13

*Alexander Binzel Corp. v. Nu-Tecsys Corp.*,
    No. 91C2092, 2000 WL. 310304 (N.D. Ill. March 24, 2000) ....................19

*Allen v. McCurry*,
    449 U.S. 90 (1980).....................................................................................8

*American Council of Certified Podiatric Physicians and Surgeons v.*
    *American Bd. of Podiatric Surgery, Inc.*,
    323 F.3d 366 (6th Cir. 2003) ...................................................................15

*American Professional Testing Service, Inc. v. Harcourt Brace*
    *Jovanovich Legal and Professional Publ'ns, Inc.*,
    108 F.3d 1147 (9th Cir. 1997) ..................................................................15

*Avid Identification Sys., Inc. v. Schering-Plough Corp.*,
    No. CV-99-00170-VAP, 2002 WL. 464714 (9th Cir. March 25, 2002)......19

*Bio-Technology General Corp. v. Genentech, Inc.*,
    886 F. Supp. 377 (S.D.N.Y. 1995) ...........................................................24

*Brown v. Felsen*,
    442 U.S. 127 (1979)...................................................................................8

*Bushnell Corp. v. ITT Corp.*,
    973 F. Supp. 1276 (D. Kan. 1997)......................................................15, 16

*Cascade Invests. v. Bank of Am.*,
    No. CV-N-99-599-ECR (RAM), 2000 WL 1842945
    (D. Nev., September 29, 2000) ..................................................................27

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    168 F.3d 119 (3d Cir. 1999)............................................................. passim

*City of Columbia v. Omni Outdoor Adver., Inc.*,
    499 U.S. 365 (1991)............................................................................. 9-10

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
    228 F.3d 24 (1st Cir. 2000)..................................................................21, 23

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999)...............................................................19, 20

*Cook, Inc. v. Boston Scientific Corp.*,
   2002 U.S. Dist. LEXIS 17331 (N.D. Ill. Feb. 28, 2002) .......................................20, 22

*Cook v. Winfrey*,
   141 F.3d 322 (7th Cir. 1998) ...............................................................................27

*Dial A Car, Inc. v. Transp., Inc.*,
   82 F.3d 484 (D.C. Cir. 1996) ...............................................................................20

*Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*,
   344 F. Supp. 2d 936 (M.D. Pa. 2004) ....................................................................24

*Enzo Life Sciences, Inc. v. Digene Corp.*,
   295 F. Supp. 2d 424 (D. Del. 2003)............................................................... passim

*Fineman v. Armstrong World Indus.,, Inc.*,
   980 F.2d 171 (3d Cir. 1992)..................................................................................13

*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) .......................23

*Fuentes v. South Hills Cardiology*,
   946 F.2d 196 (3d Cir. 1991).................................................................................14

*Gill v. Delaware Park, LLC*,
   294 F. Supp. 2d 638 (D. Del. 2003)..........................................................15, 25, 26

*Handgards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (9th Cir. 1979) ................................................................................14

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
   425 U.S. 738 (1976)...............................................................................................7

*IGT v. Alliance Gaming Corp., et al.*, CV-S-04-1676-RCJ-RJJ.........................................3

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*,
   90 F.3d 737 (3d Cir. 1996)...................................................................................12

*In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 397-98 (3d Cir. 2000) .......... passim

*LePage's Inc. v. 3M*,
   324 F.3d 141 (3d Cir. 2003)..................................................................................16

*Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*,
   5 F. Supp. 2d 238 (D. Del. 1998)..........................................................................28

*Melea Ltd. v. Quality Models Ltd.*,
   345 F. Supp. 2d 743 (E.D. Mich 2004)...................................................................22

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 898 (Fed. Cir. 1998) .........18

*Municipal Revenue Services, Inc. v. Xspand, Inc.*,
   C.A. No.05-671, 2005 WL 1367416 (M.D. Pa. June 8, 2005) ................................. 22

iv

*National Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.,*
    *Div. of/and American Home Products Corp.,*
    850 F.2d 904 (2d Cir. 1988)................................................................15

*Nix v. Sawyer,*
    466 A.2d 407 (Del. Super. 1983)........................................................28

*Nokia Corp. v. Interdigital Comm.,*
    C.A. No.05-15-JJF, 2005 WL 3525696 (D. Del. Dec. 21, 2005) ................7

*Plastic Molded Techs., Inc. v. Cinpres Gas Injection Ltd.,*
    290 F. Supp. 2d 793 (E.D. Mich.  2003)..........................................18, 23

*Proctor & Gamble Co. v Haugen,*
    222 F.3d 1262 (10th Cir. 2000) .........................................................27

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
    508 U.S. 49 (1993).........................................................................10

*Rickards v. Canine Eye Registration Found.,*
    783 F.2d 1329 (9th Cir. 1986) ..........................................................14

*SDS USA, Inc. v. Ken Specialties,*
    No. 99-133, 2002 U.S. Dist. LEXIS 16762 (D.N.J. Aug. 28, 2002) ...........20

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.,*
    902 F.2d 222 (3d Cir. 1990)..............................................................20

*Santana Products, Inc. v. Bobrick Washroom Equip., Inc.,*
    401 F.3d 123 (3d Cir. 2005)..............................................................22

*Short v. News-Journal Co.,*
    205 A.2d 6 (Del. Super. 1965)...........................................................28

*Shuffle Master, Inc. and IGT v. MP Games LLC,*
    *Alliance Gaming Corp., and Bally Gaming Inc.,* CV-04-0407-ECR-RAM .................3

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993).........................................................................9

*Summit Tech., Inc. v. High-Land Med. Instruments, Co.,*
    933 F. Supp. 918 (C.D. Cal. 1996) .....................................................24

*Symbol Techs., Inc. v. Hand Held Prods., Inc.,*
    No. Civ.A. 03-102-SLR, 2003 U.S. Dist. LEXIS 21002 (D. Del. Nov. 14, 2003)........7

*Synopsys, Inc. v. Magma Design Automation,*
    No. CIVA 05-701(GMS), 2006 WL 1452803 (D. Del. May 25, 2006) ...............14, 24

*Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.,*
    140 F.3d 478, 483 (3d Cir.1998).........................................................6

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,*
    898 F.2d 914 (3d Cir. 1990)..............................................................21

*United States v. Dentsply Int'l, Inc.*,
    399 F.3d 181 (3d Cir. 2005)...................................................................16

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Cir. 2000)......................................................................11

*Walker v. Armco Steel Corp*,
    446 U.S. 740 (1980)..............................................................................26

*Zenith Electronics Corp. v. Exzec, Inc*,
    182 F.3d 1340 (Fed. Cir. 1999)........................................................18, 24

## **Statutes**

15 U.S.C. § 2 ...........................................................................................8, 15

D. Del. L. R. 7.1.3(c)(2)......................................................................12, 21

Fed. R. Civ. P. 12(b)(6)..........................................................................6, 15

Fed. R. Civ. P. 12(f)....................................................................................6

Fed. R. Civ. P. 8 ..........................................................................................7

## **Miscellaneous**

2 J. McCarthy, *Trademarks and Unfair Competition* § 27:7B (2d ed. 1984)....................21

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants Bally Gaming International, Inc., Bally Technologies, Inc. and Bally Gaming, Inc. (collectively, "Bally") filed their Answer and Counterclaims on June 30, 2006.  (D.I. 40).  IGT filed a motion to dismiss Counterclaims X, XI and XII on July 24, 2006.  (D.I. 53).  This is Bally's answering brief in opposition to that motion.

## SUMMARY OF ARGUMENT

IGT's motion to dismiss is an example of motion practice for its own sake, serving no purpose other than to interpose unnecessary expense and delay.  Indeed, most of IGT's arguments are rehashed from identical arguments it raised in a related action in the District of Nevada (the "Nevada Action") – arguments already rejected by Judge Robert C. Jones in that action.  By raising these same arguments yet again IGT is wasting time and resources, as well as encouraging inconsistent decisions.

IGT maintains that the Noerr-Pennington doctrine immunizes it from claims under the Sherman Act, the Lanham Act, and for tortious interference with business relationships.  As Bally has already successfully argued in the Nevada Action, however, the Noerr-Pennington doctrine provides no immunity to antitrust claims based on sham litigation.  Moreover, this doctrine has no application to Lanham Act or tortious interference claims.

IGT also insists it cannot be liable for statements in its press releases and letter to Bally's customer because these statements are either "literally true" or "statements of opinion."  As a preliminary matter, IGT completely fails to address Bally's allegation that these statements are misleading, which by itself renders them

actionable under the Lanham Act. In addition, as the Nevada court has already held, the veracity of factual statements cannot be determined on a motion to dismiss – particularly where those statements declare that Bally is willfully infringing IGT's valid, enforceable patents. Moreover, these statements cannot be mere "opinions" because they are susceptible to being proven true or false.

IGT's motion also fails because Bally has plainly satisfied the notice pleading requirements with respect to its Lanham Act and interference with business relationship claims. As the Nevada court has held, Bally has sufficiently identified the business relationships by its description of the market it is targeting, as well as the identification of a specific customer. Finally, IGT's attempt to confuse the issue by treating Bally's claim as one for interference with existing contractual relations should be disregarded.

IGT's rehashed motion to dismiss should be denied.

## STATEMENT OF FACTS

A.    <u>IGT's Pattern Of Anti-Competitive Conduct.</u>

The New York Times Magazine has referred to IGT as the "Microsoft of the gaming industry," based on IGT's control over approximately 75-80% of the gaming machines market in the United States. (Counterclaims, D.I. 40, ¶ 10). IGT currently holds a dominant share of the gaming systems market – over 40% – and is approaching a monopoly by eliminating competition in this market as well. (*Id.,* at ¶¶ 11-12). IGT has relied on two principal strategies: (1) suing or threatening to sue potential competitors for patent infringement, regardless of whether IGT actually has any basis to bring suit;

and (2) using its monopoly over the gaming machines market to leverage its share of the gaming systems market. (*Id.,* at ¶¶ 21-29, 33-39).

As part of its first strategy, IGT has brought three separate patent infringement suits against Bally since 2001 – the present action and two separate actions in Nevada. (*Id.,* at ¶ 19). In each of these lawsuits, IGT has followed a pattern: it acquires patents from a smaller competitor and then, without a single letter or phone call, uses those patents to sue Bally. (*Id.,* at ¶ 20). In the present action, IGT asserts infringement of patents obtained from its acquisition of Acres Gaming, a former competitor in the gaming systems market. (*Id.,* at ¶ 25). In one of the Nevada actions, IGT asserts infringement of two patents obtained from its acquisition of Anchor Gaming and one eight-year-old patent purchased from a company in Tokyo. *IGT v. Alliance Gaming Corp., et al.,* CV-S-04-1676-RCJ-RJJ. In the other Nevada action, IGT joined the litigation a year after it began by acquiring a 50% interest in the two asserted patents. *Shuffle Master, Inc. and IGT v. MP Games LLC, Alliance Gaming Corp., and Bally Gaming Inc.,* CV-04-0407-ECR-RAM.

The timing of this action indicates it was brought to stifle competition from a new Bally product. (*Id.,* at ¶ 26). On April 11, 2006, Bally announced it had signed a contract with Boyd Gaming to provide the award-winning Bally Power Bonusing[1] as well as other Bally products to casino properties in six states. (*Id.,* at ¶ 27). IGT filed this lawsuit 17 days later. (*Id.,* at ¶ 28). IGT never contacted Bally before

---

[1]    Bally Power Bonusing includes Bally Power Winners, which was singled out as one of the winners in the Best Consumers Service Technology category of the 2005 Global Gaming Business Gaming & Technology Awards.

filing suit to notify it of the asserted patents or even to determine if Bally's products actually infringe.  (*Id*.)   Instead, IGT filed a lawsuit based on Bally's marketing brochures.  (*Id.,* at ¶ 23).   Indeed, at the May 12, 2006 telephone hearing before the Court, IGT's counsel could identify no specific knowledge of Bally's products beyond what was contained in its marketing brochures and stated that IGT needed discovery before it could provide infringement contentions.  (Transcript of Teleconference, D. I. 19, at 6:17-20, 7:4-7, 7:16-21, 10:15-19).

        Moreover, IGT did not identify – and still has not identified – any accused product, but instead accused "certain gaming technology, *including but not limited to* [Bally's] Bally Power Bonusing technology."   (Amended Complaint, D.I. 6, ¶ 12) (emphasis added).   Bally Power Bonusing, however, is not a product but a marketing term that refers to an entire suite of gaming systems products.  (Counterclaims, D.I. 40, ¶ 23).   IGT asserted infringement of nine different patents but did not identify which claims were allegedly infringed.  (*See, e.g.*, Amended Complaint, D.I. 6, ¶ 12).   Because these nine patents comprise a total of 292 separate patent claims, and Bally Power Bonusing comprises at least six different product categories, IGT's complaint literally alleges hundreds, if not thousands, of separate instances of patent infringement.  (Counterclaims, D.I. 40, ¶ 24).   IGT's own statements at the May 12 telephone conference and its motion to expedite confirm that IGT had no basis to make these broad allegations.  (Transcript of Teleconference, D.I. 19, at 6:17-20, 8:5-7, 10:16-18; Opening Brief In Support Of Motion For Expedited Discovery, D. I. 8, at 1, 3).

        By this litigation strategy, IGT seeks to raise an artificial barrier to entry to the gaming systems market.  (Counterclaims, D.I. 40, ¶ 14).   Significant barriers already

exist due to the substantial regulatory and licensing requirements that must be independently met in every jurisdiction where gambling devices are legal. (*Id.*). If IGT succeeds, it will attain a monopoly in the gaming systems market by unlawfully excluding competitors. (*Id.,* at ¶ 12). In addition, since IGT is a much larger competitor, its lawsuits have the effect of draining Bally's comparatively smaller resources and reducing its ability to compete. (*Id.,* at ¶ 24).

      Not content with simply bringing this lawsuit, shortly after filing suit IGT also broadcast in a press release its assertion that Bally had willfully infringed its patents. (*Id.,* at ¶ 30). IGT sought to interfere further in the marketplace by also announcing it was seeking a preliminary injunction against Bally, although in a conference before the Court less than two weeks after the press release IGT backed away from this position and has not mentioned any preliminary injunction since. (Transcript of Teleconference, D. I. 19, at 10:10-19). In addition, IGT wrote directly to at least one Bally customer announcing this lawsuit and asserting that Bally's products infringe its patents. (Counterclaims, D.I. 40, ¶ 33).

      IGT's second strategy, in addition to meritless patent litigation, has been to leverage its control of the gaming machines market to achieve a monopoly in the gaming systems market. (*Id.,* at ¶ 35). In the past, IGT had freely given Bally access to its gaming machines for purposes of testing Bally's new gaming systems. (*Id.,* at ¶ 37). IGT has recently and without explanation, however, denied Bally access to its gaming machines. (*Id.,* at ¶ 38). Since IGT controls 75-80% of the gaming machines market, this denial prevents Bally from testing its new products on the majority of existing

gaming machines, hindering its ability to compete with IGT in the market for gaming systems.  (*Id.,* at ¶ 35).

      B.      <u>IGT's Motion To Dismiss And To Strike In The Nevada Action.</u>

      On December 7, 2004, IGT filed a complaint in the District of Nevada against the same defendants here,[2] alleging infringement of six patents.  *IGT v. Alliance Gaming Corp., et al.,* CV-S-04-1676-RCJ-RJJ.  The Nevada Action is currently pending before Judge Robert C. Jones.  (*Id.*).  Bally filed an answer and counterclaims on January 21, 2005.  On February 25, 2005, IGT moved to dismiss Bally's counterclaims for violation of the Sherman Act, violation of the Lanham Act, and tortious interference as well as to strike certain allegations in support of those claims.  (Request For Judicial Notice, filed concurrently herewith, Exhibit 1, IGT's Motion To Strike Portions Of Answer Pursuant To Fed. R. Civ. P. 12(f), And Motion To Dismiss Counterclaim Counts IX Through XIV Pursuant To Fed. R. Civ. P. 12(b)(6); Memorandum Of Points And Authorities In Support Thereof ("Nevada Br.")).  Judge Jones denied IGT's motion in full in a ten-page opinion.  (Request For Judicial Notice, filed concurrently herewith, Exhibit 2, Order ("Nevada Order")).

---

[2]    The named defendants in the Nevada Action are Alliance Gaming Corporation, Bally Gaming International, Inc. and Bally Gaming, Inc. On March 13, 2006, Alliance Gaming Corporation changed its name to Bally Technologies, Inc.  (Declaration of Amy Candido In Support Of Motion To Transfer, D.I. 28, at ¶ 2).

**ARGUMENT**

I.    STANDARD OF REVIEW.

     IGT faces a high hurdle under Rule 12(b)(6):

> The motion to dismiss should be granted only if "after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint."

*In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 397-98 (3d Cir. 2000) (reversing dismissal of antitrust complaint) (quoting *Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998)).  *See also Nokia Corp. v. Interdigital Comm.*, C.A. No.05-15-JJF, 2005 WL 3525696, slip op., at *5 (D. Del. Dec. 21, 2005) (denying dismissal of Lanham Act claim); *Enzo Life Sciences, Inc. v. Digene Corp.,* 295 F. Supp. 2d 424, 427-28 (D. Del. 2003) (same).  The Court may not rely on contrary factual assertions by IGT.  *Id.* at 398.  Moreover, since in an antitrust case the evidence is largely in the hands of the alleged conspirators, "dismissals prior to giving the [counterclaim] plaintiff ample opportunity for discovery should be granted very sparingly."  *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976).

     IGT also argues that Bally's Lanham Act counterclaim should be dismissed under Fed. R. Civ. P. 8. (D.I. 54, Br. at 23).  It is well-established that "the liberal pleading requirements [of the Federal Rules of Civil Procedure] are designed to put the parties on notice generally as to the nature of the cause of action." *Symbol Techs., Inc. v. Hand Held Prods., Inc.,* C.A. No. 03-102-SLR, 2003 U.S. Dist. LEXIS 21002, at *8 (D. Del. Nov. 14, 2003) (citing *Conley*, 335 U.S. at 47).  Fed. R. Civ. P. 8 (a) sets forth three items that are required to satisfy these requirements:  "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a

- 7 -

demand for judgment for the relief the pleader seeks." Bally plainly meets these standards.

## II.    IGT IS REPEATING THE SAME ARGUMENTS RAISED AND REJECTED IN THE NEVADA ACTION.

In the Nevada Action, Bally asserted counterclaims against IGT for violation of the Sherman Act, violation of the Lanham Act, and tortious interference. IGT moved to dismiss these counterclaims, and Judge Jones denied IGT's motion in full. IGT now repeats many of the same arguments raised and rejected in the Nevada Action, apparently hoping for a different result. For example, IGT argued in the Nevada Action that the Noerr Pennington doctrine immunized it against any Lanham Act and tortious interference counterclaims. (Nevada Br. at 25, 27). Notwithstanding Judge Jones' rejection of this argument, IGT has repeated it here, citing the same cases it cited in the Nevada Action. (D.I. 54, Br. at 21, 27). Indeed, sections of IGT's brief here are simply cut and paste from its brief in Nevada. (*Compare* Nevada Br. at 24 *with* D.I. 54, Br. at 19).

By raising arguments already rejected in the related Nevada Action, IGT is wasting time and resources, as well as encouraging inconsistent decisions. While res judicata and collateral estoppel are not binding here (there has not yet been a final decision in the Nevada Action), IGT's rehashed arguments certainly fly in the face of the principles underlying these doctrines, including judicial economy and prevention of vexatious litigation. *See Allen v. McCurry*, 449 US 90, 94 (1980) ("[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."); *Brown v. Felsen*, 442 US 127, 131 (1979) ("Res judicata ... encourages

- 8 -

reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.").

III.    BALLY HAS STATED A CLAIM UNDER THE SHERMAN ACT.

Bally's counterclaims allege that IGT is attempting to monopolize the market for gaming systems in violation of the antitrust laws.  This claim arises under Section 2 of the Sherman Act, which outlaws actual or attempted monopolization.  15 U.S.C. § 2.  To state a claim for attempted monopolization Bally alleges "(1) that [IGT] has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

IGT does not challenge for purposes of this motion Bally's allegations of anticompetitive conduct, intent to monopolize, or dangerous probability of achieving monopoly power.  Instead, IGT's primary argument is that its lawsuit is immunized from antitrust liability by the Noerr-Pennington doctrine.  This is the same argument IGT raised in the Nevada Action.  (Nevada Br. at 16-18).  It was rejected because, as here, Bally properly alleged that IGT has brought a sham litigation.  (Nevada Order at 2).

A.    IGT Is Not Entitled To Noerr-Pennington Immunity Because Bally Has Properly Alleged Sham Litigation.

Bally alleges IGT has brought a sham litigation by seeking to enforce patents it knows to be invalid, unenforceable, and not infringed.  (Counterclaims, D.I. 40, ¶ 104).  IGT argues that its lawsuit is entitled to First Amendment protection under the Noerr-Pennington doctrine.  (D.I. 54, Br. at 8-12).  However the Noerr-Pennington doctrine does not apply to sham litigation.  *City of Columbia v. Omni Outdoor Advert.,*

*Inc.*, 499 U.S. 365, 380 (1991) ("The 'sham' exception to *Noerr* encompasses situations in which persons use the governmental **process** – as opposed to the **outcome** of that process – as an anticompetitive weapon.") (emphasis in original); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57 (1993) ("*PRE*"). In *PRE*, the Supreme Court held that litigation is a sham when the litigation is: (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) subjectively motivated by a bad-faith attempt to interfere with a competitor's business by using the lawsuit as an anticompetitive weapon. *PRE*, 508 U.S. at 60-61. Bally alleges exactly that. (Counterclaims, D.I. 40, ¶¶ 21-29, 46, 53, 60, 67, 74, 81, 88, 95, 102, 104). For example, Bally alleges that IGT's infringement claims are "meritless" and brought "to eliminate Bally from the gaming systems market." (*Id.,* at ¶ 104b). The Court need go no further to deny the motion to dismiss Bally's Sherman Act counterclaim.

IGT initially confuses a motion to dismiss with a decision on the merits, arguing that Bally's counterclaim must be dismissed "unless the Court concludes that no reasonable litigant could realistically expect success on the merits of IGT's claims." (D.I. 54 at 11). That is not the standard on a motion to dismiss. Indeed, the case on which IGT relies was directed to a motion for summary judgment. *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 121 (3d Cir. 1999). Here the Court cannot make any factual conclusions but instead must accept all allegations as true, and furthermore draw all inferences in Bally's favor. *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d at 397-98.

IGT goes on to argue that "Bally has alleged no facts from which the court may infer that these alleged activities were both 'objectively baseless' and constituted a

concealed attempt to interfere with Bally's business." (D.I. 54, Br. at 11-12). As shown above, this is simply not true. Bally explicitly alleges that IGT's infringement claims are meritless, and that IGT knows its asserted patents are not infringed, invalid, and unenforceable. (Counterclaims D.I. 40, ¶¶ 46, 53, 60, 67, 74, 81, 88, 95, 102). Bally further alleges that IGT brought its claims shortly after Bally's successful introduction of a new product, in an attempt to eliminate Bally from the gaming systems market. (*Id.,* ¶¶ 21-29, 104b).

Moreover, this Court has held that bringing a patent infringement suit without a reasonable basis for asserting infringement by the accused products is unequivocally a sham litigation. *Abbott Labs. v. Teva Pharms., Inc.*, 432 F. Supp. 2d 408, 425–26 (D. Del. 2006) (denying motion to dismiss where complaint alleged failure to test accused products to determine whether they included elements claimed by asserted patents). Bally not only explicitly alleges this, it also alleges that IGT failed to identify any accused product, asserted thousands of patents claims against Bally, and based its complaint on marketing brochures instead of actual product specifications. (Counterclaims D.I. 40, ¶¶ 23, 24, 29). Each of these allegations supports the reasonable inference that IGT conducted no patent claim analysis and therefore has no basis for claiming infringement. *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (finding infringement suit was baseless where plaintiff failed to apply claims of every asserted patent to accused device); *In re Warfarin Sodium Antitrust Litig.,* 214 F.3d at 397-98 (holding all inferences must be drawn in claimant's favor).

Bally's counterclaims properly allege sham litigation, both on their face as well as by reasonable inference, and therefore IGT is not entitled to Noerr-Pennington immunity.

B.    Noerr-Pennington Immunity Does Not Apply To The Rest Of Bally's Sherman Act Claim.

IGT argues that the Noerr-Pennington doctrine requires dismissal of Bally's entire claim under the Sherman Act, but addresses only a single aspect of Bally's allegations: sham litigation. IGT completely ignores the other aspect of Bally's antitrust claim, which is plainly laid out in the allegations – that IGT controls an essential facility (gaming machines) and is using that facility to leverage monopoly power in the gaming systems market. The Noerr-Pennington doctrine does not apply to claims for either essential facilities or monopoly leveraging, and therefore does not warrant dismissal of Bally's Sherman Act claim.[3]

1.    Bally Has Stated A Claim Under The Essential Facilities Doctrine.

To state a claim under the essential facilities doctrine of the Sherman Act Bally alleges "(1) control of the essential facility by a monopolist; (2) the competitor's inability practically or reasonably to duplicate the essential facility; (3) denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996) (internal citations omitted). Bally alleges IGT controls 75-80% of the gaming machines market in the United States, a facility essential for Bally to test its new gaming systems and one that

---

[3]    Since IGT has not addressed Bally's essential facilities and monopoly leveraging claims, it has waived any argument for dismissal of those claims as well. *See* D. Del. L. R. 7.1.3(c)(2).

cannot reasonably be duplicated.  (Counterclaims, D.I. 40, ¶¶ 10, 36).  In the past IGT freely granted access to its gaming machines, so that Bally was able to test new gaming systems to ensure they would be compatible with IGT's gaming machines.  (*Id.,* ¶ 37).  Recently IGT denied Bally access.  (*Id.*, ¶ 38).  IGT does not challenge this claim or the underlying allegations for purposes of this motion.

2.    Bally Has Stated A Claim For Monopoly Leveraging.

To state a claim for monopoly leveraging, Bally alleges that IGT "used its monopoly power in one market to obtain, or attempt to attain, a monopoly in the downstream, or leveraged, market."  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 948 (9th Cir. 1991); *see also Fineman v. Armstrong World Indus.,, Inc.*, 980 F.2d 171, 197–98 (3d Cir. 1992).  Bally also alleges specific intent to monopolize the gaming systems market and a dangerous probability of success.  *Fineman*, 980 F.2d at 198 (internal citations omitted).  IGT has monopoly power in the gaming machines market, and is using or attempting to use this monopoly to leverage control of the gaming systems market, by denying Bally the ability to test its systems on IGT's gaming machines.  (Counterclaims, D.I. 40, ¶¶ 10, 36-38).  IGT's conduct demonstrates a specific intent to monopolize the gaming systems market and IGT has sufficient market power to create a dangerous probability of success.  (*Id.,* ¶¶ 11-12).  IGT does not challenge this claim or the underlying allegations for purposes of this motion.

C.    Bally Has Alleged Antitrust Injury.

IGT also argues that even if its conduct is not immunized by the Noerr-Pennington doctrine, it nevertheless does "not rise to the level of exclusionary conduct actionable under the Sherman Act."  (D.I. 54, Br. at 14).  IGT ignores, however, the instances of antitrust injury actually alleged in Bally's counterclaims.

- 13 -

As a preliminary matter, sham litigation itself constitutes an antitrust injury. *Rickards v. Canine Eye Registration Found.*, 783 F.2d 1329, 1334-35 (9th Cir. 1986) ("We have held that the costs incurred in the defense of a suit filed in violation of the antitrust laws constitute antitrust injury as defined in *Brunswick*."); *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir. 1979) ("In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong."). Indeed, courts have explicitly held that bad faith assertion of patent infringement claims is an antitrust injury. *Abbott Labs.*, 432 F. Supp. 2d at 424–28 (holding assertion of patent infringement claim without reasonable basis constitutes antitrust injury); *Handgards, Inc.*, 743 F.2d at 1296 ("The bad faith suit not only excluded Ethicon's only significant competitor, Handgards, it also checked possible future competitors until the Gerard patent had been declared invalid."). Since Bally alleges sham litigation, as described above, that alone suffices to constitute an antitrust injury.

Furthermore Bally alleges that IGT is attempting to exclude it from the gaming systems market. (Counterclaims, D.I. 40, ¶ 12). Because Bally is a significant competitor, and barriers to entry would prevent other competitors from replacing it, this suffices to allege an antitrust injury. *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701(GMS), 2006 WL 1452803, slip op. at *2 (D. Del. May 25, 2006) (denying motion to dismiss because using the patent system and exclusive-dealing contracts to exclude competitor sufficiently alleged harm to competition); *Fuentes v. South Hills Cardiology*, 946 F.2d 196, 201 (3d Cir. 1991) (holding exclusion of competitor

constituted antitrust injury); *Gill v. Delaware Park, LLC*, 294 F. Supp. 2d 638, 644 (D. Del. 2003) (same).  IGT completely ignores this antitrust injury.

In addition, IGT's cited authority simply fails to address Bally's allegations of antitrust injury arising out of sham litigation and IGT's attempt to exclude Bally from the gaming systems market  Instead, it addresses antitrust injury caused by a defendant's advertising.  *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal and Professional Publ'ns, Inc.*, 108 F.3d 1147 (9th Cir. 1997) (finding no antitrust injury from "distribution on law school campuses of anonymous advertising fliers"); *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366 (6th Cir. 2003) (finding no antitrust injury from "three mass mailings sent out by defendant over several years to between 7,000 and 8,000 hospitals and insurance companies"); *National Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/and American Home Products Corp.*, 850 F.2d 904 (2d Cir. 1988) (finding no antitrust injury from letter to pharmacists discussing merits of substituting a generic drug for plaintiff's drug); *Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276 (D. Kan. 1997) (finding no antitrust injury from contacting plaintiff's customers, promoting products at prices barely above plaintiff's standard costs, using plaintiff's trade secrets, soliciting vendors of plaintiff using confidential information, and publishing defamatory statements about plaintiff).

Finally, the issue of antitrust injury is highly fact-dependent and should not be disposed of on a motion to dismiss.  Perhaps for this reason, IGT relies almost exclusively on cases involving post-trial or summary judgment motions, and cites only a single case, *Bushnell*, where a court actually dismissed a claim under the Sherman Act.

(D.I. 54, Br. at 12).  *Bushnell* is inapposite, however, because it involved neither allegations of sham litigation, essential facilities, monopoly leveraging, nor any attempt to raise barriers to entry.  *Bushnell*, 973 F.Supp. 1276 (addressing allegations of contacting plaintiff's customers, promoting products at prices barely above plaintiff's standard costs, using plaintiff's trade secrets, soliciting vendors of plaintiff using confidential information, and publishing defamatory statements about plaintiff).  As courts have recognized, analysis of a claim under Section 2 of the Sherman Act is inherently fact-intensive and depends on the specific context for the conduct involved.  *LePage's Inc. v. 3M*, 324 F.3d 141, 152 (3d Cir. 2003) (citation omitted).  It also must be guided by the "economic realities" of the industry at issue.  *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 189 (3d Cir. 2005).

            For all of these reasons, Bally's Sherman Act counterclaim should not be dismissed under Rule 12(b)(6).

IV.    BALLY  HAS  STATED  A  CLAIM  UNDER  THE  LANHAM
       ACT.

            Once again, IGT is repeating arguments raised and rejected in the Nevada Action.  There IGT argued that statements in its press release were either literally true or statements of opinion, and therefore, could not be made in bad faith under the Lanham Act.  (Nevada Br. at 22-25).  Judge Jones rejected this argument, holding that the simple allegation that IGT acted in bad faith sufficed to withstand a motion to dismiss.  (Nevada Order at 8).  The Nevada court also rejected IGT's argument that the Noerr-Pennington doctrine immunized its press release from liability under the Lanham Act.  (*Id.*)

A.    <u>Bally Alleges That IGT Acted in Bad Faith.</u>

IGT argues that Bally must plead bad faith.  (D.I. 54, Br. at 16).  IGT ignores, however, that Bally has done so explicitly:  "All of IGT's statements to Bally's customers and potential customers were made in bad faith and have harmed Bally by creating confusion in the market, thereby placing Bally at a competitive disadvantage." (Counterclaims, D.I. 40, ¶ 34).  The Court need go no further to deny IGT's motion.

In addition, however, Bally has alleged that IGT in its press release asserts infringement of patents it knows to be invalid, unenforceable, and not infringed.  (*Id.,* ¶¶ 46, 53, 60, 67, 74, 81, 88, 95, 102).  These allegations are supported by three principal misleading statements in IGT's press release:

> "IGT will continue to aggressively prosecute lawsuits against Bally and others who infringe its intellectual property."

> "The patents at issue in this lawsuit cover innovations that Bally has chosen to exploit for its own benefit ...."

> "[IGT] cannot condone willful infringement by others of IGT's valuable intellectual property."

In each of these statements, IGT falsely represents that the patents-in-suit are valid, enforceable, and infringed, when it had no reasonable basis for those statements.  (*Id.,* ¶¶ 46, 53, 60, 67, 74, 81, 88, 95, 102).  Under the Federal Circuit's controlling precedent, these statements were therefore made in bad faith:

> Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out.

*Zenith Electronics Corp. v. Exzec, Inc*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).  Consistent

with the *Zenith* court's holding, IGT's statements that Bally infringes, made in bad faith,

are actionable under the Lanham Act.  *Id.,* at 1354.[4]

> B.    **IGT's Statements In Its Press Release Are Factual Statements, The Veracity of Which Cannot Be Determined On A Motion To Dismiss.**

IGT wrongly argues that the statements in its press release are literally true

and therefore, as a matter of law, cannot be made in bad faith.  (D.I. 54, Br. at 15-19.)

While IGT points to selected statements that are couched as allegations and accusations,

it ignores other statements – including the three above – that are plainly presented as fact.

The Court cannot accept these statements as literal truth, not least because Bally's

allegations to the contrary must be taken as true on a motion to dismiss.  *In re Warfarin

Sodium Antitrust Litig.,*  214 F.3d at 397-98.  Indeed, if the Court were bound to accept

IGT's statements of Bally's purported infringement as literal truth, there would be little

for the Court do here.  Instead, the question of infringement is one of the primary

contested issues in this action.

IGT goes on to argue that the statements in its press release are not

actionable under the Lanham Act because they are "merely IGT's subjective opinions."

(D.I. 54, Br. at 18.)   IGT's characterization of those statements as subjective opinions

does not make them so.  Instead, courts have held statements in the marketplace to be

statements of fact so long as their truth or falsity can be proven.  *See Plastic Molded*

---

[4]    The *Mikohn* case that IGT cites in support of dismissal of Bally's claims under the Lanham Act actually involved the denial of a preliminary injunction.  *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 898 (Fed. Cir. 1998).  The court therefore applied a different standard to its review of the claim – likelihood of success on the merits – than is appropriate here.  *Id.  Mikohn* does not provide any support for the proposition that a claim for marketplace statements of patent infringement, made in bad faith, is not a colorable claim under the Lanham Act, as set forth in *Zenith*.

*Techs., Inc. v. Cinpres Gas Injection Ltd.*, 290 F. Supp. 2d 793, 799-804 (E.D. Mich. 2003) (holding that statements declaring products were not infringing competitor's patents were statements of fact because they "are susceptible of being proven true, false, or misleading"); *Avid Identification Sys., Inc. v. Schering-Plough Corp.*, No. CV-99-00170-VAP, 2002 WL 464714, at *1-2 (9th Cir. March 25, 2002) (finding "specific and measurable" claims to be statements of fact actionable under the Lanham Act).  Courts also have found that statements about litigation, such as those in IGT's press release, are similarly actionable under the Lanham Act.  *See Alexander Binzel Corp. v. Nu-Tecsys Corp.,* No. 91C2092, 2000 WL 310304, at *5-6 (N.D. Ill. March 24, 2000) (finding statement declaring that lawsuit was brought "to protect users ... from counterfeit product" was a statement of fact actionable under the Lanham Act).[5]  Because the statements in IGT's press release, such as the three above, are susceptible of being proven true or false, they are not subjective opinions – IGT's characterization notwithstanding.

IGT also argues that statements by its CEO are not actionable because there is an exception under the Lanham Act for laypersons interpreting the law.  (D.I. 54, Br. at 18).  As a preliminary matter, IGT's argument is misleading because an objective reader would reasonably understand that IGT's CEO, when stating publicly that Bally willfully infringed IGT's patents, was not simply stating his personal opinion but was speaking on behalf of the company and properly advised by company attorneys.  In any case, there is no exception under the Lanham Act for laypersons declaring patent

---

[5]    Even IGT's cases support Bally's claim.  In *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir.1999), the court held that defendant's statement that plaintiff was "not paying its bills" was "clearly [a statement] of fact, able to be proven true or false."  *Id.*, at 732.  IGT's statements about Bally's alleged infringement are similarly statements of fact capable of being proven true or false.

infringement by a competitor's products. Most of the cases on which IGT relies involve a layperson interpreting an ambiguous statute or regulation that had yet to be given a clear interpretation by a court or agency of competent jurisdiction. *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (holding statement by layperson interpreting ambiguous section of California Financial Code was not actionable); *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 488 (D.C. Cir. 1996) (holding statement by layperson that municipal regulation permitted taxi company to provide on-call service was not actionable); *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-32 (3d Cir. 1990) (holding statement by layperson that competitor had mislabeled an ingredient in its cough syrup was not actionable because controlling FDA regulations were unclear).

IGT also quotes extensively from an unreported case addressing statements by a party that it was entitled to bring suit and intended to do so – in contrast to IGT's statements that Bally has actually infringed IGT's patents. *Cook, Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 US Dist LEXIS 17331 (N.D. Ill. Feb. 28, 2002). The final case on which IGT relies addressed statements that, in contrast to the three presented above, were expressly qualified as subjective beliefs or allegations. *SDS USA, Inc. v. Ken Specialties*, No. 99-133, 2002 U.S. Dist. LEXIS 16762, *89 (D.N.J. Aug. 28, 2002) ("We believe Ken Specialties has been infringing on our patents from some time, and that this infringement materially damages SDS USA.") (internal quotations omitted).

In short, IGT has no support for its proposition that it is exempt from the Lanham Act so long as its declarations that Bally infringes its patents are made through its CEO.

C.    IGT's Statements In Its Press Release Are Independently
      Actionable Because They Are Misleading.

Even if the statements in IGT's press release were literal truths or subjective opinions, Bally has alleged that the press release, taken as a whole, is misleading. (Counterclaims, D.I. 40, ¶ 110). The Lanham Act imposes liability for statements that are misleading, as well as for those that are false, and the press release misleads Bally's customers and potential customers to believe that Bally's products infringe IGT's valid, enforceable patents. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921 (3d Cir. 1990) ("a statement is actionable under § 43(a) if it is affirmatively misleading, partially incorrect, or untrue as a result of failure to disclose a material fact") (quoting 2 J. McCarthy, *Trademarks and Unfair Competition* § 27:7B (2d ed. 1984)). While IGT ignores this allegation altogether,[6] it must be accepted as true on a motion to dismiss. *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 37 (1st Cir. 2000) (holding court on motion to dismiss could not conduct own analysis of whether advertisement was misleading because this was a factual issue that depended on what was actually conveyed to the audience). Since Bally has alleged the press release is misleading, the Court can deny IGT's motion to dismiss this claim without addressing its argument that statements in the press releases are literally true or subjective opinions.

---

[6]    Since IGT has not addressed the allegation that its press release and letter are misleading it has therefore waived any argument for dismissal of this claim as well. *See* D. Del. L.R. 7.1.3(c)(2).

D.    IGT's Press Release Receives No Noerr-Pennington Immunity.

IGT also repeats its argument, rejected in the Nevada Action, that statements in its press release are protected by the First Amendment under the Noerr-Pennington doctrine.  (D.I. 54, Br. at 21-22).  Neither the Supreme Court nor the Third Circuit has ever held that the Noerr-Pennington doctrine applies to Lanham Act claims. *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005) (declining to address applicability of Noerr-Pennington doctrine to Lanham Act claims); *Municipal Revenue Services, Inc. v. Xspand, Inc.*, C.A. No. 05-671, 2005 WL 1367416, at *2 (M.D. Pa. June 8, 2005) ("neither the United States Supreme Court, nor the Third Circuit Court of Appeals has addressed the applicability of the Noerr/Pennington doctrine to claims that arise under Section 43(a) of the Lanham Act").  IGT cites to a single case from the Eastern District of Michigan in which the doctrine has been so applied. *Melea Limited v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 760 (E.D. Mich 2004) (holding without analysis that Noerr-Pennington doctrine applies to claim under Lanham Act).  Other courts – including one on which IGT relies (D.I. 54 at 19) – have specifically rejected such an extension of the Noerr-Pennington doctrine. *Cook, Inc. v. Boston Scientific Corp.*, 2002 U.S. Dist. LEXIS at *6-7 ("The [Noerr-Pennington] doctrine immunizes parties who seek government action from antitrust liability . . . .  However, the rationale behind the holdings in both *Noerr* and *Pennington* rested heavily on interpretation of the Sherman Act. . . .  Because [plaintiff's claim] arises not under the Sherman Act but under the Lanham Act, these cases and their reasoning are inapposite, and we will not use them to bar [plaintiff's] Lanham Act claim.") (citation omitted).

In any case, as discussed above, IGT's lawsuit receives no Noerr-Pennington immunity because Bally has alleged a sham litigation and therefore the press releases and letters announcing the lawsuit cannot themselves receive Noerr-Pennington immunity. *See supra* Section I.A; *see also Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("conduct incidental to a petition is protected by Noerr-Pennington if the petition itself is protected") (citation omitted).

> E.     IGT's Statements In Its Letter To Lincoln Park Are Factual Statements.

IGT's arguments regarding the letter to Lincoln Park, a Bally customer, are identical to those regarding the press release. They fail for the same reasons. Bally's claims regarding the Lincoln Park letter are supported by three principal statements:

> "[W]e are committed to finding a non-infringing alternative for you."
>
> "[W]e may be able to assist you with the purchase and installation of a non-infringing 'standard' player tracking system from Bally."
>
> "[W]e believe the installation and use of Bally's iView device on a VLT for player tracking purposes is an infringement of IGT's patents."

While couched as an offer to help, IGT's statement that there are non-infringing alternatives to Bally's product explicitly asserts that the product Lincoln Park requested in fact infringes. The truth or falsity of this implication cannot be determined on a motion to dismiss. *Plastic Molded Techs., Inc. v. Cinpres Gas Injection Ltd.*, 290 F. Supp. 2d 793, 799-804 (E.D. Mich. 2003) (holding that statements declaring products did not infringe competitor's patents were statements of fact because they "are susceptible of being proven true, false, or misleading"). Moreover, even if these statements are not outright false, they are misleading because they create the impression that Bally's product infringes. Whether or not the letter is misleading is an issue of fact that cannot be resolved on a motion to dismiss. *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 37 (1st Cir. 2000) (court on motion to dismiss could not

conduct own analysis of whether advertisement was misleading because this was a factual issue that depended on what was actually conveyed to the audience).

IGT's statements in its letter to Bally's customer are therefore also actionable under the Lanham Act.

F.    Bally's Remaining Lanham Act Counterclaims Are Adequately Pled.

A Lanham Act claim is not a fraud claim, and IGT is simply wrong in asserting that Lanham Act claims are subject to the heightened pleading requirement of Rule 9. *See Synopsys*, 2006 WL 1452803, at *3 (holding none of the purposes of Rule 9 would be served by its application to Lanham Act claim); *John P. Villano, Inc. v. CBS Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("[A] claim of false advertising under § 1125 [the Lanham Act] ... falls outside the ambit of Rule 9(b) and may not be the subject of any heightened pleading requirement."); *Bio-Technology General Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 383 (S.D.N.Y. 1995); *Summit Tech., Inc. v. High-Land Med. Instruments, Co.*, 933 F. Supp. 918, 937 (C.D. Cal. 1996) (noting that Rule 8(a), in the context of a Lanham Act claim, does not require the plaintiff to set forth specific allegations or evidentiary facts).

Furthermore, although IGT characterizes Bally's allegations as "sparse" (D.I. 54, Br. at 23), it cites to no authority holding that a Lanham Act claim cannot be plead in such a manner. To the contrary, *Zenith* suggests the opposite. *Zenith*, 182 F. 3d at 1343 (denying, on other grounds, motion to dismiss Lanham Act counterclaims pled "on information and belief"); *see also Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 344 F. Supp. 2d 936, 941-42 (M.D. Pa. 2004) (denying, on other grounds, motion to dismiss Lanham Act counterclaims in which defendant pled that plaintiff had published false accusations about defendants "to [defendant's] Insurance Clients, and

*upon information and belief*, to others in the auto glass repair and replacement industry")
(emphasis added); *Enzo,* 295 F. Supp. 2d at 427-28 (finding that counterclaim that
touched upon all elements of a Lanham Act claim stated a claim).   Under the liberal
notice pleading standard of Rule 8, Bally need only provide IGT with notice of the nature
of its claim, which is exactly what Bally has done.

V.    BALLY   HAS   STATED   A   CLAIM   FOR   TORTIOUS
      INTERFERENCE   WITH   PROSPECTIVE   BUSINESS
      RELATIONSHIPS.

        "The  tort  of  interference  with  prospective  business  relationships  in
Delaware  requires  the  following  elements:    (1)  the  existence  of  a  valid  business
relationship or expectancy;  (2) knowledge of the relationship or expectancy on the part
of  the  interferer;    (3)  intentional  interference  which  induces  or  causes  a  breach  or
termination  of  the  relationship  or  expectancy;    and  (4)  resulting  damages  to  the  party
whose relationship or expectancy has been disrupted."  *Gill v. Delaware Park, LLC*, 294
F.Supp.2d 638, 645 (D. Del. 2003).  Bally alleges that IGT's press release and letter
interfere  with  its  business  relationships  with  existing  and  potential  customers.
(Counterclaims, D.I. 40, ¶¶ 30-34).

        IGT leads off by asserting it is unable to determine from Bally's pleadings
whether it is claiming interference with existing contracts or with prospective business
relations.   (D.I. 54, Br. at 24).   The title of Count XII – Intentional Interference with
Business Relationships – is clear.   The Court can therefore disregard IGT's arguments
addressing claims for intentional interference with existing contractual relations, as Bally
is not asserting this claim.

- 25 -

IGT then proceeds to raise the same arguments it raised in the Nevada Action – that prospective relationships were not alleged with particularity, that its press release was not issued in bad faith, and that tortious interference was barred by Noerr-Pennington. (Nevada Br. at 27-28). Judge Jones rejected all of these arguments. (Nevada Order at 9-10).

IGT argues this claim should be dismissed because Bally has not alleged with particularity the "prospective contractual relations" with which IGT has intentionally interfered. (D.I. 54, Br. at 25). Even applying IGT's argument to the asserted claim for interference with business relationships, Bally has met the requirement of Rule 8 by setting forth a "short plain statement of the claim showing that the pleader is entitled to relief."[7] Bally actually identified the valid business relationships and expectancies that are impacted by IGT's conduct. *Gill*, 294 F.Supp.2d at 645. Bally has alleged its economic interest in selling to the gaming systems market. (Counterclaims, D.I. 40, ¶ 114). It also has specifically identified Lincoln Park as a customer. (*Id.*, ¶ 33). Bally further identifies how IGT interfered with these relations by alleging that IGT was "aware that Bally has contractual relationships with third parties based on its ability to manufacture and sell systems without facing exposure to patent litigation." (*Id.*, ¶ 114). As such, IGT – an admitted and alleged competitor of Bally for the business of these very same customers – is certainly well aware of the relationships with which Bally alleges IGT is interfering.

---

[7]    While state law governs the substantive resolution of any claim in federal courts, federal law governs the sufficiency of pleading any claim. *See Walker v. Armco Steel Corp,* 446 U.S. 740, 747-51 (1980).

Accordingly, Bally adequately identified the applicable business relationships and expectancies in its pleading. *See, e.g., Proctor & Gamble Co. v Haugen*, 222 F. 3d 1262, 1279 (10th Cir. 2000) (allegations of interference with "consumers, distributors and other customers" found sufficient at the pleading stage); *Cook v. Winfrey*, 141 F. 3d 322, 328 (7th Cir. 1998) (holding that it is sufficient to plead "class" of entities with whom a prospective economic relationship exists); *Enzo*, 295 F. Supp. 2d at 430 (Rule 8(a)(2) pleading requirements are a low threshold; there are "discovery mechanisms, such as interrogatories, for ascertaining more details regarding the allegations of the complaint.").[8]

IGT goes on to repeat the same erroneous arguments it has made throughout its motion – that the press release was not in bad faith (D.I. 54, Br. at 15; *see* Bally's response Section IV.A) and that the statements therein are constitutionally protected under *Noerr-Pennington* (D.I. 54, Br. at 21; *see* Bally's response Section IV.D). For the same reasons that these arguments fail as applied to Bally's Lanham Act claim, the Court should reject them as applied to Bally's claim of tortious interference with business relationships.[9]

---

[8]  IGT's reliance on a minute order out of the District of Nevada is misplaced. *Cascade Invests. v. Bank of Am.*, No. CV-N-99-599-ECR (RAM), 2000 WL 1842945, at *3 (D. Nev., September 29, 2000).  The court in *Cascade* was ruling on a motion for a more definite statement regarding claims for intentional interference, not a motion to dismiss.  *See id.*  In addition, the facts of *Cascade* do not, on the face of the 4 page minute order at least, appear analogous at all.  Here, unlike in *Cascade*, Bally has provided more than the "sufficient notice so that [IGT] may respond to the allegations."  *Id.* at *3.  Moreover, in *Cascade* the Nevada court did not dismiss the claim for intentional interference but allowed leave to amend to add further details. *Cascade*, 2000 WL 1842945, at *4.

[9]  While IGT cites *Cheminor* for the proposition that the Noerr-Pennington doctrine applies to its press release, that case actually applied the doctrine to a petition before
(Continued…)

IGT also argues that the Lincoln Park letter is not actionable because "IGT is declining Lincoln Park's request for a prospective business arrangement **with IGT, not Bally.**" (D.I. 54, Br. at 26.) (emphasis in original). This argument is simply irrelevant. As IGT's own authority holds, Bally need not allege that IGT had an "affirmative duty to agree to provide services to Lincoln Park," but rather that IGT's statements in its letter interfered with Bally's business relationship with Lincoln Park. *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 5 F.Supp. 2d 238, 243 (D. Del. 1998). This is exactly what Bally alleges, and therefore it has properly stated a claim. (Counterclaims, D.I. 40, ¶ 33-34).

IGT's reliance on Delaware's litigation privilege as an "additional and independent reason" for dismissal is unfounded and barely warrants mention. Neither of the two cases cited has any application to IGT. One applied the litigation privilege to a verified complaint and sworn affidavits. *Nix v. Sawyer*, 466 A.2d 407, 410 (Del. Super. 1983) (holding privilege applied to "statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings"). The other applied the privilege to statements by the Director of Internal Revenue for the District of Delaware, made within the scope of his official duties. *Short v. News-Journal Co.*, 205 A.2d 6, 8-9 (Del. Super. 1965) (holding privilege applied to "a public official to inform the public of his activities in matters of public interest"). Obviously, IGT's press release and letter were neither offered in the course of a judicial proceeding nor issued by a public official.

---

(…continued)
the International Trade Commission and not to any press release. *Cheminor*, 168 F.3d at 128.

## **CONCLUSION**

For the foregoing reasons, IGT's motion to dismiss should be denied.  In the alternative, to the extent the Court concludes that any portion of the Counterclaims should be dismissed, Bally hereby requests leave to amend its counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

Jack B. Blumenfeld (# 1014)
Karen Jacobs Louden (# 2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
Attorneys for Defendants

OF COUNSEL:

Charles K. Verhoeven
Amy H. Candido
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street
San Francisco, CA  94111
(415) 875-6600

Edward J. DeFranco
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, NY  10010
(212) 849-7000

August 18, 2006
533425

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on August 18, 2006 I electronically

filed the foregoing with the Clerk of the Court using CM/ECF, which will send

notification of such filing(s) to the following:

> William J. Wade
> Richards, Layton & Finger

and that I also caused copies to be served upon the following in the manner indicated:

### <u>BY HAND</u>

> William J. Wade
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE  19801

### <u>BY FEDERAL EXPRESS</u>

> David P. Enzminger
> O'Melveny & Myers LLP
> 610 Newport Center Drive
> Newport Beach, CA  92660


*/s/ Karen Jacobs Louden*

_____

Karen Jacobs Louden
klouden@mnat.com