IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IGT, a Nevada corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>BALLY GAMING INTERNATIONAL, INC.,<br>BALLY TECHNOLOGIES, INC., and BALLY<br>GAMING, INC.,<br><br>        Defendants. | C.A. No. 06-282 (KAJ) |

**IGT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**DEFENDANT'S COUNTERCLAIM COUNTS X, XI AND XII**

OF COUNSEL

David P. Enzminger
Brett J. Williamson
Charles A. Thomasian
O'MELVENY & MYERS L.L.P.
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000

September 1, 2006

William J. Wade (#704)
Anne Shea Gaza (#4093)
Matthew W. King (#4566)
Richards, Layton & Finger
wade@rlf.com
gaza@rlf.com
king@rlf.com
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Plaintiff IGT*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................1

II.     BALLY FAILS TO STATE A CLAIM UNDER SECTION 2 OF THE
        SHERMAN ACT .................................................................................................1

        A.      IGT Is Entitled To Noerr-Pennington Immunity Because Bally Failed To
                Sufficiently Plead Sham Litigation. .......................................................1

                1.      Unlike In The Nevada Action, Bally Has Made No Factual
                        Allegations That The Patents Were Fraudulently Obtained. .................2

                2.      Bally Has Made No Factual Allegations In Support Of Its Claim
                        That This Action Is Objectively Baseless. .............................................2

                3.      The Underlying Record Demonstrates That IGT's Claims Are Not
                        Objectively Baseless. .............................................................................5

                4.      Allowing Bally's Indistinct Sham Litigation Claim To Proceed To
                        Discovery Would Chill The First Amendment Rights Noerr-
                        Pennington Is Intended To Protect. ........................................................7

        B.      Bally Fails To Allege Cognizable Antitrust Injury Resulting From
                Anticompetitive Conduct. ......................................................................7

        C.      Bally Fails To State A Claim Under The "Essential Facilities" Doctrine. ......10

        D.      Bally Fails To State A Claim For Monopoly Leveraging. ................................11

III.    BALLY HAS FAILED TO STATE A CLAIM UNDER THE LANHAM ACT ........12

        A.      Bally's Allegation Of "Bad Faith" Is Insufficiently Pleaded. ........................12

        B.      The Court Should Dismiss Bally's Lanham Act Claim Because The
                Accused Statements Are Either Literally True Or Consist Of IGT's
                Subjective Statements Or Statements Of Opinion. .....................................15

        C.      The Court Should Find That Bally's Lanham Act Claim Is Barred By
                Noerr-Pennington. .................................................................................16

IV.     BALLY'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE
        BUSINESS RELATIONSHIPS SHOULD BE DISMISSED .......................................17

        A.      Bally Fails To State a Claim For Tortious Interference With Prospective
                Business Relationships. .........................................................................17

        B.      Bally's Tortious Interference Claim is Barred By Noerr-Pennington And
                Preempted By Federal Patent Law. .........................................................18

V.      CONCLUSION .................................................................................................18

i

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Teva Pharms. USA, Inc.*,
432 F. Supp. 2d 408 (D. Del. 2006) ............................................................................................ 3, 8

*Apartment Source, L.P. v. Philadelphia Newspapers, Inc.*,
C.A. No. 98-5472, 1999 U.S. Dist. LEXIS 7744 (E.D. Pa. 1999) .................................................. 10

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*,
129 F. Supp. 2d 578 (W.D.N.Y. 2000), *aff'd*, 229 F.3d 1135 (2d Cir. 2000) (TABLE) ............... 5, 7

*Bio-Technology Gen. Corp. v. Genentech, Inc.*,
886 F. Supp. 377 (S.D.N.Y. 1995) ......................................................................................... 13, 14

*Brotech Corp. v. White Eagle Int'l Techs. Group, Inc.*,
No. 03-232, 2004 U.S. Dist. LEXIS 11552 (E.D. Pa. June 21, 2004) ............................................. 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) .................................................................................................................... 7

*Bushnell Corp. v. ITT Corp.*,
973 F. Supp. 1276 (D. Kan. 1997) ............................................................................................... 9

*Cardtoons, L.C. v. Major League Baseball Players Assoc.*,
208 F.3d 885 (10th Cir. 2000) ................................................................................................... 17

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999) ...................................................................................................... 18

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
No. C 05-3465 PH, 2006 U.S. Dist. LEXIS 2176 (N.D. Cal. Jan. 3, 2006) ...................................... 8

*Christian Memorial Cultural Center, Inc. v. Michigan Funeral Directors Assoc.*,
998 F. Supp. 772 (E.D. Mich. 1998) ............................................................................................. 5

*City of Newark v. Delmarva Power & Light Co.*,
497 F. Supp. 323 (D. Del. 1980) .................................................................................................. 4

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) ........................................................................................................ 3

*Coastal States Mfg., Inc. v. Hunt*,
694 F.2d 1358 (5th Cir. 1983) ................................................................................................... 18

*College Net, Inc. v. XAP Corp.*,
No. CV-03-1229-HU, 2004 U.S. Dist. LEXIS 21059 (D. Or. Oct. 12, 2004) ................................. 13

*Cook, Inc. v. Boston Scientific Corp.*,
No. 01 C 9479, 2002 U.S. Dist. LEXIS 17331 (N.D. Ill. Feb. 28, 2002) ....................................... 15

*DirecTV, Inc. v. Keehn*,
No. 5:03-CV-58, 2003 U.S. Dist. LEXIS 19679 (W.D. Mich. Oct. 20, 2003)................................3

*Ethypharm S.A. France v. Bentley Pharms., Inc.*,
388 F. Supp. 2d 426 (D. Del. 2005)........................................................................................17

*Formula One Licensing, B.V. v. Purple Interactive Ltd.*,
No. C 00-2222 MMC, 2001 U.S. Dist. LEXIS 2968 (N.D. Cal. 2001)............................................4

*Fuentes v. South Hills Cardiology*,
946 F.2d 196 (3d Cir. 1990) ...................................................................................................9

*Garshman v. Universal Resources Holding, Inc.*,
824 F.2d 223 (3d Cir. 1987) .................................................................................................17

*Gill v. Delaware Park LLC*,
294 F. Supp. 2d 638 (D. Del. 2003)..........................................................................................9

*Handgards, Inc. v. Ethicon, Inc.*,
601 F.2d 986 (9th Cir. 1979) ...................................................................................................8

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*,
90 F.3d 737 (3d Cir. 1996) ...................................................................................................10

*John P. Vallano, Inc. v. CBS, Inc.*,
176 F.R.D. 130 (S.D.N.Y. 1997) ............................................................................................13

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
No. CV-S-97-1383, 2001 WL 34778689 (D. Nev. 2001) ..................................................................5

*Music Center S.N.C. Di Luciano Pisoni & C. v. Prestini Musical Instruments Corp.*, 874
F. Supp. 543 (E.D.N.Y. 1995) .................................................................................................7

*Noble Fiber Techs., LLC v. Argentum Med., LLC*,
No. 3:05-CV-01855, 2006 WL 1793219 (M.D. Pa. Apr. 27, 2006)..........................................13, 14

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995) .................................................................................................16

*Performance Aftermarket Parts Group Ltd. v. Group Automotive Sys., Inc.*,
No. H-05-4251, 2006 U.S. Dist. LEXIS 56201 (S.D. Tex. Aug. 11, 2006) .....................................3

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)..........................................................................................................6, 16

*Quickie Tie-Down Enters. v. Carolina N. Mfg., No. CIV 06-0496*,
2006 U.S. Dist. LEXIS 34386 (D. Ariz. May 23, 2006) ...............................................................13

*Raines v. Switch Mfg.*,
44 U.S.P.Q. 2d 1195 (N.D. Cal. 1997) .......................................................................................4

iii

*Rickards v. Canine Eye Registration Foundation, Inc.*,
783 F.2d 1329 (9th Cir. 1986) ...................................................................................9

*Rose v. Morning Call, Inc.*,
No. 96-2973, 1997 U.S. Dist. LEXIS 3912 (E.D. Pa. 1997) ........................................11

*SDS USA, Inc. v. Ken Specialties*,
No. 99-133, 2002 U.S. Dist. LEXIS 16762 (D.N.J. Aug. 28, 2002) ..............................15

*Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.*,
401 F.3d 123 (3d Cir. 2005) .....................................................................................16

*Spanish Int'l Comms. Corp., Sin, Inc. v. Leibowitz*,
608 F. Supp. 178 (S.D. Fla. 1985), *aff'd*, 778 F.2d 791 (11th Cir. 1985) (TABLE).....................3, 4

*Springs Window Fashions L.P. v. Novo Indus., L.P.*,
323 F.3d 989 (Fed. Cir. 2003) ..................................................................................14

*Standing Comm. On Discipline of the U.S. Dist. Court for the Centr. Dist. of Cal. v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) ..........................................................................16

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
933 F. Supp.. 918 (C.D. Cal. 1996) ...........................................................................13

*Synopsys, Inc. v. Magma Design Automation, No. CIVA 05-701 (GMS)*,
2006 WL 1452803 (D. Del. 2006).....................................................................9, 10, 13

*The Thermos Co. v. Igloo Prods. Corp.*,
No. 93 C 5826, 1995 U.S. Dist. LEXIS 18382 (N.D. Ill. Dec. 13, 1995)........................6

*Twin City Bakery Workers And Welfare Fund v. Astra Aktiebolag*,
207 F. Supp. 2d 221 (S.D.N.Y. 2002) ...................................................................4, 5, 6

*Verizon Commns. v. Law Offices of Curtis Trinko, LLP*,
540 U.S. 398 (2004)..........................................................................................10, 11, 12

*WE, Inc. v. City of Philadelphia*,
174 F.3d 322 (3d Cir. 1999) .....................................................................................16

*Zenith Elec. Corp. v. Exzec, Inc.*,
182 F.3d 1340 (Fed. Cir. 1999) ....................................................................13, 14, 15, 18

## STATUTES AND OTHER AUTHORITIES

James Calder et al., 2003 MILTON HANDLER ANTITRUST REVIEW,
2004 Colum. Bus. L. Rev. 379, 384 (2004).................................................................12

Aaron R. Gary, FIRST AMENDMENT PETITION CLAUSE IMMUNITY FROM TORT SUITS: IN
SEARCH OF A CONSISTENT DOCTRINAL FRAMEWORK, 33 Idaho L. Rev. 67 (1996) ....................17

## I.    **INTRODUCTION**

IGT requests the Court dismiss Bally's tort counterclaims based on IGT's conduct incidental to this lawsuit, such as announcing the suit to the public and informing an IGT customer of the suit in response to the customer's inquiry.  For these tort counterclaims to overcome *Noerr-Pennington* immunity and preemption by federal patent law, Bally must allege that IGT's complaint was *objectively baseless* and that its conduct was undertaken in bad faith. These allegations must be supported by specific, pleaded facts, for the recitation of magic words is insufficient to survive a motion to dismiss when the claimant pleads no factual basis for the claims.    Otherwise, any litigant could defeat *Noerr-Pennington* protection of the First Amendment right of petition by "talismanic" repetition of certain terms, as Bally does here. Because Bally has not alleged a single specific factual allegation in support of these claims, its counterclaims should be dismissed.

The Court should not be misled by Bally's assertion that IGT's arguments have been raised and rejected in the Nevada Action.  In the Nevada Action, unlike this case, Bally attempted to plead facts to support antitrust and Lanham Act claims by including at least eight pages of specific factual allegations that the patents-in-suit there were fraudulently obtained.[1]  By contrast, in this case Bally does not offer a single specific factual allegation in support of its claim that IGT is knowingly asserting claims that are invalid, unenforceable and not infringed.  IGT's motion to dismiss should be granted.

## II.    **BALLY FAILS TO STATE A CLAIM UNDER SECTION 2 OF THE SHERMAN ACT**

### A.    **IGT Is Entitled To Noerr-Pennington Immunity Because Bally Has Not and Cannot Sufficiently Plead Sham Litigation.**

Bally does not dispute that *Noerr-Pennington* immunity is applicable to IGT's patent infringement claims and its conduct incidental to those claims, including IGT's press release and letter to Lincoln Park.  Rather, Bally argues that IGT's conduct is not entitled to such immunity

---

[1] After relying on this pleading to defeat IGT's motion to dismiss in Nevada, Bally was unable to produce

because it falls within the "sham litigation" exception to *Noerr-Pennington* immunity. (D.I. 62 at

12.) But despite making this argument, Bally alleges no facts to support its sham litigation claim.

### 1.    Unlike In The Nevada Action, Bally Has Made No Factual Allegations That The Patents Were Fraudulently Obtained.

At the outset, Bally argues that IGT's opening brief repeats arguments that have been

rejected by the district court in the Nevada Action and that IGT seeks to persuade this Court to

issue an inconsistent ruling.  But Bally's pleadings in Nevada and Delaware are materially

different, so no inconsistency would arise if this Court properly dismisses Bally's claims.  In

Nevada, Bally claimed that the patents at issue were procured by fraud, which, if true, at least

pleads facts to support Bally's *Walker Process* claim.  There, Bally pleaded at least eight pages of

specific factual allegations regarding alleged omissions, misrepresentations and fraud during

prosecution of the patents-in-suit.  *See* Request for Judicial Notice, filed concurrently herewith,

Ex. 1, (Bally's Answer, Affirmative Defenses and Counterclaims in Nevada Action at 13-20).

Ultimately, Bally could not support any of these allegations with evidence sufficient to establish

the claim, and IGT has since moved for summary judgment.  By contrast, this case involves no

claim of fraud in procuring the patents.  Here, Bally has not offered a single specific factual

allegation to support its conclusory statements that the patents-in-suit here are unenforceable,

invalid, or not infringed.  And the Nevada court made no findings regarding any allegation of

sham litigation, so there is no risk of inconsistent rulings.  (*See* D.I. 62 at Exhibit 2.)

### 2.    Bally Has Made No Factual Allegations In Support Of Its Claim That This Action Is Objectively Baseless.

Bally's answering brief fails to identify any factual allegations in the counterclaims that,

if accepted by the court, would demonstrate that IGT lacked probable cause to bring its patent

infringement claims.  Instead, Bally relies only on the following conclusory statements, which are

insufficient as a matter of law:

- "IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge

---

any evidence to support its claims.  IGT has now moved for summary judgment in the Nevada action.

that the [patents-in-suit are] invalid, unenforceable and not infringed." (D.I. 40, ¶¶ 46, 53, 60, 67, 74, 81, 88, 95, 102.)

- "IGT has made overbroad and ill-defined claims of infringement of the patents-in-suit knowing that they are meritless in order to eliminate Bally from the gaming systems market." (D.I. 40 ¶ 104(b).) [2]

*See* (D.I. 62 at 10 (citing D.I. 40).) The law is clear, however, that mere recitation of legal conclusions is insufficient to survive a motion to dismiss. Bally alleges no facts in support of its claims that IGT knowingly brought "meritless" claims based on patents that are invalid, unenforceable, or not infringed. The Court need "not accept as true unsupported conclusions and unwarranted inferences" on a motion to dismiss. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998) (internal quotation marks omitted).

> [C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish manner.

*Id.* at 263. *See also Performance Aftermarket Parts Group Ltd. v. Group Automotive Sys., Inc.*, No. H-05-4251, 2006 U.S. Dist. LEXIS 56201, at *9 (S.D. Tex. Aug. 11, 2006) (granting motion to dismiss sham litigation antitrust claim because plaintiffs "failed to allege, other [than] in most conclusory fashion, that the filing of the [accused lawsuit] constituted either patent misuse or sham litigation . . . such that [defendant] would not be entitled to the protection of the *Noerr-Pennington* doctrine"); *DirecTV, Inc. v. Keehn*, No. 5:03-CV-58, 2003 U.S. Dist. LEXIS 19679, at *21 (W.D. Mich. Oct. 20, 2003) (granting motion to dismiss sham litigation claim because defendant failed to adequately explain why accused lawsuit was objectively baseless, other than alleging that defendant's litigation threats contained false or misleading statements).

---

[2] Bally also cites paragraphs 21-29 of its counterclaims in support of its argument that it properly pleaded sham litigation. *See* D.I. 40 at Subsection B, ¶¶ 21-29, entitled "IGT's Patent Infringement Suits Are Predatory Acts Intended To Eliminate Bally As A Market Competitor." The allegations in paragraphs 21-29 relate solely to IGT's *intent* in filing patent infringement suits, which is irrelevant to whether the accused litigation is "objectively baseless." *See Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006). Bally falsely asserts at page 11 of its answering brief that it has "explicitly" alleged that IGT "based its complaint on marketing brochures instead of actual product specifications." Not only is such an allegation irrelevant, this allegation appears nowhere in Bally's counterclaims.

3

Bally's complaint, which offers only an unexplained assertion that IGT's claims are "meritless" and an allegation – repeated for each patent-in-suit – that IGT sued "with knowledge" that the patents are invalid, unenforceable and not infringed, is "precisely the type of complaint which courts have repeatedly dismissed as failing to state a claim." *Spanish Int'l Comms. Corp., Sin, Inc. v. Leibowitz*, 608 F. Supp. 178, 184 (S.D. Fla. 1985), *aff'd*, 778 F.2d 791 (11th Cir. 1985) (TABLE). In *Spanish Int'l*, the plaintiff asserted antitrust claims under the Sherman Act and argued that *Noerr-Pennington* immunity did not apply because the defendant engaged in sham litigation. 608 F. Supp. at 184. Following a long line of precedent, the court found that plaintiff's failure to state "concrete facts" in support of its claim rather than simply resorting to "talismanic" repetition of words like "sham," "false," and "baseless," warranted dismissal of plaintiff's claims. *Id.* The court explained

> The inadequacy of conclusory pleading of antitrust claims is even more striking, however, when the conclusory pleading involves, as here, an attempt to invoke the "sham exception" to Noerr-Pennington antitrust immunity. The presence of protected First Amendment freedoms has caused many courts to requires specific factual pleading. When complaints have failed to live up to these standards, many courts have dismissed them pursuant to Federal Rules of Civil Procedure 12(b)(6).

*Id.* at 182. Because Bally does not offer any indication in its answering brief that it could allege any specific facts to repair its inadequate pleading of sham litigation, Bally's claim should be dismissed without leave to amend. *See Twin City Bakery Workers And Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002) (dismissing claims based on sham litigation because neither pleading nor motion papers suggested that claimant "ha[d] any particulars to repair" conclusory allegations).

This Court is one of many courts that have dismissed antitrust claims because a claimant's sham litigation claims are insufficiently pleaded. *See City of Newark v. Delmarva Power & Light Co.*, 497 F. Supp. 323, 326 (D. Del. 1980) (dismissing defendant's Sherman Act counterclaims based on *Noerr-Pennington* immunity because First Amendment interests "require a litigant claiming 'sham' behavior to state the basis for this allegation in more than conclusory

terms; his complaint must provide some basis for believing that what appears to be an exercise of

the right to petition is really something else"); *see also Formula One Licensing, B.V. v. Purple*

*Interactive Ltd.*, No. C 00-2222 MMC, 2001 U.S. Dist. LEXIS 2968 (N.D. Cal. 2001) (allegation

that "[plaintiff] instigated a meritless trademark infringement action" was "insufficient to meet

the heightened pleading requirement" to state a claim based on sham litigation exception to

Noerr-Pennington); *Raines v. Switch Mfg.*, 44 U.S.P.Q.2d 1195, 1200 (N.D. Cal. 1997) (granting

motion to dismiss because "if a bare allegation of bad faith litigation were sufficient to defeat the

*Noerr-Pennington* bar, every claimant would be able to avoid the intent of the Supreme Court

merely by alleging bad faith on the part of the party seeking to enforce the patent"). This case is

no different. Under Bally's argument, every defendant in every patent case could assert an

antitrust counterclaim merely by including certain conclusory magic words.

### 3.    The Underlying Record Demonstrates That IGT's Claims Are Not Objectively Baseless.

In addition to Bally's failure to adequately plead sham litigation, an examination of the

underlying record of the accused litigation demonstrates that IGT's claims are not objectively

baseless. On a motion to dismiss an antitrust claim based on alleged sham litigation, courts

routinely consider undisputed facts of the underlying record to determine whether an antitrust

claimant's allegations, taken as true, demonstrate that the antitrust defendant lacked probable

cause to institute the litigation. *See*, *e.g. Twin City Bakery Workers*¸ 207 F. Supp. 2d 221

(granting motion to dismiss sham litigation claim upon examination of court orders and related

public records in the accused litigation); *Bath Petroleum Storage*, *Inc. v. Market Hub Partners*,

*L.P.*, 129 F. Supp. 2d 578 (W.D.N.Y. 2000), *aff'd*, 229 F.3d 1135 (2d Cir. 2000) (TABLE)

(granting motion to dismiss Sherman Act § 2 claim based on examination of underlying

proceedings alleged to be sham litigation); *Christian Memorial Cultural Center, Inc. v. Michigan*

*Funeral Directors Assoc.*, 998 F. Supp. 772 (E.D. Mich. 1998) (granting motion to dismiss

antitrust claim alleging sham litigation in view of undisputed facts regarding underlying litigation).

Here, examination of court orders related to this litigation demonstrates that IGT's claims are not objectively baseless.  Two of the patents-in-suit are reissues of patents that have previously been held valid by a jury in a previous litigation.[3]  *See* Request For Judicial Notice, Ex. 2, (Special Verdict Form) (jury finding that claims of U.S. Patent Nos. 5,752,882 (the "'882 patent") and 5,836,817 (the "'817 patent") were not invalid and were infringed by defendant Mikohn Gaming Corp.); Ex. 3, (Judgment in a Civil Case) (entering judgment on jury verdict); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. CV-S-97-1383, 2001 WL 34778689 (D. Nev. 2001) (denying Mikohn's motions for judgment as matter of law and for new trial).  In the absence of any factual allegations by Bally, a prior jury determination upholding the validity and enforceability of the patent claims asserted here precludes a finding that IGT's claims are objectively baseless.  *See Twin City Bakery Workers*, 207 F. Supp. 2d at 224 (facts that infringement claims of four of six asserted patents proceeded beyond summary judgment and two of those proceeded through trial "preclude[d] any contention that defendants' litigation is so baseless as not to warrant Noerr-Pennington immunity"); *The Thermos Co. v. Igloo Prods. Corp.*, No. 93 C 5826, 1995 U.S. Dist. LEXIS 18382 (N.D. Ill. Dec. 13, 1995) (on motion to dismiss, considering results of prior, related litigation in finding that current litigation was not a sham).  In *Thermos Co.*, the court granted a motion to dismiss defendant's counterclaims, finding that Thermos's lawsuit and related conduct were protected from antitrust liability under *Noerr-Pennington*. *Id.* at *16.  In finding that Igloo failed to show that Thermos engaged in sham litigation, the court observed that, in previous cases, "[i]t has been . . . determined that Thermos has the right to enforce its THERMOS trademark and to prohibit competitors from using the word "thermos" on products covered by its federal registration."  Similarly, the fact that claims of two

---

[3] After the *Mikohn v. Acres* litigation, the '817 and '882 patents were reissued by the PTO as U.S. Patent Nos. RE 38,812 and RE 37,885, respectively, both of which are asserted against Bally in this action.  The reissued patents include claims identical to those upheld by the jury in *Mikohn v. Acres*.

of the patents-in-suit have been determined valid and enforceable by a jury and the absence of

any specific factual allegations by Bally concerning sham litigation preclude a finding that IGT's

claims are so objectively baseless that they do not warrant *Noerr-Pennington* immunity.

To the extent Bally's sham litigation argument relies on its allegation that IGT has

instituted three infringement suits (including the present litigation) against Bally since 2001, this

argument is also without merit. (*See* D.I. 40, ¶ 19.) The first of these three actions resulted in a

$7.3 million dollar judgment against Bally (formerly Alliance) and in favor of IGT, which was

recently upheld by the Federal Circuit. (D.I. 54 at Ex. A; Request For Judicial Notice, Ex. 4.)  A

successful litigation cannot be said to be "objectively baseless." *Prof'l Real Estate Investors, Inc.*

*v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993) ("A winning lawsuit is by definition

a reasonable effort at petitioning for redress and therefore not a sham."). As to the second

litigation, the Nevada Action, Bally also fails to allege any facts supporting an argument that that

litigation is objectively baseless. Furthermore, no order or determination in that case would

support such a claim.

### 4.    Allowing Bally's Indistinct Sham Litigation Claim To Proceed To Discovery Would Chill The First Amendment Rights *Noerr-Pennington* Is Intended To Protect.

Finally, Bally argues that antitrust claims should only rarely be dismissed before the

antitrust claimant has "ample opportunity for discovery." (D.I. 62 at 7.) Given the paucity of any

specific allegations, Bally appears to be arguing that all patent defendants in all patent cases

should be able to take discovery on the possibility of asserting an antitrust claim. Courts have

recognized that allowing antitrust claims based on "broad and indistinct" allegations of sham

litigation to proceed to discovery would encourage antitrust "strike suits" and "effectively chill

the First Amendment rights which Noerr immunity was intended to protect." *Bath Petroleum*

*Storage*, 129 F. Supp. 2d at 594  (dismissing inadequately pleaded sham litigation claim based on

consideration of documents from underlying proceedings) (*quoting Music Center S.N.C. Di*

*Luciano Pisoni & C. v. Prestini Musical Instruments Corp.*, 874 F. Supp. 543, 549 (E.D.N.Y.

1995)).  Consequently, Bally's antitrust claims predicated on its ill-defined allegation of sham litigation should be dismissed.

> **B.**     **Bally Fails To Allege Cognizable Antitrust Injury Resulting From Anticompetitive Conduct.**

> **1.**     **Sham Litigation Itself Is Not Cognizable Antitrust Injury.**

The Supreme Court has explained that antitrust plaintiffs must prove economic "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Bally offers two arguments in support of its assertion that it has alleged antitrust injury resulting from anticompetitive conduct.  First, Bally asserts that "sham litigation itself constitutes an antitrust injury."  (D.I. 62 at 14.)  This argument fails because, as set forth above, Bally has failed to adequately plead sham litigation.  But even if Bally had sufficiently pleaded sham litigation, its argument that this constitutes antitrust injury by itself is incorrect.

To support its contention that "sham litigation itself constitutes an antitrust injury," Bally cites the Ninth Circuit cases of *Rickards v. Canine Eye Registration Foundation, Inc.*, 783 F.2d 1329 (9th Cir. 1986) and *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir. 1979).  In *Rickards*, however, the court specifically questioned the viability of the notion that the costs of defending against sham litigation constitute antitrust injury.  783 F.2d at 1335 ("[W]e question whether the injury at issue [cost incurred defending against a baseless suit] is of the type that Congress sought to redress in enacting the Sherman Act.").  Moreover, the antitrust plaintiff in *Rickards* did not rely solely on a sham litigation claim.  *See Rickards*, 783 F.2d at 1334 (noting that plaintiff provided evidence of "a concerted refusal to deal.")

The decision in *Handgards* also does not support Bally's proposition.  As explained by the Northern District of California, the *Handgards* court "did not discuss attorneys' fees in the context of what constitutes an antitrust injury, but rather in connection with the question of the trial judge's charge to the jury regarding the type of damages the plaintiff might obtain."  *Chip-*

*Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PH, 2006 U.S. Dist. LEXIS 2176, at *14-15 (N.D. Cal. Jan. 3, 2006) ("A claim of injury in the form of attorneys' fees in defending against a patent infringement suit is not an injury to 'competition' or the type of injury that the antitrust laws were designed to protect against, but is rather a purely individual economic injury to [claimant] . . . ."). In addition, the Third Circuit has not adopted the view that the cost of defending against sham litigation constitutes antitrust injury. *See Brotech Corp. v. White Eagle Int'l Techs. Group, Inc.*, No. 03-232, 2004 U.S. Dist. LEXIS 11552, at *23 (E.D. Pa. June 21, 2004) (rejecting argument based on *Handgards* that costs of defending against alleged sham litigation constituted antitrust injury because "the Third Circuit has not adopted the *Handgards* determination" and because there was no allegation that the payment of such costs "had any effect on competition, on the price, quantity or quality of RenalTech's products"). Finally, *Abbott Labs.* did not hold that an allegation of sham litigation, without more, is sufficient to allege antitrust injury. 432 F. Supp. 2d at 424-28. The portion of the case cited to by Bally addresses whether sham litigation was adequately pleaded—not whether sham litigation by itself constitutes antitrust injury. *See id.*

## 2.    An Alleged "Goal" To Exclude Bally From The Market Is Not Antitrust Injury.

Bally also argues that because it is a significant competitor and barriers to entry would prevent others from replacing it, IGT's alleged attempts to exclude Bally from the gaming systems market constitute harm to competition. (D.I. 62 at 14.) Bally's claim that IGT's conduct is intended to eliminate Bally from the market is insufficient to show antitrust injury for two reasons. First, the harm Bally alleges is harm to Bally, not harm to competition. *See Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1285 (D. Kan. 1997) ("Plaintiff is not saved by its conclusory allegation that defendant's conduct injured competition or by its argument that the removal of one competitor from the market injures competition generally."). Given its most generous reading, Bally's counterclaims allege merely that IGT's "intent" or "goal" is to

9

eliminate Bally from competition in the gaming systems market. D.I. 40 at ¶¶ 12, 15, 29. But Bally provides no authority to support the view that alleging an antitrust defendant's intent to eliminate a competitor is an adequate substitute for alleging some actual harm to competition. Nowhere does Bally allege any actual harm to competition resulting from anticompetitive conduct.

The cases Bally cites do not support its theory that *potential* or *intended* harm to a single competitor in the gaming systems market constitutes harm to competition. *See Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701 (GMS), 2006 WL 1452803 (D. Del. 2006); *Gill v. Delaware Park LLC*, 294 F. Supp. 2d 638 (D. Del. 2003); and *Fuentes v. South Hills Cardiology*, 946 F.2d 196 (3d Cir. 1990) . Unlike Bally, the antitrust plaintiffs in *Gill* and *Fuentes* alleged that they were *actually excluded* from the particular market and that the result was an actual decrease in competition – not that there was some possibility that they *could* be excluded in the future and that some decrease in competition *might* result therefrom. *See Fuentes*, 946 F.2d at 197-98; *Gill*, 294 F. Supp. 2d at 642. Moreover, unlike Bally, the plaintiff in *Fuentes* alleged impacts on patients and other participants in the market in addition to harm to himself. 946 F.2d 196. Similarly, in *Synopsys*, in addition to misuse of the patent system, the antitrust plaintiff alleged that the counter-defendant was using exclusive dealing contracts to "run [the counter-plaintiff] out of business." 2006 WL 1452803, at *2. Moreover, the antitrust plaintiff alleged that the counter-defendant already possessed a monopoly that it acquired and maintained through anti-competitive conduct. *Id.* at *1. Thus, these cases do not support Bally's argument that its alleged injury – that IGT has a "goal" to exclude it from the gaming systems market – is cognizable under the antitrust laws. Therefore, Bally's antitrust counterclaim should be dismissed.

## C.    Bally Fails To State A Claim Under The "Essential Facilities" Doctrine.

Bally argues in its answering brief that it has stated a claim under the "essential facilities" doctrine. (D.I. 62 at 12.)    Bally alleges that IGT has "recently denied" Bally access to IGT

machines for gaming systems testing, D.I. 40, ¶ 36, and that this denial constitutes an antitrust violation. The "essential facilities" doctrine, unrecognized by the Supreme Court, is a narrow exception to the general rule that a party is free to deal with whom it chooses. "[A]s a general matter, the Sherman Act 'does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" *Verizon Commns. v. Law Offices of Curtis Trinko, LLP*, 540 U.S. 398, 408, 410 (2004) (noting that the Court has never recognized the essential facilities doctrine "crafted by some lower courts").

To state a claim under the essential facilities doctrine, an antitrust claimant must allege "(1) control of the essential facility by a monopolist; (2) the competitor's inability practically or reasonably to duplicate the essential facility; (3) denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996) (dismissing essential facilities claim because plaintiff failed to show that defendant denied plaintiff use of its facility). "In order to fit into the narrow essential facilities exception to the general rule that refusals to deal do not violate the antitrust laws, [antitrust claimants] must prove all four of the elements of their claim." *Apartment Source, L.P. v. Philadelphia Newspapers, Inc.*, C.A. No. 98-5472, 1999 U.S. Dist. LEXIS 7744 (E.D. Pa. 1999). However, Bally has failed to allege the first and second elements – that IGT "controls" the alleged essential facility and that Bally is unable practically or reasonably to duplicate it or obtain it from another source. Bally merely alleges that it "requires access to those manufacturer's gaming machines to test its systems." (D.I. 40, ¶ 36.) Bally does not allege that it cannot otherwise obtain access to IGT's games – which are sold throughout the world – for testing purposes. Nothing in Bally's counterclaims explains why IGT's machines, with which Bally competes, are "essential facilities" owned by a monopolist. Bally pleads that IGT's market share is only 40%. (D.I. 40, ¶11.)

Moreover, in the context of a Sherman Act § 2 claim alleging denial of access to facilities, the Supreme Court has stated that "[a] problem should be deemed irremediable by antitrust law when compulsory access requires the court to assume the day-to-day controls characteristic of a regulatory agency." *Verizon Commns.,* 540 U.S. at 415 (citation omitted) (affirming district court's grant of motion to dismiss antitrust claims). Bally does not explain the remedy it would have the Court fashion if Bally were to prove its essential facilities claim. Bally provides no guidance as to what level of access it believes would be appropriate, to which games, how often, or at what price. The Supreme Court has made clear that an antitrust court is not the appropriate "day-to-day enforcer of these detailed sharing obligations." *Id.*

Finally, in addition to the elements of an essential facilities claim, Bally must sufficiently allege the other elements required to establish a Sherman Act § 2 counterclaim. *Rose v. Morning Call, Inc.*, No. 96-2973, 1997 U.S. Dist. LEXIS 3912 (E.D. Pa. 1997) ("Obviously, these elements, which delineate a particular type of antitrust claim, must be alleged and proved in addition to the other elements necessary to establish claims under §§ 1 & 2 of the Sherman Act."). As explained above, Bally has failed to allege antitrust injury resulting from any exclusionary conduct. Thus, Bally's essential facilities claim fails for this additional reason.

### D.   Bally Fails To State A Claim For Monopoly Leveraging.

In its answering brief, Bally asserts that it has stated a claim for monopoly leveraging. Bally points to paragraphs 10 and 36-38, which describe IGT's alleged denial of access by Bally to IGT machines for testing. (D.I. 62 at 13.) Bally now argues that IGT's alleged denial of such access is an attempt to leverage purported monopoly power in the gaming machines market to obtain monopoly power in the gaming systems market. *Id.* Bally's argument ignores recent Supreme Court precedent on monopoly leveraging claims.

The Supreme Court has eliminated monopoly leveraging as a stand-alone antitrust claim. In *Verizon Commns.*, 540 U.S. at 415 n.4, the Supreme Court explained that the monopoly leveraging theory "presupposes anticompetitive conduct, which in this case could only be the

12

refusal to deal claim we have rejected." *Id.* Thus, Bally cannot sustain a stand-alone claim for monopoly leveraging by simply alleging, as it has done, that (1) IGT has monopoly power in the gaming market, and (2) IGT is attempting to use this monopoly power to obtain monopoly power in the gaming systems market by denying Bally access to IGT's gaming machines. Rather, Bally must allege some anticompetitive conduct separate and apart from the leveraging. *See id.* at 415 n.4. Bally's leveraging allegation is based on precisely the same factual allegations as its essential facilities claim. (D.I. 62 at 13.) Thus, Bally's leveraging claim fails for the same reasons that its essential facilities claim fails. *See id.*; *see also* James Calder et al., 2003 Milton Handler Antitrust Review, 2004 Colum. Bus. L. Rev. 379, 384 (2004) ("[M]onopoly leveraging, at least as an independent basis for Section 2 liability, has been rejected in the United States.") (citing *Verizon Commns.*, 540 U.S. at 415 n.4).

## III.    BALLY HAS FAILED TO STATE A CLAIM UNDER THE LANHAM ACT

Once again, Bally's assertion that IGT's Lanham Act arguments have been "raised and rejected" in the Nevada Action is false. As stated above, Bally's claims in the Nevada Action that IGT's lawsuit and conduct incidental to that lawsuit were initiated in bad faith were supported by detailed factual allegations regarding purported misconduct before the PTO. *See* Request for Judicial Notice, Ex. 1 at 13-20. By contrast, Bally has asserted no facts to support its recitation of the words "bad faith" to describe IGT's conduct in this case.

### A.    Bally's Pleaded No Facts To Establish Bad Faith.

In arguing that Lanham Act claims need not be pleaded with particularity under Rule 9, Bally misapprehends the law. When Lanham Act claims are based on statements of patent infringement, the claimant must properly allege the additional element of bad faith in order to avoid preemption of its Lanham Act claims by federal patent law. *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999) (for a patentee to be liable under the Lanham Act for marketplace activity in support of its patent, that activity must have been undertaken in bad faith). Although courts are split as to whether certain types of ordinary Lanham Act claims must

be pleaded with particularity under Rule 9, Bally cites no case contradicting the well-settled notion that when a course of conduct akin to fraud is alleged – such as in patent infringement cases where the additional element of bad faith is required – that conduct must be pleaded with particularity under Rule 9. *See Noble Fiber Techs., LLC v. Argentum Med., LLC*, No. 3:05-CV-01855, 2006 WL 1793219 (M.D. Pa. Apr. 27, 2006) (conclusory allegations are insufficient to allege bad faith with particularity under Rule 9); *Quickie Tie-Down Enters. v. Carolina N. Mfg.*, No. CIV 06-0496, 2006 U.S. Dist. LEXIS 34386 (D. Ariz. May 23, 2006) (when Lanham Act claim depends on alleged fraudulent conduct, heightened pleading requirements of Rule 9 apply); *College Net, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 U.S. Dist. LEXIS 21059, at *14-16 (D. Or. Oct. 12, 2004) (Lanham Act claims alleging pattern of intentionally false representations are "grounded in fraud" and must be pleaded with particularity under Rule 9).

None of the cases cited by Bally for its argument that it need not plead bad faith with particularity addresses the standard for pleading the additional bad faith element required in the patent infringement context; moreover, at least one of these cases supports dismissal of conclusory claims like those at issue here. *See Synopsys,* 2006 WL 1452803, at *3 (addressing only the elements of an ordinary Lanham Act claim and not discussing the additional element of bad faith); *John P. Vallano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) (addressing false advertising claim not involving patent infringement allegations and not subject to the requirement to plead bad faith); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 383 (S.D.N.Y. 1995) (dismissing Lanham Act claim that was "nothing more than a bare recitation of statutory language" because "[i]t is a well-established fact that such claims will be dismissed because they are merely conclusory in nature and legally insufficient"); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918 (C.D. Cal. 1996) (not addressing claims of patent infringement or additional bad faith element).

In *Noble Fiber Techs.*, the plaintiff's allegations included the following: (1) a description of defendant's statements;  (2) an assertion that defendants statements were false; (3) an assertion

the statements were made in bad faith with knowledge they were false; (4) a claim that plaintiff did not infringe the patents, and that the patents were invalid and unenforceable. *Id.* at *6. The court found these allegations "conclusory and insufficient to allege bad faith with the particularity necessary under Rule 9(b). There are no facts alleged within the Amended Complaint demonstrating why the statements were false." *Id.* Bally's allegation that "[a]ll of IGT's statements to Bally's customers and potential customers were made in bad faith and have harmed Bally" is similarly conclusory and devoid of factual allegations demonstrating why the statements are false. (D.I. 62 at 17.)

Bally misapprehends *Zenith Elec. Corp.* to support its argument that even unsupported, conclusory allegations of bad faith are sufficient to survive a pleading challenge. (D.I. 62 at 17-18.) Unlike this case, the patent infringement defendant in *Zenith* specifically alleged at least two key facts to support its claim that the patentee acted in bad faith: (1) that the patentee falsely represented to potential customers that the defendant infringed the plaintiff's patents knowing that "the scope of Zenith SAW patents was limited to touch panels which utilized SAW technology," and (2) that the patentee falsely represented that the defendant "could not manufacture and/or sell an acoustic touch panel or system which did not infringe [plaintiff's] SAW patents when [plaintiff] knew . . . that the scope of [the patents] was limited to touch panels which utilized SAW technology." 182 F.3d at 1343. By contrast, Bally has alleged no specific facts in support of its bad faith allegation. Thus, *Zenith* provides no support for Bally's apparent theory that the use of the magic words "bad faith," without more, is an adequate substitute for alleging basic facts to support such a claim. *See id.*

Finally, even if Rule 9 were not the applicable standard, conclusory statements such as Bally's are legally insufficient under the more liberal pleading standard as well. *See Bio-Technology Gen. Corp.*, 886 F. Supp. at 383 (dismissing conclusory Lanham Act claim under Rule 8 standard); *see also Springs Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 999 (Fed. Cir. 2003) (stating that the law "recognizes a presumption that the assertion of a duly

granted patent is made in good faith"). Because Bally has failed to sufficiently allege bad faith under even the more liberal pleading standard of Rule 8, its Lanham Act claim should be dismissed. *See Zenith*, 182 F.3d at 1353-54.

    **B.**    **The Court Should Dismiss Bally's Lanham Act Claim Because The Accused Statements Are Either Literally True Or Consist Of IGT's Subjective Statements Or Statements Of Opinion.**

        Bally's Lanham Act claim fails for the additional reason that none of the identified statements is actionable as a matter of law. Bally points to three "principal" statements in IGT's press release and three statements in the Lincoln Park letter that it alleges are "plainly presented as fact," whose veracity it claims the Court cannot consider on a motion to dismiss:

- "IGT will continue to aggressively prosecute lawsuits against Bally and others who infringe its intellectual property."

- "The patents at issue in this lawsuit cover innovations that Bally has chosen to exploit for its own benefit . . ."

- "[IGT] cannot condone willful infringement by others of IGT's valuable intellectual property."

- "[W]e are committed to finding a non-infringing alternative for you."

- "[W]e may be able to assist you with the purchase and installation of a non-infringing 'standard' player tracking system from Bally."

- "[W]e believe the installation and use of Bally's iVIEW device on a VLT for player tracking purposes is an infringement of IGT's patents."

(D.I. 62 at 17.) Each of these statements, which were made in reference to IGT's basis for bringing its lawsuit, would be clearly understood in its context as a statement of IGT's subjective opinion. In addition, the last statement above is explicitly formulated as an expression of IGT's belief. These statements of opinion are non-actionable. *See Cook, Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 U.S. Dist. LEXIS 17331 (N.D. Ill. Feb. 28, 2002); *SDS USA, Inc. v. Ken Specialties*, No. 99-133, 2002 U.S. Dist. LEXIS 16762, at *89 (D.N.J. Aug. 28, 2002). Bally's attempts to distinguish these cases are unavailing. The press release in *Cook* accused the plaintiff of violating an agreement and stated the defendant's intention to "aggressively protect" its rights.

*Cook*, 2002 U.S. Dist. LEXIS 17331 at *3. Similarly, the accused statements in IGT's press release state IGT's belief that Bally has infringed IGT's patents and express IGT's future intention to aggressively protect its intellectual property.

Since the statements were made in communications that disclose and describe the pending patent infringement lawsuit, readers would clearly understand that the statements are based on the allegations of that lawsuit, allowing readers to "accept or reject the author's opinion based on their own independent evaluation of the facts." *Standing Comm. On Discipline of the U.S. Dist. Court for the Centr. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995); *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."). Because such statements of opinion are protected by the First Amendment, Bally's argument that the statements are "independently actionable because they are misleading" is wrong. *See id.*

### C.    The Court Should Find That Bally's Lanham Act Claim Is Barred By *Noerr-Pennington*.

Bally argues that *Noerr-Pennington* immunity should not apply to its Lanham Act claims because neither the Supreme Court nor the Third Circuit has yet decided its applicability. *See Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005) (noting that "the district court, after careful consideration, concluded that the *Noerr/Pennington* doctrine shields the defendants from liability under the Lanham Act" but declining to address the issue because the Lanham Act claim was barred by laches). But the Supreme Court has indicated that *Noerr-Pennington* extends beyond the antitrust context and many other courts, including the Third Circuit, have applied the doctrine outside its original antitrust context. *See Prof'l Real Estate Investors*, 508 U.S. at 59 ("Whether applying *Noerr* as an antitrust doctrine *or invoking it in other contexts*, we have repeatedly reaffirmed that evidence of anticompetitive intent or

17

purpose alone cannot transform otherwise legitimate activity into a sham.") (emphasis added);

*WE, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999) ("This court, along with

other courts, has by analogy extended the Noerr-Pennington doctrine to offer protection to

citizens' petitioning activities in contexts outside the antitrust area as well. . . .  The purpose of

Noerr-Pennington as applied outside the antitrust field is the protection of the right to petition.");

*Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 208 F.3d 885, 889 n.3 (10th Cir. 2000)

("Innumerable federal and state courts have concluded that the Noerr-Pennington doctrine is

rooted in the First Amendment right to petition and therefore must be applied to all claims

implicating that right, not just to antitrust claims.") (*quoting* Aaron R. Gary, First Amendment

Petition Clause Immunity From Tort Suits:  In Search of a Consistent Doctrinal Framework, 33

Idaho L. Rev. 67, 95 (1996)).  Accordingly, the Court should find that IGT's litigation and

conduct incidental to that litigation are protected from Lanham Act liability by the First

Amendment right to petition embodied in the *Noerr-Pennington* doctrine.

**IV.    BALLY'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE
BUSINESS RELATIONSHIPS SHOULD BE DISMISSED**

**A.    Bally Fails To State a Claim For Tortious Interference With Prospective
Business Relationships.**

Bally has failed to state a claim for tortious interference with prospective business

relationships with respect to any particular prospective relationship.  As to Bally's prospective

relationship with Lincoln Park, nowhere in Bally's complaint does it allege any damage to this

prospective relationship resulting from IGT's conduct.  Notably, Bally does not even allege that

Lincoln Park chose not to purchase Bally's products based on IGT's letter.  *See Ethypharm S.A.*

*France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 434-35 (D. Del. 2005) (stating that a claim

for tortious interference must allege, among other things, damages).  As to any other existing or

prospective relationships, Bally simply states that as a competitor of Bally, IGT "is certainly well

aware of the relationships with which Bally alleges IGT is interfering."  Bally provides no

authority, however, to support its "we know you know who we mean" form of pleading.  Nor

18

could it do so, because identification of the alleged relationships is an essential element of pleading the tort. Consequently, Bally's tortious interference claim should be dismissed for failure to state a claim. *See Garshman v. Universal Resources Holding, Inc.*, 824 F.2d 223, 233 (3d Cir. 1987) (affirming lower court's granting of motion to dismiss when the prospective contractual relationships were not specifically identified).

In its motion, IGT pointed out that the Lincoln Park letter on its face showed that IGT was declining a potential contract between IGT and Lincoln Park, not Bally. Without citing any authority, Bally just brushes aside this rather obvious problem with its pleading as "irrelevant." It is hardly irrelevant. IGT has the right may to do business with whom it pleases. IGT had no legal obligation to enter into a service contract with Lincoln Park to benefit Bally. Bally could have performed the service itself, or Lincoln Park could have hired someone else to do it.

### B.    Bally's Tortious Interference Claim is Barred By Noerr-Pennington And Preempted By Federal Patent Law.

Bally does not dispute that the Third Circuit has expressly ruled that *Noerr-Pennington* applies to tortious interference claims. *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119 (3d Cir. 1999), 168 F.3d at 128. Instead, Bally observes that the decision that extended *Noerr-Pennington* to tortious interference claims did so in the context of an ITC proceeding. (*See* D.I. 62 at 27-28 n.9.) This does not change the well-settled application of *Noerr-Pennington* to conduct incidental to petitioning activity. Because the accused letter and press release merely inform the public and a customer of the existence of this litigation, these communications are protected as conduct reasonably attendant upon effective litigation. *See, e.g. Coastal States Mfg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983). Since Bally has failed to adequately allege bad faith, its state law claim based on IGT's marketplace activity in support of its patent is preempted by federal patent law. *See Zenith*, 182 F.3d at 1355 ("[W]e hold that bad faith is a prerequisite to Exzec's state-law tortious interference claim; without it, the claim is preempted by patent law."). Thus, Bally's tortious interference claim should be dismissed.

19

## V.    <u>CONCLUSION</u>

Bally's counterclaims, which are based on IGT's patent infringement lawsuit and conduct incidental to this lawsuit, are barred by *Noerr-Pennington* immunity. Bally has not pleaded facts sufficient to establish, if true, that IGT's claims are a sham. Bally's Sherman Act claim also fails because Bally has failed to state claims under the "essential facilities" and "monopoly leveraging" doctrines.

Bally's Lanham Act counterclaim should be dismissed because its unsupported, conclusory allegations of bad faith are insufficient as a matter of law. And the statements identified by Bally can only reasonably be understood as statements of opinion regarding IGT's patent infringement suit against Bally, which are non-actionable under the Lanham Act and protected under the First Amendment and *Noerr-Pennington* doctrine.

Bally's tortious interference counterclaim should also be dismissed. This claim is also barred by *Noerr-Pennington*. The tortious interference claim is also preempted by federal patent law because Bally has not adequately pleaded bad faith. Moreover, Bally has not alleged any damage resulting from IGT's letter to Lincoln Park, nor has it identified any other relationship that has been damaged. For all of the foregoing reasons, IGT respectfully requests the Court to grant its motion to dismiss.

OF COUNSEL

David P. Enzminger
Brett J. Williamson
Charles A. Thomasian
O'MELVENY & MYERS L.L.P.
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000

September 1, 2006

*Anne Shea Gaza*

William J. Wade (#704)
Anne Shea Gaza (#4093)
Matthew W. King (#4566)
Richards, Layton & Finger
wade@rlf.com
gaza@rlf.com
king@rlf.com
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

Attorneys for Plaintiff IGT

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2006, I caused to be served by hand delivery and electronic

mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

> Jack B. Blumenfeld, Esquire
> Karen Jacobs Louden, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> Wilmington, DE 19899

I hereby certify that on September 1, 2006, I caused to be sent by electronic mail the foregoing

document to the following non-registered participants:

| | |
|---|---|
| Charles K. Verhoeven | Edward J. DeFranco |
| Quinn Emanuel Urquhart | Quinn Emanuel Urquhart |
| Oliver & Hedges, LLP | Oliver & Hedges, LLP |
| 50 California Street, 22nd Floor | 51 Madison Avenue |
| San Francisco, CA 94111 | New York, NY 10010-1601 |

_Anne Shea Gaza_

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700