IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IGT, a Nevada corporation, | |
| Plaintiff, | CIVIL ACTION |
| v | No. 06-282 (KAJ) |
| BALLY GAMING INTERNATIONAL, INC., BALLY TECHNOLOGIES, INC., and BALLY GAMING, INC., | **REDACTED - PUBLIC VERSION** |
| Defendants | |

**DECLARATION OF BART A. LEWIN IN SUPPORT OF PLAINTIFF IGT'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Bart A. Lewin, declare and state as follows.

I.    **BACKGROUND AND QUALIFICATIONS**

1    I have been an IT professional since 1981, beginning as a process control system developer (both hardware and software) for Chevron  I entered the gaming industry in 1984 when I joined EDT, then a subsidiary of International Game Technology  As the Director of New Product Development, I supervised electrical engineers, drafting technicians, and software developers, and my team produced one of the earliest casino systems for EDT.

2    Beginning in 1988, I continued developing gaming industry technology as the Director of Software Development for Datanamics, Inc   At Datanamics I primarily developed accounting and reservations applications used by Hilton Gaming Corporation

3    In 1990, I co-founded DataDesigns, Inc  where I developed database-marketing software targeted at the Gaming and Hospitality Industries  A primary feature of our products was to capture information from casino systems such as loyalty, accounting, cage and credit, and

hotel management systems  DataDesigns was sold to Group 1 Software in 1995, and I continued on with Group 1 as Chief Technology Officer until 2001 at all times actively working with gaming technology, especially casino systems

       4      In 2001, I began working as an IT consultant  One of my most significant engagements was as an expert witness in a patent case involving casino systems, requiring me to do extensive research on their underlying technology and deployment

       5      In 2003, I took a position as Chief Technology Officer for Pinnacle Entertainment, Inc , a company that, at the time, operated six casinos in the U S  and three in Latin America  Its properties include Belterra Casino Resort in southeastern Indiana, Boomtown Reno in Nevada, Boomtown Bossier City in Louisiana, Boomtown Casino New Orleans in Louisiana, L'Auberge du Lac in Louisiana, Casino Magic San Martin de los Andes in Argentina, Casino Magic Neuquén in Argentina, and Casino Magic Junin de los Andes in Argentina  While at Pinnacle Entertainment, I implemented and supervised the installation of a new casino system at their L'Auberge du Lac casino resort  In addition, I developed Pinnacle Entertainment's first functioning corporate-level IT department

       6      I currently provide IT consulting services, primarily to gaming industry clients  I also recently founded the Technology Assurance Laboratory, Inc , which provides independent technology certification for gaming technology, showroom services, and IT consulting services

       7      I have had the opportunity to develop, study, interact with, purchase, and deploy various casino systems almost continually since 1984  This has allowed me to become experienced with most of the major products available during this period of time, including SDS, ACSC, CMS, Casino Market Place, Konami Casino Management System, GSI, LSI, IGT Smart System, Acres' (and now IGT's) Advantage System, and other systems developed in-house by Mirage Resorts (now MGM Mirage), Station Casinos, and the Boyd Group

       8      I hold a Bachelor of Arts in Economics from Reed College  I have also published articles and given speeches addressing IT issues concerning the gaming industry  For example, at the 2002 Global Gaming Expo (G2E) I conducted a seminar, commissioned by Marsh, Inc , on

the effective integration of player tracking systems, cage and credit systems, hotel systems, and point of sales systems. Additionally, I have presented speeches on other topics including a presentation on database marketing and statistical modeling for the San Diego Direct Marketing Association, as well as a presentation relating to network and computer security to the Institute of Internal Auditors

9. Within the past ten years, I have authored three publications: (1) "The Perfect Storm. Why gaming systems are so difficult to implement and maintain," Gaming and Leisure Magazine, Winter, 2006, (2) "Server Based Gaming. IT makes another leap into the mainstream," Gaming and Leisure Magazine, Spring, 2006, and (3) "Working Outside the Castle Walls," Gaming and Leisure Magazine, Fall, 2006

10. The compensation I am being paid for study and testimony in this case is $250 per hour.

11. In the past four years I have testified as an expert by deposition in Harrah's Entertainment v Station Casinos, case no CV-S-01-0825-KJD-RJJ in the District of Nevada, and IGT v Alliance Gaming Corp, case no CV-S-04-1676-RCJ-RJJ in the District of Nevada

12. To form my opinions, I read and am familiar with U S Patent Nos RE 38,812 ("the '812 patent"), RE 37,885 ("the '885 patent"), 6,832,958 ("the '2,958 patent"), 6,319,125 ("the '125 patent"), 6,244,958 ("the '4,958 patent"), 6,431,983 ("the '983 patent"), 6,607,441 ("the '441 patent"), 6,565,434 ("the '434 patent"), and 6,620,046 ("the '046 patent"), as well as their respective prosecution histories I also reviewed all of the materials I cite in this declaration In addition to these materials, I relied on my industry experience in forming my opinions Ex. A, Bart Lewin Curriculum Vitae [1]

---

[1] A true and correct copy of each document referenced as an exhibit is attached to this declaration

3

## II.   IGT'S PATENTS-IN-SUIT

13.   The IGT patents that I have reviewed for this declaration describe methods and systems for providing bonuses to players of gaming devices that are electronically linked together over a computer network

14    In the context of the patents listed in paragraph 12 above, I understand the term "bonusing" to refer to providing awards to players whether the outcome on the gaming machine is a win, a loss, or no outcome at all (i e , bonuses may be awarded even when no coin has been played)  In other words, bonus awards do not necessarily result from making a wager at the gaming device.  A bonus may take a variety of different forms, including money, prizes or points

15    One of the purposes of providing bonuses to players is to increase player loyalty by making game play more entertaining and exciting for the player.  To this end, the patented inventions describe various methods and systems for providing bonuses to players

16    One of the innovations described in the patents-in-suit enables a casino to electronically select which of the networked gaming devices may be included in a bonus promotion  More specifically, this innovation allows the casino operator to preselect the gaming devices and categories of players that may participate in a particular bonus by entering criteria at a workstation

17    Another innovation described in the patents allows a casino to provide incentives to players to play networked gaming devices by awarding promotional credits or by rewarding play during a specified time period or on particular machines

18    Another innovation described in the patents enables a casino to elect to make promotional credits non-cashable in order to prevent patrons who receive bonuses from using them at a competing casino

19    Another innovation described in the patents enables a casino to transfer credits between networked gaming devices.  More specifically, this innovation allows a customer to move around a casino and use credits stored on his account to play on various machines

4

20    The patents-in-suit also describe a method and system for funding and awarding bonuses to players  More specifically, certain bonuses may be funded independently of wagers accepted at a gaming device and awarded to an eligible player

## III.    BALLY'S BONUSING PRODUCTS AND SYSTEMS

### A.    Description of Bally's Bonusing Products and Systems

21    Bally currently markets a suite of products that Bally refers to as Bally Power Bonusing™  These products include the bonusing products commercially sold under the names Bally Power Winners™ (█████████████████████████, Bally Power Rewards™ (████████████████, and Bally Power Promotions™ (██████████████ ██████  Ex  F, (http.//www ballytech com as downloaded on October 27, 2006)

22    Bally Power Winners enables the casino to provide various bonusing promotions  For example, Bally Power Winners can be used to create a "███████████████████ ████████████████████████████████████████████ "create a player-bonusing incentive outside of standard machine play," and create "special promotions by club status level, game type; gaming area, selected casinos in a multiple-property operation, time-period/schedule (weekdays, weekend, holiday, etc ) " ████████████████████████

23    Bally Power Rewards also enables the casino to provide various bonusing promotions  For example, Bally Power Rewards can be used to "award bonuses to players when a specified dollar amount or point level is attained in a predefined timeframe," "personalize promotions and messages to individuals or patron groups," "fully automate and control player's



club cash-back programs," and "  " Ex. C, at

BALLY00003753

    24    Bally Power Promotions also enables the casino to award various bonusing promotions. For example, Bally Power Promotions can be used to "offer easy conversion of points and promotional dollars into playable credits," "encourage slot play with points and offers downloadable directly to the machine," "provide player's club account balances from the machine display" and "integrate convenient cash incentives into your casino's existing promotional programs." Ex. C, at BALLY00003755. Bally Power Promotions is often used in conjunction with Bally Power Winners and Bally Power Rewards to enable players to convert their awards into gaming-machine playable credits.

    25    In order to implement Bally Power Winners, Bally Power Rewards and Bally Power Promotions, a casino will need either an ACSC™ or an SDS® system. Optionally, for enhanced functionality, a casino may combine an SDS system with either a CMS/400™ or a CMP™ system. Ex. I; Ex. J.

    26    These systems generally provide casinos with certain functionality, including marketing, management of player ratings, player tracking, player accounting, slot monitoring, slot accounting, slot operations, player tracking data collection and bonusing.

    27





28.



29.

30.

31.



**B.    Bally's Power Bonusing Products Perform The Steps Described In IGT's Patents**

### 1.    U.S. Patent No. RE 37,885

34    The inventors of the '885 patent identified certain short-comings of the then existing bonusing systems and proposed an improved method for operating networked gaming devices  This improved method allows a casino to run promotions on any properly equipped gaming machines and enables the casino to choose which of these machines are part of a given promotion

35    In claim 10 of the '885 patent, the inventors claim.

> A method of operating gaming devices interconnected by a host computer having a user-operated input device comprising:
>
> associating each gaming device with a unique address code;
>
> preselecting less than all of the gaming devices interconnected by the host computer responsive to a user-effected action at the input device which identifies the preselected gaming devices with the respective associated address codes;
>
> using the network to track activity of the preselected gaming devices,
>
> issuing a command over the network to one of said preselected gaming devices responsive to a predetermined event; and
>
> paying at said one gaming device in accordance with the command

Ex  Q, '885 patent, col  39, l  9-25

36    To form my opinions regarding the steps of claim 10 of the '885 patent, I read and am familiar with the patent and its prosecution history  In addition to reviewing these materials, I relied on my industry experience in forming my opinions  I also understand that there was a prior litigation (*Mikohn v. Gaming Corp  v. Acres Gaming, Inc*, CV –S-97-1383-EJW (LRL) ("Mikohn litigation")) involving some of claims at issue in this litigation  I have read and am

11

familiar with the following court papers from this earlier litigation. (1) *Mikohn v. Gaming Corp.*
*v. Acres Gaming, Inc.*, CV –S-97-1383-EJW (LRL) (D. Nev. July 27, 2000) ("Order"), (2)
*Mikohn v. Gaming Corp. v. Acres Gaming, Inc.*, CV –S-97-1383-EJW (LRL) (D. Nev. May 25,
2000) ("Report & Recommendation"); and (3) *Mikohn v. Gaming Corp. v. Acres Gaming, Inc.*,
CV –S-97-1383-EJW (LRL) (D. Nev. Jan 10, 2001) ("Opinion")  Copies of these documents are
attached to this Declaration as Exhibits R, S, and T respectively

     37.   My interpretation of the steps of claim 10 of the '885 patent is summarized and
supported by the evidence in the chart below

| '885 Patent Claim 10 | Interpretation |
|---|---|
| A method of operating gaming devices interconnected by a host computer having a user-operated input device comprising: | This phrase introduces a method of operating gaming devices interconnected by a host computer  The phrase also refers to a user-operated input device  As is clear from the claim, which includes the step of "preselecting" gaming devices responsive to a "user-effected action at the input device," the "user-operated input device" is a device such as a computer terminal or workstation used by the casino operator to input information for identifying the gaming devices that will participate in a bonus |
| associating each gaming device with a unique address code; | The unique address code associated with each gaming device may uniquely identify the device in terms of its location on the network  The specification explains that a single byte address reduces the amount of traffic on the network  Ex. Q, at col 34, l. 22-24  A one byte address allows up to 256 unique addresses  Accordingly, in one embodiment, the shorthand single byte address, together with identification of the loop network to which the gaming device is connected, is sufficient to uniquely identify the gaming device on the network  "[I]n the preferred embodiment of the invention, the floor controller uses a shorthand token representation of the DCN's unique identification number to address the DCN. In |

| | |
|---|---|
| | the preferred embodiment, a single byte address is used to address a DCN on any given current loop. This one-byte address allows up to 256 DCNs to be supported on any given current loop." Ex. Q, at col. 34, l. 13-19. In the *Mikohn* litigation, the court concluded that each one of the gaming devices has its own address distinct from the address of any other gaming device on the network when "devices are addressed in terms of the controllers to which they are linked." Ex. R, Order at 18 |
| preselecting less than all of the gaming devices interconnected by the host computer responsive to a user-effected action at the input device which identifies the preselected gaming devices with the respective associated address codes, | This step describes the process by which the casino operator selects the devices that will participate in a bonus promotion. Ex. Q, at col. 2, l. 59-61 ("The system provides the capability for the casino to select which of the plurality of machines are used in any given promotion."). In the *Mikohn* litigation, the court interpreted "preselecting less than all" to mean "to pick out beforehand from among the gaming devices some, but not all, of the gaming devices to participate in the method being claimed." Ex. S, Report & Recommendation at ¶ 54. The term "responsive" does not require that the preselection occur as a "direct and immediate result" of the user-effected action. In fact, no time limitation requirement is implied. Ex. S, Report & Recommendation at ¶ 65-66.<br><br>The *Mikohn* court recognized that the claim does not require that the casino operator type in the address codes in order for the preselected gaming devices to be identified. Ex. T, Opinion at 8-10. Instead, the claim includes a method whereby "a computer, responsive to a user-effected action at the input device, [identifies] the preselected gaming devices with the respective associated address codes." Ex. T, Opinion at 12. This interpretation is supported by the specification, which describes the floor controller's role in controlling the conditions under which bonus events are activated. "In the preferred embodiment, the method 550 is embodied in software that is |

| | |
|---|---|
| | executed by each of the floor controllers in the system. The floor controllers are then responsible for activating or deactivating the bonusing for the individual machines connected thereto." Ex. Q, at col. 37, l. 40-44. This passage demonstrates that, in one embodiment, the floor controller executes the software that activates bonusing promotions in the gaming device.

In addition, in the preferred embodiment, the floor controller assigns the unique device addresses to the gaming device. Ex. Q, at col. 34, l. 12 to col. 35, l. 10. Thus, "the computer, in order to control bonusing, would need to identify the gaming devices by their associated address codes." Ex. T, Opinion at 11. |
| using the network to track activity of the preselected gaming devices, | Examples of gaming device activity tracked by the network include such information as the number of coins-in, games played, jackpot occurrences, time of play, duration of play and insertion or removal of a player card. Ex. Q, at col. 3, l. 22-46, col. 26, l. 43-54. |
| issuing a command over the network to one of said preselected gaming devices responsive to a predetermined event; and | This step describes issuing a command to one of the gaming devices preselected to participate in a bonus promotion. The command is issued responsive to a predetermined event. As described above, the term "responsive" does not include any time limitation. A predetermined event may include, for example, a passage of a certain period of time, a certain number of coins-in, a certain number of handle pulls, the occurrence of a jackpot or the generation of an outcome by a random number generator that satisfies predetermined criteria. |
| paying at said one gaming device in accordance with the command. | In the *Mikohn* litigation the court concluded in light of the specification that paying at the gaming device refers to "automated payments made by the gaming device." Ex. S, Report & Recommendation at ¶ 91; Ex. Q, at col. 2, l. 22-27 (stating that manual payment is cumbersome). This step is performed by automated payment at the gaming device, such |

| | as downloading credits over the network to the gaming device's credit meter |

38      The bonusing products commercially sold under the name "Bally Power Winners" and "Bally Power Rewards" perform each step of claim 10 of the '885 patent   My opinion is supported by the evidence cited in the chart below



| '885 Patent Claim 10 | Evidence |
|---|---|
| A method of operating gaming devices interconnected by a host computer having a user-operated input device comprising: | |
| associating each gaming device with a unique address code; | |
| preselecting less than all of the gaming devices interconnected by the host computer responsive to a user-effected action at the input device which identifies the preselected gaming devices with the respective associated address codes; | *Bally Power Winners* |



| | *Bally Power Rewards* |
|---|---|
| using the network to track activity of the preselected gaming devices; | |
| issuing a command over the network to one of said preselected gaming devices responsive to a predetermined event, and | *Bally Power Winners* |



*Bally Power Rewards*

paying at said one gaming device in
accordance with the command

*Bally Power Winners*

*Bally Power Rewards*



### 2.    U.S. Patent No. RE 38,812

39    The inventors of the '812 patent identified short comings of the then existing bonusing systems and proposed an improved method for operating networked gaming devices Like the '885 patent, the improved method described in the '812 patent allows a casino to run promotions or bonuses on any properly equipped gaming machines, and enables the casino to select which of these machines are used in a given promotion

40    In claim 21 of the '812 patent, the inventors claim:

> A method of operating gaming devices interconnected by a computer network to a host computer comprising:
>
> selecting a plurality of the gaming devices;
>
> issuing a command over the network including data establishing criteria to cause a bonus to be paid via one of said selected gaming devices upon the occurrence of a predetermined event,
>
> storing the command in a memory connected to a controller associated with only one of the gaming devices;
>
> transmitting data indicative of gaming device activity from the gaming device to the controller;
>
> transmitting a pay command from the controller to the gaming device upon the occurrence of the predetermined event, and
>
> paying the bonus via the gaming device responsive to receipt of the pay command

Ex M, '812 patent, col 40, 1 33-48

41    To form my opinions regarding the steps of claim 21 of the '812 patent, I read and am familiar with the patent and its prosecution history  In addition to reviewing these materials, I relied on my industry experience in forming my opinions  I have also read and am familiar

with the *Mikohn* litigation opinions mentioned above.

42      My interpretation of the steps of claim 21 of the '812 patent is summarized and

supported by the evidence in the chart below

| '812 Patent Claim 21 | Interpretation |
|---|---|
| A method of operating gaming devices interconnected by a computer network to a host computer comprising: | Like the opening phrase of claim 10 of the '885 patent, this phrase introduces a method of operating gaming devices interconnected by a host computer. The gaming devices mentioned can include slot machines, video poker machines or gaming tables. Ex. M, at col. 7, l. 18-24. As to the "host computer" mentioned, the specification explains that "system tasks can be allotted in a variety of ways amongst the system computers . . . ." Ex. M, at col. 8, l. 35-37. One example of a host computer is given, however: "[B]ecause the file server 32 is essentially a virtual hard disk for the floor controllers 18 and 32, the floor controllers and the file server can be considered a single host computer for the system 10." Ex. M, at col. 8, l. 40-44.<br><br>In the *Mikohn* litigation, the court stated that the host computer is "a computer having the ability to communicate via a network with the gaming devices to implement the bonusing inventions." Ex. S, Report & Recommendation at ¶ 35, adopted by Order (Ex. R, at 2) |
| selecting a plurality of the gaming devices, | This step, which requires selecting a plurality of the gaming devices, can be given its common meaning. "The system provides the capability for the casino to select which of the plurality of machines are used in any given promotion." Ex. M, at col. 20, l. 20-22 |
| issuing a command over the network including data establishing criteria to cause a bonus to be paid via one of said selected gaming devices upon the occurrence of a predetermined event; | In the *Mikohn* litigation, the court decided that "data establishing criteria" meant "one or more standards, rules or tests to determine whether a bonus is paid." Ex. R, Order at 7. Examples provided in the specification of commands |

| | establishing such criteria include a command specifying that "a player is eligible for the bonus time data only if the player is playing the maximum coin in the machine," or a command increasing or multiplying an award when a player hits a jackpot, or simply a command acknowledging that a player is eligible upon insertion of a valid card. Ex. M, at col. 26, l. 17-65.<br><br>In the *Mikohn* litigation, the court concluded that the term "predetermined event" means "any non-random event that is determined, decided or established in advance of its occurrence." Ex. S, Report & Recommendation at ¶ 84. A predetermined event may include, for example, a passage of a certain period of time, a certain number of coins-in, a certain number of handle pulls or the occurrence of a jackpot. Ex. M, at col. 36, l. 6-10, 55-64. A jackpot can be a predetermined event involving the generation of an outcome by a random number generator that satisfies predetermined criteria. |
|---|---|
| storing the command in a memory connected to a controller associated with only one of the gaming devices; | Each gaming device has its own controller. An example of the controller and the memory connected to the controller is described at column 9 of the '812 patent. "A memory 48 is connected to the DCN controller 46. The memory includes program memory for storing program instructions for the DCN controller 46." Ex. M, at col. 9, l. 10-12.<br><br>The program memory could be nonvolatile read-only memory (ROM), or it could be RAM in order for the program memory to be updated by the floor controller. Ex. M, at col 9, l. 12-20. "The memory 48 also includes system memory, e.g., static random access memory for storing the gaming device information." Ex. M, at col. 9, l. 21-23. |
| transmitting data indicative of gaming device activity from the gaming device to the controller; | Data indicative of gaming device activity transmitted to the DCN controller may include such information as the number of coins-in, |

| | coins-out, coins to drop, games played, and jackpot occurrences  Ex. M, at col 9, l 23-25 |
|---|---|
| transmitting a pay command from the controller to the gaming device upon the occurrence of the predetermined event; and | According to this step, a pay command is transmitted from the DCN controller to the gaming device upon the occurrence of the predetermined event. |
| paying the bonus via the gaming device responsive to receipt of the pay command. | According to this step, the bonus is paid via the gaming device responsive to receipt of the pay command transmitted from the DCN controller  In the *Mikohn* litigation, the court determined the meaning of the term "responsive" as used in the phrase "responsive to a user-effected action," in claim 10 of the '885 patent, which shares the same specification as the '812 patent  The court rejected the argument that "responsive" means that an event occurs as "an immediate and direct result of" the action  Ex. S, Report & Recommendation at ¶ 65  The court found nothing in the claim language or the patent to indicate that "responsive" should be read contrary to its ordinary meaning  Rather, "[t]he ordinary definition of the term "response" or "responsive" does not include within its definition any time limit requirement." Ex. S, at ¶ 66  This step is performed by automated payment at the gaming device, such as downloading credits over the network to the credit meter of the gaming device |

43     The bonusing product commercially sold under the name "Bally Power Rewards" performs each step of claim 21 of the '812 patent  My opinion is supported by the evidence cited in the chart below

| '812 Patent Claim 21 | Evidence |
|---|---|
| A method of operating gaming devices interconnected by a computer network to a host computer comprising. | |



| | |
|---|---|
| selecting a plurality of the gaming devices, | *Bally Power Rewards* |
| issuing a command over the network including data establishing criteria to cause a bonus to be paid via one of said selected gaming devices upon the occurrence of a predetermined event, | *Bally Power Rewards* |

| | |
|---|---|
| |  |
| storing the command in a memory connected to a controller associated with only one of the gaming devices, | *Bally Power Rewards* |
| transmitting data indicative of gaming device activity from the gaming device to the controller, | |
| transmitting a pay command from the controller to the gaming device upon the occurrence of the predetermined event, and | *Bally Power Rewards* |



| | |
|---|---|
| | (redacted) |
| paying the bonus via the gaming device responsive to receipt of the pay command | *Bally Power Rewards* (redacted) |

### 3.    U.S. Patent No. 6,431,983

44    The inventor of the '983 patent identified short comings of the then existing bonusing systems, and proposed an improved method for providing incentive to play networked gaming devices. For example, the improved method allows a casino in which the method is implemented to prevent a bonus credit from being cashed out by the player.

45    In claim 1 of the '983 patent, the inventor claims:

A method for providing incentive to play gaming devices connected by a network to a host computer comprising:

associating each gaming device with an input device for receiving player identification;

associating unique player identification with a gaming device player;

creating a player account accessible by the host computer;

associating the unique player identification with the player

account;

applying a promotional credit to the player's account;

permitting the player to access the account;

transferring promotional credit in the account to the gaming device,

permitting the player to wager the promotional credit; and

preventing the promotional credit from being cashed out by the player

Ex Z, '983 patent, col 41, l 60 - col. 42, l 10

46      To form my opinions regarding the steps of claim 1 of the '983 patent, I read and am familiar with the patent and the prosecution history  In addition to reviewing these materials, I relied on my industry experience in forming my opinions

47      My interpretation of the steps of claim 1 of the '983 patent is summarized and supported by the evidence in the chart below

| '983 Patent Claim 1 | Interpretation |
| --- | --- |
| A method for providing incentive to play gaming devices connected by a network to a host computer comprising: | This phrase introduces a method for providing incentive to play gaming devices connected by a network |
| associating each gaming device with an input device for receiving player identification; | In one method described in the patent, each gaming device is associated with a card reader capable of reading players' cards  Ex Z, at col 36, l 55-65 |
| associating unique player identification with a gaming device player; creating a player account accessible by the host computer, associating the unique player identification with the player account, | The patent describes that, in one method, "the casino associates a unique player identification number coded into the card 120 with a corresponding player account file maintained by the file server 32  The account file includes the player's name, the amount of credit issued and other information to be described " Ex. Z, at col 36, l 60-65 |
| applying a promotional credit to the player's account, | An example of a promotional incentive described in the patent is a complimentary |

25

| | |
|---|---|
| | credit "which enable[s] [the player] to play the slot machine and collect any jackpots." Ex. Z, at col. 36, l. 45-49. Promotional credits described in the patent can only be used to play the machines and cannot be cashed out. Ex. Z, Abstract |
| permitting the player to access the account; transferring promotional credit in the account to the gaming device, permitting the player to wager the promotional credit; and | In one aspect of the invention, "the [player] account is debited, the gaming device is credited, and the player is paid any jackpots which result from gaming device play utilizing credit from the player account." Ex. Z, at col. 2, l. 38-41. |
| preventing the promotional credit from being cashed out by the player | Historically, to encourage play on slot machines, casinos have provided promotional incentives which could be presented at the issuing casino for free coins or tokens. However, the player could cash in the coins or tokens without playing the machines. Ex. Z, at col. 1, l. 64 - col. 2, l. 16. Accordingly, the patent describes a method for providing promotional incentives "that can only be used for gaming machine play and [can] not be cashed out by the player." Ex. Z, at col. 2, l. 18-22. |

48.     The bonusing products commercially sold under the names "Bally Power

Winners," "Bally Power Rewards" and "Bally Power Promotions" perform each step of claim 1

of the '983 patent. My opinion is supported by the evidence cited in the chart below.

| '983 Patent Claim 1 | Evidence |
|---|---|
| A method for providing incentive to play gaming devices connected by a network to a host computer comprising. | |



| | |
|---|---|
| | |
| associating each gaming device with an input device for receiving player identification; | |
| associating unique player identification with a gaming device player; | |
| creating a player account accessible by the host computer; | |
| associating the unique player identification with the player account; | |
| applying a promotional credit to the player's account, | *Bally Power Winners*<br><br><br>*Bally Power Rewards* |



| | *Bally Power Promotions* |
|---|---|
| permitting the player to access the account, | *Bally Power Winners* |
| | *Bally Power Rewards* |
| | *Bally Power Promotions* |
| transferring promotional credit in the account to the gaming device; | *Bally Power Winners* |



| | Bally Power Rewards |
| --- | --- |
| | Bally Power Promotions |
| permitting the player to wager the promotional credit, and | |
| preventing the promotional credit from being cashed out by the player | Bally Power Winners |
| | Bally Power Rewards |
| | Bally Power Promotions |



### 4.    U.S. Patent No. 6,832,958

49    The inventors of the '2,958 patent recognized that the then current bonusing systems could be improved, and proposed an improved system for operating networked gaming devices  For example, the improved system includes a method for implementing a bonus period for a given promotion

50.    In claim 7 of the '2,958 patent, the inventors claim:

> A method for operating gaming devices interconnected by a network, comprising:
>
> determining a duration for the bonus period,
>
> determining a start for a bonus period,
>
> selecting gaming devices on the network for the bonus period,
>
> transmitting a characteristic of the bonus period to the selected gaming devices, and
>
> transmitting the duration for the bonus period to the selected gaming devices

Ex  DD, '2,958 patent, col  38, l  18 - 28

51    To form my opinions regarding the steps of claim 7 of the '2,958 patent, I read and am familiar with the patent and the prosecution history   In addition to reviewing these materials, I relied on my industry experience in forming my opinions

52    My interpretation of the steps of claim 7 of the '2,958 patent is summarized and

supported by the evidence in the chart below.

| '2,958 Patent Claim 7 | Interpretation |
|---|---|
| A method for operating gaming devices interconnected by a network, comprising: | This patent, which has the same disclosure as the '885 and '812 patents, describes a method for operating gaming devices interconnected by a network. The specification explains, for example, that gaming machines may be underutilized during certain hours of the day. Thus, it would be desirable to run a bonus on those machines during those hours "to provide an additional incentive to players to use those devices." Ex. DD, at col. 2, l. 14-20. The patent describes an automated method for providing this additional incentive. Ex. DD, at col. 2, l. 26-28 |
| determining a duration for the bonus period, | The specification describes that, in one embodiment, bonusing periods may be specified in the database. Ex. DD, at col. 35, l. 44-45. |
| determining a start for a bonus period; | "For example, the bonusing event may be triggered from midnight to 4.00 a.m. on weekdays." Ex. DD, at col. 35, l. 43-44 |
| selecting gaming devices on the network for the bonus period, | This step, which requires selecting gaming devices for the bonus, can be read according to its common meaning. |
| transmitting a characteristic of the bonus period to the selected gaming devices, and | "According to the invention, there are many different reconfiguration commands to implement a multiplicity of different bonusing events." Ex. DD, at col. 35, l. 52-54. For example, "[o]ne reconfiguration command specifies that the machine should reconfigure its payout schedule to be a multiple of its default payout schedule." Ex. DD, at col. 35, l. 54-55. "Another reconfiguration command allows any number of machines on the network to be combined in a common jackpot payout schedule . . ." Ex. DD, at col. 36, l. 1-3 |
| transmitting the duration for the bonus period to the selected gaming devices. | The patent describes transmitting the duration of a bonus event to the selected gaming |

| | |
|---|---|
| | devices. For example, "[i]f the triggered event is a bonusing event, the floor controller inserts a corresponding reconfiguration message in the output message queue in step 542." Ex. DD, at col. 35, l. 45-47. |

53.     The bonusing products commercially sold under the names "Bally Power Winners" and "Bally Power Rewards" perform each step of claim 7 of the '2,958 patent. This opinion is supported by the evidence cited in the chart below.

| '2,958 Patent Claim 7 | Evidence |
|---|---|
| A method for operating gaming devices interconnected by a network, comprising: | |
| determining a duration for the bonus period, | *Bally Power Winners* |
| determining a start for a bonus period, | |
| selecting gaming devices on the network for the bonus period, | |
| transmitting a characteristic of the bonus period to the selected gaming devices; and | |
| transmitting the duration for the bonus period to the selected gaming devices. | |



*Bally Power Rewards*

### 5.    U.S. Patent No. 6,620,046

54    The inventor of the '046 patent recognized that the then current bonusing systems could be improved, and proposed an improved method and system for funding and awarding bonuses. For example, the improved method and system allow a casino to fund and award bonuses independent of player wagers or game outcome.

55    In claim 1 of the '046 patent, the inventor claims:

> A method of providing a bonus to a player of a gaming machine comprising:
>
> accepting a wager establishing entitlement of said player to play a game presented at said gaming machine,
>
> funding a bonus award independent of said wager accepted from said player,
>
> accepting player identification information at said gaming machine;
>
> configuring bonus event information regarding a bonus award;
>
> determining if said player is entitled to participate in said bonus event using at least said player identification information,
>
> if said player is entitled to participate in said bonus event,

determining if said player is a winner of said bonus event based upon one or more criteria for winning said bonus event; and

if said player is the winner of said bonus event, awarding said bonus award

Ex. EE, '046 patent, col. 14, l. 17-39

56     To form my opinions regarding the steps of claim 1 of the '046 patent, I read and am familiar with the patent and the prosecution history. In addition to reviewing these materials, I relied on my industry experience in forming my opinions.

57     My interpretation of the steps of claim 1 of the '046 patent is summarized and supported by the evidence in the chart below

| '046 Patent Claim 1 | Interpretation |
|---|---|
| A method of providing a bonus to a player of a gaming machine comprising: | This phrase introduces a method of providing a "bonus." The patentee defined "bonus" as "an award, reward or the like," and explained that the bonus may take the form of, for example, "money, prizes such as tangible goods or free or reduced price goods or services, or points or other representative elements (tangible or intangible) which bay be redeemed for goods, services and/or money." Ex. EE, at col. 3, l. 19-25. |
| accepting a wager establishing entitlement of said player to play a game presented at said gaming machine; | "In one or more embodiments, the bonus system and method is associated with a gaming system including at least one gaming device." Ex. EE, at col. 3, l. 28-30. "In one or more embodiments of the invention, the gaming machine is adapted to present a wager-type game." Ex. EE, at col. 3, l. 51-52. |
| funding a bonus award independent of said wager accepted from said player, | "In a preferred embodiment, the bonus is funded independently of a specific bet or portion of a bet placed at a game or gaming device." Ex. EE, at col. 1, l. 67 - col. 2, l. 1-2. |
| accepting player identification information at said gaming machine, | "The eligibility of a player to participate may be determined in whole or in part via a player's use of a player tracking device associated with |

| | a game or gaming device. In one embodiment, the eligibility comprises the identification of a player via use of such a player tracking device." Ex EE, at col 2, l 6-10 |
|---|---|
| configuring bonus event information regarding a bonus award, | In one embodiment, "[t]he bonus system host is arranged to determine the eligibility of players to participate in a bonus event and to determine the winners of the bonus event. This configuration may be achieved by hardware and/or software, such as computer executable program code." Ex EE, at col 2, l 45-49. |
| determining if said player is entitled to participate in said bonus event using at least said player identification information, | "The eligibility of a player to participate may be determined in whole or in part via a player's use of a player tracking device associated with a game or gaming device. In one embodiment, the eligibility comprises the identification of a player via use of such a player tracking device." Ex. EE, at col. 2, l 6-10 |
| if said player is entitled to participate in said bonus event, determining if said player is a winner of said bonus event based upon one or more criteria for winning said bonus event, and | "In one embodiment, the criteria for winning the bonus are independent of the specific outcome of a game being played by a player. In other words, a player need not receive a particular winning outcome while playing a game in order to be entitled to win the bonus." Ex. EE, at col. 2, l. 15-19. |
| if said player is the winner of said bonus event, awarding said bonus award | "The bonus may be awarded in a variety of ways. For example, the player may be awarded credits which are displayed on the display of the gaming machine to the player. The award may be issued in the form of a ticket or receipt. The award may also be issued in the form of coins dispensed at the gaming machine." Ex. EE, at col. 9, l. 12-18. |

58.    The bonusing product commercially sold under the name "Bally Power Winners" performs each step of claim 1 of the '046 patent. This opinion is supported by the evidence cited in the chart below

| '046 Patent Claim 1 | Evidence |
|---|---|
| A method of providing a bonus to a player of a gaming machine comprising: | |
| accepting a wager establishing entitlement of said player to play a game presented at said gaming machine; | |
| funding a bonus award independent of said wager accepted from said player, | |
| accepting player identification information at said gaming machine, | |
| configuring bonus event information regarding a bonus award, | |



| | |
|---|---|
| | |
| determining if said player is entitled to participate in said bonus event using at least said player identification information; | |
| if said player is entitled to participate in said bonus event, determining if said player is a winner of said bonus event based upon one or more criteria for winning said bonus event, and | |
| if said player is the winner of said bonus event, awarding said bonus award | |

59    In claim 6 of the '046 patent, the inventor claims.

A gaming system comprising.

a plurality of gaming machines configured to present at least one game upon a wager by a player;

a player tracking device associated with each gaming machine, said player tracking devices including a card reader, keypad and at least one display, each player tracking device configured to receive information regarding the gaming machine with which it is

associated;

a player tracking host arranged to store data regarding activities of
players of said gaming devices;

a communications network linking said player tracking devices
with said player tracking host over which information is
transmitted; and

a bonus system host, said bonus system host configured to generate
bonus information regarding a bonus award funded independently
of wagers placed with said gaming machines and to transmit bonus
award information to said player tracking devices of said gaming
machines via said communications network

Ex. EE, '046 patent, col. 14, l. 53 - col. 15, l. 6.

60.    To form my opinions regarding the steps of claim 6 of the '046 patent, I read and
am familiar with the patent and the prosecution history   In addition to reviewing these materials,
I relied on my industry experience in forming my opinions

61.    My interpretation of the steps of claim 6 of the '046 patent is summarized and
supported by the evidence in the chart below

| 046 Patent Claim 6 | Interpretation |
|---|---|
| A gaming system comprising: | "In one or more embodiments, the bonus |
| a plurality of gaming machines configured to present at least one game upon a wager by a player, | system and method is associated with a gaming system including at least one gaming device." Ex. EE, at col. 3, l. 28-30   "In one or more embodiments of the invention, the gaming machine is adapted to present a wager-type game." Ex. EE, at col. 3, l. 51-52 |
| a player tracking device associated with each gaming machine, said player tracking devices including a card reader, keypad and at least one display, each player tracking device configured to receive information regarding the gaming machine with which it is associated; | One example of a player tracking device is described col. 4, l. 24-41 of the '046 patent. The information received by the player tracking device may include player identification information, length of time of game play, amounts bet, amounts awarded, and other information  Ex. EE, at col. 5, l. 14-16 |
| a player tracking host arranged to store data regarding activities of players of said gaming devices, | "The player tracking host 54 may comprise a single computer or group of computers associated with one another on the network 58. |

| | Appropriate hardware and/or software is provided for permitting the one or more computing devices of the player tracking host 54 to send and receive information." Ex. EE, at col. 4, l. 52-57. "In one embodiment that player tracking host 54 and bonus system host 56 may comprise the same device or devices . . ." Ex. EE, at col. 5, l. 53-55. |
|---|---|
| a communications network linking said player tracking devices with said player tracking host over which information is transmitted, and | "Player tracking information is transmitted via the SMIB 70 [slot management interface board] to the player tracking host 54. In one embodiment, data is transmitted from the SMIB 70 to the network 58 via the communication interface 72. This data is routed to the player tracking host." Ex. EE, at col. 6, l. 65 - col. 7, l. 2. |
| a bonus system host, said bonus system host configured to generate bonus information regarding a bonus award funded independently of wagers placed with said gaming machines and to transmit bonus award information to said player tracking devices of said gaming machines via said communications network | "In one embodiment, the bonus system host 56 is configured to generate a bonus for a player of a gaming machine 20." Ex. EE, at col. 9, l. 49-51. The information transmitted to the player tracking devices may include, for example, an indication to the player that he is eligible to participate in a bonus event and the criteria upon which a winner of the event will be declared. Ex. EE, at col. 10, l. 3-6. "In a preferred embodiment, the bonus is funded independently of a specific bet or portion of a bet placed at a game or gaming device." Ex. EE, at col. 1, l. 67 - col. 2, l. 1-2. |

62      The bonusing product commercially sold under the name "Bally Power Winners" also performs each step of claim 6 of the '046 patent. This opinion is supported by the evidence cited in the chart below.

| '046 Patent Claim 6 | Evidence |
|---|---|
| A gaming system comprising: | |

| | |
|---|---|
| a plurality of gaming machines configured to present at least one game upon a wager by a player, |  |
| a player tracking device associated with each gaming machine, said player tracking devices including a card reader, keypad and at least one display, each player tracking device configured to receive information regarding the gaming machine with which it is associated, |  |
| a player tracking host arranged to store data regarding activities of players of said gaming devices; a communications network linking said player tracking devices with said player tracking host over which information is transmitted, and |  |
| a bonus system host, said bonus system host configured to generate bonus information regarding a bonus award funded independently | |

of wagers placed with said gaming machines
and to transmit bonus award information to
said player tracking devices of said gaming
machines via said communications network.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and

correct, and that this declaration is executed on October 30, 2006, in Newport Beach, California.

Bart A. Lewin

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Jack B. Blumenfeld, Esquire
> Karen Jacobs Louden, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> Wilmington, DE 19899

I hereby certify that on November 7, 2006, I caused to be sent by Federal Express the foregoing document to the following non-registered participants:

Charles K. Verhoeven
Quinn Emanuel Urquhart
 Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

Edward J. DeFranco
Quinn Emanuel Urquhart
 Oliver & Hedges, LLP
51 Madison Avenue
New York, NY 10010-1601

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700