IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IGT, a Nevada corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BALLY GAMING INTERNATIONAL, INC., a | ) | C.A. No. 06-282 (SLR) |
| Delaware corporation; BALLY | ) | |
| TECHNOLOGIES, INC., a Nevada corporation; | ) | |
| and BALLY GAMING, INC., a Nevada | ) | |
| corporation d/b/a BALLY TECHNOLOGIES, | ) | |
| | ) | |
| Defendants. | ) | |

**BALLY'S REVISED NOTICE OF DEPOSITION OF
IGT PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Pursuant to Federal Rule of Civil Procedure 30(b)(6), on November 29, 2007, at

9:00 A.M., at the Hilton Garden Inn, 2500 SW Western Boulevard, Corvallis, Oregon 97333, or

at another location if agreed upon by counsel, Defendants Bally Gaming International, Inc.,

Bally Technologies, Inc., and Bally Gaming, Inc. (collectively "Bally") will take the deposition

upon oral examination of Plaintiff IGT.  Pursuant to Rule 30(b)(6), IGT shall designate one or

more of its officers, directors, managing agents or other persons to testify on its behalf as to

matters known or reasonably available to IGT concerning the subjects identified in the attached

Exhibit A.

The depositions of IGT will be taken before a notary public or other officers authorized

by law to administer oaths, and will be recorded by stenographic and videographic means.  Said

deposition shall proceed from day-to-day until complete, with Saturdays, Sundays and holidays

excepted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/  *Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld. (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com

*Attorneys for Defendants Bally Gaming International, Inc.,*
*Bally Technologies, Inc, and Bally Gaming, Inc.*

*Of Counsel*:

Charles K. Verhoeven
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

Edward J. DeFranco
Alexander Rudis
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue
New York, NY  10010
(212) 849-7000

Dated:  November 19, 2007

## EXHIBIT A

## DEFINITIONS

1.     The terms "You", "Your", "IGT" or "Plaintiff" shall refer to IGT, the Plaintiff and Counterclaim-Defendant in this action, any predecessor or successor of IGT, and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member or other representative of IGT, including counsel and patent agents, in any country, and including without limitation Acres Gaming.

2.     The term "Defendants" and "Bally" shall refer to one or more of the Defendants Bally Technologies, Inc., Bally Gaming International, Inc., and Bally Gaming, Inc.

3.     The term "Acres Gaming" shall refer to Acres Gaming, Inc., any predecessor or successor of Acres Gaming, Inc., including, but not limited to, IGT, and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member or other representative of Acres Gaming, Inc.

4.     "Patents-in-suit" means U.S. Patent No. RE 38,812, U.S. Patent No. RE 37,885, U.S. Patent No. 6,832,958, U.S. Patent No. 6,431,983, and U.S. Patent No. 6,607,441

5.     "Related Application" means any parent or other ancestral U.S. or foreign application related in any way to the patents-in-suit and any continuing application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, abandoned application or foreign counterpart application thereof.

6.     "Related Patent" means any patent that issued from any Related Application.

7.     The terms "IGT Covered Product" and "IGT Covered Products" shall mean each and every product either previously or currently made, used, sold or offered for Sale

by IGT, or any prior owner of any of the Patents-In-Suit, that IGT contends embodies or practices the claimed subject matter of any of the patent claims asserted by IGT.

8.    "Accused Products" means each specific product made, used, offered for sale, or sold by Bally, its customers, or by any other person with a contractual or business relationship with Bally, which IGT contend infringes any of the patents-in-suit, whether literally or under the doctrine of equivalents.

9.    "Prior Art" means all references, publications, patents, physical specimens, uses, sales, offers for sale or other activities relating to the subject matter of any patent-in-suit and existing or occurring at a date such as to be potentially relevant under any subsection of 35 U.S.C. §§ 102, 103, or 112, including, but not limited to, all items identified by others as alleged or potential Prior Art.

10.    The terms "Asserted Claim" and "Asserted Claims" shall mean each and every claim of the Patents-In-Suit that Plaintiff asserts is allegedly infringed by Defendants.

11.    The terms "Sale" or "Sales" shall mean any sale, lease, rental, participation agreement or arrangement, lease, trial or any other revenue-generating transaction.

12.    The terms "Communication" and "Communications" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to electronic communications and electronic mail ("E-mail").

13.    "Person" means any natural person or any business, legal or governmental entity or association.

14.    "Concerning" means relating to, referring to, describing, evidencing, or constituting.

15.    "Referring to," "relating to,"  or "regarding" means concerning, containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

16.    The terms "Gaming Device" and "Gaming Machine" shall have the same meanings as used in IGT's Motion for a Preliminary Injunction.

17.    The terms "Bonusing" and "Bonusing Products" shall have the same meanings as used in IGT's Motion for a Preliminary Injunction.

18.    The term "Gaming Machine Market" shall mean the market for Gaming Devices or Gaming Machines.

19.    The term "Slot Accounting System" shall have the same meaning as used in IGT's Motion for a Preliminary Injunction.

20.    The term "Casino Management System" shall have the same meaning as used in IGT's Motion for a Preliminary Injunction.

21.    The term "Player Tracking System" shall have the same meaning as used in IGT's Motion for a Preliminary Injunction.

## TOPICS FOR RULE 30(b)(6) DEPOSITION

1.    The development, including the conception and reduction to practice, of the alleged inventions of the patent claims asserted by IGT.

2.    The Bonusing features and operations of the IGT Covered Products.

3.    The first public demonstration, public use or exhibition, offer for sale and first sale of each IGT covered product.

4.    Any search, analysis, investigation or opinion regarding the validity, enforceability or infringement of the patent claims asserted by IGT.

5.    An identification of any other lawsuits that in any way relate to the Patents-In-Suit.

6.    IGT's investigation and/or analysis of infringement by any Bally product of the Patents-In-Suit prior to filing of the Complaint in this action.

7.    All public statements made by IGT regarding this case, including the decision to issue the IGT press release dated May 1, 2006 entitled "IGT Files Patent Infringement Lawsuit Against Bally Technologies."

8.    An identification of any legal proceedings in which IGT has been a party regarding Bonusing, Bonusing Products, Player Tracking Systems, Casino Management Systems, Slot Accounting Systems, Gaming Devices, or Gaming Machines.

9.    Any communications with third parties regarding this lawsuit or any of the patent claims asserted by IGT, including communications regarding infringement by Bally or any third party, or challenges to the validity or enforceability of the patent claims asserted by IGT.

10.    The commercial success or profitability of the IGT covered products.

11.    The effect of sales of IGT Covered Products in promoting sales of other IGT products and services, and IGT's lost sales of related systems and products (not covered by the patents-in-suit) as a result of Bally's alleged infringement.

12.    Any analysis, investigation or opinion regarding the value of the patents-in-suit, including any reaction by the gaming industry relating to the alleged invention(s) described in the Patents-In-Suit.

13.    IGT's acquisition of Acres Gaming as it relates to the patents-in-suit.

14.    Products other than IGT products that are or were competitive with the IGT covered products, including but not limited to the market share.

15.    The structure of the market or markets for Bonusing Products, Player Tracking Systems, Casino Management Systems, Slot Accounting Systems, Gaming Devices, or Gaming Machines, including IGT's market share in said market(s), competition in said market(s), any barriers to entry, and the market participants.

16.    The marketing and sales of each IGT Covered Product, including but not limited to the sales or each product, related product, or service, the total amount of revenue attributable to those sales, actual and projected costs of the design, development, manufacture, marketing, and sale of such product, related product or service; the market share held by each such product, process, or service; the customer demand for each such product, process, or service, and the bases for any such customer demand; and the identity and attributes of any product, process or service that competes with any IGT Covered Product.

17.    IGT's gross and net profits, by product and by quarter, attributable to sales of IGT covered products, and IGT's pricing of such products.

18.    IGT's production capacity for producing IGT covered products.

5

19.     Any IGT licensing policies or practices, including any actual licenses entered into, or any actual or attempted sales, licenses or other assignments of rights by IGT relating to the patents-in-suit and/or related patents, bonusing products, player tracking systems, casino management systems, slot accounting systems, gaming devices, or gaming machines.

20.     The persons knowledgeable of the matters set forth in paragraphs 1-19. The existence and location of documents relating to the matters set forth in paragraphs 1-19.

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on November 10, 2007, I electronically

filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of

such filing(s) to the following:

William J. Wade, Esquire
RICHARDS, LAYTON & FINGER

and that I also caused copies to be served upon the following in the manner indicated:

BY ELECTRONIC MAIL
and HAND DELIVERY

William J. Wade, Esquire
RICHARDS, LAYTON & FINGER
One Rodney Square
Wilmington, DE  19801


BY ELECTRONIC MAIL

David P. Enzminger, Esquire
David Dalke, Esquire
O'MELVENY & MYERS LLP
610 Newport Center Drive
Newport Beach, CA  92660


/s/  *Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)
jblumenfeld@mnat.com