IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IGT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-282 (SLR) |
| | ) | |
| BALLY GAMING INTERNATIONAL, | ) | |
| INC., BALLY TECHNOLOGIES, INC., | ) | |
| and BALLY GAMING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATION AND ORDER

IT IS HEREBY stipulated by the parties, subject to the approval of the Court, that

Bally's Amended Answer, Affirmative Defenses and Counterclaims, attached hereto as Exhibit

A, may be filed with the Court.

RICHARDS, LAYTON & FINGER, P.A.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anne Shea Gaza*
William J. Wade (#704)
Anne Shea Gaza (#4093)
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 658-6541
wade@rlf.com
gaza@rlf.com
*Attorneys for Plaintiff IGT*

*/s/ Karen Jacobs Louden*
Jack Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
*Attorneys for Defendants Bally Gaming
International, Inc., Bally Technologies, Inc., and
Bally Gaming, Inc.*

SO ORDERED this _____ day of July, 2008.

_____
United States District Judge

2409664

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IGT, a Nevada corporation, | |
|          Plaintiff, | |
|     v. | |
| BALLY GAMING INTERNATIONAL, INC., a Delaware corporation; BALLY TECHNOLOGIES, INC., a Nevada corporation; and BALLY GAMING, INC., a Nevada corporation d/b/a BALLY TECHNOLOGIES, | C.A. No. 06-282 (SLR) |
|          Defendants. | |

### BALLY'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

      Defendants Bally Gaming International, Inc., Bally Technologies, Inc., and Bally Gaming, Inc. (collectively "Bally"), by their undersigned attorneys, state for their Amended Answer to Plaintiff's Amended Complaint for Patent Infringement as follows:

### ANSWER

      1.      Defendants admit that the Complaint purports to allege claims for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

      2.      Defendants admit that the Complaint purports to state a cause of action over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

      3.      Defendants admit that this Court has personal jurisdiction over defendants.

      4.      Defendants contend that this action properly belongs in the District of Nevada, where IGT has already brought a related action against Bally. Bally filed a motion to transfer venue to the District of Nevada on June 1, 2006.

## PARTIES

5.      Defendants admit the allegations of paragraph 5 of the Complaint.

6.      Defendants admit that defendant Bally Gaming International Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119.

7.      Defendants admit that defendant Bally Technologies, Inc. is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119.

8.      Defendants admit that defendant Bally Gaming, Inc. is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119.  Defendants admit that Bally Gaming, Inc. does business as Bally Technologies.

9.      Defendants deny the allegations of paragraph 9 of the Complaint.

## COUNT I
### (Infringement of U.S. Patent No. RE 38,812)

10.      Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 9 of the Complaint as though fully set forth herein.

11.      Defendants admit that U.S. Patent No. RE 38,812 ("the '812 patent") was reissued on October 4, 2005 and is titled "Method And Apparatus For Operating Networked Gaming Devices."  Defendants admit that what purports to be a copy of the '812 patent is attached to the Complaint as Exhibit 1.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '812 patent.  Defendants deny the remaining allegations of paragraph 11.

12.      Defendants deny the allegations of paragraph 12 of the Complaint.

13.      Defendants deny the allegations of paragraph 13 of the Complaint.

14.    Defendants deny the allegations of paragraph 14 of the Complaint.

## COUNT II
### (Infringement of U.S. Patent No. RE 37,885)

15.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 14 of the Complaint as though fully set forth herein.

16.    Defendants admit that U.S. Patent No. RE 37,885 ("the '885 patent") was reissued on October 15, 2002 and is titled "Method And Apparatus For Operating Networked Gaming Devices."  Defendants admit that what purports to be a copy of the '885 patent is attached to the Complaint as Exhibit 2.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '885 patent.  Defendants deny the remaining allegations of paragraph 16.

17.    Defendants deny the allegations of paragraph 17 of the Complaint.

18.    Defendants deny the allegations of paragraph 18 of the Complaint.

19.    Defendants deny the allegations of paragraph 19 of the Complaint.

## COUNT III
### (Infringement of U.S. Patent No. 6,832,958)

20.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 19 of the Complaint as though fully set forth herein.

21.    (through 24.) Pursuant to a Stipulation and Order entered by the Court on February 25, 2008 (D.I. 152), IGT has dismissed all claims relating to the '2,958 patent from this action with prejudice.  Accordingly, no further response to Count III is necessary.

## COUNT IV

### (Infringement of U.S. Patent No. 6,319,125)

25.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 24 of the Complaint as though fully set forth herein.

26.    (through 29.) Pursuant to a Stipulation and Order entered by the Court on February 25, 2008 (D.I. 152), IGT has dismissed all claims relating to the '125 patent from this action with prejudice.  Accordingly, no further response to Count IV is necessary.

## COUNT V

### (Infringement of U.S. Patent No. 6,244,958)

30.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 29 of the Complaint as though fully set forth herein.

31.    (through 34.) Pursuant to a Stipulation and Order entered by the Court on February 25, 2008 (D.I. 152), IGT has dismissed all claims relating to the '4,958 patent from this action with prejudice.  Accordingly, no further response to Count V is necessary.

## COUNT VI

### (Infringement of U.S. Patent No. 6,431,983)

35.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 34 of the Complaint as though fully set forth herein.

36.    Defendants admit that U.S. Patent No. 6,431,983 ("the '983 patent") was issued on August 13, 2002 and is titled "Method For Providing Incentive To Play Gaming Devices Connected By A Network To A Host Computer."  Defendants admit that what purports to be a copy of the '983 patent is attached to the Complaint as Exhibit 6.  Defendants lack information sufficient to form a belief as to IGT's ownership of the '983 patent.  Defendants deny the remaining allegations of paragraph 36.

37.    Defendants deny the allegations of paragraph 37 of the Complaint.

38.    Defendants deny the allegations of paragraph 38 of the Complaint.

39.    Defendants deny the allegations of paragraph 39 of the Complaint.

## COUNT VII
**(Infringement of U.S. Patent No. 6,607,441)**

40.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 39 of the Complaint as though fully set forth herein.

41.    (through 44.) Pursuant to a Stipulation and Order entered by the Court on May 20, 2008 (D.I. 165), IGT has dismissed all claims relating to the '441 patent from this action with prejudice.  Accordingly, no further response to Count VII is necessary.

## COUNT VIII

**(Infringement of U.S. Patent No. 6,565,434)**

45.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 44 of the Complaint as though fully set forth herein.

46.    (through 49.) Pursuant to a Stipulation and Order entered by the Court on February 25, 2008 (D.I. 152), IGT has dismissed all claims relating to the '434 patent from this action with prejudice.  Accordingly, no further response to Count VIII is necessary.

## COUNT IX
### (Infringement of U.S. Patent No. 6,620,046)

50.    Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 49 of the Complaint as though fully set forth herein.

51.    (through 54.) Pursuant to a Stipulation and Order entered by the Court on February 25, 2008 (D.I. 152), IGT has dropped all claims relating to the '046 patent from this action with prejudice.  Accordingly, no further response to Count IX is necessary.

## PRAYER FOR RELIEF

Defendants further deny that IGT is entitled to the relief sought by its prayer for relief on pages 12 and 13 of its Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE
### (Noninfringement)

Defendants do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale or imported into the United States any products or methods that infringe any valid claim of the '812, '885, or '983 patents (collectively, the "patents-in-suit")[1], either directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and have not induced others to infringe the patents-in-suit.

### SECOND AFFIRMATIVE DEFENSE
### (Invalidity)

The claims of the patents-in-suit are invalid for failure to meet the Conditions for Patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

---

[1]    The patents-in-suit as originally filed were the '812, '885, '2,958, '125, '4,958, '983, '441, '434, and '046 patents.

## THIRD AFFIRMATIVE DEFENSE
### (Laches)

The patents-in-suit are unenforceable, in whole or in part, against Defendants under the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE
### (Estoppel)

The patents-in-suit are unenforceable, in whole or in part, against Defendants under the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiff's claims are barred under the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff has waived any rights it may have had for relief from the Court.

## SEVENTH AFFIRMATIVE DEFENSE
### (License)

Plaintiff is barred from asserting the patents-in-suit against Bally because Bally is licensed (expressly and/or impliedly) to make, use, sell, offer for sale, and/or import the alleged inventions of the patents in suit pursuant to the IGT-Gaming Standards Association and IGT-Bally SAS protocol licensing agreements.

## COUNTERCLAIMS

### Nature of the Action

1.      This is an action seeking redress for anticompetitive behavior in violation of 15 U.S.C. § 2, in violation of the Lanham Act; intentional interference with business advantage; and for declaratory judgments of noninfringement, invalidity, and/or unenforceability of IGT's asserted patents.  Bally seeks actual and enhanced damages.

## Parties

2.          Counterclaim-Plaintiff Bally Technologies, Inc. is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119. Bally Technologies, Inc. is a diversified, worldwide gaming company that through its subsidiaries designs, manufactures, and distributes gaming machines and computerized monitoring systems for gaming machines; owns and operates a significant installed base of gaming machines; and owns and operates a casino. Bally Technologies, Inc.'s slot machine unit is a worldwide leader in designing, manufacturing and distributing gaming machines. Both Bally Gaming International, Inc. and Bally Gaming, Inc. are wholly owned subsidiaries of Bally Technologies, Inc.

3.          Counterclaim-Plaintiff Bally Gaming International, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119. Bally Gaming International, Inc. is a holding company with no operations or employees.

4.          Counter-Plaintiff Bally Gaming, Inc. is a corporation organized and existing under the laws of Nevada with its principal place of business at 6601 S. Bermuda Road, Las Vegas, Nevada 89119. Bally Gaming, Inc. is the operating arm of Bally Gaming International, Inc.

5.          Counter-Plaintiffs Bally Technologies, Inc., Bally Gaming International, Inc., and Bally Gaming, Inc. are collectively referred to herein as "Bally."

6.          Counterclaim-Defendant IGT is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 9295 Prototype Drive, Reno, Nevada 89511.

**Jurisdiction And Venue**

7.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 2 (federal antitrust), 28 U.S.C. §§ 1331 (federal question) and 1338 (patents), 28 U.S.C. §§ 2201 and 2202 (declaratory judgments), and 35 U.S.C. § 1 et seq. (patents).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

8.     IGT has submitted to the personal jurisdiction of this Court.

9.     Venue is proper in this district for purposes of these counterclaims pursuant to 28 U.S.C. §§ 1391(b)-(c) because IGT filed this suit in this district.  Bally contends that this action properly belongs in the District of Nevada, where IGT has already brought a related action against Bally ("the Nevada Action," No. CV-S-04-1676-RCJ-RJJ).  Bally filed a motion to transfer venue to the District of Nevada on June 1, 2006.

**General Allegations**

10.     The New York Times Magazine has referred to IGT as the "Microsoft of the gaming industry."  That statement is based on IGT's control over approximately 75-80% of the gaming machines market in the United States.

11.     IGT also controls over 40% of the gaming systems market.  The gaming systems market consists of systems including servers, network equipment and game monitoring devices that provide an infrastructure akin to a central nervous system for the casino floor that enables casino operators to simultaneously monitor patrons and manage operations.  Gaming systems may include slot machine cash monitoring, table management, cashless, accounting, security, maintenance, marketing, cage, promotional and bonusing capabilities.  The relevant geographic market in this action is the United States.

12.        IGT has repeatedly and with predatory intent sought to eliminate Bally as a competitor in the gaming systems market.  IGT is illegally attempting to acquire monopoly power and/or has illegally acquired monopoly power in the gaming systems market.

13.        There are substantial barriers to entry related to the gaming systems market that shield IGT's market power.  These barriers include substantial regulatory and licensing requirements, which have to be independently met in every jurisdiction in the United States where gaming devices are legal.  IGT's market share is also protected by IGT's purported patent portfolio and especially by IGT's excessively aggressive litigation, and threats of litigation, to enforce its patent portfolio, which has the practical effect of expanding the reach of IGT's patent portfolio far beyond its appropriate bounds.  IGT's market share is also protected by technological constraints to developing new gaming systems that are attractive to the gaming public and casinos, compatible with the existing infrastructure, and do not infringe on any relevant patents.  An additional barrier is the prohibitive cost of research and development for gaming systems.

14.        Bally, however, has sufficient management and skill, expertise and capital to overcome these barriers to entry.  In recognition of Bally's ability to compete, IGT has engaged in anticompetitive conduct to raise new, substantial, artificial barriers to exclude Bally from the gaming systems market.

A.        **IGT Has Misused the Patent Process To Create a Monopoly**

15.        IGT has repeatedly and with predatory intent attempted to eliminate Bally as a competitor in the gaming systems market.  IGT has misused the Patent and Trademark Office and the legal system to accomplish its anticompetitive goal of eliminating all competitors in these markets.

16.    IGT has taken affirmative steps to increase its market share in the gaming systems market by asserting control over as much intellectual property within the gaming systems market as possible. For example, on June 30, 2003, IGT announced its planned acquisition of Acres Gaming, a former competitor in the gaming systems market. The June 30, 2003 Press Release states: "Acres specializes in the development of gaming systems technology that enables casino operators to increase patron loyalty. The resulting combination will position IGT as a leading provider of gaming systems to the world-wide casino market." The Press Release also noted that "Acres' patented technology enables casino operators to increase patron loyalty by differentiating their properties in an increasingly competitive environment." IGT's acquisition of Acres Gaming was completed on October 27, 2003, significantly increasing IGT's market power in the gaming systems market. Through its acquisition of Acres Gaming, IGT also obtained control over Acres Gaming's patent portfolio.

17.    In addition, on April 10, 2006, IGT entered into an agreement with Walker Digital "to facilitate the development and introduction of certain Walker Digital casino innovations into the IGT product line." In a press release on April 10, 2006, IGT's CEO, T.J. Matthews stated: "These agreements provide us with access to an intellectual property portfolio focused on the creative use of networks within the casino, with a particular emphasis on player preferences. Walker Digital's portfolio is complementary to IGT's own extensive portfolio and we are very excited about the potential this relationship presents." Through this acquisistion, IGT seeks to further increase its market share in the gaming systems market. A copy of this press release is attached hereto as Exhibit 1.

18.        Competitors who refuse to pay royalties to IGT -- regardless of the merits of any argument that the competitor might have that the asserted patent is invalid or not infringed -- are promptly sued by IGT.

19.        As to Bally, IGT has filed three lawsuits for purported patent infringement since 2001.

20.        The instant lawsuit is the most recent example of, and most clearly demonstrates, the pattern of conduct by IGT in misusing the privileges afforded by the Patent Office to gain a competitive advantage over others in the marketplace.

**B.    IGT's Patent Infringement Suits Are Predatory Acts Intended To Eliminate Bally As A Market Competitor**

21.        The broad allegations in IGT's patent infringement suits demonstrate that IGT is using these lawsuits as part of an overall scheme to gain competitive advantage over its competitors in the marketplace.

22.        IGT's Amended Complaint in this action asserted that Bally infringed nine patents, which comprise a total of 292 different patent claims.

23.        Although IGT failed to identify specifically which of Bally's products allegedly infringe these nine patents, it asserted infringement by, at a minimum, "BALLY POWER BONUSING technology."  *See, e.g.,* Amended Complaint at ¶ 17.  Bally Power Bonusing is a marketing term that refers to a broad suite of at least seven different Bally products, each of which uses a different technology to fulfill a different goal for Bally's customers.

24.        By not specifying which of at least seven different Bally products were alleged to infringe the 292 asserted patent claims, IGT sought to require Bally to respond to (and the Court to decide) hundreds, if not thousands, of separate instances of patent infringement.

IGT imposed this onerous burden on Bally with the intent of forcing it to expend its comparatively small resources on patent litigation, in hopes of eliminating Bally from the bonusing systems market.

25.    Despite the fact that IGT acquired Acres Gaming on October 27, 2003, the Acres patents issued as early as June 12, 2001, and Bally has offered most of the products in the accused Bally Power Bonusing suite of products for years before June 12, 2001, IGT only now asserts that Bally infringes the Acres patents.

26.    Notably, this lawsuit followed quickly on the heels of Bally's successful introduction of its Power Winners product, intended to increase Bally's market share in the market for gaming systems.  On January 4, 2006, Bally announced that Borgata Hotel Casino and Spa had "gone live with Bally Power Winners (TM), one of the signature products from the Bally Power Bonusing (TM) technology suite, and has placed an order to install iVIEW interactive touch-screen displays on more than 4,000 of its slot machines."  Bally also announced that Bally Power Winners "was singled out as one of the winners in the Best Consumer Service Technology category of the 2005 Global Gaming Business Gaming & Technology Awards."

27.    On April 11, 2006, Bally announced that it had signed a contract with Boyd Gaming "to provide complete casino management, slot accounting and bonusing solutions across all Boyd Gaming properties nationwide in an agreement that is structured to provide standardized technology for a total of approximately 30,000 slot machines at 19 casino properties in six states."

28.    IGT filed this lawsuit 17 days later, on April 28, 2006.  Before filing suit, IGT never once contacted Bally to inform Bally that IGT believed its products infringed the Acres

patents.  IGT's actions while Bally's product was in its infancy have caused grave customer

confusion, seriously damaging Bally's ability to compete in this market against IGT.

29.    Moreover, IGT did not accuse only Bally Power Winners of patent

infringement, but accused the whole suite of Bally Power Bonusing products – including

products that had been on the market and known to IGT for years.  Nevertheless, IGT brought a

complaint alleging hundreds, if not thousands, of instances of patent infringement with the bad

faith intent of preventing Bally from completing any more sales of Bally Power Winners.  On

information and belief, IGT's goal is to use the taint of litigation to dissuade customers from

dealing with Bally, so that by the time this litigation is resolved IGT will have substantially

increased its market share and Bally will be foreclosed from competition.

**C.**    **IGT Seeks To Deceive Bally's Customers And Potential Customers Into Believing**
       **That Bally Has Willfully Infringed IGT's Valid Patents**

30.    Filing this lawsuit against Bally was not enough.  IGT also intends to make

sure that all of Bally's customers and potential customers believe that the products sold by Bally

are infringing upon IGT's patents.  Shortly after filing the Complaint in this action, IGT issued a

press release that stated that IGT filed suit because "it cannot condone willful infringement by

[Bally] of IGT's valuable intellectual property."  A copy of this press release is attached hereto

as Exhibit 2.

31.    IGT did the same thing after filing suit in the Nevada Action.  Shortly after

filing its complaint in the District of Nevada, IGT issued a press release that stated that IGT filed

suit to "stop defendants from misappropriating IGT's patent innovations in the areas of bonus

gaming machines features and technology allowing players to communicate with games and

systems."  A copy of this press release is attached hereto as Exhibit 3.

32.     These press releases are not specific to the allegations in the respective complaints, but rather deceive the public into believing that all Bally gaming machines and Power Bonusing suite of systems products infringe IGT's patents.

33.     In addition to these press releases, IGT has also communicated directly with Bally's existing customers.  On June 13, 2006, IGT wrote directly to the general manager of Lincoln Park, an existing Bally customer, stating that it believed "the installation and use of Bally's iView device on a VLT for player tracking purposes is an infringement of IGT's patents."  A copy of this letter is attached hereto as Exhibit 4.  Upon information and belief, IGT has made other false statements to Bally's customers.

34.     All of IGT's statements to Bally's customers and potential customers were made in bad faith and have harmed Bally by creating confusion in the market, thereby placing Bally at a competitive disadvantage.  IGT has intentionally misled Bally's customers about the legality of Bally's products.

**D.     IGT Has Attempted To Restrict Bally's Competition With IGT In The Gaming Systems Market By Interfering With Bally's Ability to Test Its Systems**

35.     IGT has further sought to restrict competition in the gaming systems market by interfering with Bally's ability to properly test its products, which restricts Bally's ability to market and sell its systems.

36.     Bally's systems products (like most, if not all, products in the gaming systems market) need to be able to operate in conjunction with gaming machines manufactured by several different manufacturers.  Accordingly, Bally requires access to those manufacturer's gaming machines to test its systems.

37.     In the past, IGT has freely given Bally access to its gaming machines so that Bally could test its systems on IGT gaming machines and ensure that Bally's systems would be fully compatible with IGT's gaming machines.

38.     Upon information and belief, IGT has recently denied Bally access to its gaming machines.

39.     Without access to IGT's gaming machines – access IGT has freely given in the past – Bally's ability to compete in the gaming systems market is directly harmed.

## COUNT I
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '812 Patent)

40.     Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 39 of their Counterclaims, inclusive, as if fully set forth herein.

41.     IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '812 patent.

42.     Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further, deny that the '812 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '812 patent.

43.     Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '812 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

44.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '812 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

45.    Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '812 patent is unenforceable due to estoppel and laches.

46.    IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '812 patent was invalid, unenforceable and not infringed.

## COUNT II
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '885 Patent)

47.    Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 46 of their Counterclaims, inclusive, as if fully set forth herein.

48.    IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '885 patent.

49.    Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further, deny that the '885 patent is enforceable. Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '885 patent.

50.    Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '885 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

51.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '885 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

52.     Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '885 patent is unenforceable due to estoppel and laches.

53.     IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '885 patent was invalid, unenforceable and not infringed.

## COUNT III
### (Declaratory Judgment of Noninfringement, Invalidity and Unenforceability of the '983 Patent)

54.     Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 53 of their Counterclaims, inclusive, as if fully set forth herein.

55.     IGT alleges that Defendants/Counter-Plaintiffs have infringed and continue to infringe the '983 patent.

56.     Defendants/Counter-Plaintiffs deny IGT's allegations of infringement and further, deny that the '983 patent is enforceable.  Accordingly, there exists a substantial and continuing justiciable controversy between Defendants/Counter-Plaintiffs and IGT as to the infringement, validity, and enforceability of the '983 patent.

57.     Defendants/Counter-Plaintiffs assert this counterclaim against IGT for declaratory relief that the '983 patent is not infringed, either directly, indirectly, under the doctrine of equivalents, or by contributory infringement or inducement, by any act of Bally, either individually or collectively.

58.        Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '983 patent is invalid for failure to satisfy one or more of the requirements of Title 35, including without limitation, Sections 101, 102, 103 and/or 112.

59.        Defendants/Counter-Plaintiffs also assert this counterclaim against IGT for declaratory relief that the '983 patent is unenforceable due to estoppel and laches.

60.        IGT served the Complaint on Defendants/Counter-Plaintiffs with knowledge that the '983 patent was invalid, unenforceable and not infringed.

<u>**COUNT IV**</u>
**(Attempted Monopolization of the Gaming Systems Market:  15 U.S.C. § 2)**

61.        Defendants/Counter-Plaintiffs reallege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 60 of their Counterclaims, inclusive, as if fully set forth herein.

62.        In pursuit of its effort to monopolize the gaming systems market, IGT has engaged in the following anti-competitive acts:

a.        IGT has an extensive history of misusing the patent process and enforcement actions, in order to intimidate and drive out competitors, including:

i.        purchasing or being assigned numerous patents in the field of gaming systems, and obtaining exclusive licenses for additional patents for anti-competitive purposes;

ii.        filing patent infringement actions -- including three such lawsuits against Bally since 2001 -- based upon alleged infringement of patents that were fraudulently obtained, that IGT knows are invalid, or that IGT knows are not infringed;

b.        IGT has made overbroad and ill-defined claims of infringement knowing that they are meritless in order to eliminate Bally from the gaming systems market.

c.      IGT has deceived the public that Bally's Power Bonusing suite of products infringe IGT's patents by issuing a vague and misleading press release as well as other false statements to Bally's customers.

d.      IGT has further sought to restrict competition in the gaming systems market by interfering with Bally's ability to properly test its products, which restricts Bally's ability to market and sell its systems.

63.      IGT's pattern of behavior is harmful to competition in the gaming systems market. As a result of its anti-competitive behavior, IGT holds a dominant market share -- over 40% -- in the gaming systems market. Bally is the primary competitor to IGT in the gaming systems market. Absent relief from the Court, IGT's market share in the gaming systems market will increase further, thereby approaching a monopoly and eliminating competition in that market.

64.      IGT has the specific intent to monopolize the gaming systems market. IGT's conduct, as alleged herein, has been undertaken to achieve, maintain or extend a monopoly in the gaming systems market, and to the extent (if any) that IGT has not already obtained monopoly power, there is a dangerous probability that it will succeed in obtaining it.

65.      IGT is attempting to monopolize the gaming systems market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, through anti-competitive actions designed to eliminate competition. IGT's anti-competitive conduct occurs in and/or affects interstate commerce and is harmful to competition.

66.      As a direct and proximate result of the foregoing, Bally has been injured in its business and property in an amount to be determined at trial.

<u>**COUNT V**</u>
**(False Representation:  15 U.S.C. § 1125)**

67.         Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 66 of their Counterclaims, inclusive, as if fully set forth herein.

68.         In violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, IGT has made, in bad faith, material and false and/or misleading representations regarding Defendants/Counter-Plaintiffs' products sold and used in interstate commerce that are likely to deceive the intended audience (i) by releasing a vague and misleading press release designed to confuse Defendants/Counter-Plaintiffs' customers into believing that Bally's Power Bonusing systems products infringe IGT's patents, and (ii) by writing directly to Defendants/Counter-Plaintiffs' existing customers making false and misleading statements claiming that Bally's products infringe IGT's patents.

69.         Upon information and belief, IGT has also made other false and/or misleading statements to Bally's customers that have misled or are likely to mislead Bally's customers about the legality of Bally's products.

70.         IGT's false and/or misleading statements are likely to influence purchasing decisions.  As a direct and proximate result of the foregoing, Defendants/Counter-Plaintiffs have been injured in their business and property in an amount to be determined at trial.

<u>**COUNT VI**</u>
**(Intentional Interference with Business Relationships)**

71.         Defendants/Counter-Plaintiffs reallege and incorporate by reference their Affirmative Defenses and paragraphs 1 through 70 of their Counterclaims, inclusive, as if fully set forth herein.

72.     IGT is aware that Bally has an economic interest in selling its systems to customers in the gaming systems market.  Further, IGT is aware that Bally receives an economic benefit from its ability to offer its potential customers a product that is either protected by Bally's own patent portfolio or, in the very least, does not infringe others' patents.  IGT is aware that Bally has existing and prospective contractual relationships with third parties based on its ability to manufacture and sell systems without infringing others' patents.

73.     IGT intended to harm Bally by issuing a press release that deceives the public into believing that all of Bally's Power Bonusing systems products infringe IGT's patents, and accordingly interfering with Bally's existing and prospective contractual relationships with customers -- customers for whose business IGT also competes.

74.     IGT further intended to harm Bally by writing directly to Bally's existing customers and claiming that Bally's products infringe IGT's patents, knowing those allegations to be false and/or misleading, and accordingly interfering with Bally's existing contractual relationships with its customers.

75.     IGT has no justification or privilege to interfere with Bally's valid business relationships and/or expectancies with third parties.

76.     As a direct and proximate result of the IGT's interference with Defendants/Counter-Plaintiffs' valid business relationships and/or expectancies, Bally has been and continues to be damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants/Counter-Plaintiffs pray for the entry of judgment in favor of Bally Technologies, Inc., Bally Gaming International, Inc., and  Bally Gaming, Inc. and against IGT as follows:

A.      The Court dismiss with prejudice, any and all claims of IGT's Amended Complaint and order that Plaintiff IGT take nothing as a result of the Amended Complaint and that all of IGT's prayers for relief be denied;

B.      The Court enter judgment that Defendants/Counter-Plaintiffs have not infringed, contributed to the infringement of, or induced infringement of the '812, '885, and '983 patents;

C.      The Court enter judgment declaring that the '812, '885, and '983 patents are invalid and/or unenforceable;

D.      The Court enter judgment declaring that IGT has violated Section 2 of the Sherman Act, 15 U.S.C. § 2;

E.      The Court enter judgment declaring that IGT has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125;

F.      The Court enter judgment declaring that IGT has intentionally interfered with Bally's business relationships;

G.      For damages in an amount to be proven at trial;

H.      For pre-judgment interest on all such damages;

I.      For reasonable attorneys' fees and costs of suit incurred herein; and

J.      The Court grant to Bally such other and further relief as may be just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
   *Attorneys for Defendants*

OF COUNSEL:

Charles K. Verhoeven
Edward J. DeFranco
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
50 California Street
San Francisco, CA  94111
(415) 875-6600

Dated: July 15, 2008
2409431