IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IGT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-282-SLR |
| | ) | |
| BALLY GAMING INTERNATIONAL | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 28th day of April, 2010, having reviewed plaintiff's renewed

motion to dismiss defendants' counterclaims X, XI and XII[1] or, in the alternative, to

enter a scheduling order to adjudicate patent damages;

IT IS ORDERED that said motion (D.I. 355) is granted, for the reasons that

follow:

1. **Background**. IGT ("plaintiff") filed this patent infringement action against

Bally Gaming International Inc., Bally Technologies, Inc. and Bally Gaming, Inc. d/b/a

Bally Technologies (collectively, "defendants") on April 28, 2006. In its complaint,

plaintiff alleged infringement of U.S. Patent Nos. RE 38,812 ("the '812 patent"), RE

37,885 ("the '885 patent"), 6,832,958 ("the '2958 patent"), 6,319,125 ("the '125 patent"),

6,224,958 ("the '4958 patent"), 6,431,983 ("the '983 patent"), 6,607,441 ("the '441

_____

[1] Defendant renumbered these claims as new counterclaims IV, V and VI; to
avoid confusion vis a vis the original counterclaims, the court references the original
claim numbers.

patent"), 6,565,434 ("the '434 patent"), and 6,620,046 ("the '046 patent").  (D.I. 1)[2]

Plaintiff alleged that defendants' "Bally Power Bonusing®" slot machine technology

infringes one or more claims of the asserted patents.

2.  On June 30, 2006, defendants filed their answer, and asserted counterclaims

for a declaratory judgment of noninfringement, invalidity and unenforceability of each

asserted patent ("counts I - IX"); attempted monopolization in violation of Section 2 of

the Sherman Antitrust Act, 15 U.S.C. § 2 ("count X"); false representation in violation of

the Lanham Act, 15 U.S.C. § 1125 ("count XI"); and "intentional interference with

business relationships" ("count XII").  (D.I. 40)  Plaintiff moved to dismiss defendants'

antitrust and state law counterclaims ("counts X–XII").  (D.I. 53)  Plaintiff also moved for

a preliminary injunction.  (D.I. 75)  The case was assigned to this judicial officer on April

2, 2007.

3.  During its June 2007 teleconference with the parties, the court stated that it

bifurcates antitrust counterclaims insofar as they generally do not survive unless there

is a finding of no infringement.[3]  (D.I. 117 at 11-12)  Following the teleconference,

plaintiff withdrew its pending motions.  Discovery proceeded in the case on all but the

antitrust counterclaims and has now since closed.  (D.I. 160, 175)

4.  On February 25, 2008, by agreement of the parties, all claims, defenses, and

counterclaims related to the '125, '434, '4958, '046, and '2958 patents were dismissed.

(D.I. 152)  The parties entered into an agreement on May 14, 2008 removing the '441

---

[2]Plaintiff originally filed the complaint in the name of "International Game
Technology" (D.I. 1); plaintiff amended its complaint on May 8, 2005 and recaptioned
itself "IGT."  (D.I. 6)

[3]No order was docketed in this regard.

patent from issue as well. (D.I. 165) Remaining at issue at that time was: infringement of the '812, '885, and '983 patents; defendants' counterclaims of invalidity and unenforceability of these patents; and defendants' antitrust counterclaims X-XII.

5. On April 28, 2009, the court construed the disputed claim terms and issued a memorandum opinion addressing seven motions for summary judgment filed by the parties. (D.I. 281; D.I. 283) The court found the '812 and '885 patents valid. Defendants' motion for summary judgment of invalidity of the '983 patent was denied; there was no cross-motion. (Id.) Regarding infringement, the court determined that defendant's Power Rewards product[4] infringes claims 10, 33 and 46 of the '885 patent and claims 21 and 44 of the '812 patent; and ACSC Power Winners infringes claims 10 and 46 of the '885 patent. (Id.)

6. The case was set for a jury trial commencing June 1, 2009. At that time, the parties focused on two remaining issues: plaintiff's allegation of willful infringement; and defendants' counterclaim for invalidity of the '983 patent. The court and the parties discussed the propriety of proceeding to trial on these issues and an agreement was reached whereby defendants subsequently dismissed their invalidity counterclaim without prejudice. The parties also agreed that willfulness could be tried with plaintiff's claim for damages after appeal.[5] Trial was cancelled and, on June 15, 2009, plaintiff

---

[4]The court provided a detailed description of the patents and technology at issue in its prior opinion, and need not repeat it here. See IGT v. Bally Gaming Intern., Inc., 610 F. Supp. 487 (D.Del. 2009).

[5]It is the court's practice to stay damages pending appeal. The parties have filed letter briefs on whether the court should preclude plaintiff from asserting willful infringement. (D.I. 289; D.I. 293) The court need not resolve that issue now.

2

filed its motion for permanent injunction, which was denied by the court on December 22, 2009. (D.I. 352)

7. Plaintiff's motion to dismiss defendants' counterclaims X-XII was filed on February 23, 2010. (D.I. 355) It is plaintiff's position that the unresolved claims pose an impediment to moving the case to appellate review pursuant to 28 U.S.C. § 1292(c)(2). Plaintiff argues in the alternative that the lack of a damages determination precludes an appeal under Federal Rule of Civil Procedure 54(b). Defendants oppose the current motion insofar as plaintiff seeks to dismiss its counterclaims with prejudice.

8. **Claims at issue**. Defendants claim that plaintiff has violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by: (1) "misusing the patent process . . . in order to intimidate and drive out competitors;" (2) filing infringement actions based on "fraudulently obtained" patents; (3) "issuing [ ] vague and misleading press release[s] as well as other false statements to [defendants'] customers" regarding its patent litigation; and (4) "interfering with [defendants'] ability to properly test [their] products" (on plaintiff's gaming machines). (D.I. 173 at ¶¶ 30-34; 62) Plaintiff's press releases and statements are also the premise of defendants' "false representation" claim under the Lanham Act, 15 U.S.C. § 1125, as well as their claim for intentional interference with business relationships. (*Id.* at ¶¶ 67-69, 73-74)

9. **Discussion**. A party who petitions the government for redress generally is immune from antitrust liability. *Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). Commonly referred to as the *Noerr-Pennington* doctrine, this immunity extends

3

to persons who petition all types of government entities, including courts. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Although originally developed in the antitrust context, courts have applied this doctrine universally to business torts. *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999).

10. *Noerr-Pennington* immunity, however, is subject to an exception for "sham" litigation. In this regard, the Supreme Court has outlined a two-part test to determine whether the "sham litigation" exception applies. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993). As an objective first part, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, then the suit does not qualify as sham litigation and is immunized under the *Noerr-Pennington* doctrine. *Id.* The subjective second part of the definition arises only if the challenged litigation is objectively meritless. In such a case, the court must decide whether the "baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.' " *Id.* at 60-61. To invoke the "sham" exception, a defendant must prove, by clear and convincing evidence, that a plaintiff's activities were not really efforts to vindicate its rights in court. *See C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998) ("sham litigation requires more than a failed legal theory") (quoting *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1288 (9th Cir. 1984)).

11. The redress plaintiff seeks through the current motion is, essentially, a judgment that defendants cannot prevail in showing that the current litigation was a "sham" insofar as plaintiff prevailed on summary judgment. (D.I. 356 at 14) Presumably due to the court's indication at the June 2007 teleconference that the antitrust counterclaims were stayed, plaintiff did not move for summary judgment. Plaintiff now brings a renewed motion to dismiss. Plaintiff, however, does not merely seek a review of defendants' 2008 amended pleadings on their face. (D.I. 173) It seeks application of the 2009 judgment to those pleadings in order to defeat defendants' claims on their merits.

12. The court notes at this juncture that defendants did not respond to plaintiff's challenge to the merits of their counterclaims. Rather, defendants argued that the stay should be maintained for purposes of judicial economy, and reserved their right to address their claims substantively should the Federal Circuit find in their favor on appeal. In doing so, defendants have cast a shroud of doubt over the court's ability to grant judgment *sua sponte* that defendants cannot prove their counterclaims as a matter of law. *See, e.g., Chambers Dev. Co. v. Passaic County Util. Auth.*, 62 F.3d 582, 584 n.5 (3d Cir. 1995) ("[A] judgment cannot be entered without first placing the adversarial party on notice that the court is considering a *sua sponte* summary judgment motion. The court must also provide the party with an opportunity to present relevant evidence in opposition to that motion.").

13. Notwithstanding the foregoing, an affirmance of the court's summary judgment opinion on appeal would nullify any argument that plaintiff's infringement claims were "objectively baseless." *See Prof'l Real Estate Investors v. Columbia*

5

*Pictures Indus.*, 508 U.S. 49, 61 n.5 (1993) ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham.")  Defendants admit that their counterclaims do not survive if defendants do not succeed on appeal.[6] (D.I. 360 at 10 ("Once the Federal Circuit has ruled, the parties and this court will have a clear pathway to proceed with resolution of **either** [plaintiff's] damages claim **or** [defendants'] antitrust counterclaims.") (emphasis added))

14.  For the foregoing reasons, the court grants plaintiff's motion, dismisses the remaining counterclaims **without prejudice** and enters final judgment in favor of plaintiff pursuant to Federal Rule of Civil Procedure 54(b).  Should the court's opinion be reversed and the case be remanded, the court will consider defendants' request for further discovery and take up the merits of defendants' claims in due course.

United States District Judge

---

[6]It is not clear whether the *Noerr-Pennington* doctrine applies to Lanham Act claims.  *See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 130-31 (3d Cir. 2005) (declining to consider the district court's finding in the affirmative on this question on appeal).  The parties have not addressed the issue, and the court need not consider it at this juncture.